IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN COOPER, individually and as next friend of her child, BCC, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO.: 3:07cv615-F |
| AMBASSADOR PERSONNEL, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, SELF INSURANCE PLAN OF AMBASSADOR PERSONNEL AND CONE FINANCIAL GROUP AS THIRD PARTY ADMINISTRATOR, | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MOTION FOR SUMMARY JUDGMENT

**COME NOW,** the Defendants identified in the Complaint as Ambassador Personnel,

Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party

Administrator and Kenneth Cone, individually, and pursuant to Rule 56 of the *Federal Rules*

*of Civil Procedure*, hereby file this Motion for Summary Judgment, as there are no genuine

issues of material fact and these Defendants are entitled to judgment as a matter of law.  In

support of said motion, the Defendants submit the following:

Exhibit #                      Document

1)       Brief in support of Motion for Summary Judgment

1

2)      _Cooper II_ Plaintiff's Complaint

3)      _Cooper II_ Plaintiff's Amended Complaint

4)      _Cooper I_ Plaintiff's Complaint

5)      _Cooper I_ Plaintiff's Amended Complaint

6)      _Cooper I_ Plaintiff's Motion to Dismiss Counts Two and Three

7)      _Cooper I_ Plaintiff's Damage Pleading

8)      _Cooper I_ Defendant's Trial Brief

9)      _Cooper I_ Defendant's Eighth Motion In Limine

10)     _Cooper I_ Trial Transcript, Oral Arguments re: Defendant's Eighth Motion in Limine

11)     _Cooper I_ Trial Transcript, Opening Statements

12)     _Cooper I_ Trial Transcript, Lauren Cooper Testimony

13)     _Cooper I_ Trial Transcript, Plaintiff's Trial Exhibit 17

14)     _Cooper I_ Trial Transcript, Kenneth Cone Testimony

15)     _Cooper I_ Trial Transcript, Douglas Wilson Testimony

16)     _Cooper I_ Judgment

17)     Ken Cone Affidavit

18)     _Cooper I_ Verdict Form

19)     _Morris v. Bert Bell/Pete Rozelle NFL Player Retirement Plan_

20)     *Cooper II* Report of Parties Planning Meeting

WHEREFORE, premises considered, Defendants respectfully request this court enter an order granting their Motion for Summary Judgment as there are no genuine issues of material fact and these defendants are entitled to judgment as a matter of law.


_____/s/_____ Emily C. Marks_____
EMILY C. MARKS

_____/s/_____ W. Evans Brittain_____
W. EVANS BRITTAIN

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes, Esq.
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

Cavender C. (Chris) Kimble, Esq.
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, Alabama 35203-2014

<u>/s/      W. Evans Brittain</u>
OF COUNSEL

Cc:    Hon. Mark E. Fuller

EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN COOPER, individually and as next friend of her child, BCC, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | CASE NO.: 3:07cv615-F |
| AMBASSADOR PERSONNEL, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, SELF INSURANCE PLAN OF AMBASSADOR PERSONNEL AND CONE FINANCIAL GROUP AS THIRD PARTY ADMINISTRATOR, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

COME NOW, the defendants identified in the Complaint as Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually, and hereby submit this Brief in support of their Motion for Summary Judgment.

## SUMMARY OF ARGUMENT

This is the second lawsuit that the plaintiff, Lauren Cooper, has brought concerning her termination from employment with Ambassador Personnel, Inc., and for the recovery

1

of health insurance benefits that she claims she was entitled to receive under the health insurance plan offered by Ambassador.

The first lawsuit brought by Lauren Cooper was styled _Lauren Cooper v. Ambassador Personnel_, ("Cooper I"). In _Cooper I_, Mrs. Cooper claimed that she was discriminated against by Ambassador Personnel due to her gender, in violation of Title VII. Specifically, Mrs. Cooper alleged that she was terminated after announcing her pregnancy. _Cooper I_ was tried before a jury. Following the jury trial, Judge Thompson entered judgment consistent with the jury verdict "in favor of Defendant Ambassador Personnel, Inc. and against plaintiff Lauren Cooper, with plaintiff Cooper taking nothing by her complaint."

Importantly, one of the issues presented by Lauren Cooper in _Cooper I_ was whether she was entitled to recover damages against Ambassador Personnel under the health insurance plan offered by Ambassador Personnel. Specifically, the plaintiff submitted the following in her damage pleading:

> Plaintiff's COBRA Insurance was cancelled on January 1, 2005, _**after she was terminated**_. The plaintiff had elected to continue her Insurance benefits, but _**Defendant arbitrarily cancelled plaintiff's COBRA's benefits**_, even though plaintiff was paying the COBRA premium. However, _**plaintiff was not informed of the cancellation**_ until February 11, 2005. As such, the _**plaintiff received a $5,000 hospital bill**_ in relation to her pregnancy and was without health Insurance. (Emphasis added).

2

As noted above, although the plaintiff sought damages from Ambassador Personnel in connection with Ambassador's alleged cancellation of the health insurance plan following her termination from Ambassador Personnel, the jury in *Cooper I* returned a verdict in favor of Ambassador Personnel and against Mrs. Cooper.

On July 2, 2007, less than four months after Judge Thompson entered his judgment consistent with the jury verdict in *Cooper I*, Lauren Cooper filed the instant suit, ("*Cooper II*"). The underlying basis of *Cooper II* as set forth the Plaintiff's Complaint and Amendment thereto is that "[t]he Defendant ***cancelled Plaintiff's insurance*** with said provider and ***gave no notice to Plaintiff*** of the cancellation despite Plaintiff's payments to said insurance provider." The Plaintiff further alleges that "[a]s a result of Defendant's unlawful action, Plaintiff was caused to be without insurance and subsequent ***treatment for the delivery of Plaintiff's child was unpaid by the insurance provider***."

In addition, the Plaintiff succinctly identifies the basis for the present action in the Plaintiff's Synopsis of the Case, as presented in the Report of Planning Meeting provided to this Court stating as follows:

> Lauren Cooper became employed with Ambassador Personnel on June 6, 2002, and progressed through the company until she was a manager of the Opelika office of Ambassador Personnel in March of 2003. Cooper was subsequently terminated but elected to continue her health insurance benefits. As a result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then unborn child were participants in or qualified

3

beneficiaries of the Cone Financial Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§1167(2) and (3)(B). Plaintiff's benefits were cancelled without notice to her and despite Cooper paying for continuation of her health insurance benefits. At all times relevant to this action, Kenneth Cone and the Cone Financial Group Plan was an employee welfare benefit plan as the term is defined by ERISA, 29 U.S.C. § 1002(1). Lauren Cooper brings this action to redress the legal and equitable wrongs she and her child suffered when Defendant, Ambassador Personnel, retaliated against her for filing a charge of discrimination and cancelled her health insurance in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §1161 *et seq.*, ("COBRA") and the Employment Retirement Income Security Act of 1974, 29 U.S.C.§1001, *et seq.*, (ERISA) causing them to lose medical coverage and incur unreimbursed medical expenses.

Although the claims brought in *Cooper II* are brought under ERISA, and the claims asserted in *Cooper I* were brought under Title VII, the "rights and duties" at issue before this Court are the same as the "rights and duties" before the Court in *Cooper I*. Specifically, the matters at issue in both suits are the Plaintiff's claims that following her wrongful termination, her insurance was improperly cancelled without her notification, and that as a proximate result thereof, she was forced to incur medical bills and other damages. The Plaintiff presented evidence as to this issue in *Cooper I* and also asked the jury to compensate her for these alleged wrongs.

The doctrine of res judicata prevents the plaintiff from "getting two bites at the apple." The application of the doctrine of res judicata is a legal issue to be resolved by the

4

Court.  In order for a Defendant to prevail under the defense of res judicata, the Defendant must prove the following four elements:

1.      There is a final judgment on the merits;

2.      The prior decision was rendered by court of competent jurisdiction;

3.      The parties or their privies are identical in both suits;

4.      The prior and present causes of action are the same.

The first and second elements are satisfied by virtue of the fact that Judge Thompson entered a judgment consistent with the jury verdict rendered in *Cooper I*.

Although there are additional parties in *Cooper II*, the third element is also met. Mrs. Cooper's minor child, B.B.C., is a plaintiff in the present litigation.  She was not a plaintiff in the prior litigation.  However, as noted above, any prior decision is binding, not only to the parties to that decision, but also to their privies.  The law is clear that Mrs. Cooper, by virtue of the fact that she is B.B.C.'s mother, is in privity with B.B.C. and therefore the decision is binding upon B.B.C.

In addition to the fact that there are additional parties on the plaintiffs' side, there are also additional parties on the defendants' side.  Ambassador Personnel was the only named Defendant to the prior litigation.  The other proper defendant before this Court is Kenneth Cone, who is the chairman and CEO of Ambassador Personnel, Inc., and is therefore in privity Ambassador Personnel. The applicable case law is clear that principals

5

and employers are in privity with their agents and employees. Therefore the third element is met with respect to these Defendants as well.

The final element is whether the prior and present cause of actions are the same. *Res judicata* applies not only to issues actually decided, but also to all claims that could have been raised but were not. The key issue "for determining whether the causes of action are the same is whether, in comparing the substance of the actions, the primary right and duty are the same in each case." To be stated another way, "if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate as a former action, the two cases are really the same claim or cause of action for purposes of res judicata."

In the matter at hand, the underlying factual issue before this court is whether these defendants improperly cancelled Mrs. Cooper's health insurance policy without properly notifying her and are therefore responsible for the medical bills and other damages incurred by Mrs. Cooper. This was precisely one of the issues presented by the Plaintiff to the jury in *Cooper I*. As will be discussed in more detail below the Plaintiff presented evidence and made arguments concerning her allegations that her insurance was cancelled without her receiving the proper notification. Thus, there can be no doubt but that the claims asserted in *Cooper II* arise out of the same nucleus of operative fact as the claims asserted in *Cooper I*. The claims are, therefore, barred by res judicata,

6

and the fact that the Plaintiff failed to state a claim under ERISA in *Cooper I* is of no

consequence to that determination.

## SUMMARY JUDGMENT STANDARD

This Court has previously set forth the applicable Summary Judgment Standard as

follows:

> Under Rule 56(c) of the *Federal Rules of Civil Procedure*,
> summary judgment is appropriate "if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no
> genuine issue as to any material fact and that the moving party
> is entitled to a judgment as a matter of law." *Fed.R.Civ.P. 56*(c).
> "An issue of fact is 'genuine' if the record as a whole could lead
> a reasonable trier of fact to find for the nonmoving party. An
> issue is 'material' if it might affect the outcome of the case
> under the governing law." *Redwing Carriers, Inc. v. Saraland
> Apartments,*, 94 F3d 1489, 1496 (11th Cir. 1996) (citing *Anderson
> v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91
> L.Ed.2d 202 (1986)). "A genuine issue of material fact does not
> exist unless there is sufficient evidence favoring the
> nonmoving party for a reasonable jury to return a verdict in its
> favor." *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir.
> 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F3d 918, 921
> (11th Cir. 1995) (internal quotation marks and citations
> omitted)).
>
> The party seeking summary judgment "always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of ' the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any,' which it believes
> demonstrate the absence of a genuine issue of material fact."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct, 2505, 91 L.Ed.2d 202 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-23, 106 S.Ct. 2548.

Once the moving party has met its burden, *Rule 56(e)* "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the nonmovant and must draw all justifiable inferences from the evidence in the nonmoving party's favor. *See, e.g., Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1243 (11th Cir. 2003) (the evidence and all reasonable inferences from the evidence must be viewed in the light most favorable to the nonmovant). After the nonmoving party has responded to the motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Fed.R.Civ.P.* 56(c).

8

## SUMMARY OF UNDISPUTED FACTS

This lawsuit, _Lauren Cooper, et. al. v. Ambassador Personnel, et. al._, Case Number 03:7-CV-615-MEF, United States District Court for the Middle District, Eastern Division ("_Cooper II_"), is the second lawsuit that Lauren Cooper has filed against Ambassador Personnel following her termination from Ambassador Personnel. The first lawsuit _Lauren Cooper v. Ambassador Personnel_, Case Number 3:06-CV-MHT, United States District Court for the Middle District, Eastern Division ("_Cooper I_")[1] resulted in a verdict in favor of Ambassador Personnel.[2]

The Plaintiff has stated two causes of action in this lawsuit, both of which are based on the Defendants' alleged violation of the Employment Retirement Income Security Act of 1974, 29 U.S.C.§1001, _et seq._, ("ERISA"). (Exhibit 3, _Cooper II_ Amended Complaint). More specifically, the Plaintiff alleges that the Defendants have violated the Consolidated

---

[1] _Cooper I_ was originally filed in the United States District Court for the Northern District, Southern Division, but was transferred to the Middle District, Eastern Division. (Exhibit 4, _Cooper I_ Complaint). Additionally, between the time of the filing of the original complaint and the time of the trial WorkStaff, the named defendant in the _Cooper I_ complaint, was renamed Ambassador Personnel. (Exhibit 17, Affidavit of Ken Cone at ¶2).

[2] In her Complaint and Amended Complaint for _Cooper II_, Mrs. Cooper alleges that she was terminated from her job with Ambassador Personnel "because of discrimination due to her pregnancy as found by a jury in the case of Cooper v. Ambassador Personnel, CV-00138-MHT-DRB." (Exhibit 2, _Cooper II_ Complaint at ¶ 35; Exhibit 3 _Cooper II_ Amended Complaint at ¶ 38). While the jury found that Mrs. Cooper's pregnancy "was a motivating factor for the decision by Ambassador Personnel to terminate her," the jury also found that Ambassador "would have taken the same adverse employment action against Cooper even in the absence of her pregnancy." (Exhibit 16, _Cooper I_ Judgment). Consistent with this verdict, Judge Thompson entered judgment "in favor of defendant Ambassador Personnel, Inc., and against plaintiff Lauren Cooper, with plaintiff Cooper taking nothing by her complaint." (_Id._)

Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §1161 *et seq.,* ("COBRA").   (Exhibit

3, *Cooper II* Amended Complaint).

Of the Defendants named in this lawsuit, the Plaintiff has sued two entities that do

not exist- Self Insurance Plan of Ambassador Personnel and Cone Financial Group as Third

Party Administrator. (Exhibit 17, Kenneth Cone Affidavit at ¶ 3).  Ambassador Personnel,

Inc. does exist and was the Plaintiff's employer.  Further, Ambassador Personnel funds the

health insurance plan that the Plaintiff contends she was to receive health insurance

through.  (*Ibid.*)  The health insurance plan at issue was administered by a third party

administrator, which is independent from and in no way connected to Ambassador

Personnel.  (*Ibid.*).  Kenneth Cone is the chairman and CEO of Ambassador Personnel.  (*Id.*

at ¶ 1).

An examination of the Amended Complaint filed in *Cooper II* clearly shows that the

factual basis for the Plaintiff's claims are that after wrongfully terminating the Plaintiff, the

Defendants cancelled the Plaintiff's health insurance coverage without the Plaintiff's

knowledge, and that as a result thereof, the Plaintiff incurred medical expenses. (Exhibit 3, _Cooper II_ Amended Complaint).[3] Specifically, the Plaintiff's Synopsis of the Case, set forth in the Report of Planning Meeting provided to this Court states as follows:

> Lauren Cooper became employed with Ambassador Personnel on June 6, 2002, and progressed through the company until she was a manager of the Opelika office of Ambassador Personnel in March of 2003. Cooper was subsequently terminated but elected to continue her health insurance benefits. As a result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then unborn child were participants in or qualified beneficiaries of the Cone Financial Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§1167(2) and (3)(B). Plaintiff's benefits were cancelled without notice to her and despite Cooper paying for continuation of her health insurance benefits. At all times relevant to this action, Kenneth Cone and the Cone Financial Group Plan was an employee welfare benefit plan as the term is defined by ERISA, 29 U.S.C. § 1002(1). Lauren Cooper brings this action to redress the legal and equitable wrongs she and her child suffered when Defendant, Ambassador Personnel, retaliated against her for filing a charge of discrimination and cancelled her health insurance in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. §1161 _et seq._, ("COBRA") and the Employment Retirement Income Security Act of 1974, 29 U.S.C.§1001, _et seq._, (ERISA) causing them to lose medical coverage and incur unreimbursed medical expenses.

---

[3] Throughout the Complaint and Amended Complaint, Plaintiff claims that these defendants "cancelled" her insurance coverage. At the _Cooper I_ trial, it was established that, in reality, Cone Financial became self-insured as of January 1, 2005, rather than obtaining health insurance through Blue Cross Blue Shield, and based on that, the Plaintiff herself acknowledged that Ambassador did not "cancel" the Plaintiff's insurance. (Exhibit 12, _Cooper I_ Trial Transcript, Lauren Cooper Testimony, Vol. II at 153:21 – 156:14; Exhibit 15, _Cooper I_ Trial Transcript, Douglas Wilson Testimony, Vol. II at 188:23 – 189:11). The true issue is whether the Plaintiff was notified of the change following her alleged wrongful termination. However, for the purposes of this motion and because the Plaintiff contended during _Cooper I_ and again in _Cooper II_, that her insurance was "cancelled," the issues are addressed based on the Plaintiff's assertion that her insurance was "cancelled."

(Exhibit 20, *Cooper II* Report of Parties Planning Meeting).

These same claims were among the claims asserted by the Plaintiff in *Cooper I*. However, instead of bringing these claims under the ERISA or COBRA provisions, the claims were brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq.*, ("Title VII"). (Exhibit 5, *Cooper I* Complaint).[4] The filings and evidence presented in *Cooper I*, like the Complaint and Amended Complaint filed in *Cooper II*, focus on the Plaintiff's claim that after wrongfully terminating the Plaintiff, Ambassador cancelled the Plaintiff's insurance without notifying the Plaintiff, thereby damaging the Plaintiff.

The Damage Pleading filed by the Plaintiff in *Cooper I* states in pertinent part as follows:

> Plaintiff's COBRA insurance was cancelled on January 1, 2005, *after she was terminated*. Plaintiff had elected to continue her insurance benefits, but *defendant arbitrarily cancelled Plaintiff's COBRA benefits* even though Plaintiff was paying the COBRA premium. However, *Plaintiff was not informed of the cancellation* until February 11, 2005. As such, *Plaintiff received a $5,000 hospital bill in relation to her pregnancy and was without health insurance*.

(Exhibit 7, *Cooper I* Plaintiff's Damage Pleading)(Emphasis added).

---

[4] The Amended Complaint was a three count complaint, which, in addition to stating claims under Title VII, also stated claims for "Fraud in the Inducement/Conversion" and "Breach of Contract." (Exhibit 5, *Cooper I* Amended Complaint). However, the Plaintiff voluntarily dismissed these two counts and proceeded only under the Title VII claim. (Exhibit 6, *Cooper I* Plaintiff's Motion to Voluntarily Dismiss Counts Two and Three).

The testimony presented at trial also spoke to the issues of the Plaintiff's claims that Ambassador Personnel cancelled the Plaintiff's insurance without notifying the Plaintiff, and in the process caused the plaintiff to incur medical expenses.

Q:     Did you have insurance with Work Staff?

A:     Yes, ma'am.

Q:     And did you have to pay for that while you were employed?

A:     No, ma'am.

Q:     After you ceased being employed, did you pay for your insurance?

A:     Yes, ma'am.

Q:     And how much was that?

A:     Between three hundred and three hundred fifty dollars a month.

Q:     Okay. And did that cover the birth of your child?

A:     No, ma'am, it did not.

Q:     What happened?

A:     Cone Financial Group terminated my insurance January the first of two thousand and five.

Q:     So, your baby was born January thirteenth?

A:     Yes, ma'am.

Q:     So you did not have insurance at that time?

A:    I did not have insurance at the time, and I didn't know until February that my insurance was cancelled.

…

Q:    And did you in fact pay the baby's delivery personally?

A:    We're paying on it at this time.

Q:    You're making payments?

A:    Yes, ma'am.

Q:    Do you remember how much that bill was?

A:    Five thousand one hundred and eighty-nine dollars and thirty-one cents.

(Exhibit 12, _Cooper I_ Trial Transcript, Lauren Cooper Testimony, Vol. II at 94:25 - 95:20, 96:5

- 12).

This issue was also addressed during the cross examination of the Plaintiff –

Q:    You also talked about your insurance.  And you keep saying that Ambassador, or its parent company Cone Financial, cancelled your insurance. Isn't it true that actually they switched insurance companies? I mean they didn't cancel your insurance, they switched insurance companies. Isn't that what you understand happened?

A:    I do understand that now, but they did not make me aware that they were changing companies.

((Exhibit 12, _Cooper I_ Trial Transcript, Lauren Cooper Testimony, Vol. II at 153:21 - 154:3)

The Plaintiff also submitted a damage exhibit, which sought damages for the

amounts she paid for medical expenses, and offered exhibits from the COBRA Solutions

14

department of Blue Cross Blue Shield, notifying the Plaintiff that her coverage was cancelled.  (Exhibit 12, *Cooper I* Trial Transcript, Lauren Cooper Testimony, Vol. II at 104:13 - 23, 109:23 – 25; Exhibit 13, *Cooper I* Plaintiff's Trial Exhibit 17).

The plaintiff's attorney also addressed the issue of cancellation, notice and the resulting damages during opening statements.  When speaking to the issue of damages, the Plaintiff's attorney discussed "how she had to pay for the birth of her child and how that affected she and her husband as far as their finances…"  (Exhibit 11, *Cooper I* Trial Transcript, Opening Statements, Vol. I at 30:12-14).

Further, as can be seen from the *Cooper I* Verdict Form, the first element of damages that was listed under the "Damages" section was "Medical Bills," which, again, were allegedly incurred as a result of the Plaintiff's insurance being cancelled without her being notified, following her wrongful termination.  (Exhibit 18, *Cooper I* Verdict Form)

## ARGUMENTS AND AUTHORITIES

### Improper Defendants

As noted above, the entities designated as Self Insurance Plan of Ambassador Personnel and Cone Financial Group as Third Party Administrator do not exist. Ambassador Personnel was responsible for funding the plan at issue.  An independent Third Party Administrator was responsible for administering the plan.  Therefore, the

15

Defendant's designated as Self Insurance Plan of Ambassador Personnel and Cone Financial Group as Third Party Administrator should be dismissed from this suit.

**Res Judicata**

As a threshold matter, the determination as to whether the Plaintiff's claims are barred by *res judicata* is based on federal common law. "We now hold that federal preclusion principles apply to prior federal decisions, whether previously decided in diversity or federal question jurisdiction." *CSX Trans., Inc. v. Brotherhood of Maintenance of Way Employees*, 327 F.3d 1309 (11th Cir. 2003).

The issue as to whether a Plaintiff's claims are barred under the doctrine of *res judicata* is a legal issue to be determined by the Court after analyzing the four applicable elements.

> Res judicata, a legal determination which we review de novo, bars relitigation of matters decided in a prior proceeding. Specifically, it will bar a subsequent action if: (1) the prior decision was rendered by a court of competent jurisdiction; (2) there was a final judgment on the merits; (3) the parties were identical in both suits; and (4) the prior and present causes of action are the same.

*Jang v. United Technologies Corp.*, 206 F.3d 1147, 1149 (11th Cir. 2000).

(1)    Court of Competent Jurisdiction

*Cooper I* was tried before a jury. Following the jury trial, Judge Thompson entered Judgment in favor of Ambassador Personnel, Inc and against Lauren Cooper. *Cooper I,*

16

therefore was decided by a court of competent jurisdiction. Accordingly, the first element is satisfied.

(2)     Final Judgment on the Merits

As noted above, _Cooper I_ was tried to conclusion before a jury and Judgment was entered according to the jury verdict. Therefore, there was a final judgment on the merits.

(3)     Identical Parties

The third element, that the same parties or their privies be present in both suits, is also satisfied. As far as the Plaintiff is concerned, Lauren Cooper, in her individual capacity, was an actual party to _Cooper I_. The only other Plaintiff is Lauren Cooper, in her capacity as the mother and next friend of BCC, who is Lauren Cooper's daughter.

The issue of privity has been addressed by the Eleventh Circuit, which has stated the following:

> Privity is defined as "a relationship between one who is a party of record and a nonparty that is sufficiently close so a judgment for or against the party should bind or protect the nonparty." Privity exists where the nonparty's interests were represented adequately by the party in the original suit. Privity also exists where a party to the original suit is "so closely aligned to a nonparty's interest as to be his virtual representative."
>
> The question of whether sufficient privity exists to warrant application of _res judicata_ is a question of law.

_N.A.A.C.P. v. Hunt_, 891 F.2d 1555, 1560-1561 (11th Cir. 1990)(Citations omitted).

17

In *Jafree v. Wallace*, 837 F.2d 1461, (11th Cir. 1988) the Eleventh Circuit affirmed the District Court's decision that the plaintiffs claims were barred by the doctrine of *res judicata.* Among the plaintiffs in *Jafree* were the wife and children of Ishmael Jafree, who was a party to the previous action. However, the wife and children were not parties to the original action, and therefore argued that they were not barred from litigating the issues before the court. The Eleventh Circuit held that the trial court's decision finding that the wife and children were in privity with Ishmael Jafree was not clearly erroneous, noting that:

> Although a familial relationship need not, in and of itself, confer privity status, it does constitute an important factor when assessing the preclusive effects of a prior adjudication.

*Jafree*, 837 F.2d at 1467.

In the matter at hand, there is no doubt but that BCC is in privity with Lauren Cooper. In addition the authority of *Jafree*, the fact that BCC's claims are actually brought on her behalf by her mother further strengthens the fact that BCC's interests are protected. In addition, as noted in the Amended Complaint, BCC was born on January 13, 2005, and is therefore barely three years old.  (Exhibit 3, *Cooper II* Amended Complaint at ¶5). Obviously, at that age, BCC is not capable of representing herself, and who better to look out for her interests than her own mother?

The issue of privity must also be addressed with respect to the proper Defendants-Ambassador Personnel, Inc., and Kenneth Cone.  In addition to holding that a familial relationship is sufficient to satisfy the privity requirement, the Eleventh Circuit has also held that the principal-agent/employer-employee relationship is sufficient to create privity.  In deciding that privity existed between a bank and its directors, the Eleventh Circuit noted that-

> Most other federal circuits have concluded that employer-employee or principal-agent relationships may ground a claim preclusion defense, regardless which party to the relationship was first sued.

*Citibank, N.A. v. Data Lease Financial Corp.*, 904 F.2d 1498, 1502 (11th Cir. 1990).  *See also Thompson v. SouthTrust Bank*, 961 So.2d 876 (Ala.Civ.App. 2007)(Bank employee found to be in privity with bank based on that relationship).[5]

Kenneth Cone is the CEO of Ambassador Personnel and testified and was cross-examined in *Cooper I*.  (Exhibit 14, *Cooper I* Trial Transcript, Ken Cone Testimony, Vol. II at 217:21 – 218:5, 223:24-25).  Given the Eleventh Circuit's holding in *Citibank*, these relationships are sufficient for there to be privity among these defendants.

---

[5] As noted above, federal common law serves as the basis for the determination of whether *res judicata* applies. However, Alabama common law and federal common law are identical in regards to the elements that must be proven to establish *res judicata*.  *See  Hrabe v. Paul Revere Life Ins. Co.*, 76 F.Supp.2d 1297, FN2 (M.D.Ala. 1999)(Court's decision concerning application of *res judicata* would be the same under Alabama law or federal law, because Alabama law and federal law have the same elements.)

19

(4)    Same Cause of Action

The final element to be addressed is whether the "same cause of action is present in both suits." It is well settled that *res judicata* bars a plaintiff from litigating any claims that were brought in a previous suit, as well as any claims that ***could have been brought*** in the previous suit, but, for whatever reason, were not. "*Res judicata* applies not only to issues actually decided, but also to all claims that could have been raised but were not." *Hrabe v. Paul Revere Life Ins. Co.*, 76 F.Supp.2d 1297,1301 (M.D.Ala. 1999), *citing Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990).

The *Citibank* decision relied upon by Judge DeMent in the *Hrabe* decision provides additional guidelines on how to determine whether causes of action are the same.

> "The principal test for determining whether the causes of action are the same is ***whether the primary right and duty are the same*** in each case. In determining whether the causes of action are the same, a court must compare the substance of the actions, not their form." In other words, a court "must ***look to the factual issues to be resolved [in the second cause of action], and compare them with the issues explored in***" the first cause ***of action***. "It is now said, in general, that if a case arises out of the ***same nucleus of operative fact***, or is based upon the ***same factual predicate***, as a former action, that the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."

*Citibank*, 904 F.2d at 1503. (Citations omitted)(Emphasis added).

20

In reviewing *Citibank* and other Eleventh Circuit cases, it is clear that the general test used to determine whether the same cause of action is presented is "whether the primary right and duty are the same in each case." *See also N.A.A.C.P. v. Hunt*, 891 F.2d at 1561 ("This Circuit has recognized that 'the principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action.'")(Citations omitted); *Jaffree*, 837 F.2d at 1468 ("The principal test for comparing causes of action is whether the primary right and duty or wrong are the same in each action.")(Citations omitted); *Morris v. Bert Bell/Pete Rozelle NFL Player Retirement Plan*, 208 Fed.Appx. 742, 743 (11th Cir. 2006)[6] ("The principal test for determining whether the causes of action are the same is whether, in comparing the substance of the actions, the primary right and duty are the same in each case.")(Citations omitted).

It is equally well settled that two separate cases will be found to state the "same claim" where they "arise out of the same nucleus of operative fact" or are "based upon the same factual predicate." *See N.A.A.C.P. V. Hunt*, 891 F.2d 1561 ("*Res judicata* applies not only to the precise legal theory presented in the prior cases, but to all legal theories and claims arising out of the same nucleus of operative fact.")(Citations omitted); *Jafree*, 837

---

[6] *Morris* is an unpublished opinion. As is noted under Rule 36-2 of the Eleventh Circuit Rules and Internal Operating Procedures, found within the *Federal Rules of Appellate Procedure*, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." A copy of the *Morris* decision is attached hereto as Exhibit 19.

F.2d at 1468 ("*Res judicata,* or "claim preclusion," "extends not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same 'operative nucleus of fact.'")(Citations omitted); *Morris*, 208 Fed.Appx. at 743 ("In general, if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate as a former action, the two cases are really the same claim or cause of action for purposes of *res judicata*.")(Citations omitted).

The Eleventh Circuit has recently addressed a case that is directly on point with the facts before this Court in *Morris v. Bert Bell/Pete Rozelle NFL Player Retirement Plan,* 208 Fed.Appx. 742 (11th Cir. 2006). *Morris* involved a claim brought against the defendants under ERISA for retirement benefits. The plaintiff had previously settled and released any claim he had for those benefits in 1991. In 1996 the plaintiff litigated the issue of whether he was entitled to benefits. The 1996 action did not state a claim under ERISA. The plaintiff then brought the suit that was addressed by the Eleventh Circuit. The sole issue before the Court was "whether the same cause of action in this case was raised in the 1996 action." *Morris,* 208 Fed.Appx. at 743. In holding that the same cause of action existed, the Court stated as follows:

> We conclude that the district court did not err in determining that *res judicata* barred Morris's instant complaint. ***Both cases involve Morris's claim that he should receive higher monthly retirement benefits pursuant to Article 5.4 of the Retirement Plan.*** The type of benefits sought in this case were not excepted from Morris's 1991 settlement. Furthermore, ***regardless of the***

> *fact that Morris now cites to ERISA* and irrespective of
> Morris's present age, *this suit is based on the same nucleus of*
> *operative fact as the 1996 action. The primary right and duty*
> *are the same in each case, as although Morris alleges ERISA*
> *violations, he only seeks relief under the Retirement Plan.*
> Under our precedent, res judicata applies.

*Morris,* 208 Fed.Appx. at 744 (Emphasis added).

As can be seen from the quoted language above, the focus is directed to the

"primary right and duty" at issue in each case, and the fact that the second suit sought

recovery under ERISA, while the first did not, was not relevant to that determination. *Res*

*judicata* was applicable because under both suits, the plaintiff sought to recover under the

applicable retirement plan.   Therefore the "rights and duties" were the same, and the

claims brought in the second suit were barred.

*Hrabe v. Paul Revere Life Ins. Co.,* 76 F.Supp.2d 1297 (M.D.Ala. 1999) also dealt with

the application of *res judicata* to the plaintiff's claims brought under ERISA.  The plaintiff

was denied disability benefits by the defendant, resulting in an initial lawsuit against the

defendant for breach of contract and bad faith failure to pay.  Following the District Court's

dismissal of the original suit on the grounds that those claims were preempted by ERISA,

the plaintiff filed suit under ERISA, again alleging that the defendant improperly denied

the plaintiff benefits due under the insurance policy.  Judge DeMent granted the Motion for

Summary Judgment filed by the defendant, holding that the plaintiff's claims were barred

under *res judicata.*

> [R]es judicata applies not only to issues actually decided, but
> also to all claims that could have been raised but were not.
>
> …
>
> Here, there is no dispute that Plaintiff's ERISA claims against
> Defendant arise from the exact same facts as in *Hrabe I.* Because
> the facts are identical in both lawsuits, Plaintiff cannot divide
> her claims in two separate actions. For the following reasons,
> the court finds that Plaintiff was required to litigate all her
> claims in *Hrabe I* and cannot now have a "second bite at the
> apple."
>
> …
>
> "[O]ne who has a choice of more than one remedy for a given
> wrong … may not assert them serially, in successive actions,
> but must advance all at once on pain of bar."
>
> …
>
> Here, the court finds that in *Hrabe I* nothing prohibited Plaintiff
> from bringing her ERISA claims in that action. For example,
> Plaintiff could have pleaded an alternative theory of recovery
> under ERISA.
>
> …
>
> For the foregoing reasons, the court finds that *Hrabe I* was a
> final adjudication on the merits as to Plaintiff's ERISA claims
> now asserted.

*Hrabe*, 76 F.Supp.2d at 1301,1302, 1303, 1304 (Citations omitted).

In the matter at hand, the Plaintiff has already had her day in court. During *Cooper I*,

she presented evidence that her insurance was cancelled and that she was not notified. She

testified and presented documentary evidence supporting her claim that she was forced to

incur over $5,000 in medical bills in connection with the delivery of her child. The jury

heard this evidence, deliberated, and then returned a verdict in favor of the Defendant and

against the Plaintiff.

24

The most significant piece of evidence showing that these issues were presented in _Cooper I_ is the Jury Verdict Form, which lists "Medical Bills" under the "Damages" section. Under the facts of _Cooper II_, the jury would have to determine the following in favor of the plaintiff in order to come to the conclusion that she was entitled to be reimbursed for medical expenses:

1)    She was wrongfully terminated;

2)    Her insurance plan was wrongfully cancelled or she was not given proper notice of the changing of the plan; and

3)    That she suffered some damage as a result of the wrongful cancellation or failure to provide proper notice.

There simply is no way the Plaintiff could recover the medical bills listed on the jurt verdict form absent a showing of the facts set forth in numbers 2 and 3 above. Obviously, the issues presented in _Cooper II_ are precisely those set forth in number 2 and 3 above, meaning the exact issues in this case were presented in _Cooper I_.

This was pointed out by the Defendant during a hearing on the Motions in Limine. (Exhibit 10, _Cooper I_ Trial Transcript, Oral Arguments re: Motions in Limine, Vol. I at 16:14 – 17:21).   In response, the Plaintiff did, in fact, present evidence that she contended supported her position that the cancellation was improper and/or notification was not given. That evidence is the precise evidence that the Plaintiff must present in _Cooper II_. For that reason, the Plaintiff has already been given the opportunity to recover damages that

she allegedly incurred when the Defendant improperly cancelled her insurance plan and/or failed to provide proper notice. She may not do so again.

As noted above, the fact that the formal cause of action stated in _Cooper I_ was under Title VII and the fact that the formal cause of action presented in this case is under ERISA is of no consequence. The "duty and right" at issue in both _Cooper I_ and _Cooper II_ are the same. Namely, whether the Plaintiff may recover under the health insurance plan, whether the health plan was improperly cancelled, whether the Plaintiff was properly notified that the health plan had changed and whether the plaintiff is entitled to recover damages arising out of these alleged wrongs. The Defendant acknowledges that additional "duties and rights" were at issue in _Cooper I_, but that does not change the fact that the precise "duties and rights" at issue in _Cooper II_ were at issue in _Cooper I_. This is exactly what was at issue in _Morris_ and _Hrabe_.

Along these same lines, the same factual predicate and operative nucleus of facts that the Plaintiff must rely upon in the instant action were presented in _Cooper I_. These facts relate to the plaintiff's termination, the alleged cancellation without notification and the resulting damages.

Thus, even if this Court were to assume that the claims presented by the Plaintiff in _Cooper II_ were not presented in _Cooper I_, the claims presented in the matter at hand are still barred, because they could have been presented in _Cooper I_. The rights and duties were the

same. The same nucleus of operative facts are present in both suits. Therefore, based on the authority cited above, the claims are barred by the doctrine of *res judicata*.

Finally, a comparison of the Plaintiff's own characterization of the issues presented in *Cooper I* and the Plaintiff's own characterization of the issues presented in *Cooper II* demonstrates the fact that the Plaintiff is attempting to relitigate matters that have already been addressed or could have been addressed. The *Cooper I* Damage Pleading filed by the Plaintiff states in pertinent part as follows:

> Plaintiff's COBRA insurance was cancelled on January 1, 2005, after she was terminated. Plaintiff had elected to continue her insurance benefits, but defendant arbitrarily cancelled Plaintiff's COBRA benefits even though Plaintiff was paying the COBRA premium. However, Plaintiff was not informed of the cancellation until February 11, 2005. As such, Plaintiff received a $5,000 hospital bill in relation to her pregnancy and was without health insurance.

The Plaintiff's Synopsis of the Case, as presented in the Report of Planning Meeting provided to this Court in *Cooper II* states as follows:

> Lauren Cooper became employed with Ambassador Personnel on June 6, 2002, and progressed through the company until she was a manager of the Opelika office of Ambassador Personnel in March of 2003. Cooper was subsequently terminated but elected to continue her health insurance benefits. As a result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then unborn child were participants in or qualified beneficiaries of the Cone Financial Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§1167(2) and (3)(B). Plaintiff's benefits were cancelled without notice to her and despite Cooper paying for continuation of her health

27

> insurance benefits. At all times relevant to this action, Kenneth
> Cone and the Cone Financial Group Plan was an employee
> welfare benefit plan as the term is defined by ERISA, 29 U.S.C.
> § 1002(1). Lauren Cooper brings this action to redress the legal
> and equitable wrongs she and her child suffered when
> Defendant, Ambassador Personnel, retaliated against her for
> filing a charge of discrimination and cancelled her health
> insurance in violation of the Consolidated Omnibus Budget
> Reconciliation Act of 1986, 29 U.S.C. §1161 *et seq.*, ("COBRA")
> and the Employment Retirement Income Security Act of 1974,
> 29 U.S.C.§1001, *et seq.*, (ERISA) causing them to lose medical
> coverage and incur unreimbursed medical expenses.

For the Plaintiff to attempt to now claim that the "same cause of action" element is

not met would contrary to her own characterization of the issues presented in *Cooper I* and

*Cooper II*.


## CONCLUSION

The proper defendants to this matter are entitled to Judgment as a Matter of Law, as

the Plaintiff's claims are barred by the doctrine of *res judicata*. The exact same issues

brought in this suit were brought in *Cooper I*. The only difference is that the Plaintiff has

couched the claims in terms of ERISA in the present matter and the claims were couched in

terms of Title VII in *Cooper I*. The same parties, or their privies, litigated *Cooper I* before a

jury, which returned a verdict in favor of Ambassador Personnel. Judge Thompson

entered Judgment consistent with that verdict. Given these facts, and the case law cited

above, the Plaintiff has had her day in court and the Defendants should not be forced to

relitigate issues that have already been determined or that should have been brought in

*Cooper I.*

WHEREFORE, premises considered, Defendants respectfully request this court enter

an order granting their Motion for Summary Judgment as there are no genuine issues of

material fact and these defendants are entitled to judgment as a matter of law.


/s/Emily C. Marks
EMILY C. MARKS



/s/W. Evans Brittain
W. EVANS BRITTAIN

CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

Cavender C. (Chris) Kimble
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, Alabama 35203-2014

> /s/W. Evans Brittain
> OF COUNSEL

Cc:    Hon. Mark E. Fuller
       United States District Court
       Middle District of Alabama

EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN COOPER, individually<br>and as next friend of her child,<br>B█████ C█████████<br>C██████, | )<br>)<br>)<br>)<br>) | |
| Plaintiffs, | ) | |
| v. | )<br>) | CIVIL ACTION NO.<br>3:07CV615-F |
| AMBASSADOR PERSONNEL, INC.,<br>BLUE CROSS AND BLUE SHIELD<br>OF GEORGIA, SELF INSURANCE<br>PLAN OF AMBASSADOR<br>PERSONNEL AND CONE FINANCIAL<br>GROUP AS THIRD PARTY<br>ADMINISTRATOR, | )<br>)<br>)<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    The plaintiff, Lauren Cooper, a former employee of Ambassador

Personnel, brings this action to redress the legal and equitable wrongs she suffered

when Defendant, Ambassador Personnel retaliated against her for filing a charge

of discrimination and cancelled her health insurance in violation of the

Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et*

*seq.*, ("COBRA") and the Employee Retirement Income Security Act of 1974, 29

U.S.C. § 1001, *et seq.* (ERISA) causing them to lose medical coverage and incur

unreimbursed medical expenses.

2.      Plaintiff, Lauren Cooper, individually and as next friend of her child,

also bring this action to redress the legal and equitable wrong she and her child

suffered when Defendant cancelled their medical insurance coverage in violation

and as required under the Consolidated Omnibus Budget Reconciliation Act of

1986, 29 U.S.C. § 1161 *et seq.*, ("COBRA") and the Employee Retirement Income

Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA) causing them to lose

medical coverage and incur unreimbursed medical expenses.

## II.    JURISDICTION AND VENUE

3.      This action arises under COBRA and ERISA for denial of

information and for denial of benefits.

4.      Jurisdiction over plaintiff's claims is conferred on this Court pursuant

to 29 U.S.C. § 1132, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and 28 U.S.C. §§

2201 and 2202.

## III.   PARTIES

5.      Plaintiff, Lauren Cooper, [hereinafter "Plaintiff"], is a female

and a resident citizen of Chambers County, Alabama.  Plaintiff was previously

2

employed by Defendant and resided in Chambers County, Alabama when the actions of which she complains took place and voluntarily avails herself of the jurisdiction of this Court. Plaintiff, B████C████ C███, is the minor child of Lauren Cooper (born January 13, 2005), and brings this action by and through Lauren Cooper as parent and next friend.

6. Defendant, Ambassador Personnel [hereafter, "Defendant"] is a corporation existing pursuant to and by virtue of the Constitution and Laws of the State of Georgia. Ambassador Personnel is a subsidiary wholly owned by Kenneth Cone and Cone Financial Corporation, a corporation existing pursuant to and by virtue of the Constitution and Laws of the State of Georgia and doing business in the State of Alabama. Kenneth Cone is a Georgia resident and the owner of Cone Financial Group and a plan sponsor and fiduciary. Kenneth Cone had fiduciary obligations to the Plaintiff to administer the plan so as not to injure the Plaintiff. Blue Cross and Blue Shield of Georgia is a Georgia corporation doing business as an insurance company in the State of Alabama. At all times relevant, Defendant was qualified to do business within Chambers County, Alabama and is subject to the jurisdiction of this Court.

## IV. STATEMENT OF FACTS

7. Plaintiff, Lauren Cooper, became employed with Ambassador

3

Personnel on June 6, 2002, and progressed through the company until she was a manager of the Opelika office of Ambassador Personnel in March 2003. As a result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then unborn child were participants in or qualified beneficiaries of the Cone Financial Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§ 1167(2) and (3)(B). At all times relevant to this action, Kenneth Cone and The Cone Financial Group Plan was an employee welfare benefit plan as the term is defined by ERISA, 29 U.S.C. § 1002(1).

8.      At all times relevant to this action Defendants, Kenneth Cone and Cone Financial Group, were the plan sponsors of the health insurance plan, knew that Plaintiff had elected to continue her health insurance and with this knowledge the defendants and their agents had an obligation to keep the Plaintiff informed of any changes to said plan.

9.      Some or all of the defendants, Kenneth Cone, Cone Financial Group, Ambassador Personnel or Blue Cross and Blue Shield of Georgia were the plan administrators of the Cone Financial Group Health Insurance Plan and administered benefit claims by the participants and beneficiaries under this plan and otherwise had fiduciary duties under COBRA and ERISA toward plan participants and beneficiaries.

4

10.    In or around June 30, 2004, Plaintiff announced she was pregnant and expecting her first child.

11.    On or about September 10, 2004, Defendant terminated the Plaintiff based on her gender, specifically her pregnancy.

12.    In September 2004, Plaintiff completed the necessary paperwork to continue her health insurance plan for her and her unborn child pursuant to COBRA and ERISA.

13.    Plaintiff thereafter paid all the necessary monthly premiums to continue the health insurance benefits for her and her unborn child.

14.    In or about December 2004 or January 2005, Defendant without notice or provocation cancelled Plaintiff's insurance plan despite Plaintiff having made all the payments in a timely fashion.  At that time, Lauren Cooper reasonably relied on the insurance coverage under the Cone Financial Health Insurance Plan based on:  her prior medical bills having been paid by the plan and the hospital having been pre-certified with the plan's insurance company for the delivery and birth of plaintiff's child.

15.    Shortly before the birth of her child, Plaintiff learned for the first time that her insurance plan had been terminated and she was no longer entitled to health insurance benefits under the Cone Financial Group Insurance plan.

5

16.    Under COBRA, 29 U.S.C. § 1166, some or all of the defendants were obligated to provide Lauren Cooper and her unborn child with notice within the time set forth by the statute that her rights to a continuation of coverage under that statute had been terminated.

17.    Notwithstanding these duties imposed by COBRA, Defendant's failed to give Lauren Cooper and her unborn child the required COBRA notice. Plaintiff found out on her own after she had already paid her premiums and incurred medical bills that her health insurance had been unilaterally cancelled by Defendant.

18.    Defendant failed to comply with the statutory requirements in continuing the Plaintiff's coverage and failed to inform the Plaintiff of the cancellation of said COBRA coverage so as not to prevent harm and injury to the Plaintiff.

19.    As a proximate result of the facts, Plaintiff and her unborn child have been uninsured and Plaintiff has been personally liable for substantial medical bills for the delivery and birth of her child which should have been covered by the Cone Financial Group Insurance Plan.

20.    As a proximate result of the above facts, Lauren Cooper is currently on payment plans for the medical bills for the birth and delivery of her child for

6

which demand has been made to the defendant and refused.

21.    As a proximate result of the above facts, Lauren Cooper's credit has been severely damaged and the payment of the bills has caused a severe financial problem for Ms. Cooper.

22.    As a proximate result of the facts above, Ms. Cooper was unable to convert what would have been her COBRA coverage to individual coverage so that her pregnancy would not have been treated as a preexisting condition for purposes of any other medical insurance that she would otherwise have been able to obtain.

23.    Plaintiff, Lauren Cooper, has been forced to retain an attorney to represent her in this matter.

24.    Plaintiff has served by certified mail copies of this complaint on the Secretary of Treasury and the Secretary of Labor in accordance with 29 U.S.C. § 1132(h).

25.    Plaintiff has satisfied all conditions precedent and exhausted all administrative remedies known to her in bringing these claims.

## COUNT ONE

## COBRA AND ERISA VIOLATIONS

26.    Plaintiff adopts paragraphs 1-25, above, as if set out in full herein.

7

There existed an employer-employee relationship between Plaintiff and Defendant.

27.    Defendants are liable to Lauren Cooper for an amount calculated pursuant to ERISA, § 502(c)(1) on a daily basis from the date they should have provided COBRA notice to her to the date, if any, that they cancelled her COBRA notice.

28.    Defendant was Plaintiff's employer and a plan sponsor of a group health insurance plan and employed more than 20 employees at all relevant times.

29.    Plaintiff participated in Defendant's group health insurance plan.

30.    Upon Plaintiff's termination, Plaintiff made known her intent to exercise her rights pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA) 29 U.S.C. § 1162 et seq.

31.    Plaintiff was pregnant at the time of her termination and sought to continue her insurance benefits to protect the health of her unborn child and herself.

32.    Plaintiff dutifully made all payments to insure her health benefits to the provider as required.

33.    The Defendant cancelled Plaintiff's insurance with said provider and gave no notice to Plaintiff of the cancellation despite Plaintiff's payments to said

8

insurance provider.

34.    As a result of Defendant's unlawful actions, Plaintiff was caused to be without insurance and subsequent treatment for the delivery of Plaintiff's child was unpaid by the insurance provider.

35.    Plaintiff's termination from employment was not for gross misconduct but rather it was because of discrimination due to her pregnancy as found by a jury in the case of Cooper v. Ambassador Personnel, CV-00138-MHT-DRB.

36.    As a result of defendants' wrongful actions in cancelling her insurance coverage, Plaintiff was caused to pay the health provider for the medical services provided to Plaintiff and her child that should have been paid by the insurance company.

37.    Defendant failed to give proper written notice to Plaintiff of her COBRA rights and the cancellation of her insurance coverage.

38.    Plaintiff seeks legal penalties, costs and taxes up to the maximum allowed by law, including, but not limited to, prejudgement interest, attorney fees, costs and any and all such other relief this Court or the trier of fact may assess.

WHEREFORE, Plaintiff, Lauren Cooper, prays for judgment in her favor and against Defendants:

9

(a)    for a daily amount calculated pursuant to ERISA, § 502(c)(1) [29 U.S.C. § 1132(c)(1)] for the date Defendants failed to provide COBRA notice to that date allowed by the statute.

(b)    for a daily amount calculated pursuant to ERISA, § 502(c)(1) [29 U.S.C. § 1132(c)(1)] from the date Defendants failed to provide the requested ERISA documents.

(c)    for payment of Plaintiff's medical bills in accordance with the benefits provisions of the Cone Financial Group health insurance plan.

(d)    for restoration to covered status under the Cone Financial Group health insurance plan for the remainder of the applicable COBRA continuation period including the right to purchase individual conversion coverage to the end of the applicable COBRA continuation period.

(e)    for reasonable attorney fees and costs of this action, for such other legal and equitable relief as this court deems just and necessary.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY

39.    Plaintiff adopts paragraphs 1-37, above, as if set out in full herein.

10

There existed an employer-employee relationship between Plaintiff and Defendant that was severed by the employer. Plaintiff elected to continue her health insurance as provided by law.

40.    Defendants breached their fiduciary duty to Lauren Cooper by failing to timely and accurately notify her of her right to continue COBRA continuation coverage under a different plan and to timely notify Lauren Cooper of the cancellation of her previous COBRA plan.

41.    Defendants are liable to Lauren Cooper pursuant to 29 U.S.C. §§ 1132(c)(1) and 1132(g)(1) for reasonable attorney fees and costs.

WHEREFORE, Plaintiff, Lauren Cooper, prays for judgment in her favor and against Defendants:

(a)    for payment by Defendants of medical bills in accordance with the benefit provisions of the Cone Financial Group Health Insurance Plan;

(b)    for restoration to covered status under the Cone Financial Group Health Insurance Plan for the remainder of the applicable COBRA continuation period(s) including the right to purchase individual conversion coverage at the end of the applicable COBRA continuation period(s);

11

(c)    for the reasonable attorney's fees and costs of this action;

(d)    for such other legal and equitable relief as this Court deems just and appropriate.

Respectfully submitted,

Alicia K. Haynes
Alabama State Bar No.: 8327-E23A
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

### PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:

**DEFENDANT'S ADDRESS:**

Ambassador Personnel, Inc.
P.O. Box 2057
Thomasville, Georgia  31799

Blue Cross Blue Shield of Georgia
3350 Peachtree Road NE
Atlanta, GA  30326

Self Insurance Plan of Ambassador Personnel
P.O. Box 2057
Thomasville, Georgia  31799

Cone Financial Group as Third Party Administrator
P.O. Box 2057
Thomasville, Georgia  31799

**PLAINTIFF'S ADDRESS:**

Ms. Lauren Cooper
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER, individually )
and as next friend of her child, )
B.C.C., )
)
)
Plaintiffs, )
)
v. )                    CIVIL ACTION NO.
)                    3:07-cv-615-MEF
AMBASSADOR PERSONNEL, INC., )
BLUE CROSS AND BLUE SHIELD )
OF GEORGIA, SELF INSURANCE )
PLAN OF AMBASSADOR )
PERSONNEL, CONE FINANCIAL )
GROUP AS THIRD PARTY )
ADMINISTRATOR, and KENNETH )
CONE, individually, )
)
Defendants. )

## FIRST AMENDED COMPLAINT

## I.    PRELIMINARY STATEMENT

1.    The plaintiff, Lauren Cooper, a former employee of Ambassador

Personnel, brings this action to redress the legal and equitable wrongs she suffered

when Defendant, Ambassador Personnel retaliated against her for filing a charge of

discrimination and cancelled her health insurance in violation of the Consolidated

Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et*

*seq.*, ("COBRA") and the Employee Retirement Income Security Act of 1974, 29
U.S.C. § 1001, *et seq.* (ERISA) causing them to lose medical coverage and incur
unreimbursed medical expenses.

2.    Plaintiff, Lauren Cooper, individually and as next friend of her child,
also bring this action to redress the legal and equitable wrong she and her child
suffered when Defendant cancelled their medical insurance coverage in violation
and as required under the Consolidated Omnibus Budget Reconciliation Act of
1986, 29 U.S.C. § 1161 *et seq.*, ("COBRA") and the Employee Retirement Income
Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA) causing them to lose
medical coverage and incur unreimbursed medical expenses.

## II.    JURISDICTION AND VENUE

3.    This action arises under COBRA and ERISA for denial of information
and for denial of benefits.

4.    Jurisdiction over plaintiff's claims is conferred on this Court pursuant
to 29 U.S.C. § 1132, 28 U.S.C. § 1331 and 28 U.S.C. § 1343 and 28 U.S.C. §§
2201 and 2202.

## III.    PARTIES

5.    Plaintiff, Lauren Cooper, [hereinafter "Plaintiff"], is a female
and a resident citizen of Chambers County, Alabama.  Plaintiff was previously

2

employed by Defendant and resided in Chambers County, Alabama when the actions of which she complains took place and voluntarily avails herself of the jurisdiction of this Court. Plaintiff, B.C.C., is the minor child of Lauren Cooper (born January 13, 2005), and brings this action by and through Lauren Cooper as parent and next friend.

6.    Defendant, Ambassador Personnel is a corporation existing pursuant to and by virtue of the Constitution and Laws of the State of Georgia. Ambassador Personnel is a subsidiary wholly owned by Kenneth Cone and Cone Financial Corporation.

7.    Cone Financial Group is a corporation existing pursuant to and by virtue of the Constitution and Laws of the State of Georgia and doing business in the State of Alabama.

8.    Blue Cross and Blue Shield of Georgia is a Georgia corporation doing business as an insurance company in the State of Alabama. At all times relevant, Defendant was qualified to do business within Chambers County, Alabama and is subject to the jurisdiction of this Court.

9.    Kenneth Cone is a Georgia resident and the owner of Cone Financial Group and a plan sponsor and fiduciary. Kenneth Cone had fiduciary obligations to the Plaintiff to administer the plan so as not to injure the Plaintiff.

3

## IV.   STATEMENT OF FACTS

10.   Plaintiff, Lauren Cooper, became employed with Ambassador
Personnel on June 6, 2002, and progressed through the company until she was a
manager of the Opelika office of Ambassador Personnel in March 2003.  As a
result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then
unborn child were participants in or qualified beneficiaries of the Cone Financial
Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§
1167(2) and (3)(B).  At all times relevant to this action, Kenneth Cone and The
Cone Financial Group Plan was an employee welfare benefit plan as the term is
defined by ERISA, 29 U.S.C. § 1002(1).

11.   At all times relevant to this action Defendants, Kenneth Cone and
Cone Financial Group, were the plan sponsors of the health insurance plan, knew
that Plaintiff had elected to continue her health insurance and with this knowledge
the defendants and their agents had an obligation to keep the Plaintiff informed of
any changes to said plan.

12.   Some or all of the defendants, Kenneth Cone, Cone Financial Group,
Ambassador Personnel or Blue Cross and Blue Shield of Georgia were the plan
administrators of the Cone Financial Group Health Insurance Plan and
administered benefit claims by the participants and beneficiaries under this plan

4

and otherwise had fiduciary duties under COBRA and ERISA toward plan participants and beneficiaries.

13. In or around June 30, 2004, Plaintiff announced she was pregnant and expecting her first child.

14. On or about September 10, 2004, Defendant terminated the Plaintiff based on her gender, specifically her pregnancy.

15. In September 2004, Plaintiff completed the necessary paperwork to continue her health insurance plan for her and her unborn child pursuant to COBRA and ERISA.

16. Plaintiff thereafter paid all the necessary monthly premiums to continue the health insurance benefits for her and her unborn child.

17. In or about December 2004 or January 2005, Defendant without notice or provocation cancelled Plaintiff's insurance plan despite Plaintiff having made all the payments in a timely fashion. At that time, Lauren Cooper reasonably relied on the insurance coverage under the Cone Financial Health Insurance Plan based on: her prior medical bills having been paid by the plan and the hospital having been pre-certified with the plan's insurance company for the delivery and birth of plaintiff's child.

18. Shortly before the birth of her child, Plaintiff learned for the first time

5

that her insurance plan had been terminated and she was no longer entitled to health insurance benefits under the Cone Financial Group Insurance plan.

19.    Under COBRA, 29 U.S.C. § 1166, some or all of the defendants were obligated to provide Lauren Cooper and her unborn child with notice within the time set forth by the statute that her rights to a continuation of coverage under that statute had been terminated.

20.    Notwithstanding these duties imposed by COBRA, Defendant's failed to give Lauren Cooper and her unborn child the required COBRA notice. Plaintiff found out on her own after she had already paid her premiums and incurred medical bills that her health insurance had been unilaterally cancelled by Defendant.

21.    Defendant failed to comply with the statutory requirements in continuing the Plaintiff's coverage and failed to inform the Plaintiff of the cancellation of said COBRA coverage so as not to prevent harm and injury to the Plaintiff.

22.    As a proximate result of the facts, Plaintiff and her unborn child have been uninsured and Plaintiff has been personally liable for substantial medical bills for the delivery and birth of her child which should have been covered by the Cone Financial Group Insurance Plan.

23.    As a proximate result of the above facts, Lauren Cooper is currently on payment plans for the medical bills for the birth and delivery of her child for which demand has been made to the defendant and refused.

24.    As a proximate result of the above facts, Lauren Cooper's credit has been severely damaged and the payment of the bills has caused a severe financial problem for Ms. Cooper.

25.    As a proximate result of the facts above, Ms. Cooper was unable to convert what would have been her COBRA coverage to individual coverage so that her pregnancy would not have been treated as a preexisting condition for purposes of any other medical insurance that she would otherwise have been able to obtain.

26.    Plaintiff, Lauren Cooper, has been forced to retain an attorney to represent her in this matter.

27.    Plaintiff has served by certified mail copies of this complaint on the Secretary of Treasury and the Secretary of Labor in accordance with 29 U.S.C. § 1132(h).

28.    Plaintiff has satisfied all conditions precedent and exhausted all administrative remedies known to her in bringing these claims.

7

## COUNT ONE

## COBRA AND ERISA VIOLATIONS

29.     Plaintiff adopts paragraphs 1-28, above, as if set out in full herein. There existed an employer-employee relationship between Plaintiff and Defendant.

30.     Defendants are liable to Lauren Cooper for an amount calculated pursuant to ERISA, § 502(c)(1) on a daily basis from the date they should have provided COBRA notice to her to the date, if any, that they cancelled her COBRA notice.

31.     Defendant was Plaintiff's employer and a plan sponsor of a group health insurance plan and employed more than 20 employees at all relevant times.

32.     Plaintiff participated in Defendant's group health insurance plan.

33.     Upon Plaintiff's termination, Plaintiff made known her intent to exercise her rights pursuant to the Consolidated Omnibus Budget Reconciliation Act (COBRA) 29 U.S.C. § 1162 et seq.

34.     Plaintiff was pregnant at the time of her termination and sought to continue her insurance benefits to protect the health of her unborn child and herself.

35.     Plaintiff dutifully made all payments to insure her health benefits to the provider as required.

8

36. The Defendant cancelled Plaintiff's insurance with said provider and gave no notice to Plaintiff of the cancellation despite Plaintiff's payments to said insurance provider.

37. As a result of Defendant's unlawful actions, Plaintiff was caused to be without insurance and subsequent treatment for the delivery of Plaintiff's child was unpaid by the insurance provider.

38. Plaintiff's termination from employment was not for gross misconduct but rather it was because of discrimination due to her pregnancy as found by a jury in the case of Cooper v. Ambassador Personnel, CV-00138-MHT-DRB.

39. As a result of defendants' wrongful actions in cancelling her insurance coverage, Plaintiff was caused to pay the health provider for the medical services provided to Plaintiff and her child that should have been paid by the insurance company.

40. Defendant failed to give proper written notice to Plaintiff of her COBRA rights and the cancellation of her insurance coverage.

41. Plaintiff seeks legal penalties, costs and taxes up to the maximum allowed by law, including, but not limited to, prejudgement interest, attorney fees, costs and any and all such other relief this Court or the trier of fact may assess.

WHEREFORE, Plaintiff, Lauren Cooper, prays for judgment in her favor

9

and against Defendants:

(a)    for a daily amount calculated pursuant to ERISA, § 502(c)(1) [29 U.S.C. § 1132(c)(1)] for the date Defendants failed to provide COBRA notice to that date allowed by the statute.

(b)    for a daily amount calculated pursuant to ERISA, § 502(c)(1) [29 U.S.C. § 1132(c)(1)] from the date Defendants failed to provide the requested ERISA documents.

(c)    for payment of Plaintiff's medical bills in accordance with the benefits provisions of the Cone Financial Group health insurance plan.

(d)    for restoration to covered status under the Cone Financial Group health insurance plan for the remainder of the applicable COBRA continuation period including the right to purchase individual conversion coverage to the end of the applicable COBRA continuation period.

(e)    for reasonable attorney fees and costs of this action, for such other legal and equitable relief as this court deems just and necessary.

## COUNT TWO

## BREACH OF FIDUCIARY DUTY

42.    Plaintiff adopts paragraphs 1-41, above, as if set out in full herein.

10

There existed an employer-employee relationship between Plaintiff and Defendant that was severed by the employer. Plaintiff elected to continue her health insurance as provided by law.

43.    Defendants breached their fiduciary duty to Lauren Cooper by failing to timely and accurately notify her of her right to continue COBRA continuation coverage under a different plan and to timely notify Lauren Cooper of the cancellation of her previous COBRA plan.

44.    Defendants are liable to Lauren Cooper pursuant to 29 U.S.C. §§ 1132(c)(1) and 1132(g)(1) for reasonable attorney fees and costs.

WHEREFORE, Plaintiff, Lauren Cooper, prays for judgment in her favor and against Defendants:

(a)    for payment by Defendants of medical bills in accordance with the benefit provisions of the Cone Financial Group Health Insurance Plan;

(b)    for restoration to covered status under the Cone Financial Group Health Insurance Plan for the remainder of the applicable COBRA continuation period(s) including the right to purchase individual conversion coverage at the end of the applicable COBRA continuation period(s);

(c)    for the reasonable attorney's fees and costs of this action;

11

(d)    for such other legal and equitable relief as this Court deems just and

appropriate.

Respectfully submitted,

/s/ Alicia K. Haynes
Alicia K. Haynes
Alabama State Bar No.: 8327-E23A
Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

**PLEASE SERVE DEFENDANT KENNETH CONE BY CERTIFIED MAIL:**

**DEFENDANT'S ADDRESS:**

Kenneth Cone
P.O. Box 2057
Thomasville, Georgia  31799

12

**PLAINTIFF'S ADDRESS:**

Ms. Lauren Cooper
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

                                    Respectfully submitted,


                                    /s/ Alicia K. Haynes
                                    Alicia K. Haynes
                                    Attorney for Plaintiff

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama 35226
Phone: (205) 879-0377
Fax: (205) 879-3572
E-mail: akhaynes@haynes-haynes.com
ASB-8327-E23A

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of December 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

W. Evans Brittain
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama 36102-2418

Cavender C. Kimble
Balch & Bingham, LLP
1710 Sixth Avenue North
P.O. Box 306
Birmingham, Alabama 35203-2014

/s/ Alicia K. Haynes
OF COUNSEL

14

EXHIBIT 4

FILED

AUG 29 2005

U.S. DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LAUREN COOPER, ALABAMA )
)
    Plaintiff, )
)
v. )        CIVIL ACTION NO.
)
WORKSTAFF PERSONNEL, )    —    CV-05-RRA-1814-S
)
    Defendant. )

---

## COMPLAINT

---

### JURISDICTION AND VENUE

1.    This is a complaint for legal and equitable relief to redress violations by the

defendant of the plaintiff's rights secured by:

    a)    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et

        seq.

2.    Federal subject matter jurisdiction exists pursuant to:

    a)    28 U.S.C. § 1331; and 1343(a)(3); and

    b)    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et

        seq.

### PARTIES

3.    Plaintiff, Lauren Cooper (hereinafter referred to as "Plaintiff"), is a female over

the age of nineteen years old and a citizen of Chambers County, Alabama.  Plaintiff was

employed by Defendant when the actions of which she complains took place.

4.    Defendant, Workstaff Personnel (hereinafter referred to as "Defendant"), is an Alabama corporation doing business in Jefferson County, Alabama. Defendant is an employer as defined by Title VII.

## NATURE OF ACTION

5.    Plaintiff brings this action of unlawful employment practices and acts of intentional discrimination that occurred at Defendant's company located in the Eastern Division of the Middle District of the United States District Court for Alabama.

6.    This is an action to redress grievances resulting from acts of Defendant, its agents, servants, and employees with respect to Plaintiff's employment; and for a permanent injunction restraining Defendant from maintaining a policy and practice of discriminating against the plaintiff and other persons similarly situated on account of gender.

7.    Plaintiff seeks to be reinstated to her former position wherein she was discriminated against due to her gender and terminated.

8.    Plaintiff also seeks compensatory and punitive damages to which she is entitled and attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

9.    On March 7, 2005, within 180 days of learning of the acts of discrimination of which she complains, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). **(Attached as Exhibit A.)**

10.    Plaintiff received a Notice of "Right to Sue" from EEOC, dated June 1, 2005, with regard to her initial charge of discrimination, entitling her to institute a civil action in federal district court. **(Attached as Exhibit B)**

11.    All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

12.    Plaintiff began employment with Defendant on June 6, 2002, as a customer service representative.

13.    Plaintiff was initially hired by Marie Butler, Business Development Manager.

14.    Ms. Butler left in January 2003 and Amy Dudley became the new Business Development Manager and Plaintiff's manager.

15.    Ms. Dudley subsequently left Defendant's employment in April 2003. Thereafter, Plaintiff was promoted to Business Development Manager.

16.    Jill Thompson became Plaintiff's regional manager in May 2004.

17.    In June 2004, Plaintiff discovered she was pregnant and by mid-July everyone in the company knew of Plaintiff's pregnancy.

18.    Prior to Plaintiff announcing her pregnancy, she had never experienced performance problems with her position with Defendant and Plaintiff's work was always deemed exceptional.

19.    However, on August 18, 2004, less than one month after the company became aware of Plaintiff's pregnancy, Plaintiff received a written counseling statement from Ms. Thompson warning Plaintiff that a second write-up would result in a 3-day suspension.

20.    Approximately two weeks later on August 30, 2004, Plaintiff received a second written counseling statement from Ms. Thompson resulting in a 3-day suspension and warning Plaintiff that the next time she was disciplined, Plaintiff would be terminated.

21.    Approximately two weeks later, on September 10, 2004, Ms. Thompson provided a third written counseling statement to the Plaintiff and terminated the Plaintiff.

22.    Plaintiff's position was replaced with a non-pregnant employee.

23.   Plaintiff has been caused to lose her salary and benefits.

24.   Plaintiff has been caused to suffer emotional distress and physical injury. The health of Plaintiff and her unborn child was compromised by the deliberate and intentional actions of defendant.

**COUNT ONE**

**TITLE VII GENDER DISCRIMINATION**

25.   The Plaintiff adopts and realleges 1- 24 as if fully recited herein.

26.   This is a claim against Defendant for the intentional discrimination against the Plaintiff because of her gender in violation of Title VII.

27.   Plaintiff is female and is therefore a member of a protected class.

28.   Throughout Plaintiff's employment with defendant, Plaintiff's work was always deemed satisfactory and her evaluations were above average. Plaintiff received raises and promotions. After Plaintiff announced she was pregnant, she was disciplined and terminated. Plaintiff was replaced by a non-pregnant individual.

29.   Plaintiff's membership in a protected class or association with a protected class was a motivating factor in the Defendant's decision to terminate her employment.

30.   As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff suffered financial loss, economic loss, loss of employment, shame, humiliation, emotional distress and trauma.

31.   Plaintiff seeks declaratory and injunctive relief, award of lost employment and career benefits and wages, back pay, front pay, interest, compensatory damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any and all such other relief the trier of fact may assess.

**WHEREFORE,** the plaintiff, respectfully requests this Court:

A.    Permanently enjoin Defendant from engaging further in its discriminatory treatment on the basis of gender.

B.    Order Defendant, its agents, and employees to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against gender discrimination in the work place;

C.    Order Defendant, its agents, and employees to make Plaintiff whole by providing appropriate back pay with prejudgment interest, front pay and other monetary relief as may be available to her;

D.    Award the Plaintiff compensatory and punitive damages;

E.    Award the Plaintiff her costs and expenses herein, including a reasonable attorney fees; and,

F.    Award such other and further relief which this Court deems necessary and proper.

Respectfully submitted,

Alicia K.  Haynes
Alabama State Bar No.: 8327-E23A


**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**

Alicia K. Haynes ASB-8237-E23A
Attorney for Plaintiff

## PLEASE SERVE DEFENDANT BY CERTIFIED MAIL:

**DEFENDANT'S ADDRESS:**
Workstaff Personnel
2106 C Gateway Drive
Opelika, Alabama  36801

**PLAINTIFF'S ADDRESS:**
Ms. Lauren Cooper
c/o Haynes & Haynes, P.C.
1600 Woodmere Drive
Birmingham, Alabama 35226

EXHIBIT 5

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
### EASTERN DIVISION

LAUREN COOPER,           )
                                     )
     Plaintiff,            )
                                     )
v.                             )     CIVIL ACTION NO.
                                     )     3:06-cv-00138-MHT-DRB
WORKSTAFF PERSONNEL,   )
                                     )
     Defendant.          )

---

## PLAINTIFF'S FIRST AMENDED COMPLAINT

---

COMES Now, Plaintiff, Lauren Cooper, by and through her attorney of record, and amends and incorporates her original Complaint as if fully set out herein, as follows:

### JURISDICTION AND VENUE

1.     This is a complaint for legal and equitable relief to redress violations by the defendant of the plaintiff's rights secured by:

        a)     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq.

        b)     Ala. Code 1975, as amended §6-5-100, et seq.

2.     Federal subject matter jurisdiction exists pursuant to:

        a)     28 U.S.C. § 1331; and 1343(a)(3); and

      b)   Title VII of the Civil Rights Act of 1964, as amended, 42

      U.S.C. 2000e, et seq.

## PARTIES

3.    Plaintiff, Lauren Cooper (hereinafter referred to as "Plaintiff"), is a

female over the age of nineteen years old and a citizen of Chambers County,

Alabama.  Plaintiff was employed by Defendant when the actions of which she

complains took place.

4.    Defendant, Workstaff Personnel (hereinafter referred to as

"Defendant"), is an Alabama corporation doing business in Chambers and

Jefferson County, Alabama.  Defendant is an employer as defined by Title VII.

## NATURE OF ACTION

5.    Plaintiff brings this action of unlawful employment practices and acts

of intentional discrimination that occurred at Defendant's company located in the

Eastern Division of the Middle District of the United States District Court for

Alabama.

6.    This is an action to redress grievances resulting from acts of

Defendant, its agents, servants, and employees with respect to Plaintiff's

employment; and for a permanent injunction restraining Defendant from

maintaining a policy and practice of discriminating against the plaintiff and other

persons similarly situated on account of gender.

7.    Plaintiff seeks to be reinstated to her former position wherein she was discriminated against due to her gender and subsequently terminated.

8.    Plaintiff also seeks compensatory and punitive damages to which she is entitled and attorneys' fees and costs.

## ADMINISTRATIVE PROCEDURES

9.    On March 7, 2005, within 180 days of learning of the acts of discrimination of which she complains, Plaintiff filed charges of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). **(Attached as Exhibit A.)**

10.    Plaintiff received a Notice of "Right to Sue" from EEOC, dated June 1, 2005, with regard to her initial charge of discrimination, entitling her to institute a civil action in federal district court. **(Attached as Exhibit B)**

11.    All prerequisites for bringing this action have been met.

## STATEMENT OF FACTS

12.    Plaintiff began employment with Defendant on June 6, 2002, as a customer service representative.

13.    Plaintiff was initially hired by Marie Butler, Business Development Manager.

14.    Ms. Butler left in January 2003 and Amy Dudley became the new Business Development Manager and Plaintiff's manager.

15.    Ms. Dudley subsequently left Defendant's employment in April 2003.

Thereafter, Plaintiff was promoted to Business Development Manager.

16.    Jill Thompson became Plaintiff's regional manager in May 2004.

17.    In June 2004, Plaintiff discovered she was pregnant and by mid-July

everyone in the company knew of Plaintiff's pregnancy.

18.    Prior to Plaintiff announcing her pregnancy, she had never

experienced performance problems with her position with Defendant and

Plaintiff's work was always deemed exceptional.

19.    However, on August 18, 2004, less than one month after the company

became aware of Plaintiff's pregnancy, Plaintiff received a written counseling

statement from Ms. Thompson warning Plaintiff that a second write-up would

result  in a 3-day suspension.

20.    Approximately two weeks later on August 30, 2004, Plaintiff

received a second written counseling statement from Ms. Thompson resulting in a

3-day suspension and warning Plaintiff that the next time she was disciplined,

Plaintiff would be terminated.

21.    Approximately two weeks later, on September 10, 2004, Ms.

Thompson provided a third written counseling statement to the Plaintiff and

terminated the Plaintiff.

22.    Plaintiff's position was replaced with a non-pregnant employee.

23.     Plaintiff has been caused to lose her salary and benefits.

24.     Plaintiff has been caused to suffer emotional distress and physical injury. The health of Plaintiff and her unborn child was compromised by the deliberate and intentional actions of defendant.

## COUNT ONE

## TITLE VII GENDER DISCRIMINATION

25.     The Plaintiff adopts and realleges 1- 24 as if fully recited herein.

26.     This is a claim against Defendant for the intentional discrimination against the Plaintiff because of her gender in violation of Title VII.

27.     Plaintiff is female and is therefore a member of a protected class.

28.     Throughout Plaintiff's employment with defendant, Plaintiff's work was always deemed satisfactory and her evaluations were above average. Plaintiff received raises and promotions. After Plaintiff announced she was pregnant, she was disciplined and terminated. Plaintiff was replaced by a non-pregnant individual.

29.     Plaintiff's membership in a protected class or association with a protected class was a motivating factor in the Defendant's decision to terminate her employment.

30.     As a proximate result of Defendant's unlawful intentional discrimination, Plaintiff suffered financial loss, economic loss, loss of

employment, shame, humiliation, emotional distress and trauma.

31.   Plaintiff seeks declaratory and injunctive relief, award of lost
employment and career benefits and wages, back pay, front pay, interest,
compensatory damages for loss of career opportunity, humiliation and
embarrassment, mental anguish, costs, attorneys' fees, punitive damages and any
and all such other relief the trier of fact may assess.

## COUNT TWO

## FRAUD IN THE INDUCEMENT/CONVERSION

32.   The Plaintiff adopts and realleges 1-31 as if fully recited herein. This
is a claim against Defendants arising under the laws of the State of Alabama
prohibiting fraud in the inducement.

33.   The Plaintiff began working for defendant on June 6, 2002.  On July
13, 2004, after announcing her pregnancy, Defendant had Plaintiff sign an
employment agreement, or contract for employment with Defendant.

34.   Defendant wrongfully and falsely misrepresented to the plaintiff the
job position for which plaintiff had been employed and further the Defendant
wilfully misrepresented material facts to fraudulently induce the plaintiff to act to
her detriment.  The Defendant sought to materially change the terms of Plaintiff's
employment and used said employment agreement to the detriment of the Plaintiff.

35.    The plaintiff satisfactorily delivered to the defendant the work product the defendant demanded but defendant, after Plaintiff announced she was pregnant, and after Plaintiff signed the employment agreement, was terminated.

36.    As a proximate result of the defendant's unlawful conduct aforesaid, Plaintiff suffered the following injuries: different terms and conditions of employment than other employees, severe emotional distress, humiliation, mental anguish, trauma and embarrassment, and financial loss.

37.    The plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs, attorneys' fees, and any and all such other relief the trier of fact may assess.

## COUNT THREE

## BREACH OF CONTRACT

38.    The Plaintiff adopts and realleges 1-37 as if fully recited herein. This is a claim against Defendants arising under the laws of the State of Alabama prohibiting breach of contract.

39.    At all times relevant to this action, Defendant has represented to Plaintiff in various writings, including but not limited to, personnel policies and procedure manuals, retirement and profit-sharing plan and employee guidelines,

that the employment relationship would be based on good faith, that employees
would be treated fairly and equitably, that employees would be judged on the basis
of individual merit and ability, and that employees would receive just
compensation for services rendered to the Defendant.

40.     These provisions and representations form part of Plaintiff's express
employment contract with the defendant that Defendant insisted Plaintiff sign
without consideration, and only after announcing her pregnancy.

41.     Plaintiff has performed all conditions, covenants, promises, duties,
and responsibilities required of her to be performed in accordance and in
conformity with her employment contract.

42.     On September 10, 2004, Defendant further breached Plaintiff's
contract and wrongfully failed to judge Plaintiff on the basis of merit and ability,
and wrongfully and without just cause terminated the Plaintiff by committing
deliberate acts of discrimination and unfair dealing.

43.     As a result of this breach of contract, Plaintiff has suffered and will
suffer damages by the loss of her employment.  Additionally, Plaintiff suffered the
following additional injuries:  different  terms and conditions of employment than
other employees, severe emotional distress, humiliation, mental anguish, trauma
and embarrassment, and financial loss.

44.    The plaintiff seeks declaratory and injunctive relief, award of lost employment benefits and wages, back pay, front pay, interest, compensatory and punitive damages for loss of career opportunity, humiliation and embarrassment, mental anguish, costs,  attorneys' fees, and any and all such other relief the trier of fact may assess.

**WHEREFORE,** the plaintiff, respectfully requests this Court:

A.    Permanently enjoin Defendant from engaging further in its discriminatory treatment on the basis of gender.

B.    Order Defendant, its agents, and employees to institute and carry out policies, practices, and programs which provide equal employment opportunities for women, and which eradicate the effects of its past and present unlawful employment practices, including implementing a policy against gender discrimination in the work place;

C.    Order Defendant, its agents, and employees to make Plaintiff whole by providing appropriate back pay with prejudgment interest, front pay and other monetary relief as may be available to her;

D.    Award the Plaintiff compensatory and punitive damages;

E.    Award the Plaintiff her costs and expenses herein, including a reasonable attorney fees; and,

F.    Award such other and further relief which this Court deems necessary

and proper.

Respectfully submitted,


 s/ Alicia K. Haynes
Alicia K. Haynes
ASB-8327-E23A


**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377


## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY


 s/ Alicia K. Haynes
Alicia K. Haynes


**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

# CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of February, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gerald C. Swann, Jr.
Emily C. Marks
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama  36102-2148

_s/ Alicia K. Haynes_____
Alicia K. Haynes

EXHIBIT 6

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

LAUREN COOPER,                          )
                                        )
        Plaintiff,                      )
                                        )
v.                                      )     CIVIL ACTION NO.
                                        )     3:06-cv-00138-MHT-DRB
WORKSTAFF PERSONNEL,                    )
                                        )
        Defendant.                      )

## PLAINTIFF'S MOTION TO
## VOLUNTARILY DISMISS
## COUNTS TWO AND THREE

COMES NOW the Plaintiff and moves this Honorable Court to dismiss

Counts Two and Three of her amended original complaint, without prejudice.

These claims are Fraud in the Inducement, Conversion and Breach of Contract

only. Plaintiff realleges all previous and undismissed claims in her amended

complaint and requests a jury to hear these claims on March 12, 2007.

                                    s/ Alicia K. Haynes
                                    Alicia K. Haynes

OF COUNSEL:

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of March, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gerald C. Swann, Jr.
Emily C. Marks
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama  36102-2148

s/ Alicia K. Haynes
Alicia K. Haynes

EXHIBIT 7

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| LAUREN COOPER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 3:06-cv-00138-MHT-DRB |
| WORKSTAFF PERSONNEL, | ) | |
| | ) | |
| Defendant. | ) | |

## PLAINTIFF'S DAMAGE PLEADING

COMES NOW Plaintiff and sets forth her damages as follows:

1.    Wages:

| | |
|---|---|
| Date of Hire: | June 6, 2002 |
| Date of Termination: | September 10, 2004 |
| 2004 salary with Workstaff | $30,000.00 |
| 2005 Projected Salary from Workstaff: | $31,200.00 (4% raise) |
| 2006 Projected Salary from Workstaff: | $32,448.00 (4% raise) |
| **Total Wages 2004-2006:** | **$93,648.00** |

| | |
|---|---|
| 2004 Mitigated Damages: | |
| Workstaff - 1/1/2004- 9/10/2004 | $20,769.12 (36 wks x $576.92/wk) |
| 2005 Mitigated Damages: | |
| Pediatric Associates 3/14/05 - 12/31/05 | $13,422.93 (From W-2) |
| 2006 Mitigated Damages: | |
| Pediatric Associates 1/1/06-12/31/06 | $13,312 ($8/hr x 32/hr x 52/wks) |
| Total Mitigated Damages 2004-2006: | $47,504.05 |

**Total Loss Wages:**                    **$46,143.95**

**Employee Benefits Lost:**

Health insurance, dental, 401K, vacation, sick days, etc. Plaintiff estimates the value was **$10,000** for each calendar year. Plaintiff's current employee benefits are not as extensive as Workstaff's benefits. The total approximate value of this loss is **$20,000**. Additionally, Plaintiff will supplement the loss of her employee benefits package when Defendant provides the value of its benefits package.

**Medical Damages:**

Plaintiff's COBRA insurance was cancelled on January 1, 2005, after she was terminated. Plaintiff had elected to continue her insurance benefits, but defendant arbitrarily cancelled Plaintiff's COBRA benefits even though Plaintiff was paying the COBRA premium. However, Plaintiff was not informed of the cancellation until February 11, 2005. As such, Plaintiff received a $5,000 hospital bill in relation to her pregnancy and was without health insurance.

## TOTAL DAMAGES: $71,143.95

Plaintiff's damages are ongoing and will be timely supplemented as information is further obtained in discovery.

s/ Alicia K. Haynes
Alicia K. Haynes

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
(205) 879-0377

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of January, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Gerald C. Swann, Jr.
Emily C. Marks
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama  36102-2148

s/ Alicia K. Haynes
Alicia K. Haynes

EXHIBIT 8

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER            )
                         )
        Plaintiff,       )
                         )
v.                       )        CASE NO.: 3:06cv138-MHT
                         )
AMBASSADOR PERSONNEL, INC.,   )
                         )
        Defendant.       )

## DEFENDANT'S TRIAL BRIEF

**COMES NOW,** the defendant, Ambassador Personnel, Inc., and submits the following Trial Brief and states as follows:

### I.    Introduction

This is an action for relief under 42 U.S.C. §2000e, et seq. (Title VII), and various state law claims. Plaintiff Lauren Cooper is a female who was employed as a Business Development Manager at Ambassador Personnel[1] in Auburn, Alabama.

Ms. Cooper alleges that she was subjected to pregnancy discrimination by her employer. Specifically, she contends that she was terminated because she was pregnant. This is a disciplinary case because the plaintiff was terminated for not fulfilling her job responsibilities.

Ms. Cooper originally filed a one-count Complaint alleging gender discrimination based on pregnancy under Title VII. Ms. Cooper filed an Amended Complaint wherein she added two state law claims: Fraud in the Inducement/Conversion and Breach of Contract. Thus, the claims to be presented by the plaintiff at trial are: 1)

---

[1] The company was formerly known as Workstaff Personnel, Inc., but has officially changed its name to Ambassador Personnel, Inc.

Title VII claim of gender discrimination based on pregnancy; 2) Fraud in the Inducement/Conversion; and 3) Breach of Contract.

Plaintiff seeks declaratory and injunctive relief, compensatory damages, punitive damages, and attorneys' fees, costs and expenses.

## II.    Argument

### A.    Title VII claim

In evaluating a Title VII claim, a Court must first examine the EEOC administrative charge and investigation to determine the scope of the judicial complaint. Robinson v. Regions Financial Corp., 242 F.Supp.2d 1070, 1079 (M.D. Ala. 2003), citing Griffin v. Carlin, 755 F. 2d 1516, 1522 (11th Cir. 1985). A plaintiff's judicial complaint under Title VII is limited to acts of discrimination contained in her EEOC charge. Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1569 (11th Cir. 1987). A plaintiff may not pursue a Title VII claim unless the alleged acts of discrimination have been made the subject of a timely filed EEOC charge. Robinson, 242 F.Supp.2d at 1079 citing Alexander v. Fulton County, 207 F.3d 1303, 1332 (11th Cir. 2000). A judicial complaint may, however, also include matters "which can reasonably be expected to grow out of the charge of discrimination." Mulhall v. Advance Sec., Inc., 19 F.3d 586, 589 n. 8 (11th Cir. 1994).

In evaluating the proper scope of the judicial complaint, this Court must first look at Ms. Cooper's EEOC charge. The text of Ms. Cooper's charge is as follows:

"I began employment with Workstaff Personnel on June 6, 2002, as a customer service representative. I was hired by Marie Butler, Business Development Manager. Ms. Butler left in January 2003 and Amy Dudley

2

became the new Business Development Manager. When Ms. Dudley left in April 2003, I was promoted to Business Development Manager. Jill Thompson became my regional manager in May 2004. In June 2004, I found out I was pregnant and by mid-July everyone in the company knew. Before I found out I was pregnant, I had never had performance problems. However, on August 18, 2004, less than one month after the company became aware of my pregnancy, I received a write-up from Ms. Thompson warning me that a second write-up would result in a 3-day suspension....Less than two weeks later on August 30, 2004, I received a second write-up from Ms. Thompson resulting in a 3-day suspension and warning me that the next time I was disciplined, I would be terminated....Again, less than two weeks later, on September 10, 2004, Ms. Thompson wrote me up for the third time and terminated me....I believe that I have been subjected to discrimination on the basis of my gender, female, and because of my pregnancy in violation of the Civil Rights Act of 1964, as amended."

As can be seen from the above charge, Ms. Cooper makes one complaint. She contends that she was subjected to sex discrimination in that she was terminated after she became pregnant. There is no mention in the EEOC charge of claim other than gender discrimination based upon pregnancy. As a result, it is Defendant's position that any other claims or allegations under Title VII plaintiff may make at trial are barred because plaintiff failed to raise them in a timely filed EEOC charge.

3

Plaintiff has asserted a claim for discrimination based upon her sex due to pregnancy. Title VII makes it unlawful for an employer to discriminate against an individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's sex. 42 U.S.C. §2000e-2(a)(1). In her EEOC charge, Complaint, and Amended Complaint, the Plaintiff claims that she was subjected to discrimination because she was a pregnant woman. Specifically, she complains that she was written up three times and terminated after she announced her pregnancy. The evidence establishes, however, that the plaintiff was terminated as discipline for failing to adequately perform her job duties.

Title VII of the Civil Rights Act of 1964 was amended by the Pregnancy Discrimination Act of 1978, "providing that the prohibition against employment-related discrimination because of sex or on the basis of sex includes discrimination based on pregnancy, child birth or related medical conditions." Ferrell v. Masland Carpets, Inc., 97 F.Supp.2d 1114, 1122 (S.D. Ala. 2000)(See 42 U.S.C. §2000e(k)). "The analysis applied to pregnancy discrimination claims is the same analysis used in other Title VII sex discrimination cases." Id.

The Eleventh Circuit has held that plaintiffs alleging disparate treatment, or intentional discrimination, "must establish that the employer intended to discriminate against the protected group." Armstrong v. Flowers Hospital, Inc., 33 F.3d 1308, 1313 (11th Cir.1994). The Court went on to explain that:

> If direct evidence of discriminatory intent is not available, a plaintiff may present circumstantial evidence from which an inference of intentional discrimination may be drawn. The first step in a claim of disparate treatment, based on a theory of pretext and supported by circumstantial evidence, is for the plaintiff to establish a prima facie case which

4

creates a rebutabal presumption of unlawful discrimination. The defendant may rebut this presumption, if made, by articulating a non-discriminatory reason for its actions. To prevail, the plaintiff must show that the non-discriminatory reason offered by the defendant is a pretext for discrimination. …The district court in the case at hand properly applied the following formulation of the elements required to establish a prima facie case: (1) the plaintiff is a member of a group protected by Title VII; (2) the plaintiff was qualified for the position; (3) the plaintiff suffered an adverse effect on her employment; and (4) the plaintiff suffered from differential application of work or disciplinary rules.

Id. at 1313 to 1314. See also, Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1312 (11th Cir.1999)(holding that in order to establish a prima facie case of pregnancy discrimination, a plaintiff must establish that she suffered from differential application of work or disciplinary rules). The Plaintiff must establish a prima facie case of pregnancy discrimination in her case in chief in order to defeat a Motion for Judgment as a Matter of Law at the close of her evidence.

The Eleventh Circuit has held that "the PDA [Pregnancy Discrimination Act] does not require that employers give preferential treatment to pregnant employees." Spivey v. Beverly Enterprises, Inc., 196 F.3d at 1312. Indeed, "under the PDA, the employer must ignore an employee's pregnancy and treat her as well as it would have if she were not pregnant." Id. at 1313. See also, Armindo v. Padlocker, Inc., 209 F.3d 1319 (11th Cir.2000)(holding that "the PDA is not violated by an employer who fires a pregnant employee for excessive absences, unless the employer overlooks the comparable absences of non-pregnant employees").

A plaintiff who claims that she was discriminated against on the basis of her pregnancy, "may attempt to establish disparate treatment by producing either direct or

5

circumstantial evidence." Ferrell v. Masland Carpets, Inc. 97 F.Supp.2d at 1122. Courts have noted that "it is a rare case, however, where there exists actual direct evidence of discrimination." Id. at 1123. The existence of direct evidence is rare because "courts have found only the most blatant remarks whose intent could be nothing other than to discriminate as constituting direct evidence of discrimination. Id. (internal citations omitted). Indeed, "there must be a direct correlation between the adverse employment action and the discriminatory comment for such a statement to constitute direct evidence." Id.

There is no direct evidence of discrimination that led to an adverse employment action. Therefore, the plaintiff's claim must be examined under the framework of the "three step circumstantial evidence test established by McDonald Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed.2d 668 (1973)". Ferrell v. Masland Carpets, Inc. 97 F.Supp.2d at 1123. The law is clearly established that:

> Under McDonald Douglas, the plaintiff has the initial burden of establishing a prima facie case of employment discrimination by a preponderance of the evidence. Where the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the plaintiff's discharge. If the employer does so, the burden then shifts back to the plaintiff to prove that the employer's proffered reason for the termination is merely a pretext for discrimination. To establish the prima facie case of pregnancy discrimination, a plaintiff must demonstrate: (1) that she was a member of a protected class; (2) that she was qualified for her position; (3) that she suffered an adverse effect on her employment; and (4) that she suffered from differential application of work or disciplinary rules.

Id. (internal citations omitted).

The defendant does not dispute that the plaintiff meets the first and the third criteria. It is undisputed that she was pregnant and that she was terminated from her position as business development manager. However, the plaintiff fails to satisfy the second and fourth elements of this test and thus cannot make out her prima facie case.

The plaintiff was not qualified for the position of Business Development Manager. "For the purpose of employment discrimination cases, an employee is considered to be qualified for a position if he or she meets the criteria that the employer has articulated for the position." Id. at 1124. In the case at bar, the business development manager has the responsibility of bringing in new business in order to grow the office, make daily bank deposits, make at least 20 sales calls per week, deliver payroll checks and set up meetings. The write-ups that plaintiff received that lead up to her termination were all factually accurate. Her write-ups evidence that Ms. Cooper failed to make at least 20 sales calls per week, failed to make daily bank deposits, and was insubordinate. Further, the evidence establishes that the Opelika office for which the plaintiff was the manager, was not growing under the plaintiff's management. In fact, there were several months during her time as manager that the office not only failed to grow, but actually lost money. Thus, the plaintiff was regularly failing to produce the required growth for her office, and failed to fulfill her duties as a Business Development Manager.

In order to establish that she was qualified, the plaintiff "must produce evidence which shows that she was meeting [the employer's] legitimate performance expectations at the time of her discharge." Id. Additionally, the plaintiff's "mere belief that her production was sufficient does not demonstrate that she was qualified to work as a [Business Development Manager]". Id. The plaintiff cannot establish that she was

meeting Ambassador Personnel's performance expectations when she was discharged. Accordingly, the plaintiff fails to establish that she was qualified to work as a Business Development Manager.

The plaintiff additionally fails to produce any evidence to show that a non-pregnant employee received more favorable treatment than she did, thus, the plaintiff has failed to establish that she suffered from a differential application of rules. The Eleventh Circuit has held that "an employer violates the PDA when it denies a pregnant employee a benefit generally available to temporarily disabled workers holding similar job positions." Spivey v. Beverly Enterprises, Inc., 196 F.3d at 1313. There is no evidence that Ambassador Personnel allows non-pregnant Business Development Managers to consistently fail to grow their office, fail to make the requisite number of sales calls, fail to make daily bank deposits, and engage in insubordinate conduct.

Under the PDA, Ambassador Personnel was compelled to ignore the plaintiff's pregnancy and treat her as well as it would have if she were not pregnant. There is no evidence that Ambassador Personnel treated the plaintiff less favorably than it did non-pregnant employees. The plaintiff cannot establish that a pregnant Business Development Manager may consistently fail to perform her job responsibilities and not receive discipline. The plaintiff also fails to establish that non-pregnant Business Development Managers were not disciplined for insubordination, failing to grow their offices, make daily bank deposits, and make their requisite number of sales calls. Accordingly, the plaintiff fails to establish differential application of work and disciplinary rules; therefore, she has failed to establish a prima facie case of pregnancy discrimination. (See Armstrong v. Flowers Hospital, Inc., 33 F.3d at 1314 (holding that

the plaintiff failed to establish differential application of work rules, an element of the prima facie case, where she failed to establish that pregnant employees were treated differently than non-pregnant employees)(internal citations and quotations omitted).

The defendant proffers four primary reasons for terminating the plaintiff's employment: (1) failure to make daily bank deposits; (2) failure to make the required number sales calls per week; (3) failure to grow the Opelika office; and (4) insubordination. The decision to write the plaintiff up, and ultimately terminate her had nothing to do with her pregnancy, but was instead based entirely upon her poor job performance and insubordination. "Poor job performance is a legitimate, non-discriminatory reason for discharging an employee." Ferrell v. Masland Carpets, Inc., 97 F.Supp.2d at 1125.

In St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993), the U.S. Supreme Court emphasized that once the defendant satisfies its burden of articulating a legitimate non-discriminatory reason for its actions, the presumption of discrimination "simply drops out of the picture" and the sole inquiry becomes whether the plaintiff has proven intentional discrimination. See also Walker v. NationsBank of Florida, N.A., 53 F.3d 1548, 1560 (11th Cir.1995) (Johnson, J., concurring) (citing St. Mary's Honor Center v. Hicks, supra. for the proposition that "[w]here the employer meets his burden of articulating a legitimate, nondiscriminatory reason, "the McDonnell Douglas framework-with its presumptions and burdens-is no longer relevant. The presumption, having fulfilled its role of forcing the defendant to come forward with some response, simply drops out of the picture. The defendant's production (whatever its persuasive effect) having been made, the trier of fact proceeds to decide the ultimate question: whether

9

plaintiff has proven that the defendant intentionally discriminated against [her] because of an illegitimate reason."). Indeed, "[i]f the defendant has met its burden of producing evidence that, if taken as true, would rebut the prima facie case, *a threshold matter to be decided by the judge,* the jury need not be told anything about a defendant's burden of production." Cabrera v. Jakabovitz, 24 F.3d 372, 382 (2d Cir.1994) (emphasis added).

The information contained in all of plaintiff's write-ups is factually accurate; in other words, the plaintiff committed the infractions for which she was disciplined. The plaintiff simply complains that she had engaged in similar unsatisfactory job performance on previous occasions but had never been written up before. However, the plaintiff fails to acknowledge that a new supervisor, Jill Thompson, came on board only a few months prior to the plaintiff's initial write-up. Ms. Thompson was tasked by her supervisors to ensure growth in the Alabama offices. When Ms. Thompson came in as Regional Manager, she had six offices to work with, including the Opelika office. It took some time for Ms. Thompson to come in to each office and evaluate what improvements needed to be made and how to make them. She ultimately determined that the Opelika office was not growing because the plaintiff was not fulfilling her job responsibilities as office manager. Ms. Thompson attempted to work with the plaintiff to achieve improvement; however, no improvement occurred. Ms. Thompson counseled the plaintiff regarding the importance of making daily bank deposits and sales calls. Ms. Thompson initially wrote the plaintiff up hoping that it would get her attention and improvements would be forthcoming. However, the problems with the plaintiff did not abate and the plaintiff continued to engage in the same conduct that she had been cautioned about previously, mainly, failing to make at least 20 sales calls per week,

10

failing to make daily bank deposits and insubordination. The plaintiff's poor job performance ultimately led to her termination. The plaintiff was not terminated because she was pregnant.

The plaintiff fails to make out a prima facie case of pregnancy discrimination under Title VII.

**B.    State Law Claims**

In addition to asserting a discrimination claim under Title VII, the plaintiff asserts state law claims for fraud in the inducement/conversion and breach of contract.

1.    Fraud in the Inducement/Conversion

Under Alabama law, "fraud in the inducement consists of one party's misrepresenting a material fact *concerning the subject matter of the underlying transaction* and the other party's relying on the misrepresentation to his, her, or its detriment in executing a document or taking a course of action." Ex parte Majors, 827 So.2d 85, 90 (Ala.2002)(emphasis in original). In her Amended Complaint, the plaintiff alleges that the defendant had her sign an employment agreement and "wrongfully and falsely misrepresented to the plaintiff the job position for which plaintiff had been employed and further the defendant willfully misrepresented material facts to fraudulently induce the plaintiff to act to her detriment." (Doc.10-Amended Complaint, para.34). The plaintiff further alleges that "the plaintiff satisfactorily delivered to the defendant the work product the defendant demanded but defendant, after plaintiff announced she was pregnant, and after plaintiff signed the employment agreement, was terminated." (Doc.10-Amended Complaint, par.35).

11

The plaintiff fails to identify any misrepresentation made by the defendant to the plaintiff. Furthermore, the plaintiff fails to establish that she relied on any misrepresentation to her detriment. The plaintiff acknowledges that she understood what her job requirements were. Simply put, there is no evidence of any misrepresentation by the defendant to the plaintiff.

The Alabama Supreme Court held that "[a] common law action for conversion will lie for (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse, or (4) a wrongful detention." Hanner v. Metro Bank and Protective Life Ins. Co., 2006 WL 2642112 (Ala. 2006). The plaintiff fails to make any allegation in her Complaint or Amended Complaint that supports a cause of action for conversion. In fact, conversion is only listed as a cause of action in a heading in the Amended Complaint and is not addressed in the body thereof. Further, there is no evidence of a wrongful taking, illegal assumption of ownership, illegal use or misuse, or a wrongful detention that would in any way support a cause of action for conversion.

### 2.    Breach of Contract

Under Alabama law, in order for the plaintiff to establish a claim for breach of contract, she must show as follows: "(1) the existence of a valid contract binding the parties in the action, (2) [her] own performance under that contract, (3) the defendant's non-performance, and (4) damages." Childersburg Bank Corp., Inc. v. People's State Bank of Commerce, 2006 WL 1540888 (Ala.Civ.App.2006).

The plaintiff brings a cause of action for breach of contract alleging that "defendant has represented to plaintiff in various writings, including but not limited to, personnel policies and procedure manuals, retirement and profit-sharing plan and

12

employee guidelines, that the employment relationship would be based on good faith, that employees would be treated fairly and equitably, that employees would be judged on individual merit and ability, and that employees would receive just compensation for services rendered to the defendant." (Doc.10-Amended Complaint, par.39). The plaintiff further alleges that "these provisions and representations form part of plaintiff's express employment contract with the defendant that defendant insisted plaintiff sign without consideration, and only after announcing her pregnancy." (Doc.10-Amended Complaint, par.40). Despite the allegations made by the plaintiff in her Amended Complaint, the plaintiff had no employment contract with the defendant. Indeed, there was no contract that prevents a defendant from terminating the plaintiff's employment nor was there any contract that prevented the plaintiff from quitting her job with the defendant. The plaintiff was an at-will employee.

The absence of a contract between plaintiff and the defendant is fatal to plaintiff's claim for breach of contract.

### C.    Damages

In her prayer for relief, Plaintiff seeks declaratory and injunctive relief, front pay, back pay, compensatory and punitive damages, attorney's fees, costs and expenses. Defendant submits Plaintiff is not entitled to injunctive relief since she is no longer employed by Ambassador Personnel. Wallace v. Dunn Construction Co., Inc., 62 F.3d 374, 380 (11th Cir. 1995) (injunctive relief not appropriate if plaintiff no longer employed).

With regard to the Title VII claims, 42 U.S.C. § 1981a provides a basis for damage awards.        With respect to compensatory damages, the Court is guided by the

limitations set forth in 42 U.S.C. § 1981a. Ambassador Personnel, Inc. has fewer than 201 employees. As a result, the limitations contained in § 1981a(b)(3)(B) apply, and compensatory damages are capped at $100,000. 42 U.S.C. § 1981a(b)(3)(B).

Front pay is a form of equitable relief properly decided by the court, not the jury. E.E.O.C. v. W&O, Inc., 213 F.3d 600, 618-19 (11th Cir. 2000).

In her Damage Pleading, the plaintiff includes an alleged loss of COBRA benefits as damages in this case. However, the plaintiff did not state any cause of action in her Complaint or Amended Complaint arising out of ERISA or COBRA. See 29 U.S.C.A. §1161 et seq.; Fisher v. Trutech, 2006 WL 3791977 (M.D. Ga. 2006). Any such claims are not a correct measure of damages under Title VII, but are stand alone causes of action not advanced by the plaintiff in this case. Accordingly, the plaintiff is not entitled to any damages arising out of her COBRA claims.

An award of punitive damages is only appropriate "if, and only if, the employer acts with malice or reckless indifference, such that the employer must at least discriminate in the face of a perceived risk that its actions will violate federal law to be liable in punitive damages." Id. at 611(internal quotations omitted). According to the Eleventh Circuit, "[m]alice means an intent to harm and recklessness means serious disregard for the consequences of one's actions." Id. (internal quotations omitted). Further, "mere negligence as to the civil rights of employees is not enough to justify punitive damages." Id. at 611.

There is no evidence that Ambassador Personnel engaged in malicious or reckless conduct that would subject it to liability for punitive damages.

14

/s/ Emily C. Marks_____
EMILY C. MARKS

OF COUNSEL:

**Ball, Ball, Matthews & Novak, P.A.**
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama 36102-2148
334-387-7680
334-387-3222 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on January 2, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

/s/ Emily C. Marks_____
OF COUNSEL

EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAUREN COOPER** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 3:06cv138-MHT** |
| | ) | |
| **AMBASSADOR PERSONNEL, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DEFENDANT'S EIGHTH MOTION IN LIMINE

**COMES NOW,** the Defendant, Ambassador Personnel, Inc., and hereby moves the Court to prohibit the plaintiff, her attorney, or any witnesses from introducing by way of testimony or documentary evidence, information about the following subject:

Any evidence of any claims the plaintiff may have under COBRA or ERISA. In her Damage Pleading, the plaintiff includes an alleged loss of COBRA benefits as damages in this case. However, the plaintiff did not state any cause of action in her Complaint or Amended Complaint arising out of ERISA or COBRA. See 29 U.S.C.A. §1161 et seq.; Fisher v. Trutech, 2006 WL 3791977 (M.D. Ga. 2006). Any such claims are not a correct measure of damages under Title VII, but are stand alone causes of action not advanced by the plaintiff in this case.

To allow such evidence would only serve to prejudice the defendant. It would also cause a mini trial on claims not advanced by the plaintiff and which are immaterial and irrelevant to the plaintiff's claims. Any probative value of this evidence is substantially outweighed by its prejudicial effect. Fed.R.Evid. 401, 402 and 403; Hapring v. Continental Oil Company, 28 F.2d 406, 410 (5th Cir. 1980)(excluding evidence that unduly prolongs the trial).

/s/ Emily C. Marks _____
EMILY C. MARKS

OF COUNSEL:

**Ball, Ball, Matthews & Novak, P.A.**
2000 Interstate Park Drive, Suite 204
Post Office Box 2148
Montgomery, Alabama 36102-2148
334-387-7680
334-387-3222 facsimile

## CERTIFICATE OF SERVICE

I hereby certify that on March 2, 2007, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

/s/ Emily C. Marks _____
OF COUNSEL

2

EXHIBIT 10

```
1            IN THE UNITED STATES DISTRICT COURT
                              FOR
2             THE MIDDLE DISTRICT OF ALABAMA

3

4

5

6   LAUREN COOPER

7       vs.                        CIVIL ACTION NO.
                                   3:06-CV-138-MHT
8   AMBASSADOR PERSONNEL

9

10

11

12

13

14                    VOLUME I OF III
                       1ST DAY OF:
15                JURY TRIAL PROCEEDINGS

16

17

18                * * * * * * * * * *

19

20

21  BEFORE:      The Hon. Myron H. Thompson

22  HEARD AT:    Opelika, Alabama

23  HEARD ON:    March 12, 2007

24  APPEARANCES:  Alicia Haynes, Esq.
                  Emily C. Marks, Esq.
25
```

1    coincide with the exhibit list and I became concerned

2    that there were going to be some exhibits that were not

3    furnished to me that would be used at trial that I have

4    not ever seen.

5            THE COURT:  Is this issue moot now?

6            MS. MARKS:  I'm not sure until I -- I guess we

7    can see at trial if she tries to offer any exhibits that

8    I haven't seen, but until that time it would be moot.

9            THE COURT:  Then I'll deny it as moot unless

10   at trial there are some exhibits offered that you

11   haven't seen.

12           Motion in limine number seven.  That goes into

13   settlement offers, and I've ruled on that.

14           Motion in limine number eight talks about C.

15   O. B. R. A. and E. R. I. S. A.  Do you plan on going

16   into C. O. B. R. A. and E. R. I. S. A. damages?

17           MS. HAYNES:  Not per se C. O. B. R. A. or E.

18   R. I. S. A.  Well, she took out her C. O. B. R. A.

19   benefit and was paid the three hundred dollars every

20   month to the Blue Cross/Blue Shield Georgia provider.

21   In January, or the end of December, that insurance was

22   canceled by the defendant without notice to the

23   plaintiff.  And she ended up having to pay the delivery

24   and birth for her child.  So that is a tangible piece of

25   damage.

1      THE COURT: Had she not been terminated, would

2  she have had to pay that?

3      MS. HAYNES: No. No, sir. She had insurance

4  through Work Staff, and then when she was terminated --

5      THE COURT: So you're saying as a result of

6  her termination, part of her damages is she had to pay

7  for the delivery of the child, and if she had not been

8  terminated she would not have had to pay for that, the

9  insurance would have covered that?

10      MS. HAYNES: Yes, sir.

11      THE COURT: What's wrong with that?

12      MS. MARKS: Because there is an intervening

13  causation factor in there, and that is that the company

14  changed their insurance policies and became self-insured

15  in January of oh five. It was that act that cut off

16  allegedly her C. O. B. R. A. benefits. She claims that

17  she didn't get notice of the change of insurance.

18      THE COURT: If she had not been terminated,

19  would her pregnancy have been covered?

20      MS. MARKS: It would have, yes.

21      THE COURT: I'll allow this in.

22      MS. HAYNES: Your Honor, may I have a point of

23  clarification on the evidence of sexual harassment?

24  Some of that --

25      THE COURT: That evidence will come in to show

EXHIBIT 11

1    case and summarize the facts that they expect the

2    evidence will show.  Now the statements that the

3    attorneys make now, as well as the arguments they

4    present at the end of the trial, are not to be

5    considered by you as evidence, which will come only from

6    witnesses and exhibits, or as your instructions on the

7    law, which will come only from me.  Nevertheless, these

8    statements and arguments are intended to help you

9    understand the issues and the evidence as it comes in,

10   as well as the positions taken by both sides.

11        Now at this time I'm going to ask that you

12   give your close attention to the attorneys as they make

13   their opening statements.

14        Now we're going to have the opening statements

15   and then we will recess for lunch.  Don't worry, I

16   haven't forgotten about lunch.

17        So we'll now have the opening statements of

18   the attorneys.

19                   OPENING STATEMENTS BY MS. HAYNES:

20        MS. HAYNES:  I've briefly introduced myself

21   earlier.  My name is Alicia Haynes, and I have the

22   privilege today speaking to you on behalf of Lauren

23   Cooper.  And as you've heard a little bit about the

24   facts, I'm going to share with you in this opening

25   statement, which is kind of like the preview of a movie,

```
 1    you that in the course of two months, this lady was

 2    subject to unlawful discrimination on the basis of her

 3    gender.

 4            At the end of those two days I'm going to ask

 5    you for damages.  No one's going to jail.  This is a

 6    civil case.  And the only way you make a right wrong --

 7    did I say that right In -- is to award damages.  We

 8    can't go back and put her in that same job and make up

 9    the pay.  We're going to have back pay and we'll have

10    evidence of her back pay, what happened in that period

11    of time, how it affected her emotionally and physically,

12    how she had to pay for the birth of her child and how

13    that affected she and her husband as far as their

14    finances not having -- she was making thirty thousand

15    dollars a year -- not having that income any more.  And

16    a pregnant woman not being able to find another job.

17            And at the end of the trial I hope you will

18    see and understand that her pregnancy was a motivating

19    factor when Work Staff terminated Ms. Cooper.  You have

20    the opportunity as jurors in this case to do the right

21    thing, and to make this person whole for the wrong

22    that's been committed and I trust you will.

23            Thank you.

24                    OPENING STATEMENTS:

25        MS. MARKS:  Ladies and gentlemen, I introduced
```

EXHIBIT 12

1    down from the stand.)

2            THE COURT:  Next witness.

3            MS. HAYNES:  Your Honor, we call Miss Cooper,

4    please.

5                    L A U R E N    C O O P E R,

6    the witness herein, having first been duly sworn or

7    affirmed to tell the truth, was examined and testified

8    as follows:

9                    DIRECT EXAMINATION

10           BY MS. HAYNES OF LAUREN COOPER:

11   Q    Will you introduce yourself to the jury, please.

12   Tell them your name and age and where you live.

13   A    Lauren Cooper.  I'm twenty-seven and I live in

14   Valley, Alabama.

15   Q    Miss Cooper, are you married?

16   A    Yes, ma'am.

17           THE COURT:  Members of the jury, in particular

18   the gentleman at the far end, if you cannot hear her,

19   please raise your hand and say I didn't hear that answer

20   or whatever.  It's very important that you hear the

21   evidence.  If you don't hear the evidence, then you

22   can't decide it.  So don't be bashful.

23           We've been here a day and-a-half now.  Just

24   speak up and say please say that again.  It's critical

25   you hear all the evidence.  Her voice tends to sort of

```
 1   Q    Okay.  So within eight weeks of his birth you had
 2   found work?
 3   A    Yes, ma'am.
 4   Q    And how did you learn about that job?
 5   A    I ever had an ad in the local newspaper.
 6        ...
 7        ...
 8   A    I don't believe so.
 9   Q    Did you have accrued sick time or vacation time?
10   A    I'm not sure.
11   Q    Okay.  Have you lost wages as a result of your
12   termination?
13   A    Yes, ma'am.
14   Q    And what period of time were you unemployed?
15   A    The dates I was unemployed?
16   Q    Yes, ma'am.
17   A    I was terminated from Work Staff on September the
18   tenth, and didn't begin work with Pediatric Associates
19   until March seventeenth, two thousand five.
20   Q    What other benefits did you have at Work Staff that
21   you lost other than your salary as a result of your
22   termination?
23   A    Bonuses, the trip to Sandestin.  I had better
24   insurance.
25   Q    Did you have insurance with Work Staff?
```

```
 1   A     Yes, ma'am.

 2   Q     And did you have to pay for that while you were

 3   employed?

 4   A     No, ma'am.

 5   Q     After you ceased being employed, did you pay for

 6   your insurance?

 7   A     Yes, ma'am.

 8   Q     And how much was that?

 9   A     Between three hundred and three hundred fifty

10   dollars a month.

11   Q     Okay.  And did that cover the birth of your child?

12   A     No, ma'am, it did not.

13   Q     What happened?

14   A     Cone Financial Group terminated my insurance

15   January the first of two thousand and five.

16   Q     So your baby was born January thirteenth?

17   A     Yes, ma'am.

18   Q     So you did not have insurance at that time?

19   A     I didn't have insurance at the time, and I didn't

20   know until February that my insurance was canceled.

21   Q     Okay.  Was there any reason you could not have gone

22   on your husband's insurance after you were terminated?

23   A     No.  Pregnancy would have been a preexisting

24   condition.

25   Q     And where was your husband working at this period
```

```
 1   of time?

 2   A     The city of Lanett.

 3   Q     What was he doing there?

 4   A     Police officer.

 5   Q     And did you in fact pay the baby's delivery bill

 6   personally?

 7   A     We're paying on it at this time.

 8   Q     You're making payments?

 9   A     Yes, ma'am.

10   Q     Do you remember how much that bill was?

11   A     Five thousand one hundred and eighty-nine dollars

12   and thirty-one cents.

13   Q     And do you know if you had already qualified for

14   the trip to Sandestin in September?

15   A     Yes, ma'am.

16   Q     And how do you know that?

17   A     You'd know by August if you were going or not.

18   Q     And so you had even the documentation that you had

19   won, or had been profitable up to that period of time?

20   A     Yes, ma'am.  They send over like weekly reports,

21   and it would show yes or no, or where you were in the

22   listing.  What your office was doing for the Sandestin

23   trip.

24   Q     And you heard Ms. Anderson's testimony yesterday

25   that you all could win money or bonuses at that
```

1    A    Yes, ma'am.

2    Q    And when would you say you got back on your feet?

3    A    October, November two thousand five is when we
started to get back on our feet.

5    Q    And what do you relate that to?

6    A    My husband got a better paying job.  I had steady
7    employment.

8    Q    Were you able to put your child in day-care at that
9    time?

10   A    He went into day-care after he turned one.

11   Q    And prior to that time, who kept him?

12   A    My grandmother.

13        MS. HAYNES:  Your Honor, I have an exhibit I
14   would like to use on the overhead.

15        THE COURT:  Go ahead.

16   Q    Can you see this?

17        MS. MARKS:  Judge, she's putting up the
18   damages, which is the subject of my motion to strike.

19        THE COURT:  I thought I had ruled on all of
20   this.

21        MS. HAYNES:  This is not a damage pleading.  I
22   listed this as a demonstrative exhibit only to aid the
23   jury.

24        MS. MARKS:  I've never seen that, Judge.

25        THE COURT:  Why don't you look at it.

```
 1   A    Yes, ma'am.

 2   Q    And you had your new wages.  Okay.  And this is

 3   what you made at Pediatrics Associates.  Is that what

 4   it's called?

 5   A    Yes, ma'am.

 6   Q    And you subtracted that from what you should have

 7   made had you stayed employed with Work Staff, is that

 8   correct?

 9   A    Yes, ma'am.

10   Q    And you got this figure for two thousand five?

11   A    Yes, ma'am.

12   Q    And did you do the same for two thousand six?

13   A    Yes, ma'am.

14   Q    All right.  Two thousand seven through today's

15   date?

16   A    Yes, ma'am.

17   Q    All right.  And two thousand seven where we are

18   today, March sixteenth, two thousand seven, you did your

19   same computations, subtracting your Pediatric Associates

20   salary with the four thousand three hundred·twenty-two

21   dollars and fifty-six cents, is that correct?

22   A    Yes, ma'am.

23   Q    All right.  The health related costs, that relates

24   to the birth of your child?

25   A    Yes, ma'am.
```

1    Q    Do you know if it was over three hundred employees?

2    A    It should have been, yes, ma'am.

3          MS. HAYNES:   That's all the questions I have

4    of this witness, Your Honor.

5          THE COURT:   Yes.

6          Cross?

7                    CROSS EXAMINATION

8          BY MS. MARKS OF LAUREN COOPER:

9    Q    Miss Cooper, when you started at Work Staff, I

10   think you told us you started in the position of a

11   customer service representative?

12   A    Yes, ma'am.

13   Q    Isn't that position essentially a receptionist job?

14   A    Yes, ma'am.

15   Q    And when you were the customer service

16   representative, did anybody tell you that you were not

17   performing those receptionist job responsibilities as

18   well?

19   A    No, ma'am.

20   Q    When you were promoted from customer service

21   representative to a manager of the office, you

22   understood that they thought you had performed your

23   customer service position well, but they didn't have any

24   way of knowing that you were going to be a good manager,

25   isn't that right?

1    bonuses?

2    A    Christmas bonus was given.

3    Q    How much typically was a Christmas bonus?

4    A    It's according to what your position was, how long

5.   you had been there.  I think a C. S. R. got like a

6    hundred dollars.  As manager I don't remember.

7    Q    Okay.  And for any other bonuses, that had to be

8    based on your profitability at that office, correct?

9    A    Yes, ma'am.

10   Q    So that number fluctuated quite a bit, isn't that

11   right?

12   A    Yes, ma'am.

13   Q    Okay.  So you were not entitled to a bonus unless

14   that office was profitable, and only then you were

15   entitled to a percentage of whatever you would earn by

16   making the office profitable, correct?

17   A    Yes, ma'am.

18   Q    And just because you get a bonus one year doesn't

19   mean you're going to get a bonus the next year, correct?

20   A    Correct.

21   Q    You also talked about your insurance.  And you keep

22   saying that Ambassador, or its parent company Cone

23   Financial, canceled your insurance.  Isn't it true that

24   actually they switched insurance companies?  I mean they

25   didn't cancel your insurance, they switched insurance

1    companies -- Isn't that what you understand happened?

2    A.    I do understand that now, but they did not make me

3    aware that they were changing companies.

4    Q.    And when you found out that they had switched

5    insurance companies when you were out on C. O. B. R. A.,

6    did you contact the company and make a complaint and say

7    I've had a glitch in my C. O. B. R. A. benefits because

8    July changed insurance and you didn't know about it?

9    A    The only person I spoke with was Leslie, and she

10    let me know what insurance company they were now using.

11    And I called them, but I didn't speak to anybody in the

12    Cone Financial corporate office.

13    Q    And when you found out -- Well you knew they had

14    switched insurance companies.  Did you contact either

15    the old insurance company or the new insurance company

16    to try to figure out what had happened?

17    A    I got a letter from Blue Cross of Georgia February

18    the eleventh, two thousand five.

19    Q    I understand that.  That's not my question.

20         MS. HAYNES:  Your Honor, she's interrupting

21    the witness.

22         THE COURT:  She can rephrase it.

23         Go ahead and make it clear.

24    Q    I understand that you're saying that when you were

25    notified.  I'm asking you when you found out that there

```
 1    was a glitch, did you contact the old insurance company

 2    and/or the new insurance company to try to work things

 3    out?

 4    A    Yes, ma'am, I did.

 5    Q    Okay.  Did you contact -- Who was the old insurance

 6    company?

 7    A    Blue Cross of Georgia.

 8    Q    Did you talk to anybody at Blue Cross of Georgia?

 9    A    I'm pretty sure I did.

10    Q    Do you have any independent recollection of talking

11    to anybody?

12    A    Yes, I do.

13    Q    Okay.  And what did they tell you?

14    A    They could not give me any information.  I had

15    already sent in my payment for January, and they

16    couldn't give me any information on what -- they would

17    refund my money, is what they told me they could do.

18    Q    So Blue Cross/Blue Shield of Georgia was going to

19    reimburse you for the money you had paid to them for the

20    month of January because they had switched to a

21    different insurance company?

22    A    Yes, ma'am.

23    Q    And did you talk to anybody in the new insurance

24    company to find out if you could be covered under that

25    policy?
```

```
 1    A     Yes, ma'am.

 2    Q     What did they tell you?

 3    A     I had to have my money in by the end of the day

 4    that I talked to them to be covered for January.  I

 5    didn't have another three hundred something dollars

 6    because I had already sent that in.

 7    Q     So you had the opportunity to be covered if you

 8    could get the payment to the new insurance company

 9    within forty-eight hours, is that fair to say?

10    A     Yes, ma'am.

11    Q     Did you ever talk to anybody at Ambassador's

12    corporate office to get them to try to help you work

13    this out?

14    A     No, ma'am.

15    Q     Now you said that you had -- after you were

16    terminated you lost some sleep, you gained weight, you

17    had some crying fits.  Had you ever been six or seven

18    months pregnant before?

19    A     No, ma'am.

20    Q     Okay.  Did you understand that pregnancy can be a

21    stressful time, correct?

22    A     Yes, ma'am.

23    Q     And that women, unfortunately, I'm one of them,

24    tend to put on weight when you're pregnant, that that's

25    a natural occurrence, is that correct?
```

EXHIBIT 13



February 11, 2005

MS LAUREN SMITH
114 MORGAN ST
VALLEY AL 36854-

807A65253

Dear Ms. SMITH:

You are hereby notified that your participation and that of your eligible qualified dependents, if any, in the Health Benefits Continuation Plan, will/has terminate(d) on 01/01/2005.

Reason:     GROUP CANCELL COVERAGE WITH BCBS. REFUND OF
            OVERPAYMENTS IF ANY WILL BE REQUESTED

Under the Federal HIPAA law, if you have (1) exhausted your group health continuation coverage period, (2) most recently have at least eighteen months of continuous group health coverage without a 63-day gap in coverage and (3) are currently not eligible for Medicare, you may qualify for and be able to obtain an individual health insurance policy from an insurance carrier licensed in your state. (800-718-8831)

If you incurred any eligible expenses for which you are due reimbursement, you should file your claim in the usual manner within the next ninety days.

Sincerely,

COBRA Solutions

PLAINTIFF'S
EXHIBIT

CASE
NO.    06-138

EXHIBIT
NO.    17

## PREMIUM COMPUTATION FORM

September 25, 2004

CONE FINANCIAL GROUP, INC.
406 S. BROAD STREET
PO BOX 2057
THOMASVILLE, GA 31792
EMPLOYER CODE 1011190

Principal Qualified Beneficiary:
  MS LAUREN SMITH

The Health Benefits Continuation Plan requires you to pay premiums according to the schedule shown below. The premium for the first partial month, if applicable, may be calculated for the remaining number of days in the month the Qualifying Event occurs. Subsequent premiums are due each month, as shown. You must pay all initial premiums due within forty-five days of the day you sign and date the Enrollment Form. Coverage will be retroactive to your employer group's cancellation date.

Your Qualifying Event Date: 09/14/2004
Your Last Enrollment Date:  11/23/2004

| Plan Description | Coverage Level | Premium |
|---|---|---|
| 1011190-051 PPO/RX | EMPLOYEE ONLY | $264.87 |
| Total Monthly Premium: | | $264.87 |

| Schedule Of First Payment | Premium |
|---|---|
| Amount Due if Enrollment Form Signed And Received In Our Office: 09/30/2004 | $141.27 |
| Amount Due if Enrollment Form Signed And Received In Our Office: 10/31/2004 | $406.14 |
| Amount Due if Premium Paid By..................: 11/30/2004 | $671.01 |
| Amount Due if Premium Paid By..................: 12/31/2004 | $935.88 |

Premiums must be paid by check or money order. PLEASE DO NOT SEND CASH.
                    Payable to: Blue Cross Blue Shield
Any increases or decreases in rates that are approved by the group will be sent to you when they are processed by our office.

  COBRA coverage is an extension of your regular group coverage. If the employer group should cancel coverage for any reason all COBRA benefits would cease on that date. A refund for any unused premium should be sent back to the payor. Under the COBRA rules you are allowed to choose coverage for yourself or any combination of other family members covered at the time of the qualifying event. If you wish to cover any individual or group of these family members including or excluding yourself, please contact our office to discuss the rates that would apply.

EXHIBIT 14

1  from them yet.  I don't see how you could correct a

2  verdict from the plaintiff that --

3          MS. HAYNES:  May I have leave to renew that?

4          THE COURT:  That's fine, but I don't see how

5  you can direct a verdict before someone has even had an

6  opportunity to put on their case.  Plaintiff has.

7          MS. HAYNES:  Are we in recess, Your Honor?

8          THE COURT:  No.  I guess I did tell the jury

9  five minutes, didn't I?  I guess we are in recess.

10         MS. HAYNES:  Is it okay if I leave the

11  courtroom?

12         THE COURT:  Yes.

13         Before we leave, how many witnesses do you

14  have left?

15         MS. MARKS:  One, Judge.

16         THE COURT:  Good.  Let's take two or three

17  minutes and get this witness on the stand.

18         (Whereupon, a recess was taken.)

19         THE COURT:  I understand we're down to one

20  witness, Miss Marks?

21         MS. MARKS:  The Defense calls Kenneth Cone.

22              K E N N E T H    C O H E N,

23  the witness herein, having first been duly sworn or

24  affirmed to tell the truth, was examined and testified

25  as follows:

```
 1                    DIRECT EXAMINATION

 2              BY MS. MARKS OF KENNETH Cone:

 3   Q    Mr. Cone, I hear that train, I think we're the

 4   caboose of that.  Would you state your full name?

 5   A    Kenneth S. Cone.

 6   Q    How old are you, Mr. Cone?

 7   A    For the next few days I'm fifty-eight.

 8   Q    Well early happy birthday.

 9              And what is your job position.

10   A    I'm the chairman and C. E. O. of the Cone Financial

11   Group.

12   Q    Is that the parent company for Ambassador

13   Personnel?

14   A    Correct.

15   Q    Are you married, Mr. Cone?

16   A    I have been married to a wonderful lady for, in

17   August it will be thirty-seven years.

18   Q    And do you have any children?

19   A    I have four daughters.

20   Q    Bless your heart.

21              Can you tell us a little bit of the background

22   of your company.

23   A    I bought the company January the first, nineteen

24   ninety-seven with myself and one employee.  And we have

25   grown from there, and we're now in, I think, thirteen or
```

1    policies of your company?

2    A    Yes.

3    Q    Have you ever known of any office manager who had

4    permission from anybody to not make bank deposits on a

5    daily basis?

6    A    No.

7    Q    Was there a period of time in early two thousand

8    and four when the corporate office shifted its focus to

9    the offices in Alabama in an effort to make them more

10   profitable?

11   A    I'm trying to recall, because that would probably

12   be more Doug's job than my job.  I oversee mainly the

13   financial end of the corporation.

14   Q    Okay.  So you don't get involved in the day-to-day

15   decisions as they relate to particular offices?

16   A    No, I do not.

17   Q    Unless it becomes necessary, is that correct?

18   A    In case somebody brings it to my attention, no.

19   Q    So you were not involved in any way in the decision

20   to either write up or terminate Ms. Cooper, were you?

21   A    No.

22   Q    That's all I have.  Thank you very much.

23            THE COURT:  Cross?

24                        CROSS EXAMINATION

25            BY MS. HAYNES OF MR. KENNETH Cone:

EXHIBIT 15

```
 1   A     No, ma'am.

 2               MS. HAYNES:  Thank you, Your Honor.

 3               MS. MARKS:  I have nothing further.

 4               THE COURT:  Thank you.  You may step down.

 5               (Whereupon the witness, Lauren Cooper, stepped

 6   down from the stand.)

 7               THE COURT:  Next witness.

 8               MS. HAYNES:  I'll call Mr. Wilson.  And he'll

 9   be my last witness.

10               THE COURT:  Mr. Wilson.

11                     D O U G L A S     W I L S O N,

12   the witness herein, having first been duly sworn or

13   affirmed to tell the truth, was examined and testified

14   as follows:

15                          DIRECT EXAMINATION

16               BY MS. HAYNES OF DOUGLAS WILSON:

17   Q     Mr. Wilson, will you state your name for the

18   record, please.

19   A     Douglas Olin Wilson.

20   Q     And, Mr. Wilson, what is your current position with

21   Work Staff or Ambassador Personnel?

22   A     President.

23   Q     And how long have you been in that position?

24   A     A little over two years now.

25   Q     How old are you, Mr. Wilson?
```

```
 1    A     I verbally warned her, yes, ma'am.

 2    Q     But you didn't place that in her personnel file,

 3    did you?

 4    A     No, ma'am, not a verbal warning.

 5    Q     Work Force, do they have a family and medical leave

 6    policy?

 7    A     Yes, ma'am.

 8    Q     And does that policy provide up to twelve weeks for

 9    an employee if they need to be out for family sickness,

10    illness, birth of a child?

11    A     I believe it does.

12    Q     And in the summer of two thousand four, was this

13    policy in effect?

14    A     I'm not sure when it came into effect.

15    Q     Can you tell me if plaintiff's exhibit thirteen is

16    that policy, and do you have that one?

17    A     Yes, ma'am.

18    Q     Is that the policy?

19    A     Yes, ma'am.

20    Q     A two-page policy?  And that is the federal law

21    that Work Force follows?

22    A     Yes, ma'am.

23    Q     In January two thousand five, did Work Force become

24    self-insured as far as their health insurance?

25    A     I believe it was January, yes, ma'am.
```

```
 1   Q     Okay.  And what does that mean for Work Force?

 2   A     We just, instead of having a company like Blue

 3   Cross/Blue Shield or Aetna or somebody like that, we

 4   have a self-insurance program that we insure ourselves

 5   and we have a, I'm trying to think of what the name of

 6   it is, the company is -- it's not an underwriter,

 7   reinsurance.

 8   Q     So now Work Force -- If an employee is sick, Work

 9   Force pays that doctor bill itself, is that correct?

10   A     No, ma'am.  We have a third party administrator

11   that handles all that.

12   Q     But instead of paying an insurance company, it's

13   coming out of Work Force's money?

14   A     Right.

15   Q     Either way it's coming out of Work Force's money,

16   but did you make the determination that was going to

17   save you money to be self-insured?

18   A     Yes, ma'am.

19   Q     All right.  And the self-insurance process, you

20   don't just decide one day in January of two thousand

21   five we're going to be self-insured now and cover all

22   medical bills, correct?

23   A     Correct.

24   Q     How long did that process take, Work Force or Cone

25   Financial Group?
```

```
 1  A    I wasn't involved in taking the self-insurance

 2  program.

 3  Q    In the summer of two thousand four, would the

 4  wheels have already been turning to be self-insured?

 5  A    I don't know.

 6  Q    Do you know if there was any discussion in the

 7  summer of two thousand four that in January two thousand

 8  five we are going to be self-insured and pay our own

 9  medical?

10  A    I don't know when that would have started.

11  Q    Would it have been as much as a year prior?

12  A    I don't know.

13  Q    Had Miss Cooper not been terminated, would Work

14  Force have had to pay the birth of her child in January

15  two thousand five under their self-insurance policy?

16  A    I'm not sure.  I mean insurance would pay just as

17  any other insurance.

18  Q    But you're self-insured now?

19  A    Mm-hmm.

20  Q    Not Blue Cross/Blue Shield?

21  A    No, ma'am.

22          MS. HAYNES:  That's all the questions I have,

23  Your Honor.

24                  CROSS EXAMINATION

25              BY MS. MARKS OF DOUGLAS WILSON:
```

EXHIBIT 16

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


```
LAUREN COOPER,                 )
                               )
     Plaintiff,                )
                               )        CIVIL ACTION NO.
     v.                        )          3:06cv138-MHT
                               )             (WO)
AMBASSADOR PERSONNEL, INC., )
                               )
     Defendant.                )
```

JUDGMENT

On the 14th day of March, 2007, after this cause had

been submitted to a jury, a verdict was returned as

follows:

Pregnancy-Discrimination Claim

1.  Has Lauren Cooper proved by a
preponderance of the evidence that her pregnancy
was a motivating factor for the decision by
Ambassador Personnel to terminate her, even
though other factors may have also motivated
Ambassador?

```
          Yes    X
          No    _____
```

If the answer to question 1 is "no," then you will have found that Cooper may not recover against Ambassador Personnel on this claim, and you need not answer question 2. If the answer to question 1 is "yes," then you need to answer question 2.

   2. Has Ambassador Personnel proved by a preponderance of the evidence that it would have taken the same adverse employment action against Cooper even in the absence of the factor of her pregnancy?

                        Yes    __X__
                        No     _____

If the answer to question 1 is "yes" and the answer to question 2 is "no," then you will have found that Cooper may recover against Ambassador Personnel on this claim.

                        **XXX**

SO SAY WE ALL.

DONE, this the 14th day of March, 2007.

                        /s/ Roy Sheppard
                        FOREPERSON

It is therefore the ORDER, JUDGMENT, and DECREE of the court that judgment is entered in favor of defendant Ambassador Personnel, Inc., and against plaintiff Lauren Cooper, with plaintiff Cooper taking nothing by her complaint.

                        2

It is further ORDERED that costs are taxed against plaintiff Cooper, for which execution may issue.

The clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure.

DONE, this the 15th day of March, 2007.


        /s/ Myron H. Thompson
    UNITED STATES DISTRICT JUDGE

EXHIBIT 17

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER, individually                )
and as next friend of her child, BCC,      )
                                           )
    Plaintiffs,                         )
                                           )
v.                                         )    CASE NO.: 3:07cv615-F
                                           )
AMBASSADOR PERSONNEL, INC.,                )
BLUE CROSS AND BLUE SHIELD                 )
OF GEORGIA, SELF INSURANCE                 )
PLAN OF AMBASSADOR                         )
PERSONNEL AND CONE FINANCIAL               )
GROUP AS THIRD PARTY                       )
ADMINISTRATOR,                             )
                                           )
    Defendants.                         )


STATE OF GEORGIA                )
                               )
COUNTY OF THOMAS                )

## AFFIDAVIT OF KENNETH CONE

Before me, the undersigned authority, a Notary Public in and for said state and county, personally appeared KENNETH CONE, and after being duly sworn, under oath, deposes and says the following:

1.    My name is KENNETH CONE, and I am the Chairman and CEO of Ambassador Personnel, Inc.

2.    Ambassador Personnel, Inc. was formed on January 1, 2006, immediately following the dissolution of WorkStaff Personnel, L.L.C., which was dissolved on December 31, 2005.

3.    The health insurance plan referred to in the First Amended Complaint of

*Lauren Cooper, et al. v. Ambassador Personnel, Inc., et al.* is, and at all times pertinent to

this lawsuit, has been funded by Ambassador Personnel. The health insurance plan is

administered by an independent third party administrator, Taylor Benefit Resource, which

is in no way connected to Ambassador Personnel, Inc. The First Amended Complaint

referred to above refers to Self-Insurance Plan of Ambassador Personnel and Cone

Financial Group as third party administrator. These entities do not exist. They are in no

way connected to Ambassador Personnel, Inc.

"The above information is true and correct to the best of my knowledge and belief."

KENNETH CONE

SWORN TO and SUBSCRIBED before me on this the 23rd day of
January , 2008.

Rita L. Bundrick
NOTARY PUBLIC
My commission expires: 4-30-09

2

EXHIBIT 18

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE FILED

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION MAR 14 2007

LAUREN COOPER,                    )

            Plaintiff,            )                    CLERK
                                  )         U. S. DISTRICT COURT
                                  )         MIDDLE DIST. OF ALA.
        v.                        )         CIVIL ACTION NO.
                                  )         3:06cv138-MHT
                                  )
AMBASSADOR PERSONNEL, INC.,)
                                  )
            Defendant.            )


                    VERDICT

            Pregnancy-Discrimination Claim

    1.   Has Lauren Cooper proved by a preponderance of
the evidence that her pregnancy was a motivating factor
for the decision by Ambassador Personnel to terminate
her, even though other factors may have also motivated
Ambassador?


                    Yes    ___✓___

                    No     _____


If the answer to question 1 is "no," then you will have
found that Cooper may not recover against Ambassador
Personnel on this claim, and you need not answer question

2.  If the answer to question 1 is "yes," then you need to answer question 2.


    2.  Has Ambassador Personnel proved by a preponderance of the evidence that it would have taken the same adverse employment action against Cooper even in the absence of the factor of her pregnancy?

                    Yes    ___✓___

                    No     _____


If the answer to question 1 is "yes" and the answer to question 2 is "no," then you will have found that Cooper may recover against Ambassador Personnel on this claim.


<u>Damages</u>

    3.  If you find that Cooper may recover on her claim against Ambassador Personnel, how much may she recover in damages?

    a.  Medical bills

                                        $_____

2

b.   Emotional distress

$_____

c.   Lost earnings and benefits

$_____

d.   Punitive damages

$_____


SO SAY WE ALL.

DONE, this the _14_ th day of March, 2007.

_Roy Sheppard_____
FOREPERSON

EXHIBIT 19

Westlaw.

208 Fed.Appx. 742                                                                                      Page 1
208 Fed.Appx. 742, 2006 WL 3450156 (C.A.11 (Fla.))
**(Cite as: 208 Fed.Appx. 742)**

Morris v. Bert Bell/Pete Rozelle NFL Player Retirement Plan
C.A.11 (Fla.),2006.
This case was not selected for publication in the Federal Reporter.Please use FIND to look at the applicable circuit court rule before citing this opinion. Eleventh Circuit Rule 36-2. (FIND CTA11 Rule 36-2.)
   United States Court of Appeals,Eleventh Circuit.
   Eugene MORRIS, a.k.a. "Mercury,", Plaintiff-Appellant,
v.
BERT BELL/PETE ROZELLE NFL PLAYER RETIREMENT PLAN, NFL Player Supplemental Disability Plan, Defendants-Appellees.
No. 06-12522
**Non-Argument Calendar.**

Nov. 30, 2006.

   **Background:** After commencing and settling prior declaratory judgment action regarding retirement pension benefits, employee sued retirement plan and supplemental disability plan, pursuant to the Employee Retirement Income Security Act (ERISA), alleging that he was a vested beneficiary pursuant to plan and supplemental plan. The United States District Court for the Southern District of Florida, No. 05-21369-CV-JAL, granted defendants' motion to dismiss. Employee appealed.

   **Holding:** The Court of Appeals held that employee's action was barred by res judicata.

Affirmed.

West Headnotes

**[1] Judgment 228 ☞585(2)**

228 Judgment
   228XIII Merger and Bar of Causes of Action and Defenses
      228XIII(B) Causes of Action and Defenses Merged, Barred, or Concluded

      228k585 Identity of Cause of Action in General
         228k585(2) k. What Constitutes Identical Causes. Most Cited Cases
Employee's prior declaratory judgment action to recover retirement pension benefits involved the same cause of action, for res judicata purposes, as current lawsuit brought pursuant to the Employee Retirement Income Security Act (ERISA) and alleging that he was a vested beneficiary pursuant to retirement plan and supplemental disability plan; both cases involved employee's claim that he should receive higher monthly retirement benefits pursuant plan, and regardless of fact that employee's current lawsuit cited to ERISA and irrespective of his present age, he was only seeking relief under plan. Employee Retirement Income Security Act of 1974, § 2 et seq., 29 U.S.C.A. § 1001 et seq.

**[2] Judgment 228 ☞644**

228 Judgment
   228XIV Conclusiveness of Adjudication
      228XIV(A) Judgments Conclusive in General
         228k643 Nature of Action or Other Proceeding
            228k644 k. In General. Most Cited Cases

**Judgment 228 ☞713(1)**

228 Judgment
   228XIV Conclusiveness of Adjudication
      228XIV(C) Matters Concluded
         228k713 Scope and Extent of Estoppel in General
            228k713(1) k. In General. Most Cited Cases
Parties to prior declaratory judgment fully litigated all issues relating to employee's claim for higher monthly retirement benefits and, thus, second suit to recover those benefits was barred by the doctrine of res judicata.

**\*742** Eugene Morris, Miami, FL, pro se.

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

208 Fed.Appx. 742
208 Fed.Appx. 742, 2006 WL 3450156 (C.A.11 (Fla.))
**(Cite as: 208 Fed.Appx. 742)**

*743 Edward A. Scallet, Douglas W. Ell, Groom Law Group, Ctd., Washington, DC, Samuel A. Danon, Hunton & Williams, Miami, FL, for Defendants-Appellees.

Appeal from the United States District Court for the Southern District of Florida. D.C. Docket No. 05-21369-CV-JAL.

Before DUBINA, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

**1 Eugene "Mercury" Morris, proceeding *pro se*, appeals the district court's dismissal of his complaint for employment benefits on the merits and pursuant to the doctrine of res judicata. Morris sued the Defendants, the Bert Bell/Pete Rozelle NFL Player Retirement Plan ("the Plan") and the NFL Player Supplemental Disability Plan ("the Supplemental Plan"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), alleging that he is a Vested NFL Player Beneficiary pursuant to the Plan and Supplemental Plan. He sought retirement pension benefits pursuant to the Plan, and the Retirement Board of the Plan denied his claim for benefits and his subsequent appeal because Morris had settled and released his claims to such benefits in a 1991 agreement between Morris and the Plan. The Board also found that Morris had previously litigated the question of his entitlement to the sought benefits in a prior suit, *Morris v. Bert Bell NFL Player Retirement Plan*, Case No. 96-21959-CIV-Moore ("the 1996 action"). Morris filed suit in the district court, and the court granted the Defendants' Motion to Dismiss. Morris now appeals.

Res judicata, the legal determination of which we review *de novo*, bars relitigation of matters decided in a prior proceeding when four requirements are met: (1) there must be a final judgment on the merits; (2) the decision must be rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, must be identical in both suits; and (4) the same cause of action must be involved in both cases. *Jang v. United Technologies Corp.*,

206 F.3d 1147, 1149 (11th Cir.2000); *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir.1999).

[1] In this case, it is undisputed that the first three requirements are met, thus we turn to the fourth–whether the same cause of action in this case was raised in the 1996 action.[FN1] The principal test for determining whether the causes of action are the same is whether, in comparing the substance of the actions, the primary right and duty are the same in each case. *Id.* at 1239. In general, if a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate as a former action, the two cases are really the same claim or cause of action for purposes of res judicata. *Id.*

> FN1. Morris agreed in the district court that the first three elements of *res judicata* were present and he does not challenge the district court's findings on those elements on appeal.

Morris argues on appeal that res judicata does not apply because the arguments in his 1996 complaint and those in the instant complaint are factually and legally different. Morris argues that his 1996 complaint sought a kind of employee benefit that the district court ultimately determined was not available under the former Bert Bell NFL Player Retirement Plan; he suggests that his instant claim is for retirement benefits that the district court found were excepted from Morris's 1991 settlement with the Plan. Second, Morris argues that this action, unlike his first action, was filed pursuant to ERISA. Third, Morris argues that this case is different because he is now past the retirement age of 55 years old. Finally, Morris *744 contends that res judicata principles do not apply when the prior action was for declaratory relief.

**2 We conclude that the district court did not err in determining that *res judicata* barred Morris's instant complaint. Both cases involve Morris's claim that he should receive higher monthly retirement benefits pursuant to Article 5.4 of the Retirement Plan. The type of benefits sought in this case

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

208 Fed.Appx. 742
208 Fed.Appx. 742, 2006 WL 3450156 (C.A.11 (Fla.))
(Cite as: 208 Fed.Appx. 742)

Page 3

were not excepted from Morris's 1991 settlement. Furthermore, regardless of the fact that Morris now cites to ERISA and irrespective of Morris's present age, this suit is based on the same nucleus of operative fact as the 1996 action. The primary right and duty are the same in each case, as although Morris alleges ERISA violations, he only seeks relief under the Retirement Plan. Under our precedent, res judicata applies. *See Ragsdale,* 193 F.3d at 1238-39.

[2] Finally, Morris's argument that res judicata does not bar the instant complaint because his first action was for declaratory relief is meritless. While the preclusive effect of a prior declaratory proceeding can sometimes present a special problem of issue preclusion, *see, e.g., Empire Fire & Marine Ins. Co. v. J. Transport, Inc.,* 880 F.2d 1291 (11th Cir.1989), this special problem exists only when the parties did not actually litigate an issue in a prior declaratory action, *id.* at 1296-97. The parties in this case fully litigated all issues relating to disability benefits in Morris's first action. Accordingly, the suit is barred by the doctrine of res judicata.

**AFFIRMED.**

C.A.11 (Fla.),2006.
Morris v. Bell
208 Fed.Appx. 742, 2006 WL 3450156 (C.A.11 (Fla.))

END OF DOCUMENT

© 2008 Thomson/West. No Claim to Orig. U.S. Govt. Works.

EXHIBIT 20

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN COOPER, individually**<br>**and as next friend of her child,**<br>**BENJAMIN CHRISTOPHER**<br>**COOPER,** | ) <br>) <br>) <br>) <br>) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.** <br>**3:07-cv-00615-MEF-WC** |
| **AMBASSADOR PERSONNEL, INC.,** <br>**BLUE CROSS AND BLUE SHIELD** <br>**OF GEORGIA, SELF INSURANCE** <br>**PLAN OF AMBASSADOR** <br>**PERSONNEL AND CONE FINANCIAL** <br>**GROUP AS THIRD PARTY** <br>**ADMINISTRATOR,** | ) <br>) <br>) <br>) <br>) <br>) <br>) <br>) | |
| **Defendants.** | ) | |

## REPORT OF PARTIES' PLANNING MEETING

1.     Pursuant to Fed.R.Civ.P. 26(f), a planning meeting was held on September 4, 2007, with participation by the following:

Alicia K. Haynes for plaintiff, and Evans Brittain for Ambassador Personnel, Inc., Self Insurance Plan of Ambassador Personnel, Cone Financial Group as Third Party Administrator and Cavender C. Kimble for Blue Cross and Blue Shield of Georgia.

2.    **Synopsis of the Case:**

Plaintiff's Position:        Lauren Cooper became employed with Ambassador Personnel on June 6, 2002, and progressed through the company until she was a manager of the Opelika office of Ambassador Personnel in March 2003. Cooper was subsequently terminated but elected to continue her health insurance benefits. As a result of Plaintiff's employment with Ambassador Personnel, Plaintiff and her then unborn child were participants in or qualified beneficiaries of the Cone Financial Group Health Insurance Plan as those terms are defined by COBRA, 29 U.S.C. §§ 1167(2) and (3)(B). Plaintiff's benefits were canceled without notice to her and despite Cooper paying for the continuation of her health insurance benefits. At all times relevant to this action, Kenneth Cone and The Cone Financial Group Plan was an employee welfare benefit plan as the term is defined by ERISA, 29 U.S.C. § 1002(1). Lauren Cooper brings this action to redress the legal and equitable wrongs she and her child suffered when Defendant, Ambassador Personnel, retaliated against her for filing a charge of discrimination and cancelled her health insurance in violation of the Consolidated Omnibus Budget Reconciliation Act of 1986, 29 U.S.C. § 1161 *et seq.*, ("COBRA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* (ERISA) causing them to lose medical coverage and incur unreimbursed medical expenses.

2

Defendant's Position:

Contentions of Blue Cross and Blue Shield of Georgia:

Blue Cross and Blue Shield of Georgia was the insurer for plaintiff's employer's Plan until January 1, 2005, on which date the employer cancelled the BCBSGA group health insurance policy. BCBSGA, therefore, has no contractual or other obligation to reimburse any medical expenses incurred by plaintiff after that date. BCBSGA gave all notices to plaintiff required by COBRA and ERISA. Plaintiff had the opportunity to exercise her conversion rights to continue individual coverage but did not do so. Plaintiff has failed to submit claims for reimbursement of the services she seeks in this lawsuit and has failed to exhaust administrative remedies that are available to her to contest any actions of BCBSGA on which her complaint is based.

Contentions of Ambassador Personnel, Inc., Self Insurance Plan of Ambassador Personnel and Cone Financial Group as Third Party Administrator:

These Defendants deny that they wrongfully terminated the Plaintiff's medical care benefits. These Defendants further deny that they failed to provide proper notice to the Plaintiff, or otherwise failed to comply with ERISA and COBRA requirements. In addition, the matters asserted by the Plaintiff in the matter at hand have previously

been litigated by these parties or their privies and a jury returned a verdict in favor of these Defendants, thereby preventing the Plaintiff from relitigating these issues.

     3.     **Pre-Discovery Disclosures.** The parties will exchange the information required by Local Rule 26.1(a)(1) by **October 24, 2007.**

     4.     **Discovery Plan.** The parties jointly propose to the court the following plan:

     a.     Discovery will be needed on the following subjects:

          (1)     the factual and legal issues and claims made by Plaintiff in this action;

          (2)     any and all damages claimed by Plaintiff;

          (3)     factual and legal issues related to Defendant's defenses; and

          (4)     the number of employees of the Defendant employer.

     b.     Disclosure or discovery of electronically store information should be handled as follows: Upon receipt of discovery requests, the responding party will notify the requesting party within 15 days as to any issues relating to the disclosure or discovery of electronically stored information and the parties will work in good faith to resolve the issues. The parties further agree that if the issue of producing privileged materials prevents a party from receiving requested electronic discovery,

4

the parties will work together in good faith to develop a plan addressing the producing party's privilege concerns and the disclosure of relevant and responsive information.

      c.    The Parties have agreed to an order regarding claims of privilege or protection as trial preparation material asserted after production, as follows: A party who produces any privileged document or ESI without intending to waive the privilege associated with such document or ESI may, within ten (10) days after the producing party actually discovers that such inadvertent production occurred, amend its discovery response and notify the other party that such document or ESI was inadvertently produced and should have been withheld as privileged. Once the producing party provides such notice to the requesting party, the requesting party must promptly return the specified document or ESI and any copies thereof and may not use information contained therein until the assertion of privilege has been resolved. By complying with this obligation, the requesting party does not waive any right it has to challenge the assertion of privilege.

      d.    All discovery commenced in time to be completed by **March 31, 2008.**

      e.    Interrogatories: Maximum of **25** interrogatories by each party to any other party. Responses to all Interrogatories are due 30 days after service.

     f.     Requests for Admission:  Maximum of **30** Requests for Admission by each party to any other party.  Responses to all Requests for Admission are due 30 days after service.

     g.     Depositions:  The parties propose **10** depositions by each party.  Each deposition limited to maximum of __7__ hours unless extended by agreement of parties.

     h.     Reports from retained experts under Rule 29(a)(2) due:

          From the plaintiff by **January 17, 2008**

          From the defendant by **February18, 2008**

     i.     Supplementation of discovery under Rule 26(e) due every 60 days.  Final supplementation is due no later than 30 days prior to the discovery deadline.

     5.     **Other Items.**

     a.     **Scheduling Order Conference**:  The parties do not request a conference with the court before entry of a scheduling order.

     b.     **Pretrial Conference.**  The parties request a pretrial conference in or after **June 2008**.

    c.    **Additional Parties**:

        (1)    The plaintiff should be allowed until **January 7, 2008**, to join additional parties and to amend the pleadings.

        (2)    The defendant should be allowed until **February 7, 2008**, to join additional parties and to add defenses and amend the pleadings.

    d.    All potentially dispositive motions should be filed by **April 14, 2008**.

    e.    Neither settlement nor the possibility for Alternative Dispute Resolution can be realistically evaluated prior to at least some discovery.

    f.    Final lists of trial evidence under Rule 26(a)(3) should be submitted in accordance with the pretrial order issued by the Court.

    g.    The case should be ready for trial by **August 11, 2008** and, at this time, is expected to take approximately 3 days.

    h.    The parties do not consent to the magistrate judge trying this case.

Dated this the 4th day of September, 2007.


/s/ Alicia K. Haynes                                  /s/ Cavender C. Kimble
Alicia K. Haynes                                      Cavender C. (Chris) Kimble
Attorney for Plaintiff                               Attorney for Defendant

**OF COUNSEL:**                                       **OF COUNSEL:**

**HAYNES & HAYNES, P.C.**                             **BALCH & BINGHAM, LLP**
1600 Woodmere Drive                                  1710 Sixth Avenue North
Birmingham, Alabama  35226                           P.O. Box 306 (35201-0306)
Phone:  (205) 879-0377                               Birmingham, Alabama 35203-2014
Fax:  (205) 879-3572                                 Phone:  (205) 226-3437
E-mail: akhaynes@haynes-haynes.com                   Fax:  (205) 488-5860
                                                     E-mail:  ckimble@balch.com


/s/ Evans Brittain
Evans Brittain
Attorney for Defendant

**OF COUNSEL:**

**BALL & BALL, MATTHEWS &
NOVAK, P.A.**
P.O. Box 2148
Montgomery, Alabama 36102-2148
Phone:  (334) 387-7680
E-mail:  ebrittain@ball-ball.com


8