## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN COOPER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:07-cv-00615-MEF-WC** |
| **AMBASSADOR PERSONNEL, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## PLAINTIFF'S RESPONSE AND EVIDENTIARY SUBMISSION
## TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

COME NOW, the Plaintiffs and move this Honorable Court in opposition to the Defendant's motion for summary judgment. The defendants, Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, bring this motion for summary judgment on the basis of *res judicata.* These defendants allege that Plaintiff, Lauren Cooper's, prior Title VII lawsuit. *Cooper v. Workstaff*, 3:06-cv-00138-MHT-DRB, (*Cooper I*) alleging pregnancy discrimination bars this subsequent lawsuit (*Cooper II*) on Cooper's claims of ERISA and COBRA violations.

*Res judicata* will bar a subsequent judicial proceeding if the court finds that

three essential requirements are met: (1) a court of competent jurisdiction rendered

a prior decision; (2) the prior decision was a final judgment on the merits;[1] and (3)

the same cause of action and the same parties (or their privies) were involved in

both cases. *Nevada v. United States,* 463 U.S. 110, 129-30, 103 S.Ct. 2906, 2917-

18, 77 L.Ed.2d 509 (1983); *Akin v. PAFEC, Ltd.,* 991 F.2d 1550, 1556 (11th Cir.

1993).

"In general, cases involve the same cause of action for purposes of *res*

*judicata* if the present case 'arises out of the same nucleus of operative fact, or is

based upon the same factual predicate, as a former action.' " *Israel Discount Bank*

*Ltd. v. Entin,* 951 F.2d 311, 315 (11th Cir. 1992) (quoting *Citibank, N.A. v. Data*

*Lease Fin. Corp.,* 904 F.2d 1498, 1503 (11th Cir. 1990)).  In making this

determination, the district court simply compares the factual issues explored in the

first action with those pending in the second. *Id.* "Claims are part of the same cause

of action when they arise out of the same transaction or series of transactions." *In*

*re Justice Oaks II, Ltd.,* 898 F.2d 1544, 1551 (11th Cir. 1990) (citing Restatement

---

[1]  There is currently pending in *Cooper I*, Plaintiff's Motion to Modify Final
Judgment, Doc. 120, Civil Action No. 3:06-cv-00138-MHT-TFM.  **(Plaintiff's Ex.
1).**  The jury found the defendant unlawfully discriminated against the Plaintiff and
terminated her because of her pregnancy.  In answering the juror interrogatories
propounded by the court, the jury answered the second question that Defendant
carried its burden that it used an impermissible reason but would have fired the
Plaintiff anyway.  (See trial transcript, Vol. III, p. 11 - **Plaintiff's Ex. 2)**.

2

(Second) of Judgments § 24 (1982)). The district court must look at the facts empirically rather than take a semantical view of the stated claims in order to determine whether the causes of action are the same. *I.A. Durbin, Inc. v. Jefferson Nat'l Bank,* 793 F.2d 1541, 1549 (11th Cir. 1986).

Closely analogous to the present situation is *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir. 1993). *Hermann* demonstrates that Cooper's first suit does not bar her later claim. Like this case, *Herrmann* involved two successive actions by an employee against her former employer. In the first suit, the Plaintiff employee brought a claim under the continuation of medical benefits provision (COBRA) of ERISA,29 U.S.C. §§1161-68, and in the second suit, she brought a claim for gender discrimination under Title VII, 42 U.S.C. §§ 2000e to 2000e-17. *Id.* at 224. The Seventh Circuit held that because the employee's claims were based on different "factual allegations," *id.* at 226, and had little or no "factual overlap," *id.* at 227, the two claims were not so related for purposes of res judicata as to bar the employee from bringing her Title VII claim in a second suit." *Id.* at 227.

The Seventh Circuit reasoned, in reversing the district court, that the COBRA suit concerned facts that arose after the plaintiff was fired and that therefore had no connection to the facts concerning racial and gender

discrimination on which her Title VII claim was based, all of which occurred before (though some perhaps just before) she was fired. *Id.* at 226. The Court likened the second suit to the plaintiff being fired and on her way out the door slipped on a banana peel that had been dropped carelessly by another employee. The central fact being the termination and had she not been fired she would not have slipped on the banana peel. The fact the termination caused the second injury does not mean the two claims, the termination and the slip and fall would have to be litigated in the same suit and no one would argue otherwise. *Id.*

Further, the Court reasoned that the similarity of the cases can also be compared to retaliation cases brought after a plaintiff has filed a claim alleging discrimination. "It is like the typical retaliation case, in which an employee files a claim based on some set of facts and then the employer fires him for filing the claim, precipitating a second claim. They are two claims, not one, for purposes of res judicata." *Id.* at 227 citing, *Abels v. Renfro Corp.*, 108 N.C.App. 135, 423 S.E.2d 479, 481-82 (1992). While it is true in such a case that, but for the filing of the first claim, there would not have been a second claim, the two claims are based on (largely) different facts: the first claim on whatever facts gave rise to that claim, the second claim on the filing of the first claim and the employer's response to that filing. *Id.* at 227.

4

The Seventh Circuit provided that the standard for when two claims are so closely related that they constitute the same transaction for purposes of *res judicata* is not as clear as it might seem.  In attempting to provide assistance, the Court stated, "Building on earlier statements by this and other courts, which helpfully if a little vaguely define "transaction" in terms of "core of operative facts," "same operative facts," or "same nucleus of operative facts," *Prochotsky v. Baker & McKenzie, supra*, 966 F.2d at 335; *Lane v. Peterson*, 899 F.2d 737, 744 (8th Cir. 1990); *Diversified Foods, Inc. v. First National Bank*, 985 F.2d 27, 30 (1st Cir. 1993), we suggest that two claims are one for purposes of *res judicata* if they are based on the same, or nearly the same, factual allegations.  *Parsons Steel, Inc. v. First Alabama Bank*, 474 U.S. 518, 521, 106 S.Ct. 768, 770, 88 L.Ed.2d 877 (1986); *McCarney v. Ford Motor Co.*, 657 F.2d 230, 232 (8th Cir. 1981).  If the plaintiff here had had an employment contract which protected her from being fired without cause, and she claimed that she was fired in violation both of the contract and of Title VII, these two claims would be the same claim for purposes of res judicata because, although they would not have the identical elements, the central factual issue would be the same in the trial of each of them.  It would be whether she had been fired for cause, in which event the employer would be guilty neither of a breach of the employment contract nor of discrimination, or because of

5

her race and her sex, in which event the employer would be guilty of both a breach of contract and discrimination.  Another possibility, it is true, is that she was fired neither for cause nor because of her race or her sex; but it is enough that the question why she was fired would as a practical matter be at the center of litigation of both claims.  *Id.* at 226-227.

"In the present case ... only one fact on which the two claims are based is the same-that the plaintiff was terminated. The other facts on which the Title VII claim is based concern the conduct of the defendant leading up to the plaintiff's discharge, while the other facts on which the COBRA claim is based concern the processing of her request for continued benefits after she was discharged."  *Id.* at 227.

The defendant, Workstaff, later known as Ambassador Personnel, (not any of the other Defendants were involved in *Cooper I*) acknowledged in its own trial brief that the plaintiff did not state any cause of action in her original or amended complaint alleging an ERISA or COBRA violation, "which are stand alone causes of actions not advanced by the plaintiff in this case."  (Def.'s Ex. 8, pg. 14).  Further, defendant, Workstaff, not only acknowledged the sole claim, but informed the trial court that plaintiff's **only** claim was her termination claim as a result of her pregnancy.  *Id.* at 1.

6

Further, the damage issue litigated during the *Cooper I* trial was whether the plaintiff had not been terminated, would her pregnancy and the birth of her child have been covered by insurance.  The causation event in *Cooper I* for damages was only that...plaintiff's termination.  See also, Order on Pretrial Hearing (Doc. 46 - Plaintiff's position, pp. 2-3).  (**Plaintiff's Ex. 3**).

**THE COURT**:     Had she not been terminated, would she have had to pay that?

**MS. HAYNES:**     No. No, sir.  She had insurance through Work Staff, and then when she was terminated –

**THE COURT:**     So you're saying as a result of her termination, part of her damages is she had to pay for the delivery of the child, and if she had not been terminated she would not have had to pay for that, the insurance would have covered that?

**MS. HAYNES:**     Yes, sir.

**THE COURT:**     What's wrong with that?

**MS. MARKS:**     Because there is an intervening causation factor in there, and that is that the company changed their insurance policies and became self-insured in January of oh five.  It was that act that cut off allegedly her C.O.B.R.A. benefits.  She claims that she

didn't get notice of the change of insurance.

**THE COURT**:    **If she had not been terminated, would her pregnancy have been covered?**

**MS. MARKS:**    **It would have, yes.**

**THE COURT:**    I'll allow this in.

(Trial transcript, p. 17, emphasis added).

However, in *Cooper II*, the causation event is not plaintiff's termination, but the intervening fact that the defendant arbitrarily and in complete disregard for the law, canceled plaintiff's health insurance without proper notice to the plaintiff. There is no question Plaintiff was making all payments for the continued medical coverage. Indeed, *Cooper II* follows the analogy advanced in *Hermann*, *infra*, that the termination is the only common nexus between the two cases.

Further, there are additional statutory penalties and compensatory damages in addition to the loss of medical expenses provided for the wrongful cancellation of Plaintiff's health insurance that would not have been covered under plaintiff's Title VII lawsuit in *Cooper I*. With respect to the amount of damages, the remedies available for a COBRA violation are found in 29 U.S.C. § 1132, the statute's civil enforcement section. Pursuant to Section 1132(a)(3), the provision

8

cited in Plaintiff's complaint, Plaintiff is entitled "to obtain other appropriate equitable relief" to redress violations of the statute. 29 U.S.C. § 1132(a)(3)(B). The statute further provides that "the court may in its discretion order such other relief as it deems proper." 29 U.S.C. § 1132(c)(3).

In cases where COBRA violations result in the loss of a qualified beneficiary's insurance coverage, courts have interpreted ERISA's civil enforcement statute as entitling the qualified beneficiary to compensatory damages in an amount equal to medical expenses minus deductibles and premiums. *See, e.g., Hamilton v. Mecca, Inc.,* 930 F.Supp. 1540, 1555 (S.D. Ga. 1996).

Congress has also clearly determined the extent to which punitive damages are available for such violations. Any administrator who fails to satisfy COBRA's notice provisions may, in the court's discretion, be personally liable to the aggrieved participant or beneficiary in the amount of up to $110 a day from the date of such failure or refusal. See 29 U.S.C. § 1132(c)(1); 29 C.F.R. § 2575.502c-1 (increasing civil monetary penalty under ERISA provision from $100 to $110 for violation occurring after July 29, 1997). The fine's purpose under § 1132 is punitive. Both prejudice to the participant and bad faith by the administrator are relevant factors in assessing penalties although the statute does not require a showing of prejudice to plaintiff, prejudice is a factor to be considered in

9

determining an appropriate penalty.  *Palmieri v. Coca-Cola Co.*, 2006 WL 2523027 *6 (M.D. Ga. 2006);  *Doss-Clark v. Babies and Beyond Pediatrics, P.A.,* 2007 WL 1577770, *5 (M.D. Fla. 2007).

Further, the plaintiff was caused to pay for more than just the birth of her child as a result of the cancellation of her insurance.  The defendant Blue Cross Blue Shield of Georgia has already produced pharmacy bills that plaintiff was caused to pay after the cancellation of her medical coverage.  **(See Plaintiff's Ex. 4)**.

The Defendant's motion for summary judgment fails and summary judgment is due to be denied.  *Res judicata* is not applicable.  The prior decision has a pending motion to modify and as such, the court's order in *Cooper I* wherein the jury found Ambassador Personnel was motivated by an unlawful motive to terminate the Plaintiff is not a final judgment.  Further, as discussed above, neither the causes of action, nor the same parties are involved in both cases further prohibiting *res judicata*.

Plaintiff's Employer, Ambassador Personnel, formerly Workstaff, was the only defendant in *Cooper I*.  In *Cooper II*, the administrator and Plan Sponsor, Cone Financial Group was the principal Defendant since Cone arbitrarily cancelled

10

Plaintiff's health insurance, not Ambassador.  Additionally, Plaintiff's child was not a party in *Cooper I*, but is in *Cooper II*, as he also became uninsured upon Cone's cancellation of Plaintiff's health insurance.  The child was not an employee and therefore not a party to Plaintiff's Title VII claims.

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests this Honorable Court to deny Defendants motion for summary judgment based on the reasons set forth above and allow discovery to be commenced.

Respectfully submitted,

/s/ Alicia K. Haynes
Alicia K. Haynes
Attorney for Plaintiffs

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 13th day of February 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Cavender C. Kimble

Balch & Bingham LLP

P.O. Box 306

Birmingham, AL  35201-0306


Emily Marks

Evans Brittain

Ball & Ball, Matthews & Novak, P.A.

P.O. Box 2148

Montgomery, AL  36102-2148


/s/Alicia K. Haynes_____
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER,                    )
                                  )
        Plaintiff,                )
v.                                )        CIVIL ACTION NO.
                                  )        3:06-cv-00138-MHT-DRB
WORKSTAFF PERSONNEL,              )
                                  )
        Defendant.                )

---

## PLAINTIFF'S MOTION TO MODIFY FINAL JUDGMENT

---

COMES NOW Plaintiff and moves this Honorable Court to modify its final judgment of March 15, 2007. In said order the Court provided that judgment was entered in favor of defendant, Ambassador Personnel, Inc., and against the plaintiff, Lauren Cooper with Cooper taking nothing by her complaint. Further, costs were taxed against Cooper.

Plaintiff moves this Honorable Court that based on the jury returning a verdict in this matter finding that plaintiff had proved by a preponderance of the evidence that her pregnancy was a motivating factor for the decision by Ambassador Personnel to terminate her, even though other factors may have also motivated Ambassador she is entitled to certain relief and attorney fees under Title VII.

PLAINTIFF'S
EXHIBIT

1

Under the 1991 amendments to Title VII, if the plaintiff shows merely that gender was a motivating factor in the employer's adverse employment action, she has established liability and thus may be entitled to some relief, and whether the employer has met its burden of showing it would have taken the same action in the absence of the impermissible motivating factor goes to the nature of the relief available.[1] Civil Rights Act of 1964, §§ 703(m), 706(g)(2)(B), as amended, 42 U.S.C.A. §§ 2000e-2(m), 2000e-5(g)(2)(B). *White v. Verizon South, Inc.* 299 F.Supp.2d 1235 (M.D.Ala.,2003).

In this case the jury concluded that pregnancy was a motivating factor in the employer's adverse employment decision.  Despite the employer establishing that it would have made the same decision without regard to pregnancy, the employer is still liable under Title VII for declaratory and limited forms of injunctive relief, excluding back pay or any order requiring that the employee be promoted or

---

[1]On a claim in which an individual proves a violation under section 2000e-2(m) of this title and defendant demonstrates that the defendant would have taken the same action in the absence of the impermissible motivating factor, the court -

(i) may grant declaratory relief, injunctive relief (except as provided in clause (ii)), and attorney's fees and costs demonstrated to be directly attributable only to the pursuit of a claim under section 2000e-2(m) of this title; and

(ii) shall not award damages or issue an order requiring any admission, reinstatement, hiring, promotion, or payment [to the plaintiff]. *Harris v. Shelby County Bd. of Educ.,* 99 F.3d 1078, 1084-85 n. 5 (11th Cir.1996), *quoting* 42 U.S.C. § 2000e-5(g)(2)(B) (1995).

placed in or reinstated to the position at issue. Civil Rights Act of 1964, §

706(g)(2)(B), as amended, 42 U.S.C.A. § 2000e-5(g)(2)(B). *Peoples v. State of*

*Florida Dept. of Children and Families*, 24 F.Supp.2d 1268 (N.D.Fla.,1998).

Further, this court has concluded in other such cases that, "On a claim in

which an individual proves a violation ... and a respondent demonstrates that the

respondent would have taken the same action in the absence of the impermissible

motivating factor, the court ... (i) may grant declaratory relief, injunctive relief

(except as provided in clause (ii)), and attorney's fees and costs demonstrated to be

directly attributable only to the pursuit of a claim under section 2000e-2(m) ...; and

(ii) shall not award damages or issue an order requiring any admission,

reinstatement, hiring, promotion, or payment." *White v. Verizon South, Inc.*, 299

F.Supp.2d 1235, 1243 (M.D.Ala.,2003)*; Hearn v. General Elec. Co.* 927 F.Supp.

1486, 1492 -1494 (M.D.Ala.,1996), citing  42 U.S.C.A. § 2000e-5(g)(2)(B) (West

1994).

Thus, under the prevailing law and the 1991 amendments to Title VII, if the

employee shows that gender was a motivating factor, she has established liability

and is thus entitled to limited relief, including declaratory relief, some injunctive

relief, and attorney's fees and costs.[2]

---

[2]The 1991 amendments' legislative history indicates that their purpose was to partially overrule that part of *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), which exempted employers from liability and precluded any Title VII remedy if they could produce evidence and persuade the court that an adverse employment decision would still have been made in the absence of a discriminatory motive. The House Report states:

"When Congress enacted the Civil Rights Act of 1964, it precluded all invidious consideration of a person's race, color, religion, sex or national origin in employment. The effectiveness of Title VII's ban on discrimination on the basis of race, color, religion, sex or national origin has been severely undercut by the recent Supreme Court decision in *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989). In that case, the Supreme Court concluded that 'when a plaintiff ... proves that her gender played a motivating part in an employment decision, *the defendant may avoid a finding of liability* ... by proving by a preponderance of the evidence that it would have made the same decision even if it had not taken the plaintiff's gender into account.' Id. at 258, 109 S.Ct. at 1795 (emphasis added).

\* \* \* \* \* \*

"To establish liability under proposed Subsection 703( *l*), the complaining party must demonstrate that discrimination *actually contributed* or was otherwise *a factor in* an employment decision or *action.* Thus, in providing liability for discrimination that is a ' *contributing factor,*' the Committee intends to restore the rule applied in many federal circuits prior to the *Price Waterhouse* decision that an employer may be held liable for any discrimination that is actually shown to play a role in a contested employment decision.

"Section 203 of the bill also amends Subsection 706(g) of Title VII to make clear that where a violation is established under Subsection 703( *l* ), and where the employer establishes that it would have taken the same action in the absence of any discrimination, a court may not order the employer to hire, reinstate, promote or provide back pay to the complainant. This provision is consistent with the current text of Title VII, which provides that 'no order of the court shall require the admission or reinstatement of an individual ... if such individual ... was refused employment ... for any reason other than discrimination.' 42 U.S.C. § 2000e-5(g).

\* \* \* \* \* \*

"However, the presence of a contributing discriminatory factor would still establish a Title VII violation, and a court could order other appropriate relief, including injunctive or declaratory relief, compensatory and punitive damages where appropriate, and attorney's fees."

H.R.Rep. No. 102-40(I), 102d Cong., 1st Sess. 45, 48-49, *reprinted in,* 1991 U.S.C.C.A.N. 549, 583, 586-87 (emphasis in original) (footnotes omitted); *Hearn v. General Elec. Co.,* 927 F.Supp.

4

WHEREFORE, Plaintiff respectfully moves this Honorable Court for an

order modifying its final judgment to provide for declaratory and injunctive relief,

attorney fees and costs as Plaintiff proved her pregnancy was a motivating factor.

 s/ Alicia K. Haynes
Alicia K. Haynes

**OF COUNSEL:**
**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama   35226
(205) 879-0377

### CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of March, 2007, I electronically filed
the foregoing with the Clerk of the Court using the CM/ECF system which will
send notification of such filing to the following:

Gerald C. Swann, Jr.
Emily C. Marks
Ball, Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, Alabama  36102-2148

 s/ Alicia K. Haynes
Alicia K. Haynes

---

1486, 1492 (M.D.Ala.,1996).



1                IN THE UNITED STATES DISTRICT COURT
                                 FOR
2                  THE MIDDLE DISTRICT OF ALABAMA

3

4

5

    LAUREN COOPER
6
         vs.                          CIVIL ACTION NO.
7                                     3:06-CV-138-MHT

    AMBASSADOR PERSONNEL
8

9

10

11

12

13
                         VOLUME III OF III
14                         3RD DAY OF:
                       JURY TRIAL PROCEEDINGS
15

16

17                    *  *  *  *  *  *  *  *  *  *

18

19

20

21  BEFORE:          The Hon. Myron H. Thompson

22  HEARD AT:        Opelika, Alabama

23  HEARD ON:        March 14, 2007

24  APPEARANCES:     Emily Marks, Esq.

25                   Alicia Haynes, Esq

PLAINTIFF'S
EXHIBIT
2

```
 1   WHEREUPON, THE FOLLOWING PROCEEDINGS WERE HEARD BEFORE
     THE HON. MYRON H. THOMPSON ON MARCH 14TH, 2007 AT THE
 2   FEDERAL COURTHOUSE IN OPELIKA, ALABAMA:

 3

 4                  FIRST INQUIRY FROM THE JURY:

 5        THE COURT:  Counsel, I have received the

 6   following message from the jury:  "What if the answer on

 7   question one is yes, and the second answer on question

 8   two is yes?"  Signed Roy Spread, foreperson.

 9        If I am understanding their question to me

10   correctly, it is what if the answer to question one is

11   yes and the answer to question two is yes; if that is

12   true, then the defendant would prevail and there would

13   be no award of damages.  Unless you all have a counter

14   instruction, that's what I'll instruct the jury.

15        And on the verdict form I do tell them that if

16   the answer to question one is yes and the answer to

17   question two is no, then they would proceed to determine

18   damages.  What I will actually tell them, so as to be

19   totally neutral in my response, is if the answer to

20   question one is yes and the answer to question two is

21   no, then you determine damages.  If the answer to

22   question one is yes and the answer to question two is

23   yes, then you would not determine damages.

24        I think that's the way I will answer their

25   question.
```

1           Bring them in.

2           (Whereupon, the jury was escorted into the

3    courtroom.)   -

4           THE COURT:  You can move over a little more so

5    we have all twelve.

6           Members of the jury, I've received the

7    following note from Mr. Roy Shepherd.  Who is Mr.

8    Shepherd, who is your foreperson?

9           What if the answer on question one is yes and

10   the second answer on question two is yes?  The way I'm

11   going to answer your question is this:  If the answer to

12   question one is yes, and the answer to question two is

13   no, then you would determine damages, if any, as you

14   find them from the evidence.  If the answer to question

15   one is yes and the answer to question two is also yes,

16   then you would not determine damages because you will

17   have found in favor of the defendant.

18           Does that answer your question?

19           THE FOREPERSON:  Yes, sir.

20           THE COURT:  Now I understand you would like to

21   go to lunch.  Would you still like to go to lunch?

22           THE FOREPERSON:  Yes.

23           THE COURT:  Okay, then.  You may go to lunch

24   until one-fifteen.  If you go -- Pardon me, I'm assuming

25   you will go to lunch.  While at lunch you may not

1  discuss the case among yourselves.  You may only resume

2  your deliberations after lunch when that twelfth juror

3  is in the jury room.  If eleven of you come back and

4  you've got one tardy one, you can't talk about the case.

5  Only when that twelfth juror is sitting in that jury

6  room may you resume your deliberations.  And you may now

7  go to lunch until one-fifteen.

8            Thank you very much.

9            The clerk will file the notes.

10           (Whereupon, the jury was escorted out of the

11 courtroom.)

12           THE COURT:  You realize, however, this is not

13 an issue for the jury, that if the question -- pardon

14 me.  If the answer to question one is yes, and the

15 answer to question two is no, that the plaintiff may

16 still recover attorney's fees.  Title VII does provide

17 that if the plaintiff does prove a motivating factor,

18 relief, including attorney's fees, may still be in order

19 even though damages cannot be recovered.  We'll have to

20 look at the statute on that.  But that's not an issue

21 for the jury.  I meant yes and yes.  That's right.

22           If it's yes to question one and yes to

23 question two, as long as it's yes to question one, let

24 me put it that way, the plaintiff may still be able to

25 recover some relief, even though it won't be damages.

1    But we can take that up after evening the.  Very good.

2            Thank you very much.

3            (Whereupon, a recess was taken.)

4            THE COURT:  I have received the following

5    message from the jury.  "We cannot reach a unanimous

6    decision."  Signed, the foreperson.

7            There are many choices here.  We can give an

8    Allen charge.  Another option is to simply declare a

9    mistrial.

10           And the final option is to take a majority

11   verdict, or any other percentage of the jury.  If we

12   were to take a majority verdict, or like ten out of

13   twelve, whichever number you all would want, that would

14   have to be by agreement of both sides.  I cannot impose

15   that on you all.

16           So those are the options.  So the first one is

17   obviously just to declare a mistrial and retry the case.

18   The second one is to give them an Allen charge.  Are you

19   familiar with that?

20           MS. MARKS:  Yes, Your Honor.

21           MS. HAYNES:  Yes.

22           THE COURT:  And the third one is to take a

23   majority verdict.  That would have to be by agreement of

24   the parties.

25           MS. MARKS:  So if we took the majority if it's

1    an even number --

2             THE COURT:  It would have to be a majority.

3    It would have to be seven five.  Or you could say ten.

4    In other words, I could say -- It gets a little tricky.

5    You'd have to -- Because the verdict form has a lot of

6    different questions, it would have to be a majority on

7    each question, even though that majority.

8             Would you like to discuss it with your

9    clients?

10            MS. MARKS:  Please.

11            MS. HAYNES:  We probably need some time, yes,

12   sir.

13            THE COURT:  Why don't we take a recess.  If

14   you would like to pursue the issue of a majority, then

15   I'll need to get with you on that.  You may discuss that

16   between each other.  If one of you doesn't want to do,

17   that puts an end to that.

18            MS. MARKS:  Sure.

19            (Whereupon a recess was taken.)

20            THE COURT:  Counsel, as I read to you earlier,

21   I received a message from the jury that says, "We cannot

22   reach a unanimous decision."  I understand that bo sides

23   do not agree to a less than unanimous verdict, so that

24   issue is out.  So the question is, should I declare a

25   mistrial, or should I give the modified Allen charge?

```
 1              I understand the plaintiff, Miss Cooper, wants

 2      a mistrial, is that correct?

 3              MS. HAYNES:  That is our request, Your Honor.

 4              THE COURT:  And I understand the defendant,

 5      Miss Marks, would like the modified Allen charge, is

 6      that correct?

 7              MS. MARKS:  Correct.  We actually did not have

 8      an objection to the majority vote, but the plaintiff --

 9              THE COURT:  Well that makes no difference

10      because both parties have to agree.

11              I'm going to give the Allen charge over the

12      objection of the plaintiff, but I think the plaintiff

13      doesn't object to the wording of the charge, just the

14      giving of the charge.

15              MS. HAYNES:  That's correct, Your Honor.

16              THE COURT:  Okay.  The objection is noted.  I

17      will give the Allen charge.

18              (Whereupon the jury was escorted into the

19      courtroom.)

20              THE COURT:  Members of the jury, I've received

21      the following message from you:  "We cannot reach a

22      unanimous decision."  And it's signed Roy Shepherd,

23      foreperson.  The clerk will file this message from the

24      jury.

25              Members of the jury, I'm going to give you
```

1    some additional instructions.

2         I'm going to ask that you continue your

3    deliberations in an effort to agree upon a verdict and

4    dispose of this case.  I have a few additional comments

5    I would like for you to consider as you do so.

6         This is an important case.  The trial has been

7    expensive in time, effort and money to all parties.  If

8    should fail to agree on a verdict, the case is left open

9    and must be tried again.  Obviously another trial would

10   only serve to increase the cost to both sides, and there

11   is no reason to believe the case can be tried again by

12   either side better or more exhaustively than it has been

13   tried before you.

14        Any future jury must be selected in the same

15   manner and from the same sources as you were chosen.

16   And there is no reason to believe the case could ever be

17   submitted to twelve men and women more conscientious,

18   more impartial or more competent to decide it, and that

19   more or clearer evidence could be produced.  It is

20   therefore important that you reach a verdict if you can

21   do so conscientiously.

22        Therefore, if it looks at some point as if you

23   may have difficulty in reaching a unanimous verdict, and

24   if a majority of you are agreed upon a verdict, those of

25   you who are not among the majority may want to ask

```
 1   yourselves about the basis of your feelings when a
 2   substantial number have reached a different conclusion.
 3   On the other hand, as to those of you who are among the
 4   majority who have reached a verdict, you ought to
 5   earnestly ask yourselves again, and most thoughtfully,
 6   about the basis of your feelings when those feelings are
 7   not shared by one or more of your fellow jurors.
 8           You should not hesitate to reconsider your
 9   views from time to time, and to change them if you are
10   persuaded that it is appropriate.  It is important that
11   you attempt to return a verdict, but of course only if
12   each of you can do so, having made his or her own
13   conscientious determination.  Do not surrender an honest
14   conviction as to the weight of the evidence simply to
15   reach a verdict, or solely because of the opinion of
16   your fellow jurors.
17           Each of you must decide the case for yourself,
18   but you should do so only after considering all of the
19   evidence, discussing it fully with the other jurors, and
20   listening to the views of your fellow jurors.
21           Please consider these additional instructions
22   along with the earlier instructions I gave you.
23           You may resume your deliberations.
24           Thank you.
25           (Whereupon, the jury was escorted out of the
```

```
 1    courtroom to continue its deliberations at three oh

 2    seven p.m.)

 3                    DISCUSSION IN OPEN COURT

 4                    (THE JURY IS NOT PRESENT.):

 5            THE COURT:  Counsel, I believe the charge I

 6    gave was exactly the one that I showed you previously.

 7    I don't think I misread it, did I?

 8            MS. HAYNES:  I don't have a copy of it, but it

 9    was appropriate.

10            Are you going to allow them a certain time

11    period?

12            THE COURT:  No, I don't generally set a time

13    period.  We'll just wait and try to hear from them.

14    Obviously they will let us know if they still can't

15    reach a verdict.  I expect we'll hear something probably

16    within the next hour or so.

17            MS. HAYNES:  Thank you, sir.

18            MS. MARKS:  Thank you, Your Honor.

19            THE COURT:  Court's in recess until we hear

20    from the jury.

21            (Whereupon a recess was taken.)

22                    VERDICT AT SIX P.M.:

23            THE COURT:  I understand that we have a

24    verdict.  Will you bring in the jury.

25            (Whereupon, the jury was escorted into the
```

```
 1    courtroom.)

 2              THE COURT:  The foreperson will stand here.

 3              Do we have all twelve?  Very good.

 4              I understand you've reached a verdict, is that

 5    correct?

 6              THE FOREPERSON:  Yes, Your Honor.

 7              THE COURT:  Will you hand the verdict to the

 8    Clerk of the Court.

 9              (Whereupon, the Court examined said

10    document.)

11              THE COURT:  The Clerk of the Court will file

12    the verdict and read it.

13              COURTROOM DEPUTY CLERK:  Pregnancy

14    discrimination claim.  Has Lauren Cooper proved by a

15    preponderance of the evidence that her pregnancy was a

16    motivating factor for the decision by Ambassador

17    Personnel to terminate her, even though other factors

18    may have also motivated Ambassador?

19              Yes.

20              Has Ambassador Personnel proved by a

21    preponderance of the evidence that it would have taken

22    the same adverse employment action against Cooper even

23    in the absence of the factor of her pregnancy?

24              Yes.

25              So say we all done this fourteenth day of
```

1    March two thousand seven, Roy Shepherd, foreperson.

2         THE COURT:  Now, Miss Haynes, is there

3    anything else from this jury?

4         MS. HAYNES:  Your Honor, we'd like them

5    polled, please.

6         THE COURT:  Okay then.  The clerk will now

7    poll the jury.

8         Members of the jury, what that means is as

9    your name is called answer yes if the verdict is yours,

10   answer no if the verdict is not yours.  So yes if the

11   verdict is yours, and no if the verdict is not yours.

12       The clerk will call the roll.

13        (Whereupon, the jury was polled and each and

14   every juror confirmed the verdict as read.)

15        THE COURT:  Anything else from this jury,

16   Miss Haynes?

17        MS. HAYNES:  No, Your Honor.  Thank you.

18        THE COURT:  Anything else from this jury,

19   Miss Marks?

20        MS. MARKS:  No, Your Honor.

21        THE COURT:  Okay.  Members of the jury, I'd

22   like to thank you very much for your service here.  I

23   know this has been a difficult case for you, but that's

24   one of the geniuses behind this country, is that we

25   resolve things with people like you who come into court

1    and resolve them in a reasoned way.  You've done a very

2    good job, and I think you've reached a fair verdict.

3            Thank you very much, and you are excused at

4    this time.

5            Now, Miss Haynes and Miss Marks, as I

6    indicated earlier, Title VII does provide for some

7    limited relief if you answer yes to question one.  I'm

8    not exactly sure what that is, but the Court will enter

9    a judgment based upon the verdict of the jury ultimately

10   finding in favor of the defendant and against the

11   plaintiff.  If it ends up that you want any additional

12   relief, and I suggest you read Title VII, you need to

13   file that within the next, I think it's ten business

14   days before the verdict becomes permanent.

15           I know that it does allow for attorneys' fees.

16   I'm not sure what other relief is available, and I don't

17   want to shoot from the hip.  So I suggest you read it.

18   If it ends up that there is some additional relief, I

19   think I said earlier that reinstatement might be part of

20   it but I think I was wrong on that.  Anyway, read Title

21   VII.

22           I strongly suggest, however, that in light of

23   the jury's verdict, if there is anything in particular

24   such as attorneys' fees, to go ahead and file any

25   appropriate motion.  But I think you have room here to

```
 1   reach a resolution of any of those remaining issues.

 2   Okay?

 3           MS. MARKS:  Your Honor, when you say you want

 4   filings in ten days, the defendant will not request any

 5   further action by the Court --

 6           THE COURT:  I'm really speaking to the

 7   plaintiff, to be quite candid with you.

 8           MS. MARKS:  And if the plaintiff files

 9   something within ten days, then we would have --

10           THE COURT:  Oh, you will definitely have an

11   opportunity to respond.  I would never rule on a motion

12   without a response from the other side.  But I'll also

13   give you an opportunity to resolve anything that is

14   filed.

15           But the judgment of the Court at this time is

16   judgment in favor of the defendant and against the

17   plaintiff, and that's what the judgment will say.  Any

18   motion will speak to modifying that judgment.

19           Thank you very much.

20           (Whereupon court was adjourned at six-ten

21   p.m.)

22

23

24                   * * * * * * * * *

25
```

1

2                    COURT REPORTER'S CERTIFICATE

3

4           I certify that the foregoing is a correct

5    transcript from the record of proceedings in the

6    above-entitled matter as prepared by me to the best of

7    my ability.

8

9           I further certify that I am not related to any

10   of the parties hereto, nor their counsel, and I have no

11   interest in the outcome of said cause.

12

13          Dated this 26th day of October 2007.

14

15                    /s/  Mitchell P. Reisner
                      MITCHELL  P.  REISNER,  CM, CRR,
16                    Official US Dist. Court Reporter
                      Registered Professional Reporter
17                    Certified   Real-Time   Reporter

18

19

20

21

22

23

24

25

IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, EASTERN DIVISION


LAUREN COOPER,            )
                          )
     Plaintiff,           )
                          )        CIVIL ACTION NO.
     v.                   )        3:06cv138-MHT
                          )
AMBASSADOR PERSONNEL, INC., )
                          )
     Defendant.           )


## ORDER ON PRETRIAL HEARING

A pretrial hearing was held on this case on February 2, 2007, wherein the

following proceedings were held and actions taken:

1.  **PARTIES AND TRIAL COUNSEL:** The parties before the court are

correctly named as set out below; and the designated trial counsel for the parties

are as set out below:

### PARTIES                    ### TRIAL COUNSEL

Plaintiff: Lauren Cooper       Alicia K. Haynes
                               (Haynes & Haynes)

Defendants:                    Emily C. Marks
                               (Ball, Ball, Matthews & Novak, P.A.)



PLAINTIFF'S
EXHIBIT
3

**COUNSEL APPEARING AT PRETRIAL HEARING:**

For plaintiff:            Alicia K. Haynes
                          (Haynes & Haynes)

For defendants:           Emily C. Marks
                          (Ball, Ball, Matthews & Novak, P.A.)

2.     **JURISDICTION AND VENUE:** The jurisdiction of this Court is invoked pursuant to 8 U.S.C. " 1331, 1343(a)(3) and 42 U.S.C. ' 2000e, et seq. The plaintiff was employed within Lee County, Alabama, and the Defendant does business within Lee County. Venue is proper in this Court pursuant to 28 U.S.C. ' 1391(b) and 42 U.S.C. ' 2000e-5(g). Personal jurisdiction is not contested.

3.     **PLEADINGS:** The following pleadings and amendments were allowed: Complaint, and Amended Complaint by the plaintiff; Answer to Complaint by Defendant; Motion to Dismiss Amended Complaint by Defendant and the plaintiff=s response thereto; Answer to Amended Complaint by Defendant.

4.     **CONTENTIONS OF THE PARTIES:**

      (a)     The plaintiff:

      This is a pregnancy discrimination brought by Lauren Cooper. Mrs. Cooper began working for the defendant, Ambassador Personnel (formerly known as Workstaff Personnel), on or about June 6, 2002, as a customer service representative. Mrs. Cooper was subsequently promoted to the business development manager on or about April 2003.

      In June 2004, Mrs. Cooper discovered she was pregnant and informed her regional manager, Jill Thompson, and her district manager, Doug Wilson. Less than one month after Mrs. Cooper announced her pregnancy, she was disciplined and received her first written counseling statement. Two weeks later, Mrs. Cooper again was counseled in writing by Mrs. Thompson, which resulted in a three day suspension and a warning that further disciplinary action would result in Mrs. Cooper's termination. Two weeks later, on September 10, 2004, Mrs. Thompson issued a third written counseling statement to Mrs. Cooper, terminating Mrs. Cooper's employment.

Mrs. Cooper was immediately replaced by a nonpregnant individual. As a result of her termination, Mrs. Cooper has been caused to suffer the loss of salary, benefits and her health insurance policy. Mrs. Cooper has also been caused to suffer emotional distress and physical injury as a result of her termination.

Mrs. Cooper also claims fraud in the inducement, conversion and breach of contract.

(b)    The Defendants:

Lauren Cooper went to work at the Ambassador Personnel (formerly Workstaff Personnel) location in Opelika, Alabama as a Customer Service Representative on June 6, 2002. The position of Customer Service Representative is akin to a receptionist job. As a Customer Service Representative, Ms. Cooper answered the phones, passed out applications and sent people on job assignments. When Ms. Cooper was hired as a Customer Service Representative, her supervisor was the Office Manager, Marie Butler. Marie Butler ultimately quit to find different employment. Ms. Butler was replaced as Office Manager by Amy Dudley. Amy Dudley was ultimately fired after a few months. In spring 2003, Ms. Cooper became the Business Development Manager of the Opelika office.

As the Business Development Manager, Ms. Cooper was expected to bring in new business, grow the office, and make at least 20 sales calls per week. As manager, Ms. Cooper's responsibilities also included managing the office, making cold calls, setting up meetings, delivering payroll checks, and making daily bank deposits.

The Opelika office where Ms. Cooper worked is a corporate-owned office, and corporate headquarters had the right to dictate to Ms. Cooper, as the Business Development Manager, how the office was to be run.

When Ms. Cooper was the Business Development Manager, her direct supervisor was the Regional Manager. When Ms. Cooper was first manager, her supervisor was Sandy Cannon. When Sandy Cannon left the company, Ms. Cooper's supervisor was Doug Wilson. Ms. Cooper's next supervisor was Regional Manager, John Salsman. John Salsman was replaced by Jill Thompson. Jill Thompson became the Regional Manager, and Ms. Cooper's supervisor in or around February, 2004.

The large majority of Ambassador Personnel employees are female. There are female employees at Ambassador Personnel that have become pregnant, had children,

3

and returned to work.

Ms. Cooper found out in June 2004 that she was pregnant. Ms. Cooper told Jill Thompson that she was pregnant in June 2004. Ms. Thompson never said anything derogatory about Ms. Cooper's pregnancy.

Company policy dictated that checks should be deposited into the bank the day they were received. Before she ever wrote Ms. Cooper up, Jill Thompson had discussions with her about the importance of depositing checks the same day they were received, and the fact that Ms. Cooper consistently failed to make these deposits.

Ms. Cooper was written up by Jill Thompson on or about August 18, 2004 for coming back late from lunch when they had a sales appointment, for failing to make a timely bank deposit, and insubordination. When Ms. Cooper went to lunch the day she was written up, she knew that her supervisor, Ms. Thompson, expected the two of them to leave to do sales calls by 1:00.

After Ms. Cooper was written up the first time, she understood that if she was written up again, she would get a three day suspension.

Ms. Cooper received a second write up from Jill Thompson on August 30, 2004 for unsatisfactory work quality and not making the required number of sales calls in a week. Although Ms. Cooper understood that 20 calls was the minimum number of sales calls she was supposed to make in a week, she often did not make 20 sales calls in a week. Ms. Cooper admits that she did not make 20 calls the week she was written up. Nothing in the August 30, 2004 write up is factually inaccurate. The result of Ms. Cooper's second write up was a three-day suspension. Ms. Cooper understood that if she was written up a third time, she would be terminated.

On September 10, 2004, Ms. Cooper was written up a third time by Ms. Thompson. The third write up was the result of Ms. Cooper's failure, once again, to make the company bank deposit in a timely manner. Ms. Cooper had been told numerous times previously to make deposits the day the checks come in for payment of invoices. Nothing in that write up is factually inaccurate. Ms. Cooper's employment was terminated by Ms. Thompson on September 10, 2004. Ms. Cooper was not discharged because of her pregnancy.

Ms. Cooper alleges that she was subjected to sex discrimination based upon her

4

pregnancy. Ms. Cooper claims that she felt like she was being treated differently due to her pregnancy because she was written up three times and terminated, and she was not given breaks that she asked for when she was out making sales calls. Ms. Cooper did not complain to anyone at Ambassador Personnel that she believed she was being discriminated against because she was pregnant.

Ms. Cooper applied for unemployment compensation and her request was denied because she was discharged due to misconduct after she had received warnings. The plaintiff is currently employed as a receptionist at a pediatric doctor's office. She has worked there continuously since March of 2005. With her new job, Ms. Cooper has health insurance, dental insurance, and life insurance.

The issues and problems for which Ms. Cooper had been written up had been discussed with the plaintiff previously. No one at Ambassador Personnel ever told Ms. Cooper that she was being fired because she was pregnant.

During her employment with the company, Ms. Cooper knew that the company was growing and that it was demanding more accountability from its offices. The Opelika office was not consistently profitable while Ms. Cooper was the Business Development Manager. The Opelika office has been more profitable since Ms. Cooper's employment was terminated. Ms. Cooper was not meeting Ambassador Personnel's legitimate performance expectations at the time of her discharge.

When Ms. Cooper signed employment agreements with Ambassador Personnel, she did not understand the agreements to mean she could not be fired. Ms. Cooper did not understand her employment agreements to mean that she could not quit her job. There was no contract that required Ambassador Personnel to keep Ms. Cooper employed. Ms. Cooper did not have a contract with Ambassador Personnel.

Ms. Cooper contends she was unlawfully terminated based on her pregnancy, and brings claims for fraud in the inducement, conversion and breach of contract. Ambassador Personnel, Inc. denies all of the Plaintiff's allegations and submits that it engages in nondiscriminatory employment practices. Ambassador Personnel denies that it made any misrepresentation to the Plaintiff and/or that the Plaintiff acted upon any misrepresentation to her detriment. Further, there was no contract between Ambassador Personnel and the Plaintiff which gives rise to a breach of contract claim. The Plaintiff fails to state a viable claim for conversion in her Amended Complaint, and Ambassador Personnel denies that it engaged in any activity giving rise to a claim of conversion.

5

Defendant contends that Plaintiff has not suffered any damages and is not, therefore, entitled to a verdict in her favor for damages or injunctive relief.

Defendant adopts and incorporates all defenses raised in its Answer, and Answer to the Amended Complaint, as if set forth more fully herein.

5.    **STIPULATIONS BY AND BETWEEN THE PARTIES:**

(a)    Plaintiff began employment with Ambassador Personnel on June 6, 2002, as a customer service representative.

(b)    Plaintiff was terminated on or about September 10, 2004.

It is ORDERED that:

(1) The jury selection and trial of this cause, which is to last three (3) days, are set for March 12, 2007, at 10:00 a.m., at the federal courthouse in Opelika, Alabama.

(2) The parties are to file their pre-trial briefs by February 26, 2007;

(3) Each party shall have available at the time of trial, for use by the court (the judge, the courtroom deputy clerk, and the law clerk), three copies of the list of his or her exhibits;

(4) At least three days before trial, counsel are to

6

contact the courtroom deputy clerk about the procedures for pre-marking all trial exhibits;

(5) Each party shall have available a sufficient number of copies of each photostatically reproducible exhibit for each of the jurors, opposing counsel, the courtroom deputy clerk, the law clerk, and the judge; and

(6) All understandings, agreements, and stipulations contained in this pretrial order shall be binding on all parties unless an objection is noted and filed with the court within seven (7) days from the date of this order.

DONE, this the 7th day of February, 2007.


        /s/ Myron H. Thompson
        UNITED STATES DISTRICT JUDGE

LGL010R2

PAGE 4 OF 5

RUN 07/12/07

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC.
CLAIMS PROCESSED FOR CONTRACT NUMBER 0419296558
FOR DATES OF SERVICE FROM 01-JAN-2004 THRU 01-JUN-2005

| MF CONTROL NBR CLM NBR | PAT FIRST LAST NAME | SRVC FROM SRVC THRU PAID DATE | CHRG AMOUNT ELIG AMOUNT PAID AMOUNT *ENC AMOUNT | COB AMOUNT PROV DISCNT PROV NONCOV | PAT DEDUCT PAT COINS PAT NONCOV | DENY CODE | PR | CTYP | DC | TS | MBR | SC | WP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | | -----DIAGNOSIS CODES----- | | |
| | | | | | | | | | | -----PROCEDURE CODES----- | | |
| 9 2005012900606 | LAUREN | 01/06/2005 | 26.50 | 0.00 | 16.96 | | P | CBI | 1 | 5 | 01 | Q | P |
| 0060601 | SMITH | 01/06/2005 | 26.50 | 9.54 | 0.00 | | | | | | | | |
| | | 01/31/2005 | 0.95 | 9.54 | 16.96 | | V02S1 V02S1 | | | | | | |
| | | | 0.00 | | | | | | | | | | |
| ITS PPO PROVIDER | | | | | | | | | | | | | |
| 3350 PEACHTREE RD NE | ATLANTA | | GA30126 | | | | | | | | | | |
| 6 2005023600065 | LAUREN | 01/17/2005 | 11.14 | 0.00 | 0.00 | 011 | P | PB1 | 1 | K | 01 | Q | P |
| 0006501 | SMITH | 01/17/2005 | 0.00 | 0.00 | 0.00 | | | | | | | | |
| | | 02/04/2005 | 0.00 | 0.00 | 11.14 | | V02S1 | | | | | | |
| | | | 0.00 | | | | | | | | | | |
| WHEELER PHARMACY | | | | | | | | | | | | | |
| 1709 VETERANS MEM | PARKWAY | LANETT | AL36863 | | | | | | | | | | |
| TOTAL | LAUREN | | 2,188.96 | 0.00 | 216.28 | | | | | | | | |
| | SMITH | | 1,231.41 | 1,049.22 | 104.89 | | | | | | | | |
| | | | 904.93 | 626.63 | 332.31 | | | | | | | | |
| | | | 0.00 | | | | | | | | | | |

*Enc Amount - amount that would have been paid had services not been covered under provider capitation agreement
BCBSGA Proprietary and Confidential

BCBS-090

PLAINTIFF'S EXHIBIT
4

RUN  07/12/07

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC.
CODE DESCRIPTIONS FOR CLAIMS PERTAINING TO CONTRACT NUMBER 0419296558
FOR DATES OF SERVICE FROM 01-JAN-2004  THRU  01-JUN-2005

| TYPE | CODE | DESCRIPTION |
|------|------|-------------|
| DENY CODE | 011 | THE MEMBER IS NOT EFFECTIVE ON THIS DATE OF SERVICE. |
| DIAGNOSIS | 2875 | THROMBOCYTOPENIA, UNSPECIFIED |
| DIAGNOSIS | 42789 | OTHER SPECIFIED CARDIAC DYSRHYTHMIAS |
| DIAGNOSIS | 7850 | TACHYCARDIA, UNSPECIFIED |
| DIAGNOSIS | 7851 | PALPITATIONS |
| DIAGNOSIS | V0251 | CARRIER OR SUSPECTED CARR- IER OF GROUP B STREPTOCOCCUS |
| DIAGNOSIS | V222 | PREGNANT STATE, INCIDENTAL |
| DIAGNOSIS | V288 | OTHER SPECIFIED ANTENATAL SCREENING |
| DIAGNOSIS | V7389 | SPECIAL SCREENING FOR OTHERSPECIFIED VIRAL DISEASES |
| PROCEDURE | 76805 | U/S, PREGNANT UTERUS , REAL TIME WITH IMAGE DOCUMENTATION,FETAL AND          MATERNAL EVAL)AFTER 1ST TRI(>/=14WKS0DAYS)TRANSABD APPROACH,SINGLE/1ST GESTATI |
| PROCEDURE | 93000 | ELECTROCARDIOGRAM (ECG/EKG) WITH INTERPRETATION AND REPORT |
| PROCEDURE | 93224 | EKG MONITORIN FOR 24HRS BY CONTIN ORIGINAL ECG WAVEFORM RECORDIN& STORAGE,W VISUAL SUPERIMPOSITION SCAN;INCL RECORD,SCAN ANALYS,REP,MD REV &INTERPRE |
| PROCEDURE | 93307 | ECHOCARDIOGRAPHY,REAL TIME SCAN WITH IMAGE DOCUMENTATION(2) WITHOR WITHOUT M-MODE RECORDING;COMPLETE |
| PROCEDURE | 93320 | DOPPLER ECHOCARDIOGRAPHY,PULSED WAVE AND/OR CONTINUOS WAVE WITH SPECTRAL DISPLAY;COMPLETE |
| PROCEDURE | 93325 | DOPPLER COLOR FLOW VELOCITY MAPPING(LIST SEPARATELY IN ADDITION TO CODE FOR ECHOCARDIOGRAPHY (SEE MANUAL FOR CODES) |
| PROCEDURE | 99213 | OFFICE OR OTHER OUTPATIENT VISIT,ESTABLISHED PATIENT; 15 MINUTES |
| PROCEDURE | 99244 | OFFICE OR OTHER OUTPATIENT CONSULTATION,NEW OR ESTABLISHED     PATIENT; 60 MINUTES |

END OF REPORT LGL010R2

BCBSGA Proprietary and Confidential

PAGE 1 OF 5    LGLO10R2

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC.
CLAIMS PROCESSED FOR CONTRACT NUMBER 0419396558
FOR DATES OF SERVICE FROM 01-JAN-2004 THRU 01-JUN-2005

RUN 07/12/07

| MF CONTROL NBR CLM NBR PROVIDER NAME PROVIDER ADDRESS | PAT FIRST LAST NAME | SRVC FROM SRVC THRU PAID DATE | CHRG AMOUNT ELIG AMOUNT PAID AMOUNT *ENC AMOUNT | COB AMOUNT PROV DISCNT PROV NONCOV | PAT DEDUCT PAT COINS PAT NONCOV | DENY CODE | PR | CTYP | DC | TS | MBR | SC | WF | DIAGNOSIS CODES PROCEDURE CODES |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 200420260004 9 0004990 1 WHEELER PHARMACY 1709 VETERANS MEM PARKWAY | LAUREN SMITH | 07/13/2004 07/13/2004 07/23/2004 LANETT | 25.39 25.39 0.00 0.00 AL36863 | 0.00 0.00 0.00 | 0.00 25.39 25.39 | | P | PB1 | 1 | K | 01 | Q | P | |
| 9 200423890056 0 0056001 ITS PPO PROVIDER 3350 PEACHTREE RD NE | LAUREN SMITH | 08/20/2004 08/20/2004 08/31/2004 ATLANTA | 36.00 36.00 1.18 0.00 GA30126 | 0.00 11.88 11.88 | 24.12 0.00 24.12 | | P | CB1 V222 | 1 V222 | 5 V7389 | 01 | Q | P | |
| 9 200424390051 0 0051001 ITS PPO PROVIDER 3350 PEACHTREE RD NE | LAUREN SMITH | 08/23/2004 08/23/2004 09/30/2004 ATLANTA | 250.00 250.00 8.25 0.00 GA30126 | 0.00 82.50 82.50 | 167.50 0.00 167.50 | | P | CB1 V288 | 1 V288 | 4 | 01 | Q | P | |
| 9 200424490022 1 0221201 ITS PPO PROV-EMERGENCY MEDICIN 3350 PEACHTREE RD NE | LAUREN SMITH | 08/23/2004 08/23/2004 09/30/2004 ATLANTA | 122.00 40.00 48.20 0.00 GA30126 | 0.00 82.00 82.00 | 0.00 0.00 0.00 | | P | SB1 V288 76805 | 1 | 4 | 01 | Q | P | |
| 6 200424760005 9 0005901 WHEELER PHARMACY 1709 VETERANS MEM PARKWAY | LAUREN SMITH | 08/27/2004 08/27/2004 09/10/2004 LANETT | 25.39 25.39 0.00 0.00 AL36863 | 0.00 0.00 0.00 | 0.00 25.39 25.39 | | P | PB1 | 1 | K | 01 | Q | P | |

*Enc Amount - amount that would have been paid had services not been covered under provider capitation agreement
BCBSGA Proprietary and Confidential

PAGE 2 OF 5    LGL010R2

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC.
CLAIMS PROCESSED FOR CONTRACT NUMBER 041926558
FOR DATES OF SERVICE FROM 01-JAN-2004 THRU 01-JUN-2005

RUN 07/12/07

| MF CONTROL NBR CLM NBR / PROVIDER NAME PROVIDER ADDRESS | PAT FIRST LAST NAME | SRVC FROM SRVC THRU PAID DATE | CHRG AMOUNT ELIG AMOUNT PAID AMOUNT *ENC AMOUNT | COB AMOUNT PROV DISCNT PROV NONCOV | PAT AMOUNT PAT DEDUCT PAT COINS PAT NONCOV | DENY CODE | PR CTYP DC TS | DIAGNOSIS CODES / PROCEDURE CODES | MBR SC WP |
|---|---|---|---|---|---|---|---|---|---|
| 9  2004321900506<br>0050601<br>ITS PPO PROVIDER<br>3350 PEACHTREE RD NE | LAUREN<br>SMITH<br><br><br>ATLANTA | 11/10/2004<br>11/10/2004<br>11/30/2004<br><br> | 14.00<br>14.00<br>0.63<br>0.00 GA30326 | 0.00<br>6.30<br>6.30 | 7.70<br>0.00<br>7.70 | | P  CBI  1  5 | 2875<br>2875  2875 | 01  Q  P |
| 9  2004322902052<br>0205201<br>ITS PPO PROV-CARDIO DISEASE<br>3350 PEACHTREE RD NE | LAUREN<br>SMITH<br><br><br>ATLANTA | 11/15/2004<br>11/15/2004<br>11/30/2004<br><br> | 214.00<br>138.00<br>130.60<br>0.00 GA30326 | 0.00<br>76.00<br>76.00 | 0.00<br>15.00<br>15.00 | | P  SB1  1  3 | 7851<br>99244 | 01  Q  P |
| 9  2004322902052<br>0205202<br>ITS PPO PROV-CARDIO DISEASE<br>3350 PEACHTREE RD NE | LAUREN<br>SMITH<br><br><br>ATLANTA | 11/15/2004<br>11/15/2004<br>11/30/2004<br><br> | 68.00<br>43.00<br>45.50<br>0.00 GA30326 | 0.00<br>25.00<br>25.00 | 0.00<br>0.00<br>0.00 | | P  SB1  1  1 | 7851<br>93000 | 01  Q  P |
| 9  2004324902068<br>0206801<br>ITS PPO PROV-CARDIO DISEASE<br>3350 PEACHTREE RD NE | LAUREN<br>SMITH<br><br><br>ATLANTA | 11/15/2004<br>11/15/2004<br>11/30/2004<br><br> | 178.00<br>0.00<br>17.80<br>0.00 GA30326 | 0.00<br>178.00<br>0.00 | 0.00<br>0.00<br>0.00 | | P  SB1  1  1 | 7851  7850<br>93325 | 01  Q  P |
| 9  2004324902068<br>0206802<br>ITS PPO PROV-CARDIO DISEASE<br>3350 PEACHTREE RD NE | LAUREN<br>SMITH<br><br><br>ATLANTA | 11/15/2004<br>11/15/2004<br>11/30/2004<br><br> | 252.00<br>0.00<br>25.20<br>0.00 GA30326 | 0.00<br>252.00<br>0.00 | 0.00<br>0.00<br>0.00 | | P  SB1  1  1 | 7851  7850<br>93320 | 01  Q  P |

-----DIAGNOSIS CODES------
-----PROCEDURE CODES------

*Enc Amount - amount that would have been paid had services not been covered under provider capitation agreement
*BCBSGa Proprietary and Confidential*

BCBS-088

PAGE 3 OF 5    LGL010R2

BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC
CLAIMS PROCESSED FOR CONTRACT NUMBER 041929658
FOR DATES OF SERVICE FROM 01-JAN-2004 THRU 01-JUN-2005

RUN 07/12/07

| MF CONTROL NBR / CLM NBR / PROVIDER NAME / PROVIDER ADDRESS | PAT FIRST / LAST NAME | SRVC FROM / SRVC THRU / PAID DATE | CHRG AMOUNT / ELIG AMOUNT / PAID AMOUNT / *ENC AMOUNT | COB AMOUNT / PROV DISCNT / PROV NONCOV | DENY CODE | PR | CTYP | DC | TS | MBR | SC | WP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | DIAGNOSIS CODES / PROCEDURE CODES | | | | |
| 9  2004324902066 | LAUREN | 11/15/2004 | 410.00 | 0.00 | | P | SB1  1 | | 1 | 01 | Q | P |
| 0206803 | SMITH | 11/15/2004 | 256.00 | 154.00 | | 7851  7850 | | | | | | |
| | | 11/30/2004 | 271.40 | 154.00 | | 93307 | | | | | | |
| ITS PPO PROV-CARDIO DISEASE | | | 0.00 | 0.00 | | | | | | | | |
| 3350 PEACHTREE RD NE | | ATLANTA | GA30326 | | | | | | | | | |
| 9  2004324902066 | LAUREN | 11/17/2004 | 433.00 | 0.00 | | P | SB1  1 | | 1 | 01 | Q | P |
| 0206601 | SMITH | 11/17/2004 | 277.00 | 156.00 | | 7851  7850 | | | | | | |
| | | 11/30/2004 | 292.60 | 156.00 | | 93224 | | | | | | |
| ITS PPO PROV-INTERNAL MEDICINE | | | 0.00 | 0.00 | | | | | | | | |
| 3350 PEACHTREE RD NE | | ATLANTA | GA30326 | | | | | | | | | |
| 9  2004324902772 | LAUREN | 11/19/2004 | 63.00 | 0.00 | | P | SB1  1 | | 1 | 01 | Q | P |
| 0277201 | SMITH | 11/19/2004 | 47.00 | 16.00 | 15.00 | 42789  7851 | | | | | | |
| | | 12/31/2004 | 33.60 | 16.00 | 15.00 | 99213 | | | | | | |
| ITS PPO PROV-CARDIO DISEASE | | | 0.00 | 0.00 | | | | | | | | |
| 3350 PEACHTREE RD NE | | ATLANTA | GA30326 | | | | | | | | | |
| 6  2004333600091 | LAUREN | 11/22/2004 | 51.43 | 0.00 | | P | PB1  1 | | K | 01 | Q | P |
| 0009101 | SMITH | 11/22/2004 | 44.02 | 0.00 | 15.00 | | | | | | | |
| | | 12/03/2004 | 29.02 | 7.41 | 15.00 | | | | | | | |
| WHEELER PHARMACY | | | 0.00 | | | | | | | | | |
| 1709 VETERANS MEM | PARKWAY | LANETT | AL36863 | | | | | | | | | |
| 6  2004333600092 | LAUREN | 11/22/2004 | 9.11 | 0.00 | | P | PB1  1 | | K | 01 | Q | P |
| 0009201 | SMITH | 11/22/2004 | 9.11 | 0.00 | 9.11 | | | | | | | |
| | | 12/03/2004 | 0.00 | 0.00 | 9.11 | | | | | | | |
| WHEELER PHARMACY | | | 0.00 | | | | | | | | | |
| 1709 VETERANS MEM | PARKWAY | LANETT | AL36863 | | | | | | | | | |

*Enc Amount - amount that would have been paid had services not been covered under provider capitation agreement
*BCBSGa Proprietary and Confidential*

BCBS-089