**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **LAUREN COOPER, individually** ) | |
| **and as next friend of her child, BCC,** ) | |
| ) | |
| **Plaintiffs,** ) | |
| ) | |
| v. ) | **CASE NO.:  3:07cv615-F** |
| ) | |
| **AMBASSADOR PERSONNEL, INC.,** ) | |
| **BLUE CROSS AND BLUE SHIELD** ) | |
| **OF GEORGIA, SELF INSURANCE** ) | |
| **PLAN OF AMBASSADOR** ) | |
| **PERSONNEL AND CONE FINANCIAL** ) | |
| **GROUP AS THIRD PARTY** ) | |
| **ADMINISTRATOR,** ) | |
| ) | |
| **Defendants.** ) | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE
TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**COME NOW,** the Defendants identified in the Complaint as Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually, and pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, hereby file this Reply to Plaintiff's Response to Defendants' Motion for Summary Judgment, and submits the following:

1.  The doctrine of *res judicata* exists for several reasons.  "Res judicata, or more properly claim preclusion, is a judicially made doctrine with the purpose of both giving finality to parties who have already litigated a claim and promoting judicial economy; it bars claims that could have been litigated as well."  <u>In re Atlanta Retail, Inc.</u>, 456 F.2d 1277, 1284 (11th Cir. 2006).  Further, "res judicata operates to prevent the splitting of a single cause of action and the use of

several grounds for recovery under the same action as the basis for several suits." *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 318-319 (S.D.Fla. 2001).

The bottom line in the matter at hand is that had the Plaintiff prevailed on the claims presented in *Cooper I*, *Cooper II* would have never been filed. The Plaintiff would have recovered all of the damages that she seeks to recover in this lawsuit. Further, and more importantly, the reason why she would have recovered in *Cooper I* is the exact same reason why she seeks recovery in *Cooper II*- that the COBRA plan under which the Plaintiff was receiving benefits changed without any notice to the Plaintiff, and that as a result, she was no longer covered under the plan.

The fact that the plaintiff sought this recovery under a Title VII claim in *Cooper I*, as opposed to an ERISA claim, or suppression/fraud claim, or breach of contract claim, or any other claim is not relevant. As was noted in the initial brief filed by these Defendants the relevant issue is whether the same "rights and duties" are at issue in *Cooper I* and *Cooper II*. They are. The rights that the Plaintiff seeks to protect in both suits are her rights to recover under the COBRA plan. The duty at issue in both suits is the obligation of Ambassador and its privies to properly notify the Plaintiff of any changes to her COBRA plan and allow the Plaintiff to take whatever steps are necessary to continue to be covered under that plan.

As the Plaintiff notes in her Opposition Brief, another method of analyzing this issue is by determining whether the claims "arise out of the same nucleus of operative fact."

> "In general, cases involve the same cause of action for purposes of *res judicata* if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Israel Discount Bank Ltd. V. Entin*, 951 F.2d 311, 315 (11th Cir. 1992)(quoting *Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)). In making this determination, the district court simply compares the factual issues explored in the first action with those pending in the second. *Id*.

(Plaintiff's Opposition Brief at p. 2).

Therefore, a comparison should be made of "the factual issues explored in the first action with those pending in the second." In order to prevail in the matter at hand, the Plaintiff alleges and must prove that these Defendants failed to notify the Plaintiff that the COBRA program was changing or being cancelled and that she was damaged as a result thereof. Those are the critical facts that must be proven. Those exact same facts were presented in *Cooper I*, as noted in the Defendants' initial brief. Thus, the same facts, witnesses and evidence will be presented in *Cooper II* as were presented in *Cooper I*.

Thus, whether the matter is analyzed in terms of "rights and duties" or in terms of "arising out of the same nucleus of operative fact," the Defendants are entitled to judgment as a matter of law.

2.      The primary argument raised in the Plaintiff's Brief is that the cause of action in *Cooper I* is different than the cause of action in *Cooper II*. In support of this argument, the Plaintiff relies, almost exclusively, upon *Herrmann v. Cencom Cable Associates, Inc.*, 999 F.2d 223 (7th Cir. 1993). *Herrmann*, however, is easily distinguishable from the facts before this Court. In *Herrmann* the plaintiff initially filed suit to recover COBRA benefits under ERISA. ("*Herrmann I*"). The plaintiff later sought to recover under Title VII for gender and pregnancy discrimination. ("*Herrmann II*"). There was one- and only one- fact presented in *Herrmann I* that was also presented in *Herrmann II*, which was the fact that the plaintiff was terminated. "In the present case, in contrast, only one fact on which the two claims are based is the same- that the plaintiff was terminated." *Herrmann*, 999 F.2d at 227. While litigating the ERISA claim in *Herrmann I*, the plaintiff did not present evidence that she later sought to rely upon in support of her Title VII claim, such as the reasons for her dismissal or any alleged discrimination that influenced her employer's

decision to terminate her. As the Court noted, the only issues and facts raised in *Herrmann I* were issues and facts that focused on what transpired <u>after</u> the plaintiff's termination, and the reasons why she did not receive COBRA coverage. The issues and facts relevant to the Title VII claims presented in *Herrmann II* focused on events that transpired <u>before</u> the plaintiff was terminated. These facts were not presented in *Herrmann I*.

> The COBRA suit concerns facts that arose *after* the plaintiff was fired and that therefore have no connection to the facts concerning racial and gender discrimination on which her Title VII claim is based, all of which occurred before (though perhaps just before) she was fired.

*Herrmann*, 999 F.2d 226 (Emphasis in original).

In stark contrast to the lack of overlapping evidence and issues presented in *Herrmann I* and *Herrmann II*, the Plaintiff in the matter at hand must litigate the exact same issues and present the exact same evidence in *Cooper II* as she did in *Cooper I*. The Defendants' liability in *Cooper II*, in a nutshell, turns on whether the Plaintiff was provided notice of the cancellation of the insurance program, and thereby deprived of her right to continue to receive COBRA coverage, which everyone agrees that she was receiving up until the time that the plan was changed. In *Cooper I* that exact same issue was presented, and the plaintiff testified and presented evidence that no such notice was given.

Thus, this case is distinguishable from *Herrmann* not only based on the fact that both *Cooper I* and *Cooper II* focus on facts and issues that took place after the Plaintiff's termination, but also on the fact that the ***exact*** same issues are being addressed in both *Cooper I* and *Cooper II*. This was not the scenario addressed by the *Herrmann* Court.

In her brief, the Plaintiff refers to the *Herrmann* Court's "banana peel" analogy, wherein the *Herrmann* Court states that a plaintiff would not be required to litigate a negligence claim with a

4

Title VII claim. The Court reasoned that the mere fact that the termination, which serves as the basis of the Title VII claim, had the effect of causing the plaintiff to leave the office and slip on a banana peel, was insufficient to invoke *res judicata* because the issues and facts presented in the Title VII claim and the negligence claim would be completely different.

Just as the facts surrounding <u>Herrmann</u> are distinguishable from the matter at hand, so too are the facts surrounding the banana peel analogy. An entirely different result would be reached with regard to the banana peel analogy had the plaintiff in that hypothetical introduced evidence during the Title VII trial of that fact that a co-employee dropped the banana peel and did not pick it up, and that as a result the plaintiff slipped and fell, thereby injuring herself and causing her to incur medical bills and other damages.

Thus, while the <u>Herrmann</u> decision may stand for the proposition that a plaintiff is not ***required*** to litigate ERISA claims with Title VII claims, it certainly does not stand for the proposition that a plaintiff may litigate the exact same facts and issues that are necessary to prevail on an ERISA claim in a Title VII lawsuit, and after being denied recovery in that suit, relitigate the exact same issues and rely upon the exact same facts in another lawsuit, the only difference being that the second lawsuit was brought under ERISA, as opposed to Title VII.

3.    In further support of her argument the Plaintiff incorrectly states that the only issue before the Court in <u>Cooper I</u> concerned the Plaintiff's termination and the reasons for the termination.

> Further, the damage issue litigated during the <u>Cooper I</u> trial was whether the plaintiff had not been terminated, would her pregnancy and the birth of her child have been covered by insurance. The causation event in <u>Cooper I</u> for damages was only that … plaintiff's termination."

(Plaintiff's Opposition Brief at p. 7). The Plaintiff goes on to state that *Cooper II* deals with a different issue than was addressed in *Cooper I*, namely whether the Plaintiff was provided notice of the change in the insurance plan under which she was covered.

> However, in *Cooper II*, the causation event is not plaintiff's termination, but the intervening fact that the defendant arbitrarily and in complete disregard for the law, canceled plaintiff's health insurance without proper notice to the plaintiff.

(Plaintiff's Opposition Brief at p. 8). The Plaintiff's contention in this regard is just plain wrong, and completely at odds with the evidence and issues presented in *Cooper I*. As the Defendants note in their initial brief, the Plaintiff, in *Cooper I*, did present evidence that the plan changed and did present evidence that she was not notified.

The fact that such evidence was presented in *Cooper I*, of course, begs the question - If recovery of medical expenses surrounding the Plaintiff's recovery turned solely on "plaintiff's termination," as the Plaintiff now contends, why then in *Cooper I* did the Plaintiff, on numerous occasions, reference the fact that she was not provided notice that the plan had changed? The answer is very simple. The Plaintiff had to present this evidence in *Cooper I* in order to complete the causal link between her termination and the recovery of the medical bills.

Contrary to the Plaintiff's contention in her brief, "plaintiff's termination" was ***not*** the only "causation event in *Cooper I*." A fact that may not have been stressed enough in the original Brief filed by these Defendants is that everyone acknowledges that immediately following her termination, the Plaintiff was paying for and receiving COBRA coverage, as evidenced by Exhibit 4 to Plaintiff's Opposition Brief, which sets out payments made to, or on behalf of the Plaintiff, by Blue Cross/Blue Shield, who was the company that provided COBRA benefits to the Plaintiff prior to the plan changing on January 1, 2005. The reason why the Plaintiff no longer received COBRA coverage

6

was because she did not change to the new plan, which the Plaintiff claims occurred because she was not provided notice that the plan was changing and therefore did not know what to do to remain covered under the COBRA coverage. As noted in the original Brief filed by these Defendants, the Plaintiff acknowledged all of this during the *Cooper I* trial. *See* Original Brief at pp. 13-14.

Thus, the Plaintiff's termination clearly was not the sole causation event, as the Plaintiff contends in her Opposition Brief. If that were the case, the Plaintiff would have continued to be covered under the COBRA coverage, just as she was immediately after her termination. Rather, the coverage ceased because, according to the Plaintiff, she was not provided notice of the change in the COBRA plan. That is the very reason that the Plaintiff presented evidence of the lack of notice at the *Cooper I* trial, and why the plaintiff included that allegation in her *Cooper I* damage pleadings.

That issue - whether she was provided notice - and the facts surrounding that issue were critical with respect to her claim to recover medical bills and other damages incurred as a result of her not being covered under the COBRA plan. Had she only proven that she was wrongfully terminated, the only element of damages recoverable would have been the cost of the COBRA premiums (less, of course, any amount that she was responsible for paying while employed by Ambassador). In order to be entitled to recover the medical bills that she sought to recover, as evidenced by her damage pleadings and the Jury Verdict form, an additional fact had to be proven- that she did not receive proper notice. That same issue- the issue of notice- is as crucial to the outcome of the Plaintiff's claim in *Cooper II* as it was to the outcome of the Plaintiff's claim in *Cooper I*.

4.    Although the Plaintiff is not exactly clear in her Opposition Brief, it appears that the Plaintiff argues that counsel for Ambassador acknowledged in *Cooper I* that the only issue before

7

the *Cooper I* Court concerned the Plaintiff's termination. The Plaintiff cites this Court to the following exchange that took place between Judge Thompson and the parties' attorneys during a Motion in Limine hearing in *Cooper I*:

> THE COURT: Had she not been terminated, would she have to pay that?
>
> MS. HAYNES: No. No, sir. She had insurance through Work Staff, and then when she was terminated-
>
> THE COURT: So you're saying as a result of her termination, part of her damages is she had to pay for the delivery of the child, and if she had not been terminated she would not have had to pay for that, the insurance would have covered that?
>
> MS. HAYNES: Yes, sir.
>
> THE COURT: What's wrong with that?
>
> MS. MARKS: Because there is an intervening causation factor in there, and that is that the company changed their insurance policies and became self-insured in January of oh five. It was that act that cut off allegedly her C.O.B.R.A. benefits. She claims that she didn't get notice of the change of insurance.
>
> THE COURT: If she had not been terminated, would her pregnancy have been covered?
>
> MS. MARKS: It would have, yes.
>
> THE COURT: I'll allow this in.

The Plaintiff emphasizes the final exchange between Judge Thompson and counsel for the Defendant, wherein it was acknowledged that but for the termination there would have been coverage, apparently to argue that the termination was the only issue in *Cooper I*. That, however, is not the case, and the acknowledgement made in *Cooper I* is not inconsistent with the argument presented in the matter at hand. There is no doubt but that the facts surrounding the Plaintiff's termination was a very important issue in *Cooper I*. It is undisputed that had the Plaintiff continued

to work for Ambassador, there would have been no lawsuit and therefore, ultimately no claim for medical expenses or any other damages flowing from the Plaintiff no longer being covered under the COBRA plan. However, as noted above, the Plaintiff's termination was not the only reason why there was no coverage. As Defense counsel noted in her initial response to Judge Thompson's question the issue of medical coverage turned on an "intervening causation factor," which was the changing of the insurance plans and the alleged failure to provide notice to the plaintiff. Put another way, had Judge Thompson asked the question "Does the Plaintiff have to prove that the plan was changed without her being given notice, in order to recover medical expenses associated with her pregnancy?" The answer would have also been "yes." Again, this is precisely why the Plaintiff presented this evidence during *Cooper I*.

Therefore, rather than support the Plaintiff's argument, the exchange that took place between Judge Thompson and the attorneys in *Cooper I* further establishes the fact that the notice issue was an essential issue addressed in *Cooper I*.

5.   The Plaintiff also makes the following argument in an attempt to make it appear as if the Defendants position in *Cooper II* is inconsistent with the Defendants position in *Cooper I*:

> The defendant, Workstaff, later known as Ambassador Personnel, (not any of the other Defendants were involved in *Cooper I*)[1] acknowledged in its own trial brief that the plaintiff did not state any cause of action in her original or amended complaint alleging an ERISA or COBRA violation, "which are stand alone causes of actions not advanced by the plaintiff in this case." (Def.'s Ex. 8, pg. 14). Further, defendant, Workstaff, not only acknowledged the sole claim, but informed the trial

---

[1] The Defendants acknowledged in their initial brief that the Plaintiff has named additional parties in *Cooper II* that were named in *Cooper I*, likely in an attempt to avoid the *Cooper I* verdict's preclusive effect. However, as was noted in the initial brief, under 11th Circuit law, the other Defendants that actually exist are in privity with Ambassador and therefore *Cooper I* may be used by these additional Defendants. The Plaintiff does not cite this Court to any facts or law in opposition to the Defendants argument as to this particular issue.

> court that plaintiff's **only** claim was her termination as a result of her pregnancy. *Id*. at 1.

(Plaintiff's Opposition Brief at p. 6).

The Plaintiff is correct that Ambassador, in *Cooper I*, filed a trial brief and motion in limine arguing that the damages sought by the Plaintiff for medical expenses associated with her pregnancy were claims that should have brought under ERISA, and that the Plaintiff had not stated a claim under ERISA. However, as noted in the above quoted exchange, which took place in connection with the Motion in Limine filed as to the claims for medical expenses, Judge Thompson held that the Plaintiff was, by law, entitled to seek recovery for medical expenses incurred as a result of the pregnancy. In other words, Judge Thompson sided with the Plaintiff, accepting her argument that the medical expenses incurred as a result of the pregnancy were recoverable under Title VII. As noted above, the additional proof that the plaintiff was not notified necessarily comes within that claim, as without proof of lack of notice, the Plaintiff would not be able to recover medical expenses. Therefore, the fact that Judge Thompson overruled the objection present by Ambassador in *Cooper I* and held that medical expenses were an item recoverable under Title VII furthers these Defendants arguments that the Plaintiff has already had these issues presented and already had her day in court with respect to the claims she now seeks to pursue in *Cooper II*. On the other hand, if the Plaintiff was wrong when she argued that she was entitled to recover medical expenses in *Cooper I*, and in the process caused Judge Thompson to enter an incorrect ruling, the Plaintiff is judicially estopped from assuming a contrary position in *Cooper II*.

The United States Supreme Court has recently set forth the reasons why the doctrine of judicial estoppel exists.

> "[W]here a party assumes a certain position in a legal proceeding, and succeeds in

> maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *Davis v. Wakelee,* 156 U.S. 680, 689, 15 S.Ct. 555, 39 L.Ed. 578 (1895). This rule, known as judicial estoppel, "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Pegram v. Herdrich,* 530 U.S. 211, 227, n. 8, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000); see 18 Moore's Federal Practice § 134.30, p. 134-62 (3d ed. 2000) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding"); 18 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 4477, p. 782 (1981) (hereinafter Wright) ("absent any good explanation, a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory").
>
> Although we have not had occasion to discuss the doctrine elaborately, other courts have uniformly recognized that its purpose is "to protect the integrity of the judicial process," *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (C.A.6 1982), by "prohibiting parties from deliberately changing positions according to the exigencies of the moment," *United States v. McCaskey,* 9 F.3d 368, 378 (C.A.5 1993). See *In re Cassidy,* 892 F.2d 637, 641 (C.A.7 1990) ("Judicial estoppel is a doctrine intended to prevent the perversion of the judicial process."); *Allen v. Zurich Ins. Co.,* 667 F.2d 1162, 1166 (C.A.4 1982) (judicial estoppel "protect [s] the essential integrity of the judicial process"); *Scarano v. Central R. Co.,* 203 F.2d 510, 513 (C.A.3 1953) (judicial estoppel prevents parties from "playing 'fast and loose with the courts' " (quoting *Stretch v. Watson,* 6 N.J.Super. 456, 469, 69 A.2d 596, 603 (1949))). Because the rule is intended to prevent "improper use of judicial machinery," *Konstantinidis v. Chen,* 626 F.2d 933, 938 (C.A.D.C. 1980), judicial estoppel "is an equitable doctrine invoked by a court at its discretion," *Russell v. Rolfs,* 893 F.2d 1033, 1037 (C.A.9 1990) (internal quotation marks and citation omitted).

*New Hampshire v. Maine*, 532 U.S. 742, 749-750 (2001).

The Court went on to set forth the factors to be considered in determining whether a party is judicially estopped from maintaining a particular position.

> Several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be "clearly inconsistent" with its earlier position. *United States v. Hook,* 195 F.3d 299, 306 (C.A.7 1999); *In re Coastal Plains, Inc.,* 179 F.3d 197, 206 (C.A.5 1999); *Hossaini v. Western Mo. Medical Center,* 140 F.3d 1140, 1143 (C.A.8 1998); *Maharaj v. Bankamerica Corp.,* 128 F.3d 94, 98 (C.A.2 1997). Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial

acceptance of an inconsistent position in a later proceeding would create "the perception that either the first or the second court was misled," *Edwards,* 690 F.2d, at 599. Absent success in a prior proceeding, a party's later inconsistent position introduces no "risk of inconsistent court determinations," *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity. See *Hook,* 195 F.3d, at 306; *Maharaj,* 128 F.3d, at 98; *Konstantinidis,* 626 F.2d, at 939. A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. See *Davis,* 156 U.S., at 689, 15 S.Ct. 555; *Philadelphia, W., & B.R. Co. v. Howard,* 13 How. 307, 335-337, 14 L.Ed. 157 (1851); *Scarano,* 203 F.2d, at 513 (judicial estoppel forbids use of "intentional self-contradiction ... as a means of obtaining unfair advantage"); see also 18 Wright § 4477, p. 782.

*New Hampshire*, 532 U.S. at 750-751.

Thus, the following three factors are to be considered:

1) Whether the party's later position is "clearly inconsistent" with its earlier position;

2) Whether the party succeeded in persuading the Court to accept that party's earlier position, so that acceptance of an inconsistent position in a later proceeding would create "the perception that either the first court or the second court was misled;" and

3) Whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

In the matter at hand, all three factors are present. First of all, as noted above, in *Cooper I*, Ambassador argued that the damages for medical expenses related to the alleged failure to provide notice were claims arising out of ERISA, which had not been pled, and therefore should not presented to the jury. The Plaintiff, on the other hand argued that the claims were related to the Plaintiff's termination, which was properly before the Court by way of the Title VII claim, and that as a result, evidence concerning the lack of notice and damages flowing from the lack of notice were recoverable.

> Plaintiff's COBRA Insurance was cancelled on January 1, 2005, after she was terminated. The plaintiff had elected to continue her Insurance benefits, but Defendant arbitrarily cancelled plaintiff's COBRA's benefits, even though plaintiff was paying the COBRA premium. However, plaintiff was not informed of the cancellation until February 11, 2005. As such, the plaintiff received a $5,000 hospital bill in relation to her pregnancy and was without health Insurance.

(Exhibit 7 to Original Brief, *Cooper I* Plaintiff's Damage Pleading).

Now, in *Cooper II*, the Plaintiff argues that the medical expenses, and necessarily evidence relating to whether she was provided notice of the changing of the plans, were not encompassed in the Title VII claim presented in *Cooper I*, which dealt solely with the termination issue.

> Further, the damage issue litigated during the *Cooper I* trial was whether the plaintiff had not been terminated, would her pregnancy and the birth of her child have been covered by insurance. The causation event in *Cooper I* for damages was only that … plaintiff's termination."
> …
> However, in *Cooper II*, the causation event is not plaintiff's termination, but the intervening fact that the defendant arbitrarily and in complete disregard for the law, canceled plaintiff's health insurance without proper notice to the plaintiff.

(Plaintiff's Opposition Brief at p. 6, 7). These passages show, without question, that the Plaintiff's position in *Cooper I* is clearly inconsistent with the Plaintiff's position in *Cooper II*.

The second factor is also present. Judge Thompson allowed the Plaintiff to present evidence of lack of notice. The Plaintiff was allowed to seek recovery for medical expenses in *Cooper I*. The first element of damages on the *Cooper I* verdict form was for medical expenses. The Plaintiff was successful in her attempts to convince Judge Thompson that the issues of notice and medical expenses came within the Title VII claim presented in *Cooper I*.

Finally, the plaintiff would clearly be unfairly advantaged and the defendant unfairly prejudiced. The Plaintiff has had her day in court. That is what she is entitled to- one day in court. She is not entitled to relitigate this issue over and over again. A jury heard her case and ruled against her.

These defendants have already been prejudiced simply by the fact that they have been forced to expend additional time, money and resources responding to the allegations set forth in *Cooper II* and filing these motions with the Court. In the event that the Defendants were forced to relitigate the issues presented in *Cooper II*, this would be the second time that they would have to do so. This matter has been decided once and need not be decided again.

This is the result not only required by law, but also in the interest of fairness. Had Judge Thompson ruled in favor Ambassador in *Cooper I* and prohibited the Plaintiff from seeking recovery for medical expenses, and therefore prevented the plaintiff from presenting evidence that she was not given notice of the change in the plan, it would be inherently unfair to allow the Defendants to then argue that the Plaintiffs should have brought the claims for medical expenses and other damages arising out of the alleged failure to provide notice in *Cooper I*. Along those same lines, the interests of fairness prohibit the Plaintiff from prevailing on her argument in *Cooper I*, which allowed her to seek recovery for the damages incurred as a result of the alleged failure to provide notice , and then,

after being denied recovery by the jury in *Cooper I*, being able to argue that the very issues and facts that she fought so hard to have addressed in *Cooper I* should be litigated again in *Cooper II*.

6.     The Plaintiff also raises an issue as to whether she could recover additional damages in the present litigation that were not available in *Cooper I*. The damages sought by the Plaintiff in *Cooper II*, consist of compensatory damages for medical expenses (less deductibles and premiums) and punitive damages. Compensatory damages for, among other things, medical expenses, were sought by the Plaintiff in *Cooper I*. Further, punitive damages were sought under *Cooper I* as well. Therefore, this argument is without merit.

7.     Finally, the Plaintiff mentions the fact that she filed a "Motion to Modify Final Judgment" in *Cooper I*, and that this motion has not been ruled upon. The Plaintiff fails, however, to state what effect, if any, that pending motion, which seeks recovery of attorney's fees, has on the matter before this Court. It has no effect.

Judge Thompson's entered Judgment consistent with the Jury Verdict in *Cooper I*. That Judgment stated in pertinent part that "[t]he clerk of the court is DIRECTED to enter this document on the civil docket as a final judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure."

Rule 58(e) of the *Federal Rules of Civil Procedure* states as follows:

> Ordinarily, the entry of judgment may not be delayed, nor the time for appeal extended, in order to tax costs or award fees. But if a timely motion for attorney's fees is made under Rule 54(d)(2), the court *may* act before a notice of appeal has been filed and become effective to order that the motion have the same effect under Federal Rule of Appellate Procedure 4(a)(4) as a timely motion under Rule 59.

*Fed.R.Civ.P.* 58(e).

The Motion relied upon by the Plaintiff is not filed pursuant to Rule 54, as required in Rule 58. Further, even if it were, Judge Thompson has not issued an Order tolling the time in which the

15

plaintiff has to file her Notice of Appeal. Nearly a year has passed since Judge Thompson entered Judgment consistent with the jury verdict. Finally, any order entered under Rule 58, which tolls the time in which an appeal must be filed, must be entered within the applicable time period for the notice of appeal to be filed. *Mendes Junior Intern. Co. v. Banco Do Brasil*, 215 F.2d 306 (2nd Cir. 2000). Therefore, the jury's decision and the judgment entered consistent with that decision are final.

WHEREFORE, premises considered, Defendants respectfully request this court enter an order granting their Motion for Summary Judgment as there are no genuine issues of material fact and these defendants are entitled to judgment as a matter of law.

       /s/       Emily C. Marks
EMILY C. MARKS

       /s/       W. Evans Brittain
W. EVANS BRITTAIN

OF COUNSEL:

BALL, BALL, MATTHEWS & NOVAK, P.A.
2000 Interstate Park Drive
Suite 204
P.O. Box 2148
Montgomery, AL  36102-2148
(334) 387-7680

**CERTIFICATE OF SERVICE**

  I hereby certify that on February 20, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes, Esq.
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

Cavender C. (Chris) Kimble, Esq.
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, Alabama 35203-2014

                /s/  W. Evans Brittain
                OF COUNSEL


cc:  Hon. Mark E. Fuller