IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAUREN COOPER, individually and as next friend of her child, BCC, <br><br>　　Plaintiffs, <br><br>v. <br><br>AMBASSADOR PERSONNEL, INC., BLUE CROSS AND BLUE SHIELD OF GEORGIA, SELF INSURANCE PLAN OF AMBASSADOR PERSONNEL AND CONE FINANCIAL GROUP AS THIRD PARTY ADMINISTRATOR, <br><br>　　Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) 　CASE NO.: 3:07cv615-F |

## BRIEF IN SUPPORT OF SECOND MOTION FOR SUMMARY JUDGMENT

**COME NOW,** Defendants identified in the Complaint as Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually, and hereby submit this Brief in support of their Second Motion for Summary Judgment

### STATEMENT OF UNDISPUTED FACTS

1)　　On September 10, 2004 Mrs. Cooper was terminated from her employment with Defendant Ambassador Personnel. (Plaintiff's First Amended Complaint at ¶ 11).[1]

2)　　Following her termination from Ambassador Mrs. Cooper completed the necessary COBRA paperwork to allow her to continue receiving health insurance coverage through Ambassador's plan. (Plaintiff's First Amended Complaint at ¶ 12). From the date of

---

[1] Mrs. Cooper previously filed a lawsuit concerning her termination from Ambassador. that lawsuit was tried to conclusion before a jury. The initial Motion for Summary Judgment filed by these Defendants addresses the issue of res judicata presented by the trial of the first lawsuit.

1

Mrs. Cooper's termination through January 1, 2005 Mrs. Cooper received health insurance under the Ambassador plan through a policy of insurance issued by Blue Cross and Blue Shield ("BCBS"). (Exhibit 1, Cooper depo at 71:12-19).

3) Effective January 1, 2005, the Ambassador plan became a self-funded plan. (Exhibit 1, Cooper Depo at Exhibit 6). Therefore, the BCBS policy was cancelled and no longer utilized to fund the Ambassador plan. (Exhibit 1, Cooper Depo at Exhibit 6). Taylor Benefit Resources ("TBR") was retained by Ambassador to serve as the third party administrator of the self-funded plan. (Exhibit 1, Cooper Depo at Exhibit 6).

4) On January 15, 2005, Donna Whiddon, a TBR employee, mailed a letter entitled "NOTICE OF COBRA/CONTINUATION COVERAGE RATE CHANGE" to Lauren Cooper[2] and other individuals who, prior to January 1, 2005 were also receiving COBRA coverage through the Ambassador plan. (Exhibit 2, Whiddon Affidavit at ¶2, 5; Cooper Depo at Exhibit 6).

5) The letter sent to Mrs. Cooper was sent in a "batch" of letters that were also sent to the other individuals. (Exhibit 2, Whiddon Affidavit at ¶5). All of these letters were generated by a computer program, which automatically inserts the correct date. (Exhibit 2, Whiddon Affidavit at ¶3). Further the date cannot be manually changed. (Exhibit 2, Whiddon Affidavit at ¶3). The letter sent to Mrs. Cooper and all the other individuals with this batch were properly addressed, had proper postage and were properly mailed. (Exhibit 2, Whiddon Affidavit at ¶6). Finally, the letter sent to Mrs. Cooper and the other individuals in the batch was mailed by first class mail. (Exhibit 2, Whiddon Affidavit at ¶7).

6. Mrs. Whiddon is absolutely certain the letter was properly mailed to Mrs. Cooper

---

[2] The letter is addressed to Lauren Smith, which is Mrs. Cooper's maiden name. (Exhibit 1, Cooper Depo at 6:6-8).

because certain individuals who were mailed the letter in the same batch elected to continue to receive COBRA coverage through the Ambassador plan. (Exhibit 2, Whiddon Affidavit at ¶6).

7. The letter sent to Mrs. Cooper was not returned to TBR as being undeliverable. (Exhibit 2, Whiddon Affidavit at ¶7).

8. Mrs. Cooper denies receiving the January 15, 2005 letter. (Exhibit 1, Cooper Depo at 43:21-23). However, aside from the fact that Mrs. Cooper denies receiving the letter, Mrs. Cooper acknowledged that she has no reason to dispute the fact that the letter was properly addressed, stamped and mailed. (Exhibit 1, Cooper Depo at 46:2-47:18).

## ARGUMENTS AND AUTHORITIES

Mrs. Cooper's claim, in a nutshell, is that she was not provided notice of the fact that the Ambassador plan was changed to a self-funded plan, as opposed to being funded by BCBS. Therefore, she was unaware of the fact that she was supposed to make premium payments to TBR, as the third-party administrator of the plan, as opposed to BCBS. As result, she was not covered under the Ambassador plan and incurred medical bills.

Mrs. Cooper clearly and succinctly set forth the reason why she filed this lawsuit against these Defendants:

Q: And I want you to just tell me in your own words what it is that you claim that Ambassador did or failed to do that's caused you to file this lawsuit against them?

A: They did not provide me with the proper paperwork for the new insurance company, enrollment forms.

Q: Is there anything else?

A: No, sir.
(Exhibit 1, Cooper Depo at 73:20-74:3).

---

When Mrs. Cooper filled out her initial COBRA forms, she listed her last name as Smith and all of the pertinent documents refer to her maiden name as opposed to her married name. (Exhibit 1, Cooper Depo at Exhibit 9).

3

As noted above, these Defendants contend that the notice letter was properly mailed. Specifically, the letter was timely sent to the correct address with sufficient postage via first class mail. In addition, the letter was sent in a batch along with several other letters. Further, several of the individuals within the same batch as Mrs. Cooper received the letters and elected to continue their COBRA coverage.

Thus, the issue before the Court is the proper legal standard used to determine the sufficiency of notice. This issue is addressed in 29 *C.F.R* § 2520.104b-1,[3] which provides in pertinent part as follows:

> [T]he plan administrator shall use measures reasonably calculated to ensure actual receipt of the material by plan participants, beneficiaries and other specified individuals. … Material distributed through the mail may be sent by first, second or third-class mail. However, distribution by second or third-class mail is acceptable only if return and forwarding postage is guaranteed and address correction is requested. Any material sent by second or third-class mail which is returned with an address correction shall be sent again by first-class mail or personally delivered to the participant at his or her worksite.

§2520.104b-1(b)(1).

According to the express provisions cited above, the relevant issue is whether the Defendants "use[d] measures reasonably calculated to ensure actual receipt of the material"- not whether Mrs. Cooper actually received the notice. "It is well settled that the statute and its accompanying regulations are satisfied by an administrator's selection of a methods or methods 'reasonably calculated' to reach participants and proof of 'actual receipt' is not required." *Communications Workers of America v. Comcast Cable Communications, Inc.*, 2008 W.L. 696925, *2 (W.D.Pa. 2008) (*citing Custer v. Murphy Oil U.S.A., Inc*, 503 F.3d 415, 418-19 (5th Cir. 2007). "[T]he statute does not require proof of actual notice, so long as the administrator has

---

[3] The notice requirements applicable to COBRA coverage is set forth at 29 *C.F.R* §§ 2590.606-1 and 2590-606-4. §2590-606-1 applies to general notice of continuation of coverage. §2590.606-4 applies to notice requirements for plan administrators. Both sections state that the proper method of delivery of notice is set forth in §2520.104b-1. *See* §§2590.606-1(f) and 2590-606-4(f).

4

sent the notice by means reasonably calculated to reach the recipient." *Crotty v. Dakotacare Administrative Services, Inc.*, 455 F.3d 828, 829 (8th Cir. 2006) (*citing Degruise v. Sprint Corp.*, 279 F.3d 333,336 (5th Cir. 2002); *Bryant v. Food Lion, Inc.*, 100 F.Supp.2d 346, 367 (D.S.C. 2000), *aff'd*, 8 Fed.Appx. 194 (4th Cir.2001), *cert. denied*, 534 U.S. 993, 122 S.Ct. 459, 151 L.Ed.2d 377 (2001); *Marsaglia v. L. Beinhauer & Son, Co.*, 987 F.Supp. 425, 432 (W.D.Pa.1997), *aff'd*, 168 F.3d 479 (3d Cir.1998); *Keegan v. Bloomingdale's, Inc.*, 992 F.Supp. 974, 977-78 (N.D.Ill.1998).

Further, "employers are required to operate in good faith compliance with a reasonable interpretation of what adequate notice entails." *Degruise*, 279 F.2d at 336 (*citing Kidder v. H & B Marine, Inc.*, 734 F.Supp. 724, 730 n. 6 (E.D.La.1990)(quoting H.R.Rep. No. 99-453, at 653 (1985)), *aff'd in part and rev'd in part*, 932 F.2d 347 (5th Cir.1991). "Although § 1166(a)(4)(A) does not specify what steps should be taken to notify the plan participant, we have said that 'a good faith attempt to comply with a reasonable interpretation of the statute is sufficient.'" *Crotty*, 455 F.3d at 830 (*citing Chesnut v. Montgomery*, 307 F.3d 698, 702 (8th Cir.2002) (quoting *Smith v. Rogers Galvanizing Co.*, 128 F.3d 1380, 1383 (10th Cir.1997) (quotation omitted in original)).

In *Degruise* the plaintiff sued his current and former employers under ERISA. His primary claim was that he was not provided notice of his right to continue health care coverage under COBRA and that, as a result, he incurred medical expenses that would have been covered had he obtained COBRA coverage. It was undisputed that the plaintiff never received a notification letter from his employer about his rights under COBRA. However, given the fact that the employer made "a good faith attempt to comply with COBRA's notification provision" the trial court granted the employer's motion for summary judgment. This decision was affirmed on appeal, where the Court noted-

> The law requires nothing more than for an employer to make a "good faith attempt to provide notification."
>
> ...
>
> "Good faith" can be demonstrated in a variety of ways with respect to COBRA's notification requirements. An employer can hand deliver a letter to an individual; or, more commonly, send a letter via first class mail.

*Degruise*, 279 F.3d at 337 (*citing Lawrence*, 837 F.Supp. 771, 782 (finding that employer acted in "good faith" by sending COBRA notification to individual via first class mail); *Dehner v. Kansas City Southern Indus., Inc.*, 713 F.Supp. 1397 (D.Kan.1989) (employer acted in "good faith" when it hand delivered a COBRA notification letter)).

The same result was reached in *Communication Workers of America v. Comcast Cable Communications*, 2008 W.L. 696925 (W.D.Pa. 2008). The plaintiffs filed suit, claiming, among other things, that they were not provided notice of amendments to the plan, as required by ERISA. The district court, citing to § 2520.104b-1 entered summary judgment in favor of the defendants with respect that this particular issue. The court made the following observations in reaching its conclusion:

> Proof of actual notice is not required. Defendants merely were required to employ methods reasonably calculated to ensure actual receipt of notice.
>
> ...
>
> The inquiry before this court is whether the defendants employed a method that was reasonably calculated to provide actual notice of the change in benefits, not whether notice was actually mailed to the specifically individually-named plaintiffs. Defendants chose a form of notice sanctioned by the Secretary of Labor's applicable regulation.
>
> ...
>
> Permitting plaintiffs to proceed on little more than a direct assertion of non-receipt and weak and tenuous circumstantial evidence to support that assertion "would essentially require proof of receipt on the employer's part where the regulations only require proof of mailing. *Custer*, 503 F.3d at 421. The courts have uniformly have rejected such a proposition where the record contains adequate proof of mailing. Accordingly, summary judgment in defendants' favor is appropriate at Count One.

*Communication Workers of America* at *5.

The facts before this Court are the same as the facts set forth in *Degruise* and

*Communication Workers of America*. Mrs. Cooper has filed suit claiming that she was not provided notice as is required under ERISA, and more specifically, COBRA.

In response to these claims the Defendants have provided sufficient evidence of the fact that notice was provided by way of the January 15, 2005 letter. This letter was mailed via first class mail, a method which §2520.104b-1 expressly states is an acceptable method. In addition, the undisputed evidence before this Court is that the notice was provided in a timely manner and was sent with proper postage and was properly mailed. Further, the letter sent to Mrs. Cooper was one of a batch of letters sent to individuals, who like Mrs. Cooper, were receiving health insurance through BCBS under COBRA coverage at the time that the plan became a self-funded plan. Several of the individuals who were sent letters in this particular batch elected to receive health insurance through the self-funded plan, which was administered by TBR, which necessarily means that these individuals received the notice that Mrs. Cooper says she did not, and therefore that the notice was mailed. Finally, Mrs. Cooper candidly acknowledged that aside from the fact that she did not receive the letter at issue, she has no reason to dispute the fact that the letter was properly addressed with proper postage and was timely placed in the mail.

Under these set of circumstances there can be no doubt but that these Defendants mailed the required notice to Mrs. Cooper. This satisfies the requirement that the Defendants "use measures reasonably calculated to ensure actual receipt." This satisfies the requirement that these Defendants make a "good faith attempt to provide notification." Therefore, these Defendant have complied with the necessary notice requirements.

## CONCLUSION

Under the applicable law, in order for these Defendant to comply with the notice requirements, the Defendants must "use measures reasonably calculated to ensure actual receipt" of the required notice. Defendants have produced uncontroverted evidence that the notice was mailed to Mrs. Cooper via first-class mail, which, according to the applicable regulations, is a sufficient means to comply with the good faith requirement placed upon the Defendants. The fact that Mrs. Cooper testified that she did not receive the notice is without consequence given these facts.

WHEREFORE, premises considered, Defendants respectfully request this court enter an order granting their Motion for Summary Judgment as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law.

/s/   W. Evans Brittain
W. EVANS BRITTAIN

## CERTIFICATE OF SERVICE

I hereby certify that on April 11, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

Cavender C. (Chris) Kimble
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, Alabama 35203-2014

/s/   W. Evans Brittain
OF COUNSEL

ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF ALABAMA

EASTERN DIVISION

LAUREN COOPER, et al.,

    Plaintiffs,

Vs.

CIVIL ACTION NO.
3:07-CV-00615-MEF-WC

AMBASSADOR PERSONNEL, INC.;
BLUECROSS and BLUESHIELD of
GEORGIA, self insurance plan of
AMBASSADOR PERSONNEL and CONE
FINANCIAL GROUP as third party
administrator,

    Defendants.

* * * * * * * * * * * *

**DEPOSITION OF LAUREN COOPER**, taken pursuant to stipulation and agreement before Haley A. Phillips, Certified Court Reporter, ACCR # 151, and Commissioner for the State of Alabama at Large, in the Law Offices of Haynes & Haynes, 1600 Woodmere Drive, Birmingham, Alabama, on Wednesday, April 2, 2008, commencing at approximately 10:15 a.m.

DEFENDANT'S EXHIBIT

* * * * * * * * * * * *

HAISLIP, RAGAN, GREEN, STARKIE & WATSON, P.C.
(334) 263-4455

1   A.   No, sir.
2   Q.   Have you ever had to testify in court or
3        under any other circumstances other than on
4        the occasion associated with that lawsuit?
5   A.   No, sir.
6   Q.   And your maiden name is Smith; is that
7        correct?
8   A.   Yes.
9   Q.   When were you married?
10  A.   I got married January -- I mean, excuse
11       me -- April 25, 2003.
12  Q.   Other than Smith and Cooper, have you gone
13       by any other last names?
14  A.   No, sir.
15  Q.   And what's your date of birth?
16  A.   September 1, '79.
17  Q.   Where do you live now?
18  A.   In Valley, Alabama.
19  Q.   What's the physical address?
20  A.   I'm sorry.  1903 51st Street, Valley,
21       Alabama.
22  Q.   Who lives there with you?
23  A.   My son.

1        MR. BRITTAIN: Right.

2        Off-the-Record discussion.)

3  Q.  Let me show you Exhibit 6. You see that's

4      a January 15, 2005 letter from Taylor

5      Benefit Resource addressed to you?

6  A.  Okay.

7  Q.  And first question, is that -- it's

8      addressed to Lauren Smith; is that correct?

9  A.  It is.

10  Q.  And, like I said, I didn't bring another

11      copy. I don't mean to stand over you.

12      But the address here, 114 Morgan

13      Street, is that where you were living at

14      the time?

15  A.  Yes, sir.

16  Q.  Valley, Alabama, that's where you were;

17      right?

18  A.  Yes, sir.

19  Q.  Is that the correct ZIP code?

20  A.  36854. It is.

21  Q.  Have you ever seen this before, this

22      Exhibit 6?

23  A.  Not until today.

```
 1   A.   No, sir.
 2   Q.   Other than the fact you -- it's your
 3        testimony that you did not receive this
 4        letter, do you have any reason to believe
 5        that she didn't mail the letter?
 6             MS. HAYNES:  Object to the form.
 7   A.   No, sir.
 8   Q.   Do you have any reason to believe that she
 9        didn't put the proper postage on it --
10   A.   No, sir.
11   Q.   -- other than the fact that you didn't
12        receive it?
13   A.   No, sir.
14   Q.   And do you have any reason to believe that
15        it wasn't put in a mailbox, or whatever,
16        and sent to your address other than the
17        fact that you did not receive it?
18   A.   Right.
19   Q.   You're agreeing with me on that; correct?
20   A.   Correct.
21   Q.   And can you think of any reason why Donna
22        Whiddon or anybody over there at Taylor
23        Benefit Resource would have to
```

1   Q.   Let me ask you this.  This letter that
2        we've marked as Exhibit 6 -- And I
3        understand that it's your position you
4        never received this.  Would you agree with
5        me that if you had received this letter
6        that you would not be covered under the
7        health insurance plan that's administered
8        through Taylor Benefit Resource because you
9        didn't provide the notice to them and you
10       didn't provide the premiums?
11  A.   If I would have received that, yes, sir.
12  Q.   Okay.  And just so we're clear, as far as
13       your coverage with BlueCross BlueShield --
14       your COBRA coverage with BlueCross
15       BlueShield, you never had any problem with
16       them from the time you went on it in
17       September of '04 through December 31, '04;
18       is that correct?
19  A.   Correct.
20  Q.   I mean, you got all the necessary
21       paperwork.  The proper paperwork was sent
22       to you to allow you to continue under the
23       COBRA program during that time period; is

```
**********************************************************
*   NOTICE OF COBRA/CONTINUATION COVERAGE RATE CHANGE    *
**********************************************************
```

Mailed on:  01/15/2005

   Group #         : 1125   WORKSTAFF PERSONNEL SERVICE
   COBRA Location  : GCBR
                     GROUP COBRA

   LAUREN E SMITH
   114    MORGAN ST

   VALLEY, AL   36854


Effective January 1, 2005, Workstaff, Ambassador, Tempo and Thomas
Staffing will no long carry Blue Cross Blue Shield and Employer's
Life Health Plans.

Participants, including Cobra Participants, will roll over into the
new Platinum Plans administered by Taylor Benefit Resource, Inc.

If you are currently enrolled in BCBS or Employer's Life,
you will need to complete a new medical enrollment form.  Your
coverage will automatically roll over to the new Platinum Plan at
the current level of Deductible Coverage you have.  However, the
administration records need to be updated.  You may notice a change
in premium (please see the enclosed invoice).

The benefits for the Platinum Plans are very similar to the benefits
for BCBS and Employer's Life but there are some changes.  We have
enclosed a summary of the new benefits.  If you would like to continue
your Cobra Coverage, mail your completed medical enrollment form and
January payment to Taylor Benefit Resource, Inc.

Upon receipt of your January payment a new ID Card and booklet will be
mailed to your.

If you have any questions, please contact
Donna Whiddon
Taylor Benefit Resource, Inc.
229-225-9943 or 1-888-352-5246



DEFENDANT'S EXHIBIT 6

**REQUEST FOR CHANGE**

KH

**TBR**

Phone (229) 225-9943
Fax (229) 225-9945
Call (888) 35 CLAIM

*Taylor Benefit Resource*
164 Commercial Drive
P.O. Box 6580
Thomasville, GA 31758

COMPANY NAME: Workstaff
LOCATION: Auburn, AL
EMPLOYEE NAME: Lauren Smith
SOCIAL SECURITY #: 419 29 6558

Under the terms of our policy, I hereby request TBR to do the following:

| COVERAGE CHANGE | Change From: | Change To: | Effective Date Of Change |
|---|---|---|---|
| Medical | ☐ Single ☐ Spouse ☐ Child ☐ Family ☐ Other ☐ Plan | ☐ Single ☐ Spouse ☐ Child ☐ Family ☐ Other ☐ Plan | |
| Dental | ☐ Single ☐ Spouse ☐ Emp+1 ☐ Family ☐ Other | ☐ Single ☐ Spouse ☐ Emp+1 ☐ Family ☐ Other | 9-15-04 |
| Reason for Change | ☐ Terminated ☑ Voluntary ☐ Reduced Hours | ☐ Other _____ | |
| Name Change | | | |
| Beneficiary Change | | | |
| Address Change | | | 9/15/04 |

| Name | Relationship | Sex | Birthdate | Social Security | Add | Drop |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Employee Signature: _[signature]_
Authorized Signature & Title: _[signature]_

Date: 9-15-04
Date: 9-15-04

06/14/2004  18:36

**MEMBER ENROLLMENT APPLICATION (1)**

BCBSHP
- BlueChoice Healthcare Plan (HMO)
- BlueChoice Option (POS)

BCBSGA
- [X] BlueChoice PPO
- Traditional Health Plan
- Dental Only

Consumer Choice Option
- HMO (BCBSHP)
- POS (BCBSHP)
- PPO (BCBSGA)

GCL
- Life Only

EMPLOYMENT STATUS
- Active
- Retired  Disabled  Cobra

DATE OF EMPLOYMENT: 07 01 2004
EFFECTIVE DATE OF COVERAGE: 07 01 2004

COMPANY GROUP LOCATION:
- Hourly
- Salary

GROUP NUMBER: 1011190 000   SUB: ___
COMPANY NAME: Core Financial
EMPLOYEE HOME ADDRESS: 114 MORGAN STREET
CITY: VALLEY     STATE: AL  ZIP: 36854
COUNTY: CHAMBERS   HOME PHONE: 334 756 0328   BUSINESS PHONE: 334 319 3221

After coverage begins, will you or any dependents have any other medical insurance including Medicare? (check one) ☐ YES [X] NO
After coverage begins, will you or any dependents have any other dental insurance? (check one) ☐ YES [X] NO

Insurance Co. Name:
Policy No
Insurance Co. Address:

Are you eligible for Medicare?
- Part A / Effective Date
- Part B / Effective Date

MEDICARE HIC #:
REFUSED COVERAGE FOR: ☐ Medical  ☐ Dental  ☐ Life

Insurance Eff. Date:
Policyholder Name
Policyholder Date of Birth
Who is covered   Self   Spouse   Family
Is your spouse eligible for Medicare?
- Part A / Effective Date
- Part B / Effective Date

Is Medicare coverage related to end stage renal disease? YES  NO
Is anyone listed on this application currently covered by Blue Cross and Blue Shield of Georgia? YES  NO

LAST NAME: SMITH    FIRST: LAUREN    MI: E    DATE OF BIRTH: 09 01 1979
SOCIAL SECURITY NO: 419 29 6558
SEX: MALE [X] FEMALE   ARE YOU APPLYING FOR DENTAL INS.? [X] YES  NO   MARITAL STATUS: [X] MARRIED  SINGLE  WIDOWED  DIVORCED

Beneficiary:
- Cooper, Kevin R. — Husband
- Smith, Denise A. — Mother

DEFENDANT'S EXHIBIT 5

Jun 16 2004 16:08  Fax: 2292271141  RON&LYNELLE  P.02

BCBS-071

BCBS-072

REDACTED

06/14/2004  16:36   3347495943            WORKSTAFF                PAGE  03

## Medical Information

COMPLETE THIS SECTION FOR 2-19 EMPLOYEES AND FOR ALL LATE ENTRANTS.

Has anyone listed on this application ever been covered by Blue Cross and Blue Shield of Georgia? ☐ Yes ☐ No  Member # _____

**HEALTH QUESTIONS:** All of the following questions must be answered with respect to each person for whom you are applying for coverage. (A) Has anyone listed on this application EVER had medical advice, treatment or do you know or have reasons to know of health problems in regard to the following? CHECK YES or NO. This information will be used to evaluate medical risk, not eligibility for coverage.

Yes  No

a. NERVOUS-Brain disease; stroke; epilepsy-seizures; fainting or dizzy spells; cerebral palsy; other nervous system disorders.
b. PSYCHIATRIC-Psychiatric counseling; marriage counseling; family therapy; addiction to narcotics, barbiturates, amphetamines, or other drug dependency; nervous or mental disorders; alcoholism.
c. GENITOURINARY SYSTEM-Kidney, prostate, bladder, menstrual or other female disorders.
d. MUSCULOSKELETAL-Arthritis; rheumatism, bodily deformity; congenital abnormality; ruptured disc; or any muscle disorders.
e. CARDIOPULMONARY-High blood pressure; heart disease; circulatory disorders; disease; tuberculosis.
f. DIGESTIVE SYSTEM-Mouth; ulcers; disease of stomach; gall bladder; colon or intestines; hernia; rectal disorders.
g. EYE, EAR, NOSE, THROAT-Asthma; sinus; allergies; disease of nose or ears; disease of throat or tonsils; impairment of sight or hearing.
h. INCAPACITATION-Physical handicaps; mental retardation; disabled or incapacitated as defined by Medicare.
i. Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC), Kaposi Sarcoma, Pneumocystis Carinii Pneumonia, or Antibodies to Human T-Lymphotrophic Virus Type III (HTLV-III).
j. Sexually transmitted diseases such as syphilis, gonorrhea, herpes, genital warts.
k. Tumor or mass, cancer/liver disorders; hepatitis; thyroid disorders; blood disease; hemophilia; diabetes; skin disorders; infections or any other medical advice, examination, not disclosed above?
l. Is anyone listed on this application pregnant? If yes, when is the expected due date? 1/2005
m. Been advised to undergo a surgical operation or procedure within the next 6 months?
n. Are you currently taking prescription drugs? If yes, please list on separate sheet and attach.

I have answered all questions correctly for every person listed on application.

Applicant's Signature: *Lauren Smith*

**SECTION B**

NAME AND COMPLETE ADDRESS OF DOCTOR(S) SEEN BY YOU WITHIN LAST 2 YEARS | NAME AND COMPLETE ADDRESS OF DOCTOR(S) SEEN BY SPOUSE WITHIN LAST 2 YEARS
---|---
Dr. Gwen Cooper 502 E Thomason Cir. Opelika, AL |
Dr. Nadia Cameron 14 Medical Pk. Valley, AL |

**SECTION C** COMPLETE SECTION C FOR 20-99 EMPLOYEES.

1. Has anyone applying for coverage been treated for a serious illness (For Example: Cancer, Diabetes, Heart Disease, Cardiovascular Disease, AIDS or AIDS-related disease, Pregnancy, Mental/Nervous Disorder, Substance Abuse, or any illnesses related to a major body organ), been hospitalized, had surgery, OR incurred health-care claims in excess of $7,500 in any of the last 12 months? ☒ Yes ☐ No

COMPLETE THIS SECTION IF ANY QUESTIONS WERE ANSWERED "YES" IN SECTION A OR C.

| Person Treated | Name of Illness or Disorder | Type of Treatment Received | Treatment Dates From | To | Name and Address of Attending Physician |
|---|---|---|---|---|---|
| Lauren Smith | Pregnancy | | 6/14/04 | | Dr. Cooper 502 E Thomason Cir. Opelika, AL |
| | | | | | |

IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH A SEPARATE SHEET.
PLEASE READ REVERSE SIDE BEFORE SIGNING FOR CONDITIONAL RECEIPT AND PRIVACY INFORMATION.

I declare that all statements and information made hereon are complete and true to the best of my knowledge. I understand that any misstatements or omissions may void all coverage applied for on any member on this application on a retroactive basis for up to two (2) years from the contract effective date.

By signing this line, I understand that a pre-existing condition exclusion may apply (except for BlueChoice Healthcare Plan (HMO) and in-network BlueChoice Option (POS)) up to twelve (12) months under the BCBSHP/BCBSGA contract, as defined in the benefit booklet.

I hereby acknowledge that Blue Cross and Blue Shield of Georgia/Blue Cross Blue Shield Healthcare Plan of Georgia (BCBSGA/BCBSHP) (as applicable) has informed me of the following prior to my enrollment in their health care coverage plan.
a. number, mix and location of participating/network health care providers
b. limitations on choices of participating/network health care providers
c. disclosure of contractual relationship between participating/network provider and BCBSGA/BCBSHP

**REDACTED**

APPLICANT'S SIGNATURE: *Lauren Smith*    DATE SIGNED: 6/16/04

Jun 16 2004 16:08   Fax:2292271141   RON&LYNELLE   P.03

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER, individually )
and as next friend of her child, BCC, )
)
Plaintiffs, )
)
v. ) CASE NO.: 3:07cv615-F
)
AMBASSADOR PERSONNEL, INC., )
BLUE CROSS AND BLUE SHIELD )
OF GEORGIA, SELF INSURANCE )
PLAN OF AMBASSADOR )
PERSONNEL AND CONE FINANCIAL )
GROUP AS THIRD PARTY )
ADMINISTRATOR, )
)
Defendants. )

STATE OF GEORGIA ]
]
COUNTY OF THOMAS ]

### AFFIDAVIT OF DONNA WHIDDON

Before me, the undersigned authority, a Notary Public in and for said state and county, personally appeared DONNA WHIDDON, and after being duly sworn, under oath, deposes and says the following:

1. My name is DONNA WHIDDON, and I have personal knowledge of information contained in this Affidavit.

2. Attached hereto as Exhibit 1 is a copy of a letter that I sent to Lauren Smith. At the time that I sent this letter to Lauren Smith, I was working for Taylor Benefit Resource, Inc. This letter was sent to Lauren Smith to notify her that as of January 1,



2005, all individuals insured under the Blue Cross/Blue Shield and Employer's Life Health Plans would roll over into new Platinum Plans administered by Taylor Benefit Resource, Inc.

3. The date on this letter is computer-generated to reflect the date that the document is created. It cannot be manually changed.

4. As can be seen from the address of the letter, this letter was mailed to Lauren E. Smith at 114 Morgan Street, Valley, Alabama 36854.

5. The letter to Lauren Smith was part of a batch of letters sent to Lauren Smith and other similarly situated individuals who received COBRA benefits through Blue Cross/Blue Shield as of the date that Ambassador Personnel, Inc. moved to the self-administered program. Some of the similarly situated individuals within this batch continued their COBRA coverage through the self-insured plan administered by Taylor Benefit Resource, Inc. Those individuals would have been notified of the change by way of the same letter attached hereto as Exhibit 1.

6. Given the fact that certain individuals elected to continue to receive COBRA benefits through the plan administered by Taylor Benefit Resource, Inc. and the fact that the notice letters sent to those individuals were contained within the same batch as the notice letter sent to Lauren Smith, I am absolutely certain that the letter sent to Lauren Smith was properly addressed, had proper postage and was properly mailed.

7. The letter sent to Lauren Smith was sent by first class mail. If the post office was not able to properly deliver the letter to Mrs. Smith, the letter should have been returned to Taylor Benefit Resource, Inc. The letter attached hereto as Exhibit 1 was not returned to Taylor Benefit Resource, Inc.

"The above information is true and correct to the best of my knowledge and belief."

*Donna Whiddon*
DONNA WHIDDON

SWORN TO and SUBSCRIBED before me on this the 11th day of April, 2008.

*Lynn W. Leach*
NOTARY PUBLIC
My commission expires: 3/5/2010

[Notary Seal: LYNN W. LEACH, GEORGIA, MAR. 05, 2010, NOTARY PUBLIC, THOMAS COUNTY]

3