IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| LAUREN COOPER, individually and as next friend of her child, )<br><br>Plaintiffs, )<br><br>v. )<br><br>AMBASSADOR PERSONNEL, INC., )<br>BLUE CROSS AND BLUE SHIELD OF )<br>GEORGIA, SELF INSURANCE PLAN OF )<br>AMBASSADOR PERSONNEL AND CONE )<br>FINANCIAL GROUP AS THIRD PARTY )<br>ADMINISTRATOR, )<br><br>Defendants. ) | CIVIL ACTION NO.<br>3:07cv615-MEF |

## BLUE CROSS AND BLUE SHIELD OF GEORGIA'S BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Defendant Blue Cross and Blue Shield of Georgia ("Blue Cross") submits this Brief in Support of its Motion for Summary Judgment. Blue Cross is entitled to judgment as a matter of law, as there exists no genuine issue of material fact in dispute between the parties. In support of this Brief, Blue Cross relies on the First Amended Complaint, Blue Cross' Answer to the First Amended Complaint, Blue Cross' Statement of Undisputed Material Facts, the Declaration of Toi Jackson, attached as Exhibit A to Blue Cross' Motion for Summary Judgment, and the deposition testimony of Lauren Cooper with exhibits, attached as Exhibit B to Blue Cross' Motion for Summary Judgment. This Brief is also based on the following:

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Plaintiff Lauren Cooper became an employee of Ambassador Personnel, Inc. ("Ambassador") in February 2003. (Cooper Depo. 89.) Ambassador is a subsidiary wholly owned by Cone Financial Corporation ("Cone Financial Corp.") and Kenneth Cone. (First Amended Compl. ¶ 6) Kenneth Cone is the owner of Cone Financial Group, Inc. ("Cone Financial Group"). (Id. at ¶ 10.)

2. Blue Cross issued a Preferred Provider Organization ("PPO") group health insurance policy ("the PPO Policy") to Cone Financial Group for the purpose of funding the Cone Financial Group, Inc., Group Health Benefit Plan ("the Plan").[1] (Answer to First Am. Compl. ¶ 10, Jackson Dec. ¶ 2) Cone Financial Group was the Plan sponsors. (Id. at ¶ 12; Jackson Dec. ¶ 2).

3. The Plan is an employee welfare benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"), codified at 29 U.S.C. § 1002(1). (First Am. Compl. ¶ 11)

4. Through Ms. Cooper's employment with Ambassador, she became enrolled under the PPO Policy effective July 1, 2004. (Jackson Dec. ¶ 3) All claims for medical services

---

[1] Plaintiff confuses the difference between a "policy" and a "plan" in her First Amended Complaint. For example, Plaintiff alleges that Defendant cancelled Plaintiff's insurance "plan" (First Am. Compl. 18), and that Plaintiff learned for the first time shortly before the birth of her child that her insurance "plan" had been terminated (First Am. Compl. 19). However, there is a difference under ERISA between a policy and a plan. See, Donovan v. Dillingham, 688 F.2d 1367, 1375 (11th Cir. 1982), stating that "[t]he purchase of insurance is only a method of implementing a plan, fund, or program and is evidence of the existence of a plan but is not itself a plan." The Cone Financial Group, Inc., Group Health Benefit Plan is an employee welfare benefit plan that is ERISA-governed. The PPO Policy was simply a means though which Cone Financial Group funded the plan. Thus, when Cone Financial Group terminated the PPO Policy with Blue Cross, it did not terminate the Plan. Instead, it simply terminated the PPO Policy that it had utilized up to that point to fund the Plan. The Plan thereafter remained in effect, but became funded directly by Cone Financial, with administration by a third-party administrator. (Jackson Dec. ¶ 5, Exh. A)

submitted for Ms. Cooper for dates of service prior to January 1, 2005, were paid in accordance with the terms of the PPO Policy. (Cooper Depo. 83)

### Ms. Cooper Goes on COBRA

5. On September 23, 2004, Blue Cross received a notice from Cone Financial Group, which advised that Ms. Cooper's employment had terminated on September 23, 2004, and provided Blue Cross with the necessary information to send a COBRA notification to Ms. Cooper. (Jackson Dec. ¶ 3)

6. Ms. Cone received proper COBRA notice. (Jackson Dec. ¶ 3; Cooper Depo. p. 33 and Exh. 1 thereto) Cooper elected to continue her individual coverage under the Plan. (Jackson Dec. 3 and Exh. 4 thereto; Cooper Depo. pp. 35-36 and Exh. 4 thereto)

### Cone Financial Group Retro-Terminates the PPO Policy

7. On January 11, 2005, Blue Cross received correspondence from Cone Financial Group requesting cancellation of the PPO Policy effective January 1, 2005. (Jackson Dec. ¶ 5 and Exh. 5 thereto) Cone had chosen to change its method of financing benefits from an insurance policy to a self-funded arrangement administered by a third party administrator. (Id.) The request for cancellation was processed to be effective on January 1, 2005. (Id.) The cancellation appeared on the Blue Cross computer system on January 19, 2005. (Id.) Thus, the effective date coverage terminated under the PPO Policy for all Cone Plan participants, including Ms. Cooper, was January 1, 2005. (Id.)

### Ms. Cooper Delivers Her Child

8. On January 13, 2005, a hospital called Blue Cross' customer service department to verify that Lauren Cooper had maternity-related inpatient facility benefits. (Jackson Dec. ¶ 6) The representative outlined those benefits using the information available on Blue Cross'

computer system at the time. (Id.) The processing of the retroactive cancellation request was not completed until January 19, 2005; therefore, the PPO Policy was still showing active at the time of this benefits verification call. (Id.) Verifications of benefits are given with a disclaimer stating that the verification is based only upon information in Blue Cross' computer system at that time and is not a promise of payment. (Id.) The disclaimer also advises that any benefits will be dependent upon, among other things, the policy being in effect on the date any services are actually rendered. (Id.)

9. On February 11, 2005, the COBRA Solutions Division sent Ms. Cooper a notice advising her that the PPO Policy had been terminated. (Jackson Dec. ¶ 7; Cooper Depo. p. 114 and Exh. 8 thereto) Since both Cone Financial Group and Ms. Cooper had already paid premiums that were due under the policy for January 2005, Blue Cross processed and issued refunds of premiums for January 2005 to Cone Financial Group and to Ms. Cooper. (Id.) As a part of the cancellation process, Blue Cross prepared a list of COBRA participants on the Plan and provided that list to Cone Financial Group on January 25, 2005, so that its new third-party administrator could provide a seamless transition from the PPO Policy to the new self-funded arrangement. (Id.)

10. Ms. Cooper received every notice that she was due from Blue Cross, including timely COBRA notice and timely notice of termination of the PPO policy. (Cooper Depo. 95-96) Ms. Cooper believes there were no notices that she believed herself entitled to which Blue Cross failed to provide. (Id. at 95.) Ms. Cooper testified that she could not think of any other notice that Blue Cross could have given her that would have been helpful to her. (Id. at 96.) Because Blue Cross did not receive notice from Cone Financial Group that the PPO Policy had been terminated until approximately the date that she delivered her child, Ms. Cooper conceded

that Blue Cross' notification of termination to her on February 11 constituted timely notice. (Id. at 114.) Ms. Cooper admits that Blue Cross has done nothing wrong in the facts giving rise to this lawsuit. (Cooper Depo. p. 81-82)

11.     Cone Financial immediately replaced the coverage under the PPO policy with self-funded coverage administered by Taylor Benefits. (Cooper Dep. p. 57-58) Ms. Cooper sought to continue her COBRA coverage under the Cone Plan by contacting Taylor Benefit, but was unsuccessful. (Id.) She did not seek to continue or convert her coverage with Blue Cross after notice of termination from Blue Cross. (Cooper Dep. p. 88)

12.     Blue Cross received claims related to Ms. Cooper's delivery, which it denied because coverage did not exist on the dates of service. (Jackson Dec. ¶ 8)

13.     On July 2, 2007, Ms. Cooper brought the instant suit against Blue Cross, and Cone Financial. On December 7, 2007, Ms. Cooper filed the First Amended Complaint, alleging ERISA and COBRA violations and breach of fiduciary duty premised upon Defendants' alleged failure to notify Ms. Cooper of cancellation of the PPO Policy and of the availability of alternate continuation coverage. (First Am. Comp., ¶¶ 30-45) Ms. Cooper requests relief including payment of her medical bills incurred during the delivery of her child. (Id.)

14.     Ms. Cooper testified that to her knowledge, she did not make a request to Blue Cross for documents that were required to be provided under ERISA, nor did any other party request such documents on her behalf. (Cooper Depo. 113)

15.     When asked during her deposition what Blue Cross had done wrong, Ms. Cooper responded "Nothing". (Cooper Depo. 81) In addition, Ms. Cooper stated that she does not contend that there was anything wrong with what Blue Cross did following Cone Financial Group's directive to cancel the PPO Policy. (Id.)

**ARGUMENT**

**Introduction**

Ms. Cooper does not assert a straight-forward benefits claim. Instead, she argues that benefits and penalties are due because of violations of duties to give COBRA notices. These claims fail because (1) the Blue Cross PPO Policy had been canceled prior to the delivery of her child; and (2) as Plaintiff admits in her deposition, Blue Cross gave her all COBRA-required notices.

I. **No Blue Cross Coverage Existed at the Time Ms. Cooper Delivered Her Child upon which She May Recover Benefits from Blue Cross.**

No contract existed when Ms. Cooper delivered her child under which she can claim benefits from Blue Cross. The terms of the relationship between Ms. Cooper and Blue Cross was defined by two documents: the Master Contract between Blue Cross and Cone Financial Group, and the PPO Certificate Ms. Cooper received when she enrolled under the PPO Policy. Both of those documents identify events that trigger termination of the PPO Policy. Under both the Master Contract and the PPO Certificate, Ms. Cooper was no longer covered under the PPO Policy on the date she received the medical care at issue.

First, the terms of the plan documents clearly state that Ms. Cooper was not covered at the time she delivered her child. The Master Contract states that, "[i]f this Group ends (or cancels) this Contract for any reason, coverage for all subscribers ends automatically as of the cancellation date." (Master Contract, Exh. 1 to Jackson Dec., BCBS-066) Here, the PPO Policy was cancelled effective January 1, 2005, because Cone Financial Group had chosen to change its method of financing the Plan from the PPO Policy to a self-funded plan administered by a third-party administrator. Blue Cross processed Cone Financial Group's request for retroactive cancellation to be effective on January 1, 2005. Thus, the date coverage terminated under the

PPO Policy for all Cone plan participants, including Ms. Cooper, was January 1, 2005. Id. The PPO Policy was therefore terminated prior to the date Ms. Cooper received medical services for the delivery of her child on January 13, 2005. Thus, Blue Cross had no obligation to pay any claims under the PPO Policy relating to the delivery of Ms. Cooper's baby.[2]

Second, the PPO Certificate confirms that coverage ended under the PPO Policy during the time for which Ms. Cooper claims benefits under the PPO Policy related to the delivery of her child. The PPO Certificate states, "[g]roup program membership. . . ceases. . . if the Group Contract ceases. . . ." (PPO Certificate, Exh. 2 to Jackson Dec., BCBS-041) As previously stated, Cone Financial Group cancelled the PPO Policy on January 11th, effective retroactively to January 1, 2005. (Jackson Dec. ¶ 5) The "Group Contract", therefore, "ceased" on January 1, 2005.

The plan documents are clear. Ms. Cooper's coverage under the PPO policy ended on January 1, 2005. Ms. Cooper's claims for benefits on any theory cannot be premised upon a policy that did not exist at the time of her delivery.

**II.    Although No Duty Exists under the COBRA Statute to Notify Ms. Cooper of the Termination of the PPO Policy, Blue Cross did in Fact Provide such Notice on a Timely Basis.**

A careful examination of Ms. Cooper's First Amended Complaint reveals that her claims for ERISA and COBRA violations and for breach of fiduciary duty are premised upon the Defendants' alleged failure to provide Ms. Cooper with notice of COBRA rights upon termination of her employment.[3] (See Amended Complaint, ¶ 44) (Doc. 21-2) Contrary to the

---

[2] The cancellation of the PPO Policy did not end Ms. Cooper's COBRA entitlement. She remained eligible to continue participation in the Cone Plan under the new self-funded arrangement without any gap in coverage.

[3] Ms. Cooper's focus on the alleged failure of Defendants to provide notice of the termination of the PPO policy and of her COBRA rights is misplaced. Ms Cooper's First Amended Complaint

Complaint, Ms. Cooper admits she received both notices.[4] Moreover, Blue Cross had no duty to notify Ms. Cooper of the termination of the PPO policy because termination of a group policy underlying COBRA continuation coverage does not represent a "qualifying event" under the COBRA statute giving rise to duty to notify.

There are only two situations under which notification to an insured is required under COBRA. First, the group health plan must provide ". . . at the time of the commencement of coverage under the plan, written notice to each of its covered employees. . . of the rights provided under this subsection." 29 U.S.C. § 1166(a)(1). Ms. Cooper does not dispute that she received such notice upon the commencement of her enrollment under the PPO Policy. (See generally, First Am. Compl.)

The second circumstance under which notification must be given to an insured under COBRA is when a "qualifying event" occurs. Under COBRA, 29 U.S.C. § 1166(a)(4), a plan administrator is required to give notice to a qualified beneficiary if a "qualifying event" occurs under § 1163. Under 29 U.S.C. § 1163, qualifying events include:

---

implies that the alleged failure of notice resulted in her lack of coverage at the time she delivered her child. However, Ms. Cooper had 18 months of continuation coverage following her termination from Ambassador Personnel under COBRA. See 29 U.S.C. § 1162(2)(A)(i). Thus, Ms. Cooper had approximately 16 months of continuation coverage remaining at the time the Cone Financial Group cancelled the PPO Policy. Such coverage should have continued under the new self-insured plan with which Cone Financial Group replaced the PPO Policy. Hence, there was no new coverage for Ms. Cooper to elect after the termination of the PPO Policy, as such coverage should have been automatically transferred under the new self-funded plan. Thus, the alleged failure to notify in no way caused Ms. Cooper's lack of coverage at the time she delivered her child.

[4] COBRA places the obligation to provide COBRA notices on the employer/ plan administrator, which is Cone Financial. See 29 U.S.C. § 1166(a)(4). Cone Financial hired Blue Cross to mail those notices on its behalf, as well as process premiums for COBRA coverage. (Jackson Dec. ¶ 2.) Therefore, if a COBRA notice requirement had been violated, Blue Cross could not be held liable for it. See Southern Maryland Hospital Center v. Herb Gordon Auto World, Inc., 6. F. Supp. 2d 461 (D. Md. 1998)(employer, not insurer, of health plan, had duty to provide terminated employee with COBRA notice).

    (1) The death of the covered employee.

    (2) The termination…or reduction of hours, of the covered employee's employment.

    (3) The divorce or legal separation of the covered employee from the employee's spouse.

    (4) The covered employee becoming entitled to benefits under title XVIII of the Social Security Act [42 U.S.C.A. § 1395 et seq.].

    (5) A dependent child ceasing to be a dependent child under the generally applicable requirements of the plan.

    (6) A proceeding in the case under Title 11, commencing on or after July 1, 1986, with respect to the employer from whose employment the covered employee retired at any time.

Ms. Cooper admits she did receive COBRA notice when a qualifying event occurred under § 1163(3), namely her termination from Ambassador Personnel. (Cooper Depo, 95-96) In fact, Ms. Cooper elected to continue her coverage based on that notice. (Jackson Dec. ¶ 3) The notices Ms. Cooper received at the time she enrolled under the PPO Policy and at the time she was terminated from employment constituted the only notices she was due under COBRA. Termination of an underlying group policy upon which COBRA coverage is based is not included within the list of qualifying events that would give rise to a duty to notify.

Despite the fact that Blue Cross had no duty under COBRA to notify Ms. Cooper of the PPO Policy's termination, Blue Cross sent Ms. Cooper such notice on February 11, 2005. Ms. Cooper confirmed in her deposition that she received the notification and that it was timely under the circumstances. Ms Cooper also testified that she could not think of any notices to which she was entitled that Blue Cross failed to provide. Nor could she identify any additional notices that Blue Cross failed to provide her that would have been helpful to her. Thus, although Blue Cross had no duty under COBRA to notify Ms. Cooper of the PPO Policy's termination, Blue Cross in

fact notified Ms. Cooper of such termination. Ms. Cooper's claims, which are based upon Blue Cross' failure to provide required COBRA notices fail as a matter of law.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Blue Cross respectfully requests that the Court enter an Order granting summary judgment in its favor and against Plaintiff Lauren Cooper on all claims. There exists no genuine issue of material fact in dispute between the parties, and Blue Cross is entitled to judgment as a matter of law.

Respectfully submitted this 11 day of April, 2008

                    s/ Cavender Kimble
                    One of the Attorneys for Defendant
                    Blue Cross and Blue Shield of Alabama

OF COUNSEL:
Cavender C. Kimble
AL Bar No.: ASB-3284-E63C
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 226-8798

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and service will be perfected upon the following this the 11th day of April, 2008.

Alicia K. Haynes
Haynes & Haynes
100 Woodmere Drive
Birmingham, AL 35226

Evans Brittain
Ball & Ball, Matthews & Novak, P.A.
P. O. Box 2148
Montgomery, Alabama 36102-2148

                    s/Cavender C. Kimble
                    Of Counsel