## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **LAUREN COOPER, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | **3:07-cv-00615-MEF-WC** |
| **AMBASSADOR PERSONNEL, INC.,** | ) | |
| **BLUE CROSS AND BLUE SHIELD** | ) | |
| **OF GEORGIA, SELF INSURANCE** | ) | |
| **PLAN OF AMBASSADOR** | ) | |
| **PERSONNEL AND CONE FINANCIAL** | ) | |
| **GROUP AS THIRD PARTY** | ) | |
| **ADMINISTRATOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### PLAINTIFF'S RESPONSE AND EVIDENTIARY SUBMISSION
### TO DEFENDANTS', AMBASSADOR PERSONNEL, INC.,
### SELF INSURANCE PLAN OF AMBASSADOR PERSONNEL
### AND CONE FINANCIAL GROUP AS THIRD PARTY ADMINISTRATOR,
### SECOND MOTION FOR SUMMARY JUDGMENT

---

COME NOW, the Plaintiff and moves this Honorable Court in opposition to

the Defendants', Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador

Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone,

second motion for summary judgment.  In support of her opposition, Plaintiff

provides as follows:

## UNDISPUTED FACTS

1.      Following Plaintiff, Lauren Smith Cooper's termination from Cone
Financial Group on September 10, 2004, Plaintiff was notified by Blue
Cross Blue Shield of Georgia on or about September 25, 2004, of her right
to select continuation coverage of her health insurance.  (DX1,[1] Bates No.
229-231, Cooper depo., p. 33, lines 8-16).

2.      On that same date, Plaintiff was issued an insurance premium notice that
provided her monthly premium would be $264.87, but $406.14 was required
to be received by October 31, 2004, to maintain and continue her insurance
coverage.  (DX5, Cooper depo., p. 39, lines 8-10).

3.      On or about October 22, 2004, and prior to any imposed deadline, Plaintiff
submitted a check to Blue Cross Blue Shield of Georgia directly in the
amount of $406.14 for the continuation of her insurance coverage.  (DX3;
Cooper depo., p. 36. lines 6-14).

---

[1]  Defendant's exhibit citations refer to those exhibits produced by
Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone
Financial Group as Third-Party Administrator and Kenneth Cone, individually,
unless otherwise noted.

4.      Further, Plaintiff timely completed the health benefits continuation plan

provided by Blue Cross Blue Shield of Georgia, also on October 22, 2004.

The form was not due until November 23, 2004.  (DX4).

5.      All of Plaintiff's communications regarding the continuation of her health

insurance was always through Blue Cross Blue Shield of Georgia.  (Cooper

depo., p. 61, line 20 - p. 62, line 1).

6.      On or about February 15, 2005, Plaintiff was notified by Blue Cross Blue

Shield by letter dated February 11, 2005, that her insurance plan with Blue

Cross Blue Shield had terminated on January 1, 2005.  This was the first and

only notice that Plaintiff received that her insurance coverage with Blue

Cross Blue Shield was cancelled.  (DX8; Cooper depo., p. 58, lines 3-4).

7.      All correspondence from Blue Cross Blue Shield of Georgia was mailed and

received at Plaintiff's home address, 114 Morgan Street, Valley, Alabama

36854.  (Cooper depo., p. 33, lines 17-19).

8.      Plaintiff, at all times, lived at the 114 Morgan Street address from April

2003 until December 2005.  (Cooper depo, p. 10, lines 3-6).

9.      Plaintiff received a bill each month from Blue Cross Blue Shield of Georgia

for her insurance continuation and further tendered a personal check each

month for the insurance premium.  (Cooper depo., p. 40, lines 10-22).

3

10.  Plaintiff timely made all of her insurance premium payments to Blue Cross Blue Shield of Georgia.  (Cooper depo., p. 41, lines 3-6).

11.  Plaintiff had paid Blue Cross Blue Shield through January 2005 when she received notice of cancellation retroactive to January 1, 2005.  (Cooper depo., p. 41, lines 10-15).

12.  Plaintiff never received any letter from Taylor Benefit Resource addressed to her and dated January 15, 2005, which the Defendants rely was sent to the Plaintiff notifying her of her new insurance coverage.  (DX6; Cooper depo., p. 43, lines 3-23).

13.  From September 10, 2004, through the birth of her son in January, Plaintiff was home every day.  (Cooper depo., p. 42, lines 3-7).

14.  Plaintiff had never seen the Taylor Benefit Resource letter prior to her deposition on April 2, 2008.  (Cooper depo., p. 43, lines 21-23).

15.  The alleged notice letter from Taylor Benefit Resources provided that there was an enclosed invoice but this premium notice was never produced by the Defendants, nor by Taylor Benefit Resource.  (DX6, ¶ 3).

16.  Plaintiff has never seen nor been provided an invoice from Taylor Benefit Resource for the continuation of her coverage and none has been produced by Defendant.  (Cooper depo., p. 109, line 22 - p. 110, line 23).

4

17.    Toi Jackson of Blue Cross Blue Shield of Georgia provided that on January
       11, 2005, Blue Cross received correspondence from Cone Financial
       cancelling its health insurance policy effective January 1, 2005.  (Def.
       BCBS' Evid. Subm., Ex. A, Jackson Aff., ¶ 5).

18.    The cancellation was not keyed into the Blue Cross computer system until
       January 19, 2005, after Blue Cross received a call to verify insurance
       coverage for the delivery and birth of Lauren Cooper Smith's infant son.
       (Def. BCBS' Evid. Subm., Ex. A, Jackson Aff., ¶¶ 5, 6).

19.    The processing of the cancellation request initiated by Cone Financial was
       not completed by Blue Cross and Blue Shield until January 19, 2005.  (Def.
       BCBS' Evid. Subm., Ex. A, Jackson Aff., ¶ 6).

20.    As part of the process of cancellation, a list of COBRA participants on the
       Cone Plan was provided to Cone Financial on January 25, 2005, so its new
       Third Party Administrator could provide a seamless transition from the PPO
       policy to the self-funded arrangement.  (Def. BCBS' Evid. Subm., Ex. A,
       Jackson Aff., ¶ 7).

21.    It is impossible that Taylor Benefit Resources would have sent a letter on
       January 15, 2005, to Lauren Cooper when Taylor was not notified of the
       identity of the Cone COBRA participants until after January 25, 2005, by

5

Blue Cross Blue Shield.  (DX6; Def. BCBS' Evid. Subm., Ex. A, Jackson Aff., ¶ 7).

22.    Plaintiff was responsible for retrieving and receiving all mail at her home and on the rare occasions that her husband would pick up the mail, he would always give her everything including the junk mail.  (Cooper depo., p. 48, lines 11-20).

23.    On February 15, 2005, upon receipt of the letter from Blue Cross Blue Shield of Georgia cancelling her insurance, Plaintiff immediately called Blue Cross Blue Shield of Georgia.  (Cooper depo., p. 53, lines 5-6, 18-20; p. 54, lines 17-19).

24.    Plaintiff was told during the telephone call that her account had been terminated and she would receive a refund, but the process could take 30 days.  (Cooper depo., p. 55, lines 12-16).

25.    Plaintiff called her friend, Leslie Yancy, at Workstaff, Plaintiff's previous place of employment, the same day she received the letter from Blue Cross Blue Shield.  Yancy told Plaintiff that the new insurance company was Taylor Benefit Resources.  (Cooper depo., p. 56, lines 4-8, lines 10-23).

26. After Plaintiff learned that Taylor Benefit Resources was the new insurance
    company, she immediately telephoned Taylor Benefit Resources. (Cooper
    depo., p. 58, lines 13-20).

27. When Plaintiff called Taylor Benefit Resources, she was told that her
    insurance premium had to paid that day or the next day for her to have
    continued insurance coverage for January and February 2005. (Cooper
    depo., p. 59, lines 18-21; p. 60, lines 11-12).

28. Plaintiff did not have the money to pay Taylor Benefit Services for
    continued insurance coverage since she had already paid Blue Cross Blue
    Shield for coverage the month of January. Plaintiff did not have additional
    money to send for the additional coverage. (Cooper depo., p. 127, lines 18 -
    p. 128, line 8).

29. Plaintiff was never told she could wait until she received her refund check
    from Blue Cross Blue Shield of Georgia to submit in lieu of her premium
    payment and still be able to maintain her insurance coverage. Plaintiff
    received her refund check from Blue Cross Blue Shield of Georgia on or
    after April 5, 2005. (Cooper depo., p. 60, lines 13-20).

30. Plaintiff maintained all Blue Cross Blue Shield of Georgia letters,
    correspondence and documents that dealt with her insurance coverage, but

Plaintiff received no documents from Taylor Benefit Resources.  (Cooper depo., p. 61, lines 1-13; p. 71, lines 12-19).

31.    Plaintiff has been responsible and continued paying for the hospital and doctor bills that accrued and were not paid for the birth of her son as a result of the cancellation of the Blue Cross Blue Shield of Georgia policy. (Cooper depo., p. 65, lines 18 - p. 66, line 16).

## ARGUMENT AND AUTHORITY

Defendants', Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, submit as the basis for its summary judgment motion that Taylor Benefit Resources, not any other entity, was responsible for notifying Ms. Cooper of the insurance change and continuation, and, therefore, Cone was not responsible after cancelling the policy.  There is no issue that Plaintiff timely submitted all paperwork and payments to secure her continued health insurance coverage. However, the law is quite clear in describing the duties of the administrator and the named fiduciaries' responsibilities under the written employee benefit plan.  In this case, Defendants have neglected to produce in discovery and further, to this court, the written plan depicting the responsible fiduciary.  Further, despite Plaintiff's

best efforts to secure the Plan document, Defendants have refused, to date, to produce the plan.

ERISA is a "comprehensive and reticulated statute" that created a framework for the administration and maintenance of private employee benefit plans. *Nachman Corp. v. Pension Benefit Guaranty Corp.*, 446 U.S. 359, 361, 100 S.Ct. 1723, 1726, 64 L.Ed.2d 354 (1980). The cornerstone of an ERISA plan is the written instrument, which must provide for "the allocation of responsibilities for the operation and administration of the plan." ERISA § 402(b)(2), 29 U.S.C. § 1102(b)(2); *see also* ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument."). The defendant has no plan but expects this Court to accept that Taylor Benefit Resources is the plan administrator allowing Cone Financial, the employer, to escape liability after cancelling Plaintiff's coverage.

The written instrument must designate an "administrator," ERISA § 3(16)(A)(i), 29 U.S.C. § 1002(16)(A)(i), "to run the plan in accordance with the ... governing plan documents." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 84-86, 115 S.Ct. 1223, 1231, 131 L.Ed.2d 94 (1995). The written instrument must also "provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan."

9

ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).  The administrator, as well as the named fiduciary is considered a "fiduciary" under ERISA.  Both the administrator and the named fiduciary must discharge their duties "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with ERISA.  *Hunt v. Hawthorne Assoc. Inc.*, 119 F.3d 888 (11th Cir. 1997).

The term "fiduciary" has a broader meaning under ERISA than at common law because ERISA "defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan."  *Mertens v. Hewis Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 2071, 124 L.Ed.2d 161 (1993).  Under ERISA § 3(21)(A), 29 U.S.C. § 1022(21)(A), a fiduciary includes not only those who "exercise any discretionary authority of discretionary control respecting management of such plan or exercise any authority or control respecting management or disposition of its assets," but also those who "have discretionary authority or discretionary responsibility in the administration of such plan."

Cone has not only failed to produce the Employee Health Benefit Plan document, but has failed to carry out fiduciary responsibilities under the Plan as provided by ERISA.  Further, a question of fact exists whether Taylor Benefit

Resources is a fiduciary under the Cone Health Plan and whether Taylor Benefit Resources discharged any duty in timely notifying the Plaintiff.

In its answer to Plaintiff's complaint, (Doc. 10), Defendants at no time indicated that Taylor Benefit Resources was the administrator nor did Cone submit a counterclaim against Taylor Benefit Resources. FRCP 17 and 19.

The evidence is clear that Plaintiff timely paid her premiums to Blue Cross Blue Shield of Georgia for her health benefit continuation. When Plaintiff was notified by Blue Cross Blue Shield of Georgia that the Plan had been terminated, she immediately that day, called Blue Cross Blue Shield of Georgia to find out the pertinent details, as well as calling Leslie Yancy at Workstaff, her previous employer, to discern who the new insurance carrier was. Upon learning from Ms. Yancy that Workstaff was now self-insured and working through Taylor Benefit Resources, Plaintiff immediately contacted Taylor Benefit Resources to find out about her insurance continuation.

Plaintiff took immediate action when she learned of the cancellation of her insurance coverage from Blue Cross Blue Shield of Georgia. At issue is who had the fiduciary responsibility of notifying Plaintiff of that change to prevent financial hardship to the Plaintiff. Cone has produced no evidence that discharges its responsibility as a fiduciary. Taylor Benefit Resources alleges that it discharged its

11

duty by notifying the Plaintiff fails in light of Plaintiff's immediate actions when she received the timely notice from Blue Cross Blue Shield of Georgia on February 15, 2005.  Plaintiff's actions upon receiving notice were immediate and concise; however, Plaintiff was not in the financial position to make two insurance premiums to two separate companies in the same month.  She was not only unemployed, but had just delivered her child.  Even though Plaintiff asked for a refund from Blue Cross Blue Shield of Georgia, she was told it would take thirty (30) days to process that payment, Taylor Benefit Resources told Plaintiff she would have to have the insurance premium to them that day or the immediate next day.  The refund payment from Blue Cross Blue Shield of Georgia was not tendered until April 2005.

Further Blue Cross Blue Shield of Georgia's own affidavit belies the testimony of the Taylor Benefit Resource affidavit of Donna Whiddon.  Blue Cross Blue Shield of Georgia states that it was not until January 25, 2005, that it provided to Cone Financial Group, a list of COBRA participants on the Cone Plan so the new third party administrator could provide a transition to the new self-funded arrangement.  Without this list, Taylor Benefit Resources could not send out notices to the COBRA participants as it states on January 15, 2005.  Plaintiff had only dealt with Blue Cross Blue Shield of Georgia relative to the continuation of

12

her insurance coverage.  (See also Def. BCBS' Evid. Subm., Ex. A, Jackson Aff., ¶ 3 that all communications were with Blue Cross Blue Shield of Georgia and Plaintiff; Cone was not privy to Plaintiff's application).  Cone had no knowledge of Plaintiff's election nor did it communicate with Plaintiff relative to her continued coverage.  All communications were between Plaintiff and Blue Cross Blue Shield of Georgia.  A question of fact exists how Taylor Benefit Resources could have notified Plaintiff on January 11, 2005, when the document listing the COBRA participants was not generated by Blue Cross Blue Shield of Georgia until January 25, 2005.

Defendants' motion for summary judgment is due to be denied.  Plaintiff respectfully reserves responding more fully and substantively, if and when, Defendant produces the Plan document that depicts who the actual fiduciaries of the Plan are deemed.

## <u>CONCLUSION</u>

WHEREFORE, THESE PREMISES CONSIDERED, for the foregoing reasons, Plaintiff requests that the Court enter an order denying summary judgment on all claims.  There exists genuine issues of material fact and disputes between the parties and Cone Financial Group is not entitled to judgment as a matter of law.

Respectfully submitted,

/s/ Alicia K. Haynes

Alicia K. Haynes
Attorney for Plaintiffs

**OF COUNSEL:**

**HAYNES & HAYNES, P.C.**
1600 Woodmere Drive
Birmingham, Alabama  35226
Phone:  (205) 879-0377
Fax:  (205) 879-3572
E-mail:  akhaynes@haynes-haynes.com
ASB-8327-E23A

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of May 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Cavender C. Kimble
Balch & Bingham LLP
P.O. Box 306
Birmingham, AL  35201-0306

Emily Marks
Evans Brittain
Ball & Ball, Matthews & Novak, P.A.
P.O. Box 2148
Montgomery, AL  36102-2148

/s/Alicia K. Haynes

OF COUNSEL

14