**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | |
|---|---|
| LAUREN COOPER, individually<br>and as next friend of her child, BCC,<br><br>    Plaintiffs,<br><br>v.<br><br>AMBASSADOR PERSONNEL, INC.,<br>BLUE CROSS AND BLUE SHIELD<br>OF GEORGIA, SELF INSURANCE<br>PLAN OF AMBASSADOR<br>PERSONNEL AND CONE FINANCIAL<br>GROUP AS THIRD PARTY<br>ADMINISTRATOR,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)   **CASE NO.:  3:07cv615-F**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANTS' REPLY BRIEF**

**COME NOW,** the Defendants identified in the Complaint as Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually, and hereby files this Reply Brief and submit the following:

1.    The sole issue raised in Defendants' Second Motion for Summary Judgment is whether the Defendants complied with the applicable COBRA requirements in notifying Mrs. Cooper that the Ambassador Personnel Employee Benefit Plan was becoming a Self-Funded Plan and that health Insurance would no longer be offered through Blue Cross/Blue Shield.  The Defendants have cited this Court to the applicable law, which clearly states that the burden upon the Defendants is to make a "good faith" effort to provide adequate notice to the plan participants.  In addition, the applicable law is clear that actual notice is not required.  The Plaintiff does not, and cannot, cite this Court to any law that requires that Mrs. Cooper receive

actual notice of a change, or any law that requires the Defendants to do anything more than make a good faith effort to provide notice. Therefore, the sole issue before this Court is not whether Mrs. Cooper received actual notice of the change, but rather, whether the Defendants made a good faith effort to provide notice.

2.      In opposition to the Defendants' Second Motion for Summary Judgment, the Plaintiff alleges that either these Defendants or Taylor Benefit Resources have fabricated evidence in this case. Specifically, the Plaintiff alleges that Taylor Benefit Resources would not have been able to send a letter to Lauren Smith on January 15, 2005 notifying her of the change in the plan because the Plaintiff claims that Taylor Benefit Resources was not notified until January 25, 2005, at the earliest, that Lauren Smith was receiving COBRA benefits. Thus, the Plaintiff has alleged that either the Defendants or someone with Taylor Benefit Resources fraudulently backdated the letter to January 15, 2005.

The Plaintiff has accused the Defendants or Taylor Benefit Resources of manufacturing evidence based on the faulty assumption that the January 25, 2005 fax from Blue Cross/Blue Shield to the Defendants was the only means by which the Defendants or Taylor Benefit Resources had to know that Lauren Cooper was receiving COBRA benefits.

First of all, the Plaintiff has not cited this Court to any evidence that the January 25, 2005 fax from Blue Cross/Blue Shield was the only means by which the Defendants or Taylor Benefit Resources had to know the names of the COBRA participants. Secondly, the undisputed evidence before this Court clearly shows that Taylor Benefit Resources was provided this information by other means.

Neil Fennell is the CFO at Ambassador Personnel and the person most knowledgeable with Ambassador's decision to move from the Blue Cross/Blue Shield health plan to a self-

funded plan. (Exhibit 1, Fennell Affidavit at ¶1). In late 2004, probably November or December of 2004, Mr. Fennell provided Taylor Benefit Resources with the names of all individuals that received health Insurance through Blue Cross/Blue Shield. (Exhibit 1, Fennell Affidavit at ¶4). The list provided by Mr. Fennell to Taylor Benefit Resources included all employees of Ambassador Personnel, as well as all individuals receiving COBRA benefits through Blue Cross/Blue Shield. (*Id*.). To the best of Mr. Fennell's recollection, he obtained this information from the Blue Cross/Blue Shield bill, which set forth the names of the individuals receiving benefits through Blue Cross/Blue Shield, including those receiving COBRA benefits, which would have included Mrs. Cooper. (Exhibit 1, Fennell Affidavit at ¶5).

In addition, Darlene Taylor, the CEO of Taylor Benefit Resources, confirmed that Blue Cross/Blue Shield is not the only means through which Taylor Benefit Resources learns of COBRA participants. (Exhibit 2, Taylor Affidavit at ¶5-6). The relevant information, including the fact that Mrs. Cooper was receiving COBRA benefits through Blue Cross/Blue Shield, was received from either Neil Fennell or Ron Arline, an Insurance agent who helped place Ambassador's Insurance with Blue Cross/Blue Shield. (*Id*.). Further, Ms. Taylor again reiterated the fact that the Luminix computer software program that is used by Taylor Benefit Resources, automatically places the date of when a letter is sent. (Exhibit 2, Taylor Affidavit at ¶7). In addition, Luminix has a "Chronolog" which also automatically records dates that letters are sent or that conversations are held. (*Id*.). The Chronolog also confirms that the letter was generated on January 15, 2005. (*Id*.). Neither the date on the letter nor the date in the Chronolog can be changed either at the time that the letter is sent or any time after. (*Id*.).

Finally, Chris Buswell, the Vice President of Operations for Taylor Benefit Resources, provided a letter setting forth the fact that there is absolutely no way that any employee of Taylor

Benefit Resources could have altered the date on the letter or the Chronolog, as the Plaintiff alleges. (Exhibit 2, Taylor Affidavit - Exhibit 3).

The Plaintiff's allegation that the Defendants or Taylor Benefit Resources backdated the letter in question or somehow manufactured evidence is the only fact that the Plaintiff presents to this Court in opposition to the issues presented in the Second Motion for Summary Judgment. The undisputed facts set forth above clearly show that the letter sent to Lauren Cooper has not been altered.  The Plaintiff has not presented this Court with any other facts in opposition to the Second Motion for Summary Judgment and has not provided this Court with any case law contrary to that provided by these Defendants.   Given these facts and applicable law, Defendants' Second Motion for Summary Judgment is due to be granted.

3.    Although not relevant to any of the issues presented in the Second Motion for Summary Judgment, there are a couple of issues in Mrs. Cooper's Opposition Brief that bear addressing.  First of all, Mrs. Cooper improperly states the issue before this Court as follows:

> Defendants' Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually, submit as the basis for its (sic) summary judgment that Taylor Benefit Resources, not any other entity, was responsible for notifying Mrs. Cooper of the Insurance change and continuation and, therefore, Cone was not responsible after cancelling the policy.

(Plaintiff's Opposition Brief at p. 8).

Mrs.  Cooper then devotes the vast majority of the Arguments and Authorities section of her Brief addressing this issue.  Nowhere in the Second Motion for Summary Judgment, or the First Motion for Summary Judgment, for that matter, is the above-quoted argument made by any of these Defendants.  Therefore, it is not exactly clear why Mrs. Cooper addressed this issue.

In addition, and in connection with this argument, Mrs. Cooper contends that "despite Plaintiff's best efforts to secure the Plan document, Defendants have refused, to date, to produce the Plan."  As the Plaintiff acknowledged in her Motion to Compel, counsel for the Plaintiff and counsel for the Defendants were attempting to settle this case and had therefore agreed that it was not presently necessary for the Defendants to respond to the outstanding discovery. (Plaintiff's Motion to Compel at ¶6 and Exhibit E).  Therefore, the Plaintiff is incorrect when she states that the Defendants have refused to produce the Plan.  The Plaintiff is also incorrect in this statement due to the fact that as of the filing of the Opposition Brief, the Plaintiff had been produced a copy of the Plan. (Exhibit 3, E-mail regarding document).

Again, although these matters are completely irrelevant to the issue before this Court., Defendants do feel that these matters should be addressed.

WHEREFORE, premises considered, and for the reasons set forth in the initial Brief, as well as this Reply Brief, the Defendants respectfully request this Court enter judgment in their favor and against the Plaintiff, as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law.

Respectfully submitted,


/s/ W. Evans Brittain
W. Evans Brittain
Attorney for Defendants designated as Ambassador Personnel, Inc., Self-Insurance Plan of Ambassador Personnel, Cone Financial Group as Third-party Administrator and Kenneth Cone, individually

OF COUNSEL:
Ball, Ball, Matthews & Novak, P.A.
2000 Interstate Park Drive
Suite #204 [36109-5413]
P.O. Box 2148
Montgomery, Alabama  36102-2148
Telephone (334) 387-7680
Telefax (334) 387-3222
ebrittain@ball-ball.com


**CERTIFICATE OF SERVICE**


I hereby certify that on May 14, 2008, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system which will send notification of such filing to the following:

Alicia K. Haynes, Esq.
Haynes & Haynes
1600 Woodmere Dr.
Birmingham, AL 35226

Cavender C. (Chris) Kimble, Esq.
BALCH & BINGHAM, LLP
1710 Sixth Avenue North
P.O. Box 306 (35201-0306)
Birmingham, Alabama 35203-2014


/s/ W. Evans Brittain
OF COUNSEL

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

LAUREN COOPER, individually )
and as next friend of her child, BCC, )
                                   )
    Plaintiffs,                   )
                                     )
v.                                      )    CASE NO.: 3:07cv615-F
                                     )
AMBASSADOR PERSONNEL, INC., )
BLUE CROSS AND BLUE SHIELD )
OF GEORGIA, SELF INSURANCE )
PLAN OF AMBASSADOR         )
PERSONNEL AND CONE FINANCIAL )
GROUP AS THIRD PARTY )
ADMINISTRATOR, )
                                     )
    Defendants.                )

STATE OF GEORGIA          ]
                              ]
COUNTY OF THOMAS        ]

## AFFIDAVIT OF NEIL FENNEL

    Before me, the undersigned authority, a Notary Public in and for said state and county, personally appeared NEIL FENNEL, and after being duly sworn, under oath, deposes and says the following:

    1.    My name is NEIL FENNEL, and I am the CFO of Ambassador Personnel, Inc. During the 2004/2005 time frame, I was the person at Ambassador Personnel in charge of handling issues regarding health Insurance.

    2.    In the early part of 2004, probably February or March of 2004, we decided that we would look into moving the health Insurance plan from Blue Cross/Blue Shield to a self-funded plan.

    3.    I was the person responsible for implementing this change.



EXHIBIT
1

4.      It was decided to change from the Blue Cross/Blue Shield plan to a self-funded plan as of January 1, 2005. In late 2004, probably November or December of 2004, I provided Taylor Benefit Resources with the names of all individuals that received health insurance through Blue Cross/Blue Shield.   This list included all present employees of Ambassador Personnel, as well as all individuals receiving COBRA benefits through Blue Cross/Blue Shield.  This information was provided to Taylor Benefit Resources so as to enable Taylor Benefit Resources to implement this change in a timely manner.

5.      To the best of my recollection, I provided the information to Taylor Benefit Resources by providing them a copy of the bill we received from Blue Cross/Blue Shield for the premiums owed.  This contained a list of the names of all individuals receiving benefits through Blue Cross/Blue Shield, including those receiving COBRA benefits, which would have included Lauren Smith.

6.      The January 25, 2005 fax from Blue Cross/Blue Shield to Ambassador was not the first notice that Ambassador had of the names of the people receiving COBRA benefits. As noted above, we received the names of COBRA participants, along with other plan participants, when we received the bill for premiums owed.

"The above information is true and correct to the best of my knowledge and belief."

NEIL FENNEL

SWORN TO and SUBSCRIBED before me on this the _13_ day of _May_, 2008.

NOTARY PUBLIC
My commission expires:_4-30-09_

2

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LAUREN COOPER, individually**<br>**and as next friend of her child, BCC,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.:  3:07cv615-F** |
| | ) | |
| **AMBASSADOR PERSONNEL, INC.,** | ) | |
| **BLUE CROSS AND BLUE SHIELD** | ) | |
| **OF GEORGIA, SELF INSURANCE** | ) | |
| **PLAN OF AMBASSADOR** | ) | |
| **PERSONNEL AND CONE FINANCIAL** | ) | |
| **GROUP AS THIRD PARTY** | ) | |
| **ADMINISTRATOR,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**STATE OF GEORGIA**        ]
                                            ]
**COUNTY OF THOMAS**        ]

## AFFIDAVIT OF DARLENE TAYLOR

Before me, the undersigned authority, a Notary Public in and for said state and county, personally appeared DARLENE TAYLOR, and after being duly sworn, under oath, deposes and says the following:

1.    My name is DARLENE TAYLOR, and I am the CEO of Taylor Benefit Resources.

2.    Attached hereto as Exhibit 1 is the Microsoft Word file documents entitled "BCBS COBRA Participant Ltr" document.  This is the letter that was sent to the Blue Cross/Blue Shield COBRA Participants.

EXHIBIT
2

3.      The form attached hereto as Exhibit 2 is a printout of the computer screen. As can be seen from this printout, the letter was last modified on January 15, 2005.

4.      The invoice referred to in the January 15, 2005 letter is mailed along with all such letters.  Taylor Benefit Resources does not keep a copy of this invoice unless the invoice is completed by the participant and returned to Taylor Benefit Resources. Because Mrs. Cooper did not return this form to Taylor Benefit Resources, Taylor Benefit Resources does not have a copy of this invoice in its file.

5.      It has come to my attention that Mrs. Cooper claims that it would be impossible for Taylor Benefit Resources to have mailed the January 15, 2005 letter on January 15, 2005 because Blue Cross/Blue Shield did not notify Cone Financial about the names of the COBRA participants until January 25, 2005.

6.      BCBS is not the only business that provides Taylor Benefit Resources with the names of the COBRA participants.  To the best of my recollection, Taylor Benefit Resources would have received the information concerning the COBRA participants, and all participants under the BCBS plans from Neil Fennell, with Ambassador Personnel.  It is possible that we could have received this information from Ron Arline, an insurance agent in Thomasville who helped place Ambassador's Insurance through Blue Cross/Blue Shield.

7.      Exhibit 3 is a letter explaining the Luminx software program.

8.      Attached hereto as Exhibit 4 is a copy of the Chronolog for Lauren Smith. This Chronolog runs through Luminx, a computer software program.  As can be seen from the Chronolog, the letter sent to Mrs. Smith was mailed on January 15, 2005. Neither the date on the letter nor the date in the chronolog can be changed.  When a

2

letter is generated through Luminx or a conversation is held, the date is automatically entered, and cannot be altered either at that time or at a later date.

"The above information is true and correct to the best of my knowledge and belief."

_Darlene Taylor_
DARLENE TAYLOR

SWORN TO and SUBSCRIBED before me on this the _14_ day of _May_, 2008.

_Monnette Twink Monahan_
NOTARY PUBLIC
My commission expires: _3-6-10_

MONNETTE TWINK MONAHAN
Notary
EXPIRES
GEORGIA
MAR. 06, 2010
Public
THOMAS COUNTY

3

```
**************************************************
* NOTICE OF COBRA/CONTINUATION COVERAGE RATE CHANGE *
**************************************************
```

Mailed on:  01/15/2005

```
Group  #        : 1125   WORKSTAFF PERSONNEL SERVICE
COBRA Location : GCBR
                 GROUP COBRA
```

LAUREN E SMITH
114   MORGAN ST

VALLEY, AL  36854

Effective January 1, 2005, Workstaff, Ambassador, Tempo and Thomas Staffing will no long carry Blue Cross Blue Shield and Employer's Life Health Plans.

Participants, including Cobra Participants, will roll over into the new Platinum Plans administered by Taylor Benefit Resource, Inc.

If you are currently enrolled in BCBS or Employer's Life, you will need to complete a new medical enrollment form.  Your coverage will automatically roll over to the new Platinum Plan at the current level of Deductible Coverage you have.  However, the administration records need to be updated.  You may notice a change in premium (please see the enclosed invoice).

The benefits for the Platinum Plans are very similar to the benefits for BCBS and Employer's Life but there are some changes.  We have enclosed a summary of the new benefits.  If you would like to continue your Cobra Coverage, mail your completed medical enrollment form and January payment to Taylor Benefit Resource, Inc.

Upon receipt of your January payment a new ID Card and booklet will be mailed to your.

If you have any questions, please contact
Donna Whiddon
Taylor Benefit Resource, Inc.
229-225-9943 or 1-888-352-5246



'05 RENEWAL

File   Edit   View   Favorites   Tools   Help

Back ▼ ▼ ▼   Search   Folders   ▼

Address: U:\GROUPS\1125 - Ambassador Renewals\'05 RENEWAL

**File and Folder Tasks**
- Make a new folder
- Publish this folder to the Web

**Other Places**
- Renewals
- My Documents
- My Computer
- My Network Places

**Details**
'05 RENEWAL
File Folder

| Name ▲ | Size | Type | Date Modified |
|---|---|---|---|
| Finalization | | File Folder | 5/8/2005 11:21 AM |
| Life | | File Folder | 9/6/2005 5:43 AM |
| Non-Standard LTR | | File Folder | 9/6/2005 5:43 AM |
| Proposal | | File Folder | 9/6/2005 5:43 AM |
| Quotes | | File Folder | 9/6/2005 5:43 AM |
| RFP | | File Folder | 5/7/2005 1:36 PM |
| Adjusted Rate Table | 56 KB | Microsoft Excel Wor... | 12/1/2005 4:21 PM |
| BCBS Ltr Mary Storms | 21 KB | Microsoft Word Doc... | 1/26/2005 5:01 PM |
| BCBS Ltr Mary Storms | 21 KB | Microsoft Word Doc... | 1/26/2005 4:15 PM |
| BCBS Cobr Part Summary of B... | 183 KB | Microsoft Word Doc... | 1/15/2005 9:14 AM |
| BCBS Cobra Part Enrollment F... | 75 KB | Microsoft Word Doc... | 1/15/2005 9:15 AM |
| BCBS Cobra Partcipant Ltr | 21 KB | Microsoft Word Doc... | 1/27/2005 2:34 PM |
| BCBS Cobra Rates | 20 KB | Microsoft Word Doc... | 1/27/2005 9:19 AM |
| BCBS LTR Mary Storms Cobra | 31 KB | Microsoft Word Doc... | 1/26/2005 5:02 PM |
| CERTIFICATE Mary Storms | 30 KB | Microsoft Word Doc... | 1/26/2005 11:59 AM |
| Non-Standard Rate Letter | 30 KB | Microsoft Word Doc... | 4/11/2005 10:32 AM |
| Presentation | 245 KB | Microsoft Word Doc... | 12/8/2004 8:32 PM |
| TBR Memo to Locations | 30 KB | Microsoft Word Doc... | 1/27/2005 9:45 AM |
| TBR Memo Platnum Booklets | 32 KB | Microsoft Word Doc... | 1/27/2005 4:46 PM |
| Workstaff Cobr LEtter | 166 KB | Microsoft Word Doc... | 1/15/2005 2:23 PM |
| Workstaff COBRA Participants | 39 KB | Microsoft Word Doc... | 1/19/2005 6:05 PM |



Start   '05 RENEWAL   4:26 PM



EXHIBIT
2

# TBR

*Taylor Benefit Resource*

Excellence in Benefit Services

Office   229-225-9943
Fax      229-225-9945
Toll Free   888-35-CLAIM

164 Commercial Drive.
P. O. Box 6580
Thomasville, GA  31758

Tuesday, May 13, 2008

To Whom It May Concern:

This letter is in regards to our claims adjudication software system, Luminx, and the recording of data, and date stamps associated with this data.  Luminx is a highly regarded software system that is widely used in the TPA industry, and as such, adheres to all applicable standards for privacy, security, and data redundancy.  Luminx is a product of Acclamation Systems Inc, of Pittsburgh, Pennsylvania.

As a component of this focus on data integrity, it is not possible for anyone within our company, or any other person outside of the authors of the system software itself, to in any way alter the date stamp of an item recorded within the Luminx system.  Having such an ability to do so would invalidate any number of both internal and external audit and tracking abilities of the system, and thus the capability does not exist.

In addition, the system files and database where such information resides is in a secure data center located in Pittsburgh, Pennsylvania.  No employee of Taylor Benefit Resource has the physical or virtual access or ability to alter the database files in any manner other than through approved and standard usage of the software.  Our employees access the system remotely, through secure data channels provided by Acclamation Systems, and the servers themselves are housed by a third party, Expedient, Inc. which operates a world class secure data facility.  Even Acclamation Systems employees must use secure and authorized channels to access the servers based on rules put in place by Expedient.

If you should have questions regarding this matter, please do not hesitate to contact me and I will be happy to answer them to the best of my ability, or I will refer any questions I cannot answer to parties at Acclamation at Expedient promptly.

Cordially,

Chris S. Buswell
Vice President of Operations

EXHIBIT
3

*Our Success is measured by the satisfaction of our clients*

```
Date: 05/07/08           C H R O N O L O G starting 01/01/2002           Page:  1

                    ID:419296558 / SMITH, LAUREN, E
  Date    Description
-------------------------------------------------------------------------------
12/17/2002 Log Type:GENERAL ENTRY entered by: MARY
           REC. ENROLLMENT                                      200212170248
05/01/2003 Log Type:GENERAL ENTRY entered by: MARY
           REC. ENROLLMENT                                      200305010136
05/30/2003 VOB  :001094 Caller:SHERRI
                Operator: PATRICE    Phone number: 000-000-0000
                Admit:05/15/2003 for MALIGNANT NEOPLASM OF LIP
                OV0095 $300 ACC;$20 CO PAY;100% ^ TO $200 PER VST;$1000 CYM
08/25/2003 Claim:200309290108-002 Provider:FRANK  THOMAS  MD
                08/25/2003-08/25/2003 LUMBAGO
                OFFICE OUTPT NEW 20 MINUTES           Chg:    68.00 Status:8
                Examiner:MARY    MARY
                Pay Date:12/17/2003 Amount:       .00
                Amount:       68.00 ineligible due to ADDITIONAL INFORMATION N
09/30/2003 SUSPNDED NOTE: REQUEST PREX FROM DR. THOMAS AND EE

10/02/2003 SUSPENDED LTR: REQUEST PREX FROM DR. THOMAS AND EE    200310020027
                08/25/2003-08/25/2003 LUMBAGO
                RADEX SPI LUMBOSAC 2/3 VIEWS          Chg:   102.00 Status:8
                Examiner:MARY    MARY
                Pay Date:12/17/2003 Amount:       .00
                Amount:      102.00 ineligible due to ADDITIONAL INFORMATION N
           Claim:200405050127 Provider:FRANK  THOMAS  MD
                08/25/2003-08/25/2003 LUMBAGO
                OFFICE OUTPT NEW 20 MINUTES           Chg:    68.00 Status:8
                Examiner:MARY    MARY
                Pay Date:05/13/2004 Amount:     33.00 Check:    004257 Prov.
                08/25/2003-08/25/2003 LUMBAGO
                RADEX SPI LUMBOSAC 2/3 VIEWS          Chg:   102.00 Status:8
                Examiner:MARY    MARY
                Pay Date:05/13/2004 Amount:    102.00 Check:    004257 Prov.
10/02/2003 Claim:200310160063-002 Provider:VALLEY FAMILY DENTISTRY
                10/02/2003-10/02/2003
                PERIODIC ORAL EVALUATION ESTABLISHED Chg:    30.00 Status:8
                Examiner:DEBBIE   DEBBIE STORY
                Pay Date:10/22/2003 Amount:     30.00 Check:    001981 Prov.
                Check clear Date:11/30/2003   Reconciliation Code:R
           Claim:200310160064-002 Provider:VALLEY FAMILY DENTISTRY
                10/02/2003-10/02/2003
                UNSPECIFIED ADJUNCTIVE PROC BY REPOR Chg:   450.00 Status:8
                Examiner:DEBBIE   DEBBIE STORY
                Pay Date:10/22/2003 Amount:    307.60 Check:    001981 Prov.
                Check clear Date:11/30/2003   Reconciliation Code:R
                10/02/2003-10/02/2003
                PROPHYLAXIS - ADULT                   Chg:    51.00 Status:8
                Examiner:DEBBIE   DEBBIE STORY
                Pay Date:10/22/2003 Amount:     51.00 Check:    001981 Prov.
                Check clear Date:11/30/2003   Reconciliation Code:R
                10/02/2003-10/02/2003
                BITEWINGS - TWO FILMS                 Chg:    28.00 Status:8
```



EXHIBIT 4

```
Date: 05/07/08                    C H R O N O L O G                    Page:    2

    Date    Description
-------------------------------------------------------------------------------
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      22.40 Check:    001981 Prov.
            Check clear Date:11/30/2003   Reconciliation Code:R
        Claim:200310200097-001 Provider:VALLEY FAMILY DENTISTRY
            10/02/2003-10/02/2003
            PERIODIC ORAL EVALUATION ESTABLISHED Chg:    30.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:      30.00 ineligible due to DUPLICATE CLAIM/NC
        Claim:200310200098-001 Provider:VALLEY FAMILY DENTISTRY
            10/02/2003-10/02/2003
            UNSPECIFIED ADJUNCTIVE PROC BY REPOR Chg:   450.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:     450.00 ineligible due to DUPLICATE CLAIM/NC
            10/02/2003-10/02/2003
            PROPHYLAXIS - ADULT                Chg:    51.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:      51.00 ineligible due to DUPLICATE CLAIM/NC
            10/02/2003-10/02/2003
            BITEWINGS - TWO FILMS              Chg:    28.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:      28.00 ineligible due to DUPLICATE CLAIM/NC
10/02/2003 Printed letter:PROV:PRE-EX #1                     200310020026
10/02/2003 Printed letter:CLMT:PREX INFO/PHYSICIAN          200310020027
10/14/2003 Claim:200310150036-001 Provider:VALLEY FAMILY DENTISTRY
            10/14/2003-10/14/2003
            CROWN - PORCELAIN FUSED PREDOMINANTL Chg:   650.00 Status:8
            Examiner:PATRICE   Patrice S. Brown
            Pay Date:10/22/2003 Amount:   282.00 Check:    001981 Prov.
            Check clear Date:11/30/2003   Reconciliation Code:R
            10/14/2003-10/14/2003
            CROWN - PORCELAIN FUSED PREDOMINANTL Chg:   650.00 Status:8
            Examiner:PATRICE   Patrice S. Brown
            Pay Date:10/22/2003 Amount:   307.00 Check:    001981 Prov.
            Check clear Date:11/30/2003   Reconciliation Code:R
10/14/2003 Log Type:GENERAL ENTRY entered by: MARY
           REC PREX FROM DR. THOMAS.  NO TREATMENT.           200310140060
10/15/2003 Claim:200310220031-001 Provider:VALLEY FAMILY DENTISTRY
            10/15/2003-10/15/2003
            ANALGESIA ANXIOLYSIS INHALATION OF   Chg:    26.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:      26.00 ineligible due to EXCEEDS ANNUAL MAXIMUM
            10/15/2003-10/15/2003
            MOLAR                              Chg:   585.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
            Pay Date:10/22/2003 Amount:      .00
            Amount:     585.00 ineligible due to EXCEEDS ANNUAL MAXIMUM
12/30/2003 Log Type:PHONE CALL entered by: MARY
           **** User:MARY(MARY) 12/30/2003 15:28 *****        20031230MARY
01/05/2004 Claim:200401150055-001 Provider:VALLEY FAMILY DENTISTRY
            01/05/2004-01/05/2004
            CROWN - PORCELAIN/CERAMIC SUBSTRATE Chg:   650.00 Status:8
            Examiner:DEBBIE    DEBBIE STORY
```

```
Date: 05/07/08                  C H R O N O L O G              Page:    3

    Date    Description
---------------------------------------------------------------------------
                Pay Date:02/12/2004 Amount:   325.00 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
                01/05/2004-01/05/2004
                CROWN - PORCELAIN/CERAMIC SUBSTRATE  Chg:   650.00 Status:8
                Examiner:DEBBIE   DEBBIE STORY
                Pay Date:02/12/2004 Amount:   325.00 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
01/06/2004 Claim:200401150038-001 Provider:VALLEY FAMILY DENTISTRY
                01/06/2004-01/06/2004
                ANALGESIA ANXIOLYSIS INHALATION OF   Chg:    26.00 Status:8
                Examiner:PATRICE   Patrice S. Brown
                Pay Date:02/12/2004 Amount:    20.80 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
                01/06/2004-01/06/2004
                RESIN-BASED COMPOSITE - ONE SURFACE  Chg:   100.00 Status:8
                Examiner:PATRICE   Patrice S. Brown
                Pay Date:02/12/2004 Amount:    80.00 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
                01/06/2004-01/06/2004
                POST AND CORE ADDITION TO CROWN      Chg:   230.00 Status:8
                Examiner:PATRICE   Patrice S. Brown
                Pay Date:02/12/2004 Amount:   115.00 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
01/14/2004 Claim:200401210057-001 Provider:VALLEY FAMILY DENTISTRY
                01/14/2004-01/14/2004
                ANALGESIA ANXIOLYSIS INHALATION OF   Chg:    26.00 Status:8
                Examiner:PATRICE   Patrice S. Brown
                Pay Date:02/12/2004 Amount:    20.80 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
                01/14/2004-01/14/2004
                AMALGAM-ONE SURFACE PRIMARY OR PERMA Chg:    78.00 Status:8
                Examiner:PATRICE   Patrice S. Brown
                Pay Date:02/12/2004 Amount:    62.40 Check:     002452 Prov.
                Check clear Date:02/29/2004  Reconciliation Code:R
01/20/2004 Log Type:GENERAL ENTRY entered by: DEBBIE STORY
                RECEIVED PREX FROM PATIENT - NO TREATMENT.       200401200110
01/20/2004 Log Type:PHONE CALL entered by: Patrice S. Brown
                **** User:PATRICE(Patrice S. Brown) 01/20/2004 09:19 *20040120PATR
                MBD
02/12/2004 Claim:200411300033-001 Provider:NADIA G CAMERON  MD
                02/12/2004-02/12/2004 HEADACHE
                OFFICE OUTPT EST15 MIN               Chg:    63.00 Status:8
                Examiner:MARY     MARY
                Pay Date:12/14/2004 Amount:    43.00 Check:     005061 Prov.
02/17/2004 Claim:200501110066-002 Provider:NADIA G CAMERON   MD
                02/17/2004-02/17/2004 UNS PYELONEPHRITIS
                OFFICE OUTPT EST15 MIN               Chg:    63.00 Status:8
                Examiner:MARY     MARY
                Pay Date:01/18/2005 Amount:    43.00 Check:     005158 Prov.
                02/17/2004-02/17/2004 UNS PYELONEPHRITIS
                COLLJ VEN BLD VNPNXR                 Chg:     3.00 Status:8
                Examiner:MARY     MARY
                Pay Date:01/18/2005 Amount:     3.00 Check:     005158 Prov.
05/05/2004 Log Type:PHONE CALL entered by: MARY
                **** User:MARY(MARY) 05/05/2004 14:25 *****      20040505MARY
06/14/2004 VOB  :002231 Caller:CHRISTINE
                Operator: MARY     Phone number: 334-749-0390
```

```
Date: 05/07/08                 C H R O N O L O G               Page:    4

   Date    Description
--------------------------------------------------------------------------------
            Admit:06/14/2004 for PREGNANT STATE-INCIDENTAL
            READ DISCLOSURE STATEMENT
         Claim:200408310374-007 Provider:EAST ALABAMA MEDICAL CENTER
            06/14/2004-06/14/2004 PREGNANT STATE-INCIDENTAL
            LABORATORY-BACTERIOLOGY AND MICROBIO Chg:   121.49 Status:8
            Examiner:MARY     MARY
            Pay Date:09/20/2004 Amount:        .00
            Amount:   109.34 applied to $500 IND/(X3) FAM
06/14/2004 Log Type:PHONE CALL entered by: MARY
            **** User:MARY(MARY) 06/14/2004 13:51 *****        20040614MARY
06/15/2004 Claim:200408310376-007 Provider:EAST ALABAMA MEDICAL CENTER
            06/15/2004-06/15/2004 PREGNANT STATE-INCIDENTAL
            LABORATORY-IMMUNOLOGY              Chg:    98.34 Status:8
            Examiner:MARY     MARY
            Pay Date:09/20/2004 Amount:        .00
            Amount:    88.51 applied to $500 IND/(X3) FAM
06/21/2004 VOB  :002265 Caller:ANGELA
            Operator: PATRICE   Phone number: 334-749-0390
            Admit:06/21/2004 for
            READ DISCLOSURE STATEMENT...CIN
            SI     90% TO OOP
06/21/2004 Log Type:PHONE CALL entered by: Patrice S. Brown
            **** User:PATRICE(Patrice S. Brown) 06/21/2004 14:49 *20040621PATR
07/07/2004 Log Type:GENERAL ENTRY entered by: TRAIN1
            REC TERMINATION OF MEDICAL COVERAGE.           200407070158
07/21/2004 CERTIFICATE                                     200407210003
09/17/2004 Log Type:GENERAL ENTRY entered by: MARY
            REC TERMINATION ?                              200409170105
01/15/2005 Printed letter:                                200501150024
01/25/2005 Log Type:GENERAL ENTRY entered by: MARY
            REC COBRA ELECTION                             200501250822
01/31/2005 Log Type:GENERAL ENTRY entered by: MARY
            REC COBRA INFORMATION                          200501310278
02/22/2005 Log Type:GENERAL ENTRY entered by: Donna Whiddon
            EE CALLED CHECKING ON COBRA ROLL OVER FROM BCBS
            MAILED JAN PREMIUM TO BCBS. INFORMED EE THAT SHE COULD
            WAIT FOR REFUND FROM BCBS AND THEM FORWARD PREM TO TBR
            OR ISSUE ANOTHER CK TO TBR FOR JAN. SHE ELECTED TO WAIT
            FOR REFUND. EXPLAINED CLAIMS WOULD BE PENDED UNTIL PREM
            IS RECEIVED.  ALSO GAVE HER WEB ADDRESS TO GET INTO ON
            WHERE TO REFILE CLAIMS
12/02/2005 Printed letter:RATE CHANGE NOTICE               200512020075
            Printed letter:RATE CHANGE NOTICE              200512020165
11/08/2007 Log Type:PHONE CALL entered by: DEBBIE STORY
            KAREN SPOKE W/ NEIL @ AMBASSADOR IN REF TO COBRA LETTE20071108DEBB
            HE WANT COPY FAXED TO HIM @ 226-1282
            **** User:DEBBIE(DEBBIE STORY) 11/08/2007 15:12 *****
```

## Evans Brittain

| | |
|---|---|
| **From:** | "Evans Brittain" <ebrittain@ball-ball.com> |
| **To:** | "Jenny Connell Smith" <jlconnell@haynes-haynes.com>; "'Kimble, Cavender'" <CKIMBLE@balch.com> |
| **Cc:** | "Alicia Haynes" <akhaynes@haynes-haynes.com> |
| **Sent:** | Wednesday, May 07, 2008 1:46 PM |
| **Attach:** | Cooper 1 of 2.pdf; Cooper 2 of 2.pdf |
| **Subject:** | Re: Lauren Cooper |

Jenny-

   Here the documents we discussed.  Thanks, Evans

EXHIBIT

3

tabbies

5/14/2008

**PLAN DOCUMENT AND**
**SUMMARY PLAN DESCRIPTION**
**FOR**

**AMBASSADOR PERSONNEL SERVICES**
**EMPLOYEE BENEFIT PLAN**

**Platinum 500, 1000**
**Elite 1,500, 2,500**

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ELIGIBILITY, FUNDING, EFFECTIVE DATE AND TERMINATION PROVISIONS ........................ 3

OPEN ENROLLMENT ........................................................................................................ 10

SCHEDULE OF BENEFITS ................................................................................................. 11

MEDICAL BENEFITS ........................................................................................................ 15

COST MANAGEMENT SERVICES ....................................................................................... 21

DEFINED TERMS ............................................................................................................. 24

PLAN EXCLUSIONS .......................................................................................................... 30

PRESCRIPTION DRUG BENEFITS ...................................................................................... 33

HOW TO SUBMIT A CLAIM .............................................................................................. 35

COORDINATION OF BENEFITS .......................................................................................... 39

THIRD PARTY RECOVERY PROVISION ............................................................................... 42

CONTINUATION COVERAGE RIGHTS UNDER COBRA .......................................................... 44

RESPONSIBILITIES FOR PLAN ADMINISTRATION .............................................................. 50

GENERAL PLAN INFORMATION ........................................................................................ 54

# INTRODUCTION

This document is a description of Ambassador Personnel Services Employee Benefit Plan (the Plan). No oral interpretations can change this Plan. The Plan described is designed to protect Plan Participants against certain catastrophic health expenses.

Coverage under the Plan will take effect for an eligible Employee and designated Dependents when the Employee and such Dependents satisfy the Waiting Period and all the eligibility requirements of the Plan.

The Employer fully intends to maintain this Plan indefinitely. However, it reserves the right to terminate, suspend, discontinue or amend the Plan at any time and for any reason.

Changes in the Plan may occur in any or all parts of the Plan including benefit coverage, deductibles, maximums, copayments, exclusions, limitations, definitions, eligibility and the like.

Failure to follow the eligibility or enrollment requirements of this Plan may result in delay of coverage or no coverage at all. Reimbursement from the Plan can be reduced or denied because of certain provisions in the Plan, such as coordination of benefits, subrogation, exclusions, timeliness of COBRA elections, utilization review or other cost management requirements, lack of Medical Necessity, lack of timely filing of claims or lack of coverage. These provisions are explained in summary fashion in this document; additional information is available from the Plan Administrator at no extra cost.

The Plan will pay benefits only for the expenses incurred while this coverage is in force. No benefits are payable for expenses incurred before coverage began or after coverage terminated. An expense for a service or supply is incurred on the date the service or supply is furnished.

No action at law or in equity shall be brought to recover under any section of this Plan until the appeal rights provided have been exercised and the Plan benefits requested in such appeals have been denied in whole or in part.

If the Plan is terminated, amended, or benefits are eliminated, the rights of Covered Persons are limited to Covered Charges incurred before termination, amendment or elimination.

This document summarizes the Plan rights and benefits for covered Employees and their Dependents and is divided into the following parts:

**Eligibility, Funding, Effective Date and Termination.** Explains eligibility for coverage under the Plan, funding of the Plan and when the coverage takes effect and terminates.

**Schedule of Benefits.** Provides an outline of the Plan reimbursement formulas as well as payment limits on certain services.

**Benefit Descriptions.** Explains when the benefit applies and the types of charges covered.

**Cost Management Services.** Explains the methods used to curb unnecessary and excessive charges.

> **This part should be read carefully since each Participant is required to take action to assure that the maximum payment levels under the Plan are paid.**

**Defined Terms.** Defines those Plan terms that have a specific meaning.

**Plan Exclusions.** Shows what charges are **not** covered.

**Claim Provisions.** Explains the rules for filing claims and the claim appeal process.

**Coordination of Benefits.** Shows the Plan payment order when a person is covered under more than one plan.

**Third Party Recovery Provision.** Explains the Plan's rights to recover payment of charges when a Covered Person has a claim against another person because of injuries sustained.

**Continuation Coverage Rights Under COBRA.** Explains when a person's coverage under the Plan ceases and the continuation options which are available.

**ERISA Information.** Explains the Plan's structure and the Participants' rights under the Plan.

## ELIGIBILITY, FUNDING, EFFECTIVE DATE
## AND TERMINATION PROVISIONS

A Plan Participant should contact the Plan Administrator to obtain additional information, free of charge, about Plan coverage of a specific benefit, particular drug, treatment, test or any other aspect of Plan benefits or requirements.

## ELIGIBILITY

### Eligible Classes of Employees

| | |
|---|---|
| (1) | All Active Employees |
| (2) | Permanent Temporary Staffing Personnel |

**Eligibility Requirements for Employee Coverage.** A person is eligible for Employee coverage from the first day that he or she:

(1)    is a Full-Time, Active Employee of the Employer. An Employee is considered to be Full-Time if he or she normally works at least 30 hours per week and is on the regular payroll of the Employer for that work.

(2)    is in a class eligible for coverage.

**Eligible Classes of Dependents.** A Dependent is any one of the following persons:

(1)    A covered Employee's Spouse and unmarried children from birth to the limiting age of 19 years. The Dependent children must be primarily dependent upon the covered Employee for support and maintenance. However, a Dependent child will continue to be covered after age 19, provided the child is a full-time student at an accredited school, primarily dependent upon the covered Employee for support and maintenance, is unmarried and under the limiting age of 25. When the child reaches either limiting age, coverage will end on the child's birthday. If the child does not maintain full-time status or graduates, coverage closes independent of limiting age.

Full-time student coverage continues only between semester/quarters if the student is enrolled as a full-time student in the next regular semester/quarter. If the student is not enrolled as a full-time student, coverage will be terminated retroactively to the last day of the attended school term.

The term "Spouse" shall mean the person recognized as the covered Employee's husband or wife under the laws of the state where the covered Employee lives. The Plan Administrator may require documentation proving a legal marital relationship.

The term "children" shall include natural children living in the same household as the Employee, adopted children or children placed with a covered Employee in anticipation of adoption or Foster Children. Step-children who reside in the Employee's household may also be included as long as a natural parent remains married to the Employee and also resides in the Employee's household.

If a covered Employee is the Legal Guardian of an unmarried child or children, these children may be enrolled in this Plan as covered Dependents.

The phrase "child placed with a covered Employee in anticipation of adoption" refers to a child whom the Employee intends to adopt, whether or not the adoption has become final, who has not attained the age of 18 as of the date of such placement for adoption. The term "placed" means the assumption and retention by such Employee of a legal obligation for total or partial support of the child in anticipation of adoption of the child. The child must be available for adoption and the legal process must have commenced.

Any child of a Plan Participant who is an alternate recipient under a qualified medical child support order shall be considered as having a right to Dependent coverage under this Plan.

A participant of this Plan may obtain, without charge, a copy of the procedures governing qualified medical child support order (QMCSO) determinations from the Plan Administrator.

The phrase "primarily dependent upon" shall mean dependent upon the covered Employee for support and maintenance as defined by the Internal Revenue Code and the covered Employee must declare the child as an income tax deduction. The Plan Administrator may require documentation proving dependency, including birth certificates, tax records or initiation of legal proceedings severing parental rights.

(2)     A covered Dependent child who reaches the limiting age and is Totally Disabled, incapable of self-sustaining employment by reason of mental or physical handicap, primarily dependent upon the covered Employee for support and maintenance and unmarried. The Plan Administrator may require, at reasonable intervals during the two years following the Dependent's reaching the limiting age, subsequent proof of the child's Total Disability and dependency.

After such two-year period, the Plan Administrator may require subsequent proof not more than once each year. The Plan Administrator reserves the right to have such Dependent examined by a Physician of the Plan Administrator's choice, at the Plan's expense, to determine the existence of such incapacity.

These persons are excluded as Dependents: other individuals living in the covered Employee's home, but who are not eligible as defined; the legally separated or divorced former Spouse of the Employee; any person who is on active duty in any military service of any country; or any person who is covered under the Plan as an Employee.

If a person covered under this Plan changes status from Employee to Dependent or Dependent to Employee, and the person is covered continuously under this Plan before, during and after the change in status, credit will be given for deductibles and all amounts applied to maximums.

If both mother and father are Employees, their children will be covered as Dependents of the mother or father, but not of both.

**Eligibility Requirements for Dependent Coverage.** A family member of an Employee will become eligible for Dependent coverage on the first day that the Employee is eligible for Employee coverage and the family member satisfies the requirements for Dependent coverage.

At any time, the Plan may require proof that a Spouse or a child qualifies or continues to qualify as a Dependent as defined by this Plan.

## FUNDING

**Cost of the Plan.** Ambassador Personnel Services shares the cost of Employee coverage under this Plan with the covered Employees. The enrollment application for coverage will include a payroll deduction authorization. This authorization must be filled out, signed and returned with the enrollment application.

The covered Employees pay the entire cost for coverage for their Dependents. The enrollment application for coverage will include a payroll deduction authorization. This authorization must be filled out, signed and returned with the enrollment application.

The level of any Employee contributions is set by the Plan Administrator. The Plan Administrator reserves the right to change the level of Employee contributions.

## PRE-EXISTING CONDITIONS

**NOTE:** The length of the Pre-Existing Conditions Limitation may be reduced or eliminated if an eligible person has Creditable Coverage from another health plan.

An eligible person may request a certificate of Creditable Coverage from his or her prior plan within 24 months after losing coverage and the Employer will assist any eligible person in obtaining a certificate of Creditable Coverage from a prior plan.

A Covered Person will be provided a certificate of Creditable Coverage if he or she requests one either before losing coverage or within 24 months of coverage ceasing.

If, after Creditable Coverage has been taken into account, there will still be a Pre-Existing Conditions Limitation imposed on an individual, that individual will be so notified.

Covered charges incurred under Medical Benefits for Pre-Existing Conditions are not payable unless incurred 12 consecutive months, or 18 months if a Late Enrollee after the person's Enrollment Date. This time may be offset if the person has Creditable Coverage from his or her previous plan.

A **Pre-Existing Condition** is a condition for which medical advice, diagnosis, care or treatment was recommended or received within six months prior to the person's Enrollment Date under this Plan. Genetic Information is not a condition. Treatment includes receiving services and supplies, consultations, diagnostic tests or prescribed medicines. In order to be taken into account, the medical advice, diagnosis, care or treatment must have been recommended by, or received from, a Physician.

The Pre-Existing Condition does not apply to Pregnancy, to a newborn child who is covered under this Plan within 31 days of birth, or to a child who is adopted or placed for adoption before attaining age 18 and who, as of the last day of the 31-day period beginning on the date of the adoption or placement for adoption, is covered under this Plan. A Pre-Existing Condition exclusion may apply to coverage before the date of the adoption or placement for adoption.

The prohibition on Pre-Existing Condition exclusion for newborn, adopted, or pre-adopted children does not apply to an individual after the end of the first 63-day period during all of which the individual was not covered under any Creditable Coverage.

## ENROLLMENT

**Enrollment Requirements.** An Employee must enroll for coverage by filling out and signing an enrollment application along with the appropriate payroll deduction authorization. The covered Employee is required to enroll for Dependent coverage also.

**Enrollment Requirements for Newborn Children.**

A newborn child of a covered Employee who has Dependent coverage is not automatically enrolled in this Plan. The newborn child is required to be enrolled on a timely basis as defined in the section "Timely Enrollments" following this section. If not enrolled timely, there will be no payment from the Plan and the covered parent will be responsible for all costs. If enrolled timely, charges for covered nursery care and covered routine Physician care will be applied toward the plan of the newborn child.

## TIMELY OR LATE ENROLLMENT

(1)     **Timely Enrollment** - The enrollment will be "timely" if the completed form is received by the Plan Administrator no later than 31 days after the person becomes eligible for the coverage, either initially or under a Special Enrollment Period.

If two Employees (husband and wife) are covered under the Plan and the Employee who is covering the Dependent children terminates coverage, the Dependent coverage may be continued by the other covered Employee with no Waiting Period as long as coverage has been continuous.

(2)　**Late Enrollment** - An enrollment is "late" if it is not made on a "timely basis" or during a Special Enrollment Period.

If an individual loses eligibility for coverage as a result of terminating employment or a general suspension of coverage under the Plan, then upon becoming eligible again due to resumption of employment or due to resumption of Plan coverage, only the most recent period of eligibility will be considered for purposes of determining whether the individual is a Late Enrollee.

The time between the date a Late Enrollee first becomes eligible for enrollment under the Plan and the first day of coverage is not treated as a Waiting Period. Coverage begins the first of the month after enrollment.

## SPECIAL ENROLLMENT PERIODS

The enrollment date for anyone who enrolls under a Special Enrollment Period is the first date of coverage. Thus, the time between the date a special enrollee first becomes eligible for enrollment under the Plan and the first day of coverage is not treated as a Waiting Period.

(1)　**Individuals losing other coverage.** An Employee or Dependent who is eligible, but not enrolled in this Plan, may enroll if each of the following conditions is met:

(a)　The Employee or Dependent was covered under a group health plan or had health insurance coverage at the time coverage under this Plan was previously offered to the individual.

(b)　If required by the Plan Administrator, the Employee stated in writing at the time that coverage was offered that the other health coverage was the reason for declining enrollment.

(c)　The coverage of the Employee or Dependent who had lost the coverage was under COBRA and the COBRA coverage was exhausted, or was not under COBRA and either the coverage was terminated as a result of loss of eligibility for the coverage (including as a result of legal separation, divorce, death, termination of employment or reduction in the number of hours of employment) or employer contributions towards the coverage were terminated.

(d)　The Employee or Dependent requests enrollment in this Plan not later than 31 days after the date of exhaustion of COBRA coverage or the termination of coverage or employer contributions, described above. Coverage will begin no later than the first day of the first calendar month following the date the completed enrollment form is received.

If the Employee or Dependent lost the other coverage as a result of the individual's failure to pay premiums or required contributions or for cause (such as making a fraudulent claim), that individual does not have a Special Enrollment right.

(2)　**Dependent beneficiaries. If:**

(a)　The Employee is a participant under this Plan (or has met the Waiting Period applicable to becoming a participant under this Plan and is eligible to be enrolled under this Plan but for a failure to enroll during a previous enrollment period), and

(b)　A person becomes a Dependent of the Employee through marriage, birth, adoption or placement for adoption,

then the Dependent (and if not otherwise enrolled, the Employee) may be enrolled under this Plan as a covered Dependent of the covered Employee. In the case of the birth or adoption of a child, the Spouse of the covered Employee may be enrolled as a Dependent of the covered Employee if the Spouse is otherwise eligible for coverage.

The Dependent Special Enrollment Period is a period of 31 days and begins on the date of the marriage, birth, adoption or placement for adoption.

The coverage of the Dependent enrolled in the Special Enrollment Period will be effective:

(a)    in the case of marriage, the first day of the first month beginning after the date of the completed request for enrollment is received;

(b)    in the case of a Dependent's birth, as of the date of birth; or

(c)    in the case of a Dependent's adoption or placement for adoption, the date of the adoption or placement for adoption.

## EFFECTIVE DATE

**Effective Date of Employee Coverage.** An Employee will be covered under this Plan as of the first day of the calendar month following the date that the Employee satisfies all of the following:

(1)    The Eligibility Requirement.

(2)    The Active Employee Requirement.

(3)    The Enrollment Requirements of the Plan.

**Active Employee Requirement.**

An Employee must be an Active Employee (as defined by this Plan) for this coverage to take effect.

**Effective Date of Dependent Coverage.** A Dependent's coverage will take effect on the day that the Eligibility Requirements are met; the Employee is covered under the Plan; and all Enrollment Requirements are met.

## TERMINATION OF COVERAGE

**When coverage under this Plan stops, Plan Participants will receive a certificate that will show the period of coverage under this Plan. Please contact the Plan Administrator for further details.**

**When Employee Coverage Terminates.** Employee coverage will terminate on the earliest of these dates (except in certain circumstances, a covered Employee may be eligible for COBRA continuation coverage. For a complete explanation of when COBRA continuation coverage is available, what conditions apply and how to select it, see the section entitled Continuation Coverage Rights under COBRA):

(1)    The date the Plan is terminated.

(2)    The date the covered Employee's Eligible Class is eliminated.

(3)    The day the covered Employee ceases to be in one of the Eligible Classes. This includes death or termination of Active Employment of the covered Employee. (See the Continuation Coverage Rights under COBRA.)

(4)    The end of the period for which the required contribution has been paid if the charge for the next period is not paid when due.

7

**Continuation During Periods of Employer-Certified Disability, Leave of Absence or Layoff.** A person may remain eligible for a limited time if Active, full-time work ceases due to disability, leave of absence or layoff. This continuance will end as follows:

**For disability leave only:** the end of the 3 calendar month period that next follows the month in which the person last worked as an Active Employee.

**For leave of absence or layoff only:** the end of the 3 calendar month period that next follows the month in which the person last worked as an Active Employee.

While continued, coverage will be that which was in force on the last day worked as an Active Employee. However, if benefits reduce for others in the class, they will also reduce for the continued person.

**Continuation During Family and Medical Leave.** Regardless of the established leave policies mentioned above, this Plan shall at all times comply with the Family and Medical Leave Act of 1993 as promulgated in regulations issued by the Department of Labor.

During any leave taken under the Family and Medical Leave Act, the Employer will maintain coverage under this Plan on the same conditions as coverage would have been provided if the covered Employee had been continuously employed during the entire leave period.

If Plan coverage terminates during the FMLA leave, coverage will be reinstated for the Employee and his or her covered Dependents if the Employee returns to work in accordance with the terms of the FMLA leave. Coverage will be reinstated only if the person(s) had coverage under this Plan when the FMLA leave started, and will be reinstated to the same extent that it was in force when that coverage terminated. For example, Pre-Existing Conditions limitations and other Waiting Periods will not be imposed unless they were in effect for the Employee and/or his or her Dependents when Plan coverage terminated.

**Rehiring a Terminated Employee.** A terminated Employee who is rehired will be treated as a new hire and be required to satisfy all Eligibility and Enrollment requirements. However, if the Employee is returning to work directly from COBRA coverage, this Employee does not have to satisfy any employment waiting period or Pre-Existing Conditions provision.

**Employees on Military Leave.** Employees going into or returning from military service may elect to continue Plan coverage as mandated by the Uniformed Services Employment and Reemployment Rights Act under the following circumstances. These rights apply only to Employees and their Dependents covered under the Plan before leaving for military service.

(1)    The maximum period of coverage of a person under such an election shall be the lesser of:

    (a)    The 18 month period beginning on the date on which the person's absence begins; or

    (b)    The day after the date on which the person was required to apply for or return to a position of employment and fails to do so.

(2)    A person who elects to continue health plan coverage may be required to pay up to 102% of the full contribution under the Plan, except a person on active duty for 30 days or less cannot be required to pay more than the Employee's share, if any, for the coverage.

(3)    An exclusion or Waiting Period may not be imposed in connection with the reinstatement of coverage upon reemployment if one would not have been imposed had coverage not been terminated because of service. However, an exclusion or Waiting Period may be imposed for coverage of any Illness or Injury determined by the Secretary of Veterans Affairs to have been incurred in, or aggravated during, the performance of uniformed service.

**When Dependent Coverage Terminates.** A Dependent's coverage will terminate on the earliest of these dates (except in certain circumstances, a covered Dependent may be eligible for COBRA continuation coverage. For a complete explanation of when COBRA continuation coverage is available, what conditions apply and how to select it, see the section entitled Continuation Coverage Rights under COBRA):

(1)    The date the Plan or Dependent coverage under the Plan is terminated.

(2)    The date that the Employee's coverage under the Plan terminates for any reason including death. (See the Continuation Coverage Rights under COBRA.)

(3)    The date a covered Spouse loses coverage due to loss of dependency status. (See the Continuation Coverage Rights under COBRA.)

(4)    On the first date that a Dependent child ceases to be a Dependent as defined by the Plan. (See the Continuation Coverage Rights under COBRA.)

(5)    The end of the period for which the required contribution has been paid if the charge for the next period is not paid when due.

## OPEN ENROLLMENT

**OPEN ENROLLMENT**

Every November 1st - November 30th, the annual open enrollment period, covered Employees and their covered Dependents will be able to change from one plan to another plan.

Plan choices made during the open enrollment period will become effective January 1st and remain in effect until the next January 1st unless there is a change in family status during the year (birth, death, marriage, divorce, adoption) or loss of coverage due to loss of a Spouse's employment. To the extent previously satisfied, coverage Waiting Periods and Pre-Existing Conditions Limits will be considered satisfied when changing from one plan to another plan.

A Plan Participant who fails to make an election during open enrollment will automatically retain his or her present Plan.

## SCHEDULE OF BENEFITS

**Verification of Eligibility** 1-888-352-5246

Call this number to verify eligibility for Plan benefits **before** the charge is incurred.

## MEDICAL BENEFITS

All benefits described in this Schedule are subject to the exclusions and limitations described more fully herein including, but not limited to, the Plan Administrator's determination that: care and treatment is Medically Necessary; that charges are Usual and Reasonable; that services, supplies and care are not Experimental and/or Investigational. The meanings of these capitalized terms are in the Defined Terms section of this document.

**The following services must be precertified or reimbursement from the Plan may be reduced.**

**Hospitalizations, MRI/Cat scans, Outpatient surgical procedures, certain diagnostic procedures**

The attending Physician does not have to obtain precertification from the Plan for prescribing a maternity length of stay that is 48 hours or less for a vaginal delivery or 96 hours or less for a cesarean delivery.

For more information see the Cost Management section in this booklet for details

**Participating Provider Organization**

Please refer to your Employee ID Card for the PPO Network in your Location.

This Plan has entered into an agreement with certain Hospitals, Physicians and other health care providers, which are called Participating Providers. Because these Participating Providers have agreed to charge reduced fees to persons covered under the Plan, the Plan can afford to reimburse a higher percentage of their fees.

Therefore, when a Covered Person uses a Participating Provider, that Covered Person will receive a higher payment from the Plan than when a Non-participating Provider is used. It is the Covered Person's choice as to which Provider to use.

Under the following circumstances, the higher in-Network payment will be made for certain non-Network services:

> If a Covered Person is out of the PPO service area and has a Medical Emergency requiring immediate care.

> If a Covered Person receives Physician or anesthesia services by a non-Network Provider at an in-Network facility.

**Deductibles/Copayments payable by Plan Participants**

Deductibles/Copayments are dollar amounts that the Covered Person must pay before the Plan pays.

A deductible is an amount of money that is paid once a Calendar Year per Covered Person. Typically, there is one deductible amount per Plan and it must be paid before any money is paid by the Plan for any Covered Charges. Each January 1st, a new deductible amount is required. Deductibles do not accrue toward the 100% maximum out-of-pocket payment.

A copayment is a smaller amount of money that is paid each time a particular service is used. Typically, there may be copayments on some services and other services will not have any copayments. Copayments do not accrue toward the 100% maximum out-of-pocket payment.

| | PARTICIPATING PROVIDERS | NON-PARTICIPATING PROVIDERS |
|---|---|---|
| **MAXIMUM LIFETIME BENEFIT AMOUNT** | $1,000,000 | |

**Note: The maximums listed below are the total for Participating and Non-Participating expenses. For example, if a maximum of 60 days is listed twice under a service, the Calendar Year maximum is 60 days total which may be split between Participating and Non-Participating providers.**

**DEDUCTIBLE, PER CALENDAR YEAR**

| **Per Covered Person:** | | |
|---|---|---|
| Platinum 500 Plan | $500 | $1,000 |
| Platinum 1000 Plan | $1,000 | $2,000 |
| Elite 1500 | $1,500 | $3,000 |
| Elite 2500 | $2,500 | $5,000 |
| Per Family Unit | 3 persons | 3 persons |

**MAXIMUM OUT-OF-POCKET AMOUNT, PER CALENDAR YEAR**

| **Per Covered Person:** | | |
|---|---|---|
| Platinum 500 Plan | $2,000 | $4,000 |
| Platinum 1000 Plan | $3,000 | $6,000 |
| Elite 1500 | $3,000 | $6,000 |
| Elite 2500 | $4,000 | $8,000 |
| Per Family Unit | 3 persons | 3 persons |

The Plan will pay the designated percentage of Covered Charges until out-of-pocket amounts are reached, at which time the Plan will pay 100% of the remainder of Covered Charges for the rest of the Calendar Year unless stated otherwise. _Individual PPO out-of-pocket amounts may not be used to satisfy individual Non-PPO amounts and vice versa._

The following charges do not apply toward the out-of-pocket maximum and are never paid at 100%. Deductible(s), Cost containment penalties, Copayments, Retail/mail order Prescription drugs, In & Out patient substance abuse treatment, In & Out patient mental health charges,

**COVERED CHARGES**

**Hospital Services**

| Room and Board | 80% after deductible the semiprivate room rate | 60% after deductible the semiprivate room rate |
|---|---|---|
| Intensive Care Unit | 80% after deductible 3 times the semiprivate room rate | 60% after deductible 3 times the semiprivate room rate |
| **Skilled Nursing Facility** | 80% after deductible one half Hospital average semiprivate room & board rate 30 days Calendar Year maximum | 60% after deductible one half Hospital average semiprivate room & board rate 30 days Calendar Year maximum |

**Physician Services**

| Inpatient visits | 80% after deductible | 60% after deductible |
|---|---|---|
| Office visits | 100% after $30 copayment up to $300 per visit, then deductible and coinsurance apply | 60% after deductible |

_Physician office visit services must be performed during the same visit_ and include only the following: office visit, consultation and examination, allergy injection, therapeutic or diagnostic injection, pathology (lab), x-ray testing and office surgery (chemotherapy is not included in this benefit)

| Surgery | 80% after deductible | 60% after deductible |
|---|---|---|

| | PARTICIPATING PROVIDERS | NON-PARTICIPATING PROVIDERS |
|---|---|---|
| **Home Health Care** | 80% after deductible<br>120 visits Calendar Year maximum | 60% after deductible<br>120 visits Calendar Year maxium |
| **Outpatient Private Duty Nursing** | 80% after deductible<br>$2,500 Calendar Year maximum | 60% after deductible<br>$2,500 Calendar Year maximum |
| **Hospice Care** | 80% after deductible<br>$5,000 inpatient and outpatient<br>Lifetime maximum | 60% after deductible<br>$5,000 inpatient and outpatient<br>Lifetime maximum |
| Bereavement Counseling | 80% after deductible | 60% after deductible |
| **Ambulance Service** | 80% after deductible | 80% after deductible |
| **Jaw Joint/TMJ** | 80% after deductible<br>$15,000 Lifetime maximum | 60% after deductible<br>$15,000 Lifetime maximum |
| **Wig After Chemotherapy** | 80% after deductible<br>$500 Lifetime maximum | 60% after deductible<br>$500 Lifetime maximum |
| **Occupational Therapy** | 80% after deductible<br>20 visits Calendar Year maximum | 60% after deductible<br>20 visits Calendar Year maximum |
| **Speech Therapy** | 80% after deductible<br>20 visits Calendar Year maximum | 60% after deductible<br>20 visits Calendar Year maximum |
| **Physical Therapy** | 80% after deductible<br>20 visits Calendar Year maximum | 60% after deductible<br>20 visits Calendar Year maximum |
| **Durable Medical Equipment** | 80% after deductible<br>$5,000 Calendar Year maximum | 60% after deductible<br>$5,000 Calendar Year maximum |
| **Prosthetics** | 80% after deductible | 60% after deductible |
| **Spinal Manipulation Chiropractic** | 80% after deductible<br>20 visits Calendar Year maximum | 80% after deductible<br>20 visits Calendar Year maximum |
| **Mental Disorders** | | |
| Inpatient | 80% after deductible<br>30 days Calendar Year maximum | No Benefits |
| Outpatient | 100% after $30 copayment<br>20 visits Calendar Year maximum | No Benefits |
| **Substance Abuse** | | |
| Inpatient | 80% after deductible<br>6 days Calendar Year maximum | No Benefits |
| Outpatient | 100% after $30 copayment<br>20 visits Calendar Year maximum | No Benefits |
| Inpatient / Outpatient Combined | $10,000 Lifetime maximum | No Benefits |
| **Preventive Care** | | |
| Routine Well Adult Care | 100% Deductible waived<br>$500 Calendar Year maximum<br>(charges over $500 are not covered) | 60% Deductible waived<br>$500 Calendar Year maximum<br>(charges over $500 are not covered) |
| Includes: office visits, pap smear, mammogram, prostate screening, gynecological exam, routine physical examination, x-rays, laboratory blood tests and immunizations/flu shots. | | |
| Routine Well Child Care | 100% Deductible waived<br>$150 Calendar Year maximum<br>(charges over $150 are not covered) | 60% Deductible waived<br>$150 Calendar Year maximum<br>(charges over $150 are not covered) |
| Includes: office visits, routine physical examination, laboratory blood tests, x-rays, hearing tests, vision tests and immunizations. | | |
| Routine Well Newborn Care | 80% after deductible | 60 % after deductible |
| **Organ Transplants** | 80% after deductible | 60% after deductible |
| **Pregnancy** | 80% after deductible | 60% after deductible |
| Dependent daughters not covered. | | |
| **Infertility Benefits** | 80% after deductible | 60% after deductible |
| Includes Only: care, supplies and services for the diagnosis of infertility.  All other charges not covered | | |

**PRESCRIPTION DRUG BENEFIT**

**Pharmacy Option**

Generic drugs
    Copayment .................................................................................... $25

Preferred Brand Name drugs

    Copayment .................................................................................... $45

Non-Preferred Brand Name drugs
    Copayment .................................................................................... $70

**Mail Order Prescription Drug Option**

Generic drugs
    Copayment .................................................................................... $50

Preferred Brand Name drugs
    Copayment .................................................................................... $90

Non-Preferred Brand Name drugs
    Copayment .................................................................................... $140

Calendar Year maximum (for retail and Mail order combined). ................................ $5,000

**Healthscreen Disease Management Program**

    Generic drugs - Copayment ............................................................ $0

Employees and their spouse may be eligible for the Health Screen Disease Management Program
if you are taking prescription medication and diagnosed by a physician for one of the following conditions:
Asthma, high blood pressure, elevated cholesterol, acid reflux disease, diabetes-type 1 or type 2.

Contact Healthscreen Disease Management
1-877-223-4325
Customer Service

## MEDICAL BENEFITS

Medical Benefits apply when Covered Charges are incurred by a Covered Person for care of an Injury or Sickness and while the person is covered for these benefits under the Plan.

## DEDUCTIBLE

**Deductible Amount.** This is an amount of Covered Charges for which no benefits will be paid. Before benefits can be paid in a Calendar Year a Covered Person must meet the deductible shown in the Schedule of Benefits.

When the maximum amount shown in the Schedule of Benefits has been incurred by members of the Family Unit toward their Calendar Year deductible, the deductibles of the remaining members of that Family Unit will be considered satisfied for that year.

In part or in whole, of the individual PPO deductible may be used as satisfaction, in part or in whole of the individual Non-PPO deductible, and vice versa.

This amount will not accrue toward the 100% maximum out-of-pocket payment.

## BENEFIT PAYMENT

Each Calendar Year, benefits will be paid for the Covered Charges of a Covered Person that are in excess of the deductible and any copayments. Payment will be made at the rate shown under reimbursement rate in the Schedule of Benefits. No benefits will be paid in excess of the Maximum Benefit Amount or any listed limit of the Plan.

## OUT-OF-POCKET LIMIT

Covered Charges are payable at the percentages shown each Calendar Year until the out-of-pocket limit shown in the Schedule of Benefits is reached. Then, Covered Charges incurred by a Covered Person will be payable at 100% (except for the charges excluded) for the rest of the Calendar Year.

When a Family Unit reaches the out-of-pocket limit, Covered Charges for the remaining members of the Family Unit will be payable at 100% (except for the charges excluded) for the rest of the Calendar Year.

## MAXIMUM BENEFIT AMOUNT

The Maximum Benefit Amount is shown in the Schedule of Benefits. It is the total amount of benefits that will be paid under the Plan for all Covered Charges incurred by a Covered Person.

## COVERED CHARGES

Covered charges are the Usual and Reasonable Charges that are incurred for the following items of service and supply. These charges are subject to the benefit limits, exclusions and other provisions of this Plan. A charge is incurred on the date that the service or supply is performed or furnished.

(1)     **Hospital Care.** The medical services and supplies furnished by a Hospital or Ambulatory Surgical Center or a Birthing Center. Covered charges for room and board will be payable as shown in the Schedule of Benefits. After 23 observation hours, a confinement will be considered an inpatient confinement.

Room charges made by a Hospital having only private rooms will be paid at 80% of the average private room rate.

Charges for an Intensive Care Unit stay are payable as described in the Schedule of Benefits.

(2)     **Coverage of Pregnancy.** The Usual and Reasonable Charges for the care and treatment of Pregnancy are covered the same as any other Sickness for a covered Employee or covered Spouse.

Group health plans generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

There is no coverage of Pregnancy for a Dependent child.

(3)     **Skilled Nursing Facility Care.** The room and board and nursing care furnished by a Skilled Nursing Facility will be payable if and when:

(a)     the patient is confined as a bed patient in the facility;

(b)     the confinement starts within 14 days of a Hospital confinement of at least 3 days;

(c)     the attending Physician certifies that the confinement is needed for further care of the condition that caused the Hospital confinement; and

(d)     the attending Physician completes a treatment plan which includes a diagnosis, the proposed course of treatment and the projected date of discharge from the Skilled Nursing Facility.

Covered charges for a Covered Person's care in these facilities is limited to the covered daily maximum shown in the Schedule of Benefits.

(4)     **Physician Care.** The professional services of a Physician for surgical or medical services.

(a)     Charges for **multiple surgical procedures** will be a Covered Charge subject to the following provisions:

(i)     If bilateral or multiple surgical procedures are performed by one (1) surgeon, benefits will be determined based on the Usual and Reasonable Charge that is allowed for the primary procedures; 50% of the Usual and Reasonable Charge will be allowed for each additional procedure performed through the same incision. Any procedure that would not be an integral part of the primary procedure or is unrelated to the diagnosis will be considered "incidental" and no benefits will be provided for such procedures;

(ii)     If multiple unrelated surgical procedures are performed by two (2) or more surgeons on separate operative fields, benefits will be based on the Usual and Reasonable Charge for each surgeon's primary procedure. If two (2) or more surgeons perform a procedure that is normally performed by one (1) surgeon, benefits for all surgeons will not exceed the Usual and Reasonable percentage allowed for that procedure; and

(iii)     If an assistant surgeon is required, the assistant surgeon's covered charge will not exceed 20% of the surgeon's Usual and Reasonable allowance.

(5)     **Private Duty Nursing Care.** The private duty nursing care by a licensed nurse (R.N., L.P.N. or L.V.N.). Covered charges for this service will be included to this extent:

(a)     **Inpatient Nursing Care.** Charges are covered only when care is Medically Necessary or not Custodial in nature and the Hospital's Intensive Care Unit is filled or the Hospital has no Intensive Care Unit.

(b)    **Outpatient Nursing Care.** Charges are covered only when care is Medically Necessary and not Custodial in nature. The only charges covered for Outpatient nursing care are those shown below, under Home Health Care Services and Supplies. Outpatient private duty nursing care on a 24-hour-shift basis is not covered.

(6)    **Home Health Care Services and Supplies.** Charges for home health care services and supplies are covered only for care and treatment of an Injury or Sickness when Hospital or Skilled Nursing Facility confinement would otherwise be required. The diagnosis, care and treatment must be certified by the attending Physician and be contained in a Home Health Care Plan.

Benefit payment for nursing, home health aide and therapy services is subject to the Home Health Care limit shown in the Schedule of Benefits.

A home health care visit will be considered a periodic visit by either a nurse or therapist, as the case may be, or four hours of home health aide services.

(7)    **Hospice Care Services and Supplies.** Charges for hospice care services and supplies are covered only when the attending Physician has diagnosed the Covered Person's condition as being terminal, determined that the person is not expected to live more than six months and placed the person under a Hospice Care Plan.

Covered charges for Hospice Care Services and Supplies are payable as described in the Schedule of Benefits.

Bereavement counseling services by a licensed social worker or a licensed pastoral counselor for the patient's immediate family (covered Spouse and/or covered Dependent Children). Bereavement services must be furnished within six months after the patient's death.

(8)    **Other Medical Services and Supplies.** These services and supplies not otherwise included in the items above are covered as follows:

(a)    Local Medically Necessary professional land **ambulance** service. A charge for this item will be a Covered Charge only if the service is to the nearest Hospital or Skilled Nursing Facility where necessary treatment can be provided unless the Plan Administrator finds a longer trip was Medically Necessary.

(b)    **Anesthetic;** oxygen; blood and blood derivatives that are not donated or replaced; intravenous injections and solutions. Administration of these items is included.

(c)    **Cardiac rehabilitation** as deemed Medically Necessary provided services are rendered (a) under the supervision of a Physician; (b) in connection with a myocardial infarction, coronary occlusion or coronary bypass surgery; (c) initiated within 12 weeks after other treatment for the medical condition ends; and (d) in a Medical Care Facility as defined by this Plan.

(d)    Radiation or **chemotherapy** and treatment with radioactive substances. The materials and services of technicians are included.

(e)    Initial **contact lenses** or glasses required following cataract surgery.

(f)    Rental of **durable medical or surgical equipment** if deemed Medically Necessary. These items may be bought rather than rented, with the cost not to exceed the fair market value of the equipment at the time of purchase, but only if agreed to in advance by the Plan Administrator.

(g)    Care, supplies and services for the diagnosis of **infertility.**

(h)    Medically Necessary services for care and treatment of **jaw joint conditions, including Temporomandibular Joint syndrome.**

(i)    **Laboratory studies.**

(j)    Treatment of **Mental Disorders and Substance Abuse**. Covered charges for care, supplies and treatment of Mental Disorders and Substance Abuse will be limited as follows:

All treatment is subject to the benefit payment maximums shown in the Schedule of Benefits.

Physician's visits are limited to one treatment per day.

Psychiatrists (M.D.), psychologists (Ph.D.), counselors (Ph.D.) or Masters of Social Work (M.S.W.) may bill the Plan directly. Other licensed mental health practitioners must be under the direction of and must bill the Plan through these professionals.

(k)    Injury to or care of **mouth, teeth and gums**. Charges for Injury to or care of the mouth, teeth, gums and alveolar processes will be Covered Charges under Medical Benefits only if that care is for the following oral surgical procedures:

Excision of tumors and cysts of the jaws, cheeks, lips, tongue, roof and floor of the mouth.

Emergency repair due to Injury to sound natural teeth.

Surgery needed to correct accidental injuries to the jaws, cheeks, lips, tongue, floor and roof of the mouth.

Excision of benign bony growths of the jaw and hard palate.

External incision and drainage of cellulitis.

Incision of sensory sinuses, salivary glands or ducts.

Removal of impacted teeth.

Reduction of dislocations and excision of temporomandibular joints (TMJs).

No charge will be covered under Medical Benefits for dental and oral surgical procedures involving orthodontic care of the teeth, periodontal disease and preparing the mouth for the fitting of or continued use of dentures.

(l)    **Occupational therapy** by a licensed occupational therapist. Therapy must be ordered by a Physician, result from an Injury or Sickness and improve a body function. Covered Charges do not include recreational programs, maintenance therapy or supplies used in occupational therapy.

(m)    **Organ transplant** limits. Charges otherwise covered under the Plan that are incurred for the care and treatment due to an organ or tissue transplant are subject to these limits:

The transplant must be performed to replace an organ or tissue.

Charges for obtaining donor organs or tissues are Covered Charges under the Plan when the recipient is a Covered Person. When the donor has medical coverage, his or her plan will pay first. The benefits under this Plan will be reduced by those payable under the donor's plan. Donor charges include those for:

evaluating the organ or tissue;

removing the organ or tissue from the donor; and

transportation of the organ or tissue from within the United States and Canada to the place where the transplant is to take place.

(n)  **Physical therapy** by a licensed physical therapist. The therapy must be in accord with a Physician's exact orders as to type, frequency and duration and for conditions which are subject to significant improvement through short-term therapy.

(o)  **Prescription** Drugs (as defined).

(p)  **Routine Preventive Care.** Covered charges under Medical Benefits are payable for routine Preventive Care as described in the Schedule of Benefits.

**Charges for Routine Well Adult Care.** Routine well adult care is care by a Physician that is not for an Injury or Sickness.

**Charges for Routine Well Child Care.** Routine well child care is routine care by a Physician that is not for an Injury or Sickness.

(q)  The initial purchase, fitting and repair of fitted **prosthetic devices** which replace body parts.

(r)  **Reconstructive Surgery.** Correction of abnormal congenital conditions and reconstructive mammoplasties will be considered Covered Charges.

This mammoplasty coverage will include reimbursement for:

(i)  reconstruction of the breast on which a mastectomy has been performed,

(ii)  surgery and reconstruction of the other breast to produce a symmetrical appearance, and

(iii)  coverage of prostheses and physical complications during all stages of mastectomy, including lymphedemas,

in a manner determined in consultation with the attending Physician and the patient.

(s)  **Speech therapy** by a licensed speech therapist. Therapy must be ordered by a Physician and follow either: (i) surgery for correction of a congenital condition of the oral cavity, throat or nasal complex (other than a frenectomy) of a person; (ii) an Injury; or (iii) a Sickness that is other than a learning or Mental Disorder.

(t)  **Spinal Manipulation/Chiropractic services** by a licensed M.D., D.O. or D.C.

(u)  **Sterilization** procedures.

(v)  **Surgical dressings**, splints, casts and other devices used in the reduction of fractures and dislocations.

(w)  Coverage of **Well Newborn Nursery/Physician Care.**

**Charges for Routine Nursery Care.** Routine well newborn nursery care is care while the newborn is Hospital-confined after birth and includes room, board and other normal care for which a Hospital makes a charge.

This coverage is only provided if a parent is a Covered Person who was covered under the Plan at the time of the birth and the newborn child is an eligible Dependent and is neither injured nor ill.

The benefit is limited to Usual and Reasonable Charges for nursery care for the newborn child while Hospital confined as a result of the child's birth.

Charges for covered routine nursery care will be applied toward the Plan of the newborn child.

Group health plans generally may not, under Federal law, restrict benefits for any hospital length of stay in connection with childbirth for the mother or newborn child to less than 48 hours following a vaginal delivery, or less than 96 hours following a cesarean section. However, Federal law generally does not prohibit the mother's or newborn's attending provider, after consulting with the mother, from discharging the mother or her newborn earlier than 48 hours (or 96 hours as applicable). In any case, plans and issuers may not, under Federal law, require that a provider obtain authorization from the plan or the issuer for prescribing a length of stay not in excess of 48 hours (or 96 hours).

**Charges for Routine Physician Care.** The benefit is limited to the Usual and Reasonable Charges made by a Physician for the newborn child while Hospital confined as a result of the child's birth.

Charges for covered routine Physician care will be applied toward the Plan of the newborn child.

(x)     Charges associated with the initial purchase of a **wig after chemotherapy**.

(y)     Diagnostic **x-rays**.

## COST MANAGEMENT SERVICES

**Cost Management Services Phone Number**

Medical Management Network

The patient or family member must call this number to receive certification of certain Cost Management Services. This call must be made at least 72 hours in advance of services being rendered or within next business day after an emergency.

**Any reduced reimbursement due to failure to follow cost management procedures will not accrue toward the 100% maximum out-of-pocket payment.**

## UTILIZATION REVIEW

Utilization review is a program designed to help insure that all Covered Persons receive necessary and appropriate health care while avoiding unnecessary expenses.

The program consists of:

    **(a)**     Precertification of the Medical Necessity for the following non-emergency services before Medical and/or Surgical services are provided:

        Hospitalizations
        MRI/CAT scans
        Outpatient surgical procedures
        Certain diagnostic procedures

    **(b)**     Retrospective review of the Medical Necessity of the listed services provided on an emergency basis;

    **(c)**     Concurrent review, based on the admitting diagnosis, of the listed services requested by the attending Physician; and

    **(d)**     Certification of services and planning for discharge from a Medical Care Facility or cessation of medical treatment.

The purpose of the program is to determine what charges may be eligible for payment by the Plan. This program is not designed to be the practice of medicine or to be a substitute for the medical judgment of the attending Physician or other health care provider.

If a particular course of treatment or medical service is not certified, it means that either the Plan will not pay for the charges or the Plan will not consider that course of treatment as appropriate for the maximum reimbursement under the Plan. The patient is urged to find out why there is a discrepancy between what was requested and what was certified before incurring charges.

The attending Physician does not have to obtain precertification from the Plan for prescribing a maternity length of stay that is 48 hours or less for a vaginal delivery or 96 hours or less for a cesarean delivery.

In order to maximize Plan reimbursements, please read the following provisions carefully.

**Here's how the program works.**

**Precertification.** Before a Covered Person enters a Medical Care Facility on a non-emergency basis or receives other listed medical services, the utilization review administrator will, in conjunction with the attending Physician, certify the care as appropriate for Plan reimbursement. A non-emergency stay in a Medical Care Facility is one that can be scheduled in advance.

The utilization review program is set in motion by a telephone call from the Covered Person. Contact the utilization review administrator Medical Management Network at **least 72 hours before** services are scheduled to be rendered with the following information:

- The name of the patient and relationship to the covered Employee
- The name, Social Security number and address of the covered Employee
- The name of the Employer
- The name and telephone number of the attending Physician
- The name of the Medical Care Facility, proposed date of admission, and proposed length of stay
- The diagnosis and/or type of surgery
- The proposed rendering of listed medical services

If there is an **emergency** admission to the Medical Care Facility, the patient, patient's family member, Medical Care Facility or attending Physician must contact Medical Management Network **within next business day** of the first business day after the admission.

The utilization review administrator will determine the number of days of Medical Care Facility confinement or use of other listed medical services authorized for payment. **Failure to follow this procedure may reduce reimbursement received from the Plan.**

If the Covered Person does not receive authorization as explained in this section, the benefit payment will be reduced by $500.

**Concurrent review, discharge planning.** Concurrent review of a course of treatment and discharge planning from a Medical Care Facility are parts of the utilization review program. The utilization review administrator will monitor the Covered Person's Medical Care Facility stay or use of other medical services and coordinate with the attending Physician, Medical Care Facilities and Covered Person either the scheduled release or an extension of the Medical Care Facility stay or extension or cessation of the use of other medical services.

If the attending Physician feels that it is Medically Necessary for a Covered Person to receive additional services or to stay in the Medical Care Facility for a greater length of time than has been precertified, the attending Physician must request the additional services or days.

**SECOND AND/OR THIRD OPINION PROGRAM**

Certain surgical procedures are performed either inappropriately or unnecessarily. In some cases, surgery is only one of several treatment options. In other cases, surgery will not help the condition.

In order to prevent unnecessary or potentially harmful surgical treatments, the second and/or third opinion program fulfills the dual purpose of protecting the health of the Plan's Covered Persons and protecting the financial integrity of the Plan.

Benefits will be provided for a second (and third, if necessary) opinion consultation to determine the Medical Necessity of an elective surgical procedure. An elective surgical procedure is one that can be scheduled in advance; that is, it is not an emergency or of a life-threatening nature. Benefits for the second (and third, if necessary) opinion will be paid as any other Sickness.

The patient may choose any board-certified specialist who is not an associate of the attending Physician and who is affiliated in the appropriate specialty.

## CASE MANAGEMENT

**Case Management.** The Plan may elect, in its sole discretion, when acting on a basis that precludes individual selection, to provide alternative benefits that are otherwise excluded under the Plan. The alternative benefits, called "Case Management," shall be determined on a case-by-case basis, and the Plan's determination to provide the benefits in one instance shall not obligate the Plan to provide the same or similar alternative benefits for the same or any other Covered Person, nor shall it be deemed to waive the right of the Plan to strictly enforce the provisions of the Plan.

A case manager consults with the patient, the family and the attending Physician in order to develop a plan of care for approval by the patient's attending Physician and the patient. This plan of care may include some or all of the following:

- -- personal support to the patient;

- -- contacting the family to offer assistance and support;

- -- monitoring Hospital or Skilled Nursing Facility;

- -- determining alternative care options; and

- -- assisting in obtaining any necessary equipment and services.

Case Management occurs when this alternate benefit will be beneficial to both the patient and the Plan.

The case manager will coordinate and implement the Case Management program by providing guidance and information on available resources and suggesting the most appropriate treatment plan. The Plan Administrator, attending Physician, patient and patient's family must all agree to the alternate treatment plan.

Once agreement has been reached, the Plan Administrator will direct the Plan to reimburse for Medically Necessary expenses as stated in the treatment plan, even if these expenses normally would not be paid by the Plan.

**Note: Case Management is a voluntary service. There are no reductions of benefits or penalties if the patient and family choose not to participate.**

**Each treatment plan is individually tailored to a specific patient and should not be seen as appropriate or recommended for any other patient, even one with the same diagnosis.**

# DEFINED TERMS

The following terms have special meanings and when used in this Plan will be capitalized.

**Active Employee** is an Employee who is on the regular payroll of the Employer and who has begun to perform the duties of his or her job with the Employer on a full-time basis.

**Ambulatory Surgical Center** is a licensed facility that is used mainly for performing outpatient surgery, has a staff of Physicians, has continuous Physician and nursing care by registered nurses (R.N.s) and does not provide for overnight stays.

**Birthing Center** means any freestanding health facility, place, professional office or institution which is not a Hospital or in a Hospital, where births occur in a home-like atmosphere. This facility must be licensed and operated in accordance with the laws pertaining to Birthing Centers in the jurisdiction where the facility is located.

The Birthing Center must provide facilities for obstetrical delivery and short-term recovery after delivery; provide care under the full-time supervision of a Physician and either a registered nurse (R.N.) or a licensed nurse-midwife; and have a written agreement with a Hospital in the same locality for immediate acceptance of patients who develop complications or require pre- or post-delivery confinement.

**Brand Name** means a trade name medication.

**Calendar Year** means January 1st through December 31st of the same year.

**COBRA** means the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended.

**Covered Charge(s)** means those Medically Necessary services or supplies that are covered under this Plan.

**Covered Person** is an Employee or Dependent who is covered under this Plan.

**Creditable Coverage** includes most health coverage, such as coverage under a group health plan (including COBRA continuation coverage), HMO membership, an individual health insurance policy, Medicaid or Medicare.

Creditable Coverage does not include coverage consisting solely of dental or vision benefits.

**Custodial Care** is care (including room and board needed to provide that care) that is given principally for personal hygiene or for assistance in daily activities and can, according to generally accepted medical standards, be performed by persons who have no medical training. Examples of Custodial Care are help in walking and getting out of bed; assistance in bathing, dressing, feeding; or supervision over medication which could normally be self-administered.

**Durable Medical Equipment** means equipment which (a) can withstand repeated use, (b) is primarily and customarily used to serve a medical purpose, (c) generally is not useful to a person in the absence of an Illness or Injury and (d) is appropriate for use in the home.

**Employee** means a person who is an Active, regular Employee of the Employer, regularly scheduled to work for the Employer in an Employee/Employer relationship.

**Employer** is Ambassador Personnel Services.

**Enrollment Date** is the first day of coverage or, if there is a Waiting Period, the first day of the Waiting Period.

**ERISA** is the Employee Retirement Income Security Act of 1974, as amended.

**Experimental and/or Investigational** means services, supplies, care and treatment which does not constitute accepted medical practice properly within the range of appropriate medical practice under the standards of the case

and by the standards of a reasonably substantial, qualified, responsible, relevant segment of the medical community or government oversight agencies at the time services were rendered.

The Plan Administrator must make an independent evaluation of the experimental/nonexperimental standings of specific technologies. The Plan Administrator shall be guided by a reasonable interpretation of Plan provisions. The decisions shall be made in good faith and rendered following a detailed factual background investigation of the claim and the proposed treatment. The decision of the Plan Administrator will be final and binding on the Plan. The Plan Administrator will be guided by the following principles:

(1)    if the drug or device cannot be lawfully marketed without approval of the U.S. Food and Drug Administration and approval for marketing has not been given at the time the drug or device is furnished; or

(2)    if the drug, device, medical treatment or procedure, or the patient informed consent document utilized with the drug, device, treatment or procedure, was reviewed and approved by the treating facility's Institutional Review Board or other body serving a similar function, or if federal law requires such review or approval; or

(3)    if Reliable Evidence shows that the drug, device, medical treatment or procedure is the subject of on-going phase I or phase II clinical trials, is the research, experimental, study or Investigational arm of on-going phase III clinical trials, or is otherwise under study to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis; or

(4)    if Reliable Evidence shows that the prevailing opinion among experts regarding the drug, device, medical treatment or procedure is that further studies or clinical trials are necessary to determine its maximum tolerated dose, its toxicity, its safety, its efficacy or its efficacy as compared with a standard means of treatment or diagnosis.

Reliable Evidence shall mean only published reports and articles in the authoritative medical and scientific literature; the written protocol or protocols used by the treating facility or the protocol(s) of another facility studying substantially the same drug, service, medical treatment or procedure; or the written informed consent used by the treating facility or by another facility studying substantially the same drug, device, medical treatment or procedure.

Drugs are considered Experimental if they are not commercially available for purchase and/or they are not approved by the Food and Drug Administration for general use.

**Family Unit** is the covered Employee and the family members who are covered as Dependents under the Plan.

**Formulary** means a list of prescription medications compiled by the third party payor of safe, effective therapeutic drugs specifically covered by this Plan.

**Foster Child** means an unmarried child under the limiting age shown in the Dependent Eligibility Section of this Plan for whom a covered Employee has assumed a legal obligation. All of the following conditions must be met: the child is being raised as the covered Employee's; the child depends on the covered Employee for primary support; the child lives in the home of the covered Employee; and the covered Employee may legally claim the child as a federal income tax deduction.

A covered Foster Child is not a child temporarily living in the covered Employee's home; one placed in the covered Employee's home by a social service agency which retains control of the child; or whose natural parent(s) may exercise or share parental responsibility and control.

**Generic** drug means a Prescription Drug which has the equivalency of the brand name drug with the same use and metabolic disintegration. This Plan will consider as a Generic drug any Food and Drug Administration approved generic pharmaceutical dispensed according to the professional standards of a licensed pharmacist and clearly designated by the pharmacist as being generic.

**Genetic Information** means information about genes, gene products and inherited characteristics that may derive from an individual or a family member. This includes information regarding carrier status and information derived from laboratory tests that identify mutations in specific genes or chromosomes, physical medical examinations, family histories and direct analysis of genes or chromosomes.

**Home Health Care Agency** is an organization that meets all of these tests: its main function is to provide Home Health Care Services and Supplies; it is federally certified as a Home Health Care Agency; and it is licensed by the state in which it is located, if licensing is required.

**Home Health Care Plan** must meet these tests: it must be a formal written plan made by the patient's attending Physician which is reviewed at least every 30 days; it must state the diagnosis; it must certify that the Home Health Care is in place of Hospital confinement; and it must specify the type and extent of Home Health Care required for the treatment of the patient.

**Home Health Care Services and Supplies** include: part-time or intermittent nursing care by or under the supervision of a registered nurse (R.N.); part-time or intermittent home health aide services provided through a Home Health Care Agency (this does not include general housekeeping services); physical, occupational and speech therapy; medical supplies; and laboratory services by or on behalf of the Hospital.

**Hospice Agency** is an organization where its main function is to provide Hospice Care Services and Supplies and it is licensed by the state in which it is located, if licensing is required.

**Hospice Care Plan** is a plan of terminal patient care that is established and conducted by a Hospice Agency and supervised by a Physician.

**Hospice Care Services and Supplies** are those provided through a Hospice Agency and under a Hospice Care Plan and include inpatient care in a Hospice Unit or other licensed facility, home care, and family counseling during the bereavement period.

**Hospice Unit** is a facility or separate Hospital Unit, that provides treatment under a Hospice Care Plan and admits at least two unrelated persons who are expected to die within six months.

**Hospital** is an institution which is engaged primarily in providing medical care and treatment of sick and injured persons on an inpatient basis at the patient's expense and which fully meets these tests: it is accredited as a Hospital by the Joint Commission on Accreditation of Healthcare Organizations or the American Osteopathic Association Healthcare Facilities Accreditation Program; it is approved by Medicare as a Hospital; it maintains diagnostic and therapeutic facilities on the premises for surgical and medical diagnosis and treatment of sick and injured persons by or under the supervision of a staff of Physicians; it continuously provides on the premises 24-hour-a-day nursing services by or under the supervision of registered nurses (R.N.s); and it is operated continuously with organized facilities for operative surgery on the premises.

The definition of "Hospital" shall be expanded to include the following:

-    A facility operating legally as a psychiatric Hospital or residential treatment facility for mental health and licensed as such by the state in which the facility operates.

-    A facility operating primarily for the treatment of Substance Abuse if it meets these tests: maintains permanent and full-time facilities for bed care and full-time confinement of at least 15 resident patients; has a Physician in regular attendance; continuously provides 24-hour a day nursing service by a registered nurse (R.N.); has a full-time psychiatrist or psychologist on the staff; and is primarily engaged in providing diagnostic and therapeutic services and facilities for treatment of Substance Abuse.

**Illness** means a bodily disorder, disease, physical sickness or Mental Disorder. Illness includes Pregnancy, childbirth, miscarriage or complications of Pregnancy.

**Infertility** means incapable of producing offspring.

**Injury** means an accidental physical Injury to the body caused by unexpected external means.

**Intensive Care Unit** is defined as a separate, clearly designated service area which is maintained within a Hospital solely for the care and treatment of patients who are critically ill. This also includes what is referred to as a "coronary care unit" or an "acute care unit." It has: facilities for special nursing care not available in regular rooms and wards of the Hospital; special life saving equipment which is immediately available at all times; at least two beds for the accommodation of the critically ill; and at least one registered nurse (R.N.) in continuous and constant attendance 24 hours a day.

**Late Enrollee** means a Plan Participant who enrolls under the Plan other than during the first 31-day period in which the individual is eligible to enroll under the Plan or during a Special Enrollment Period.

**Legal Guardian** means a person recognized by a court of law as having the duty of taking care of the person and managing the property and rights of a minor child.

**Lifetime** is a word that appears in this Plan in reference to benefit maximums and limitations. Lifetime is understood to mean while covered under this Plan. Under no circumstances does Lifetime mean during the lifetime of the Covered Person.

**Medical Care Facility** means a Hospital, a facility that treats one or more specific ailments or any type of Skilled Nursing Facility.

**Medical Emergency** means a sudden onset of a condition with acute symptoms requiring immediate medical care and includes such conditions as heart attacks, cardiovascular accidents, poisonings, loss of consciousness or respiration, convulsions or other such acute medical conditions.

**Medically Necessary** care and treatment is recommended or approved by a Physician; is consistent with the patient's condition or accepted standards of good medical practice; is medically proven to be effective treatment of the condition; is not performed mainly for the convenience of the patient or provider of medical services; is not conducted for research purposes; and is the most appropriate level of services which can be safely provided to the patient.

All of these criteria must be met; merely because a Physician recommends or approves certain care does not mean that it is Medically Necessary.

The Plan Administrator has the discretionary authority to decide whether care or treatment is Medically Necessary.

**Medicare** is the Health Insurance For The Aged and Disabled program under Title XVIII of the Social Security Act, as amended.

**Mental Disorder** means any disease or condition, regardless of whether the cause is organic, that is classified as a Mental Disorder in the current edition of International Classification of Diseases, published by the U.S. Department of Health and Human Services or is listed in the current edition of Diagnostic and Statistical Manual of Mental Disorders, published by the American Psychiatric Association.

**Morbid Obesity** is a diagnosed condition in which the body weight exceeds the medically recommended weight by either 100 pounds or is twice the medically recommended weight for a person of the same height, age and mobility as the Covered Person.

**No-Fault Auto Insurance** is the basic reparations provision of a law providing for payments without determining fault in connection with automobile accidents.

**Outpatient Care and/or Services** is treatment including services, supplies and medicines provided and used at a Hospital under the direction of a Physician to a person not admitted as a registered bed patient; or services rendered in a Physician's office, laboratory or X-ray facility, an Ambulatory Surgical Center, or the patient's home.

**Pharmacy** means a licensed establishment where covered Prescription Drugs are filled and dispensed by a pharmacist licensed under the laws of the state where he or she practices.

**Physician** means a Doctor of Medicine (M.D.), Doctor of Osteopathy (D.O.), Optometrist (O.D.), Doctor of Podiatry (D.P.M.), Doctor of Chiropractic (D.C.), Audiologist, Certified Nurse Anesthetist, Licensed Professional Counselor, Licensed Professional Physical Therapist, Master of Social Work (M.S.W.), Midwife, Occupational Therapist, Doctor of Dental Surgery (D.D.S.), Physiotherapist, Psychiatrist, Psychologist (Ph.D.), Speech Language Pathologist and any other practitioner of the healing arts who is licensed and regulated by a state or federal agency and is acting within the scope of his or her license.

**Plan** means Ambassador Personnel Services Employee Benefit Plan, which is a benefits plan for certain Employees of Ambassador Personnel Services and is described in this document.

**Plan Participant** is any Employee or Dependent who is covered under this Plan.

**Plan Year** is the 12-month period beginning on either the effective date of the Plan or on the day following the end of the first Plan Year which is a short Plan Year.

A **Pre-Existing Condition** is a condition for which medical advice, diagnosis, care or treatment was recommended or received within six months prior to the person's Enrollment Date under this Plan. Genetic Information is not a condition. Treatment includes receiving services and supplies, consultations, diagnostic tests or prescribed medicines. In order to be taken into account, the medical advice, diagnosis, care or treatment must have been recommended by, or received from, a Physician.

The Pre-Existing Condition does not apply to Pregnancy, to a newborn child who is covered under this Plan within 31 days of birth, or to a child who is adopted or placed for adoption before attaining age 18 and who, as of the last day of the 31-day period beginning on the date of the adoption or placement for adoption, is covered under this Plan. A Pre-Existing Condition exclusion may apply to coverage before the date of the adoption or placement for adoption.

The prohibition on Pre-Existing Condition exclusion for newborn, adopted, or pre-adopted children does not apply to an individual after the end of the first 63-day period during all of which the individual was not covered under any Creditable Coverage.

**Pregnancy** is childbirth and conditions associated with Pregnancy, including complications.

**Prescription Drug** means any of the following: a Food and Drug Administration-approved drug or medicine which, under federal law, is required to bear the legend: "Caution: federal law prohibits dispensing without prescription"; injectable insulin; hypodermic needles or syringes, but only when dispensed upon a written prescription of a licensed Physician. Such drug must be Medically Necessary in the treatment of a Sickness or Injury.

**Sickness** is:

For a covered Employee and covered Spouse: Illness, disease or Pregnancy.

For a covered Dependent other than Spouse: Illness or disease, not including Pregnancy or its complications.

**Skilled Nursing Facility** is a facility that fully meets all of these tests:

(1)     It is licensed to provide professional nursing services on an inpatient basis to persons convalescing from Injury or Sickness. The service must be rendered by a registered nurse (R.N.) or by a licensed practical nurse (L.P.N.) under the direction of a registered nurse. Services to help restore patients to self-care in essential daily living activities must be provided.

(2)     Its services are provided for compensation and under the full-time supervision of a Physician.

(3)     It provides 24 hour per day nursing services by licensed nurses, under the direction of a full-time registered nurse.

(4)      It maintains a complete medical record on each patient.

(5)      It has an effective utilization review plan.

(6)      It is not, other than incidentally, a place for rest, the aged, drug addicts, alcoholics, mental retardates, Custodial or educational care or care of Mental Disorders.

(7)      It is approved and licensed by Medicare.

This term also applies to charges incurred in a facility referring to itself as an extended care facility, convalescent nursing home, rehabilitation hospital, long-term acute care facility or any other similar nomenclature.

**Spinal Manipulation/Chiropractic Care** means skeletal adjustments, manipulation or other treatment in connection with the detection and correction by manual or mechanical means of structural imbalance or subluxation in the human body. Such treatment is done by a Physician to remove nerve interference resulting from, or related to, distortion, misalignment or subluxation of, or in, the vertebral column.

**Substance Abuse** is regular excessive compulsive drinking of alcohol and/or physical habitual dependence on drugs. This does not include dependence on tobacco and ordinary caffeine-containing drinks.

**Temporomandibular Joint (TMJ)** syndrome is the treatment of jaw joint disorders including conditions of structures linking the jaw bone and skull and the complex of muscles, nerves and other tissues related to the temporomandibular joint. Care and treatment shall include, but are not limited to orthodontics, crowns, inlays, physical therapy and any appliance that is attached to or rests on the teeth.

**Total Disability (Totally Disabled)** means: In the case of a Dependent child, the complete inability as a result of Injury or Sickness to perform the normal activities of a person of like age and sex in good health.

**Usual and Reasonable Charge** is a charge which is not higher than the usual charge made by the provider of the care or supply and does not exceed the usual charge made by most providers of like service in the same area. This test will consider the nature and severity of the condition being treated. It will also consider medical complications or unusual circumstances that require more time, skill or experience.

The Plan will reimburse the actual charge billed if it is less than the Usual and Reasonable Charge.

The Plan Administrator has the discretionary authority to decide whether a charge is Usual and Reasonable.

# PLAN EXCLUSIONS

**Note: All exclusions related to Prescription Drugs are shown in the Prescription Drug Plan.**

**For all Medical Benefits shown in the Schedule of Benefits, a charge for the following is not covered:**

(1) **Abortion.** Services, supplies, care or treatment in connection with an abortion unless the life of the mother is endangered by the continued Pregnancy or the Pregnancy is the result of rape or incest.

(2) **Complications of non-covered treatments.** Care, services or treatment required as a result of complications from a treatment not covered under the Plan are not covered. Complications from a non-covered abortion are covered.

(3) **Custodial care.** Services or supplies provided mainly as a rest cure, maintenance or Custodial Care.

(4) **Educational or vocational testing.** Services for educational or vocational testing or training.

(5) **Excess charges.** The part of an expense for care and treatment of an Injury or Sickness that is in excess of the Usual and Reasonable Charge.

(6) **Exercise programs.** Exercise programs for treatment of any condition, except for Physician-supervised cardiac rehabilitation, occupational or physical therapy covered by this Plan.

(7) **Experimental or not Medically Necessary.** Care and treatment that is either Experimental/Investigational or not Medically Necessary.

(8) **Eye care.** Radial keratotomy or other eye surgery to correct refractive disorders. Also, routine eye examinations, including refractions, lenses for the eyes and exams for their fitting. This exclusion does not apply to aphakic patients and soft lenses or sclera shells intended for use as corneal bandages or as may be covered under the well adult or well child sections of this Plan.

(9) **Foot care.** Treatment of weak, strained, flat, unstable or unbalanced feet, metatarsalgia or bunions (except open cutting operations), and treatment of corns, calluses or toenails (unless needed in treatment of a metabolic or peripheral-vascular disease).

(10) **Foreign travel.** Care, treatment or supplies out of the U.S. if travel is for the sole purpose of obtaining medical services.

(11) **Government coverage.** Care, treatment or supplies furnished by a program or agency funded by any government. This does not apply to Medicaid or when otherwise prohibited by law.

(12) **Hair loss.** Care and treatment for hair loss including wigs, hair transplants or any drug that promises hair growth, whether or not prescribed by a Physician, except for wigs after chemotherapy.

(13) **Hazardous Hobby or Activity.** Care and treatment of an Injury or Sickness that results from engaging in a Hazardous Hobby or Activity. A hobby or activity is hazardous if it is an activity which is characterized by a constant threat of danger or risk of bodily harm. Examples of hazardous hobbies or activities are skydiving, auto racing, hang gliding, jet ski operating or bungee jumping.

(14) **Hearing aids and exams.** Charges for services or supplies in connection with hearing aids or exams for their fitting, except as may be covered under the well adult or well child sections of this Plan.

(15) **Hospital employees.** Professional services billed by a Physician or nurse who is an employee of a Hospital or Skilled Nursing Facility and paid by the Hospital or facility for the service.

(16)    **Illegal acts.** Charges for services received as a result of Injury or Sickness occurring directly or indirectly, as a result of a Serious Illegal Act, or a riot or public disturbance. For purposes of this exclusion, the term "Serious Illegal Act" shall mean any act or series of acts that, if prosecuted as a criminal offense, a sentence to a term of imprisonment in excess of one year could be imposed. It is not necessary that criminal charges be filed, or, if filed, that a conviction result, or that a sentence of imprisonment for a term in excess of one year be imposed for this exclusion to apply. Proof beyond a reasonable doubt is not required. This exclusion does not apply if the Injury or Sickness resulted from an act of domestic violence or a medical (including both physical and mental health) condition.

(17)    **Illegal drugs or medications.** Services, supplies, care or treatment to a Covered Person for Injury or Sickness resulting from that Covered Person's voluntary taking of or being under the influence of any controlled substance, drug, hallucinogen or narcotic not administered on the advice of a Physician. Expenses will be covered for Injured Covered Persons other than the person using controlled substances and expenses will be covered for Substance Abuse treatment as specified in this Plan. This exclusion does not apply if the Injury resulted from an act of domestic violence or a medical (including both physical and mental health) condition.

(18)    **Impotence.** Care, treatment, services, supplies or medication in connection with treatment for impotence.

(19)    **Infertility.** Care, supplies, services and treatment for infertility, except for diagnostic services rendered for infertility evaluation.

(20)    **Marital or pre-marital counseling.** Care and treatment for marital or pre-marital counseling.

(21)    **No charge.** Care and treatment for which there would not have been a charge if no coverage had been in force.

(22)    **Non-compliance.** All charges in connection with treatments or medications where the patient either is in non-compliance with or is discharged from a Hospital or Skilled Nursing Facility against medical advice.

(23)    **Non-emergency Hospital admissions.** Care and treatment billed by a Hospital for non-Medical Emergency admissions on a Friday or a Saturday. This does not apply if surgery is performed within 24 hours of admission.

(24)    **No obligation to pay.** Charges incurred for which the Plan has no legal obligation to pay.

(25)    **No Physician recommendation.** Care, treatment, services or supplies not recommended and approved by a Physician; or treatment, services or supplies when the Covered Person is not under the regular care of a Physician. Regular care means ongoing medical supervision or treatment which is appropriate care for the Injury or Sickness.

(26)    **Not specified as covered.** Non-traditional medical services, treatments and supplies which are not specified as covered under this Plan.

(27)    **Obesity.** Care and treatment of obesity, weight loss or dietary control whether or not it is, in any case, a part of the treatment plan for another Sickness. Specifically excluded are charges for bariatric surgery, including but not limited to, gastric bypass, stapling and intestinal bypass, and lap band surgery, including reversals. Medically Necessary non-surgical charges for Morbid Obesity will be covered.

(28)    **Occupational.** Care and treatment of an Injury or Sickness that is occupational -- that is, arises from work for wage or profit including self-employment.

(29)    **Orthotics.** Charges in connection with orthotics.

(30)    **Personal comfort items.** Personal comfort items or other equipment, such as, but not limited to, air conditioners, air-purification units, humidifiers, electric heating units, orthopedic mattresses, blood

pressure instruments, scales, elastic bandages or stockings, nonprescription drugs and medicines, and first-aid supplies and nonhospital adjustable beds.

(31) **Plan design excludes.** Charges excluded by the Plan design as mentioned in this document.

(32) **Pregnancy of daughter.** Care and treatment of Pregnancy and Complications of Pregnancy for a dependent daughter only.

(33) **Relative giving services.** Professional services performed by a person who ordinarily resides in the Covered Person's home or is related to the Covered Person as a Spouse, parent, child, brother or sister, whether the relationship is by blood or exists in law.

(34) **Replacement braces.** Replacement of braces of the leg, arm, back, neck, or artificial arms or legs, unless there is sufficient change in the Covered Person's physical condition to make the original device no longer functional.

(35) **Routine care.** Charges for routine or periodic examinations, screening examinations, evaluation procedures, preventive medical care, or treatment or services not directly related to the diagnosis or treatment of a specific Injury, Sickness or Pregnancy-related condition which is known or reasonably suspected, unless such care is specifically covered in the Schedule of Benefits.

(36) **Self-Inflicted.** Any loss due to an intentionally self-inflicted Injury. This exclusion does not apply if the Injury resulted from an act of domestic violence or a medical (including both physical and mental health) condition.

(37) **Services before or after coverage.** Care, treatment or supplies for which a charge was incurred before a person was Covered under this Plan or after coverage ceased under this Plan.

(38) **Sex changes.** Care, services or treatment for non-congenital transsexualism, gender dysphoria or sexual reassignment or change. This exclusion includes medications, implants, hormone therapy, surgery, medical or psychiatric treatment.

(39) **Sleep disorders.** Care and treatment for sleep disorders unless deemed Medically Necessary.

(40) **Smoking cessation.** Care and treatment for smoking cessation programs, including smoking deterrent patches, unless Medically Necessary due to a severe active lung Illness such as emphysema or asthma.

(41) **Surgical sterilization reversal.** Care and treatment for reversal of surgical sterilization.

(42) **Travel or accommodations.** Charges for travel or accommodations, whether or not recommended by a Physician, except for ambulance charges as defined as a Covered Charge.

(43) **War.** Any loss that is due to a declared or undeclared act of war.

# PRESCRIPTION DRUG BENEFITS

## Pharmacy Drug Charge

Participating pharmacies have contracted with the Plan to charge Covered Persons reduced fees for covered Prescription Drugs. Pharmacare is the administrator of the pharmacy drug plan.

## Copayments

The copayment is applied to each covered pharmacy drug or mail order drug charge and is shown in the schedule of benefits. The copayment amount is not a covered charge under the medical Plan. Any one pharmacy prescription is limited to a 30-day supply. Any one mail order prescription is limited to a 90-day supply.

## Calendar Year Maximum

The Calendar Year maximum is the maximum amount this Plan will pay for all covered prescription drugs in one Calendar Year. Each January 1st, this amount renews.

## Mail Order Drug Benefit Option

The mail order drug benefit option is available for maintenance medications (those that are taken for long periods of time, such as drugs sometimes prescribed for heart disease, high blood pressure, asthma, etc.). Because of volume buying, Pharmacare, the mail order pharmacy, is able to offer Covered Persons significant savings on their prescriptions.

## Covered Prescription Drugs

    **(1)**    All drugs prescribed by a Physician that require a prescription either by federal or state law. This includes oral contraceptives, but excludes any drugs stated as not covered under this Plan.

    **(2)**    All compounded prescriptions containing at least one prescription ingredient in a therapeutic quantity.

    **(3)**    Insulin and other diabetic supplies when prescribed by a Physician.

    **(4)**    Injectable type prescription drugs may be covered, under certain circumstances, when medications dispensed in other forms have proved ineffective.  The copay is 25% of the cost of the injectable.

## Limits To This Benefit

This benefit applies only when a Covered Person incurs a covered Prescription Drug charge. The covered drug charge for any one prescription will be limited to:

    **(1)**    Refills only up to the number of times specified by a Physician.

    **(2)**    Refills up to one year from the date of order by a Physician.

## Expenses Not Covered

This benefit will not cover a charge for any of the following:

    **(1)**    **Administration.** Any charge for the administration of a covered Prescription Drug.

    **(2)**    **Appetite suppressants.** A charge for appetite suppressants, dietary supplements or vitamin supplements, except for prenatal vitamins requiring a prescription or prescription vitamin supplements containing fluoride.

(3)   **Consumed on premises.** Any drug or medicine that is consumed or administered at the place where it is dispensed.

(4)   **Devices.** Devices of any type, even though such devices may require a prescription. These include (but are not limited to) therapeutic devices, artificial appliances, braces, support garments, or any similar device.

(5)   **Drugs used for cosmetic purposes.** Charges for drugs used for cosmetic purposes, such as anabolic steroids, or medications for hair growth or removal.

(6)   **Experimental.** Experimental drugs and medicines, even though a charge is made to the Covered Person.

(7)   **FDA.** Any drug not approved by the Food and Drug Administration.

(8)   **Growth hormones.** Charges for drugs to enhance physical growth or athletic performance or appearance.

(9)   **Immunization.** Immunization agents or biological sera.

(10)  **Impotence.** A charge for impotence medication.

(11)  **Infertility.** A charge for infertility medication.

(12)  **Injectable supplies.** A charge for hypodermic syringes and/or needles (other than for insulin).

(13)  **Inpatient medication.** A drug or medicine that is to be taken by the Covered Person, in whole or in part, while Hospital confined. This includes being confined in any institution that has a facility for the dispensing of drugs and medicines on its premises.

(14)  **Investigational.** A drug or medicine labeled: "Caution - limited by federal law to investigational use".

(15)  **Medical exclusions.** A charge excluded under Medical Plan Exclusions.

(16)  **No charge.** A charge for Prescription Drugs which may be properly received without charge under local, state or federal programs.

(17)  **Non-legend drugs.** A charge for FDA-approved drugs that are prescribed for non-FDA-approved uses.

(18)  **No prescription.** A drug or medicine that can legally be bought without a written prescription. This does not apply to injectable insulin.

(19)  **Refills.** Any refill that is requested more than one year after the prescription was written or any refill that is more than the number of refills ordered by the Physician.

(20)  **Smoking cessation.** A charge for Prescription Drugs, such as nicotine gum or smoking deterrent patches, for smoking cessation.

(21)  **Vitamins.** Exept prenatal vitamins with a prescription.

## HOW TO SUBMIT A CLAIM

**Benefits under this Plan shall be paid only if the Plan Administrator decides in its discretion that a Covered Person is entitled to them.**

(22)    For Plan reimbursements, attach bills for services rendered. ALL BILLS MUST SHOW:

- Name of Plan

- Employee's name

- Name of patient

- Name, address, telephone number of the provider of care

- Diagnosis

- Type of services rendered, with diagnosis and/or procedure codes

- Date of services

- Charges

(23)    Send the above to the Claims Supervisor at this address:

> Taylor Benefit Resource, Inc.
> P. O. Box 6580
> Thomasville, Georgia 31758
> 1-229-225-9943 or 1-888-352-5246

### WHEN CLAIMS SHOULD BE FILED

Claims should be filed with the Claims Supervisor within 90 days of the date charges for the service were incurred. Benefits are based on the Plan's provisions at the time the charges were incurred. Claims filed later than that date may be declined or reduced unless:

(a)    it's not reasonably possible to submit the claim in that time; and

(b)    the claim is submitted within one year from the date incurred. This one year period will not apply when the person is not legally capable of submitting the claim.

The Claims Supervisor will determine if enough information has been submitted to enable proper consideration of the claim. If not, more information may be requested from the claimant. The Plan reserves the right to have a Plan Participant seek a second medical opinion.

### CLAIMS PROCEDURE

Following is a description of how the Plan processes Claims for benefits. A Claim is defined as any request for a Plan benefit, made by a claimant or by a representative of a claimant, that complies with the Plan's reasonable procedure for making benefit Claims. The times listed are maximum times only. A period of time begins at the time the Claim is filed. Decisions will be made within a reasonable period of time appropriate to the circumstances. "Days" means calendar days.

There are different kinds of Claims and each one has a specific timetable for either approval, payment, request for further information, or denial of the Claim. If you have any questions regarding this procedure, please contact the Plan Administrator.

The definitions of the types of Claims are:

**Urgent Care Claim**

A Claim involving Urgent Care is any Claim for medical care or treatment where using the timetable for a non-urgent care determination could seriously jeopardize the life or health of the claimant; or the ability of the claimant to regain maximum function; or in the opinion of the attending or consulting Physician, would subject the claimant to severe pain that could not be adequately managed without the care or treatment that is the subject of the Claim.

A Physician with knowledge of the claimant's medical condition may determine if a Claim is one involving Urgent Care. If there is no such Physician, an individual acting on behalf of the Plan applying the judgment of a prudent layperson who possesses an average knowledge of health and medicine may make the determination.

In the case of a Claim involving Urgent Care, the following timetable applies:

| | |
|---|---|
| Notification to claimant of benefit determination | 72 hours |

Insufficient information on the Claim, or failure to follow the Plan's procedure for filing a Claim:

| | |
|---|---|
| Notification to claimant, orally or in writing | 24 hours |
| Response by claimant, orally or in writing | 48 hours |
| Benefit determination, orally or in writing | 48 hours |

Ongoing courses of treatment, notification of:

| | |
|---|---|
| Reduction or termination before the end of treatment | 72 hours |
| Determination as to extending course of treatment | 24 hours |

If there is an adverse benefit determination on a Claim involving Urgent Care, a request for an expedited appeal may be submitted orally or in writing by the claimant. All necessary information, including the Plan's benefit determination on review, may be transmitted between the Plan and the claimant by telephone, facsimile, or other similarly expeditious method.

**Pre-Service Claim**

A Pre-Service Claim means any Claim for a benefit under this Plan where the Plan conditions receipt of the benefit, in whole or in part, on approval in advance of obtaining medical care. These are, for example, Claims subject to pre-certification. Please see the Cost Management section of this booklet for further information about Pre-Service Claims.

In the case of a Pre-Service Claim, the following timetable applies:

| | |
|---|---|
| Notification to claimant of benefit determination | 15 days |
| Extension due to matters beyond the control of the Plan | 15 days |
| Insufficient information on the Claim: | |
| Notification of | 15 days |
| Response by claimant | 45 days |
| Notification, orally or in writing, of failure to follow the | 5 days |

Plan's procedures for filing a Claim

    Ongoing courses of treatment:

| | |
|---|---|
| Reduction or termination before the end of the treatment | 15 days |
| Request to extend course of treatment | 15 days |
| Review of adverse benefit determination | 15 days per benefit appeal |
| Reduction or termination before the end of the treatment | 15 days |
| Request to extend course of treatment | 15 days |

## Post-Service Claim

A Post-Service Claim means any Claim for a Plan benefit that is not a Claim involving Urgent Care or a Pre-Service Claim; in other words, a Claim that is a request for payment under the Plan for covered medical services already received by the claimant.

In the case of a Post-Service Claim, the following timetable applies:

| | |
|---|---|
| Notification to claimant of benefit determination | 30 days |
| Extension due to matters beyond the control of the Plan | 15 days |
| Extension due to insufficient information on the Claim | 15 days |
| Response by claimant following notice of insufficient information | 45 days |
| Review of adverse benefit determination | 30 days per benefit appeal |

## Notice to claimant of adverse benefit determinations

Except with Urgent Care Claims, when the notification may be oral followed by written or electronic notification within three days of the oral notification, the Plan Administrator shall provide written or electronic notification of any adverse benefit determination. The notice will state, in a manner calculated to be understood by the claimant:

**(1)**    The specific reason or reasons for the adverse determination.

**(2)**    Reference to the specific Plan provisions on which the determination was based.

**(3)**    A description of any additional material or information necessary for the claimant to perfect the Claim and an explanation of why such material or information is necessary.

**(4)**    A description of the Plan's review procedures and the time limits applicable to such procedures. This will include a statement of the claimant's right to bring a civil action under section 502 of ERISA following an adverse benefit determination on review.

**(5)**    A statement that the claimant is entitled to receive, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claim.

**(6)**    If the adverse benefit determination was based on an internal rule, guideline, protocol, or other similar criterion, the specific rule, guideline, protocol, or criterion will be provided free of charge. If this is not practical, a statement will be included that such a rule, guideline, protocol, or criterion was relied upon in

making the adverse benefit determination and a copy will be provided free of charge to the claimant upon request.

(7)     If the adverse benefit determination is based on the Medical Necessity or Experimental or Investigational treatment or similar exclusion or limit, an explanation of the scientific or clinical judgment for the determination, applying the terms of the Plan to the claimant's medical circumstances, will be provided. If this is not practical, a statement will be included that such explanation will be provided free of charge, upon request.

## Appeals

When a claimant receives an adverse benefit determination, the claimant has 180 days following receipt of the notification in which to appeal the decision. A claimant may submit written comments, documents, records, and other information relating to the Claim. If the claimant so requests, he or she will be provided, free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the Claim.

The period of time within which a benefit determination on review is required to be made shall begin at the time an appeal is filed in accordance with the procedures of the Plan. This timing is without regard to whether all the necessary information accompanies the filing.

A document, record, or other information shall be considered relevant to a Claim if it:

(1)     was relied upon in making the benefit determination;

(2)     was submitted, considered, or generated in the course of making the benefit determination, without regard to whether it was relied upon in making the benefit determination;

(3)     demonstrated compliance with the administrative processes and safeguards designed to ensure and to verify that benefit determinations are made in accordance with Plan documents and Plan provisions have been applied consistently with respect to all claimants; or

(4)     constituted a statement of policy or guidance with respect to the Plan concerning the denied treatment option or benefit.

The review shall take into account all comments, documents, records, and other information submitted by the claimant relating to the Claim, without regard to whether such information was submitted or considered in the initial benefit determination. The review will not afford deference to the initial adverse benefit determination and will be conducted by a fiduciary of the Plan who is neither the individual who made the adverse determination nor a subordinate of that individual.

If the determination was based on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is Experimental, Investigational, or not Medically Necessary or appropriate, the fiduciary shall consult with a health care professional who was not involved in the original benefit determination. This health care professional will have appropriate training and experience in the field of medicine involved in the medical judgment. Additionally, medical or vocational experts whose advice was obtained on behalf of the Plan in connection with the initial determination will be identified.

## COORDINATION OF BENEFITS

**Coordination of the benefit plans.** Coordination of benefits sets out rules for the order of payment of Covered Charges when two or more plans -- including Medicare -- are paying. When a Covered Person is covered by this Plan and another plan, or the Covered Person's Spouse is covered by this Plan and by another plan or the couple's Covered children are covered under two or more plans, the plans will coordinate benefits when a claim is received.

The plan that pays first according to the rules will pay as if there were no other plan involved. The secondary and subsequent plans will pay the balance up to each one's plan formula minus whatever the primary plan paid. This is called non-duplication of benefits. The total reimbursement will never be more than the amount that would have been paid if the secondary plan had been the primary plan -- 50% or 80% or 100% -- whatever it may be. The balance due, if any, is the responsibility of the Covered Person.

**Benefit plan.** This provision will coordinate the medical benefits of a benefit plan. The term benefit plan means this Plan or any one of the following plans:

    **(1)**      Group or group-type plans, including franchise or blanket benefit plans.

    **(2)**      Blue Cross and Blue Shield group plans.

    **(3)**      Group practice and other group prepayment plans.

    **(4)**      Federal government plans or programs. This includes Medicare.

    **(5)**      Other plans required or provided by law. This does not include Medicaid or any benefit plan like it that, by its terms, does not allow coordination.

    **(6)**      No Fault Auto Insurance, by whatever name it is called, when not prohibited by law.

**Allowable charge.** For a charge to be allowable it must be a Usual and Reasonable Charge and at least part of it must be covered under this Plan.

In the case of HMO (Health Maintenance Organization) or other in-network only plans: This Plan will not consider any charges in excess of what an HMO or network provider has agreed to accept as payment in full. Also, when an HMO or network plan is primary and the Covered Person does not use an HMO or network provider, this Plan will not consider as an allowable charge any charge that would have been covered by the HMO or network plan had the Covered Person used the services of an HMO or network provider.

In the case of service type plans where services are provided as benefits, the reasonable cash value of each service will be the allowable charge.

**Automobile limitations.** When medical payments are available under vehicle insurance, the Plan shall pay excess benefits only, without reimbursement for vehicle plan deductibles. This Plan shall always be considered the secondary carrier regardless of the individual's election under PIP (personal injury protection) coverage with the auto carrier.

**Benefit plan payment order.** When two or more plans provide benefits for the same allowable charge, benefit payment will follow these rules.

    **(1)**      Plans that do not have a coordination provision, or one like it, will pay first. Plans with such a provision will be considered after those without one.

**(2)**     Plans with a coordination provision will pay their benefits up to the Allowable Charge:

**(a)**     The benefits of the plan which covers the person directly (that is, as an employee, member or subscriber) ("Plan A") are determined before those of the plan which covers the person as a dependent ("Plan B").

**(b)**     The benefits of a benefit plan which covers a person as an Employee who is neither laid off nor retired are determined before those of a benefit plan which covers that person as a laid-off or Retired Employee. The benefits of a benefit plan which covers a person as a Dependent of an Employee who is neither laid off nor retired are determined before those of a benefit plan which covers a person as a Dependent of a laid off or Retired Employee. If the other benefit plan does not have this rule, and if, as a result, the plans do not agree on the order of benefits, this rule does not apply.

**(c)**     The benefits of a benefit plan which covers a person as an Employee who is neither laid off nor retired or a Dependent of an Employee who is neither laid off nor retired are determined before those of a plan which covers the person as a COBRA beneficiary.

**(d)**     When a child is covered as a Dependent and the parents are not separated or divorced, these rules will apply:

　　　**(i)**     The benefits of the benefit plan of the parent whose birthday falls earlier in a year are determined before those of the benefit plan of the parent whose birthday falls later in that year;

　　　**(ii)**     If both parents have the same birthday, the benefits of the benefit plan which has covered the patient for the longer time are determined before those of the benefit plan which covers the other parent.

**(e)**     When a child's parents are divorced or legally separated, these rules will apply:

　　　**(i)**     This rule applies when the parent with custody of the child has not remarried. The benefit plan of the parent with custody will be considered before the benefit plan of the parent without custody.

　　　**(ii)**     This rule applies when the parent with custody of the child has remarried. The benefit plan of the parent with custody will be considered first. The benefit plan of the stepparent that covers the child as a Dependent will be considered next. The benefit plan of the parent without custody will be considered last.

　　　**(iii)**     This rule will be in place of items (i) and (ii) above when it applies. A court decree may state which parent is financially responsible for medical and dental benefits of the child. In this case, the benefit plan of that parent will be considered before other plans that cover the child as a Dependent.

　　　**(iv)**     If the specific terms of the court decree state that the parents shall share joint custody, without stating that one of the parents is responsible for the health care expenses of the child, the plans covering the child shall follow the order of benefit determination rules outlined above when a child is covered as a Dependent and the parents are not separated or divorced.

　　　**(v)**     For parents who were never married to each other, the rules apply as set out above as long as paternity has been established.

**(f)**     If there is still a conflict after these rules have been applied, the benefit plan which has covered the patient for the longer time will be considered first. When there is a conflict in coordination

of benefit rules, the Plan will never pay more than 50% of allowable charges when paying secondary.

(3)     Medicare will pay primary, secondary or last to the extent stated in federal law. When Medicare is to be the primary payer, this Plan will base its payment upon benefits that would have been paid by Medicare under Parts A and B, regardless of whether or not the person was enrolled under both of these parts.

(4)     If a Plan Participant is under a disability extension from a previous benefit plan, that benefit plan will pay first and this Plan will pay second.

**Claims determination period.** Benefits will be coordinated on a Calendar Year basis. This is called the claims determination period.

**Right to receive or release necessary information.** To make this provision work, this Plan may give or obtain needed information from another insurer or any other organization or person. This information may be given or obtained without the consent of or notice to any other person. A Covered Person will give this Plan the information it asks for about other plans and their payment of allowable charges.

**Facility of payment.** This Plan may repay other plans for benefits paid that the Plan Administrator determines it should have paid. That repayment will count as a valid payment under this Plan.

**Right of recovery.** This Plan may pay benefits that should be paid by another benefit plan. In this case this Plan may recover the amount paid from the other benefit plan or the Covered Person. That repayment will count as a valid payment under the other benefit plan.

Further, this Plan may pay benefits that are later found to be greater than the allowable charge. In this case, this Plan may recover the amount of the overpayment from the source to which it was paid.

## THIRD PARTY RECOVERY PROVISION

### RIGHT OF SUBROGATION AND REFUND

**When this provision applies.** The Covered Person may incur medical or dental charges due to Injuries which may be caused by the act or omission of a Third Party or a Third Party may be responsible for payment. In such circumstances, the Covered Person may have a claim against that Third Party, or insurer, for payment of the medical or dental charges. Accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any rights the Covered Person may have to Recover payments from any Third Party or insurer. This Subrogation right allows the Plan to pursue any claim which the Covered Person has against any Third Party, or insurer, whether or not the Covered Person chooses to pursue that claim. The Plan may make a claim directly against the Third Party or insurer, but in any event, the Plan has a lien on any amount Recovered by the Covered Person whether or not designated as payment for medical expenses. This lien shall remain in effect until the Plan is repaid in full.

The Covered Person:

   (1)    automatically assigns to the Plan his or her rights against any Third Party or insurer when this provision applies; and

   (2)    must repay to the Plan the benefits paid on his or her behalf out of the Recovery made from the Third Party or insurer.

**Amount subject to Subrogation or Refund.** The Covered Person agrees to recognize the Plan's right to Subrogation and reimbursement. These rights provide the Plan with a 100%, first dollar priority over any and all Recoveries and funds paid by a Third Party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses. Accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan any and all rights the Covered Person may have to recover payments from any Responsible Third Party. Further, accepting benefits under this Plan for those incurred medical or dental expenses automatically assigns to the Plan the Covered Person's Third Party Claims.

Notwithstanding its priority to funds, the Plan's Subrogation and Refund rights, as well as the rights assigned to it, are limited to the extent to which the Plan has made, or will make, payments for medical or dental charges as well as any costs and fees associated with the enforcement of its rights under the Plan. The Plan reserves the right to be reimbursed for its court costs and attorneys' fees if the Plan needs to file suit in order to Recover payment for medical or dental expenses from the Covered Person. Also, the Plan's right to Subrogation still applies if the Recovery received by the Covered Person is less than the claimed damage, and, as a result, the claimant is not made whole.

When a right of Recovery exists, the Covered Person will execute and deliver all required instruments and papers as well as doing whatever else is needed to secure the Plan's right of Subrogation as a condition to having the Plan make payments. In addition, the Covered Person will do nothing to prejudice the right of the Plan to Subrogate.

**Conditions Precedent to Coverage.** The Plan shall have no obligation whatsoever to pay medical or dental benefits to a Covered Person if a Covered Person refuses to cooperate with the Plan's reimbursement and Subrogation rights or refuses to execute and deliver such papers as the Plan may require in furtherance of its reimbursement and Subrogation rights. Further, in the event the Covered Person is a minor, the Plan shall have no obligation to pay any medical or dental benefits incurred on account of Injury or Sickness caused by a responsible Third Party until after the Covered Person or his authorized legal representative obtains valid court recognition and approval of the Plan's 100%, first dollar reimbursement and Subrogation rights on all Recoveries, as well as approval for the execution of any papers necessary for the enforcement thereof, as described herein.

**Defined terms:** "Covered Person" means anyone covered under the Plan, including minor dependents.

"Recover," "Recovered," "Recovery" or "Recoveries" means all monies paid to the Covered Person by way of judgment, settlement, or otherwise to compensate for all losses caused by the Injury or Sickness, whether or not said losses reflect medical or dental charges covered by the Plan. "Recoveries" further includes, but is not limited to,

recoveries for medical or dental expenses, attorneys' fees, costs and expenses, pain and suffering, loss of consortium, wrongful death, lost wages and any other recovery of any form of damages or compensation whatsoever.

"Refund" means repayment to the Plan for medical or dental benefits that it has paid toward care and treatment of the Injury or Sickness.

"Subrogation" means the Plan's right to pursue and place a lien upon the Covered Person's claims for medical or dental charges against the other person.

"Third Party" means any Third Party including another person or a business entity.

**Recovery from another plan under which the Covered Person is covered.** This right of Refund also applies when a Covered Person Recovers under an uninsured or underinsured motorist plan (which will be treated as Third Party coverage when reimbursement or Subrogation is in order), homeowner's plan, renter's plan, medical malpractice plan or any liability plan.

**Rights of Plan Administrator.** The Plan Administrator has a right to request reports on and approve of all settlements.

## CONTINUATION COVERAGE RIGHTS UNDER COBRA

Under federal law, the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA), certain Employees and their families covered under Ambassador Personnel Services Employee Benefit Plan (the Plan) will be entitled to the opportunity to elect a temporary extension of health coverage (called "COBRA continuation coverage") where coverage under the Plan would otherwise end. This notice is intended to inform Plan Participants and beneficiaries, in summary fashion, of their rights and obligations under the continuation coverage provisions of COBRA, as amended and reflected in final and proposed regulations published by the Department of the Treasury. This notice is intended to reflect the law and does not grant or take away any rights under the law.

The Plan Sponsor is Ambassador Personnel Services. Taylor Benefit Resource, Inc., the Plan Administrator is responsible for administering COBRA continuation coverage. Complete instructions on COBRA, as well as election forms and other information, will be provided by the Plan Administrator to Plan Participants who become Qualified Beneficiaries under COBRA.

**What is COBRA continuation coverage?** COBRA continuation coverage is the temporary extension of group health plan coverage that must be offered to certain Plan Participants and their eligible family members (called "Qualified Beneficiaries") at group rates. The right to COBRA continuation coverage is triggered by the occurrence of a life event that results in the loss of coverage under the terms of the Plan (the "Qualifying Event"). The coverage must be identical to the Plan coverage that the Qualified Beneficiary had immediately before the Qualifying Event, or if the coverage has been changed, the coverage must be identical to the coverage provided to similarly situated active Employees who have not experienced a Qualifying Event (in other words, similarly situated non-COBRA beneficiaries).

**Who can become a Qualified Beneficiary?** In general, a Qualified Beneficiary can be:

(i)    Any individual who, on the day before a Qualifying Event, is covered under a Plan by virtue of being on that day either a covered Employee, the Spouse of a covered Employee, or a Dependent child of a covered Employee. If, however, an individual is denied or not offered coverage under the Plan under circumstances in which the denial or failure to offer constitutes a violation of applicable law, then the individual will be considered to have had the Plan coverage and will be considered a Qualified Beneficiary if that individual experiences a Qualifying Event.

(ii)   Any child who is born to or placed for adoption with a covered Employee during a period of COBRA continuation coverage, and any individual who is covered by the Plan as an alternate recipient under a qualified medical support order. If, however, an individual is denied or not offered coverage under the Plan under circumstances in which the denial or failure to offer constitutes a violation of applicable law, then the individual will be considered to have had the Plan coverage and will be considered a Qualified Beneficiary if that individual experiences a Qualifying Event.

The term "covered Employee" includes not only common-law Employees (whether part-time or full-time) but also any individual who is provided coverage under the Plan due to his or her performance of services for the employer sponsoring the Plan (e.g., self-employed individuals, independent contractor, or corporate director).

An individual is not a Qualified Beneficiary if the individual's status as a covered Employee is attributable to a period in which the individual was a nonresident alien who received from the individual's Employer no earned income that constituted income from sources within the United States. If, on account of the preceding reason, an individual is not a Qualified Beneficiary, then a Spouse or Dependent child of the individual will also not be considered a Qualified Beneficiary by virtue of the relationship to the individual. A domestic partner is not a Qualified Beneficiary.

Each Qualified Beneficiary (including a child who is born to or placed for adoption with a covered Employee during a period of COBRA continuation coverage) must be offered the opportunity to make an independent election to receive COBRA continuation coverage.

**What is a Qualifying Event?** A Qualifying Event is any of the following if the Plan provided that the Plan participant would lose coverage (i.e., cease to be covered under the same terms and conditions as in effect immediately before the Qualifying Event) in the absence of COBRA continuation coverage:

 **(i)**  The death of a covered Employee.

 **(ii)**  The termination (other than by reason of the Employee's gross misconduct), or reduction of hours, of a covered Employee's employment.

 **(iii)**  The divorce or legal separation of a covered Employee from the Employee's Spouse.

 **(iv)**  A covered Employee's enrollment in any part of the Medicare program.

 **(v)**  A Dependent child's ceasing to satisfy the Plan's requirements for a Dependent child (for example, attainment of the maximum age for dependency under the Plan).

If the Qualifying Event causes the covered Employee, or the covered Spouse or a Dependent child of the covered Employee, to cease to be covered under the Plan under the same terms and conditions as in effect immediately before the Qualifying Event (or in the case of the bankruptcy of the Employer, any substantial elimination of coverage under the Plan occurring within 12-months before or after the date the bankruptcy proceeding commences), the persons losing such coverage become Qualified Beneficiaries under COBRA if all the other conditions of the COBRA are also met. For example, any increase in contribution that must be paid by a covered Employee, or the Spouse, or a Dependent child of the covered Employee, for coverage under the Plan that results from the occurrence of one of the events listed above is a loss of coverage.

The taking of leave under the Family and Medical Leave Act of 1993 ("FMLA") does not constitute a Qualifying Event. A Qualifying Event will occur, however, if an Employee does not return to employment at the end of the FMLA leave and all other COBRA continuation coverage conditions are present. If a Qualifying Event occurs, it occurs on the last day of FMLA leave and the applicable maximum coverage period is measured from this date (unless coverage is lost at a later date and the Plan provides for the extension of the required periods, in which case the maximum coverage date is measured from the date when the coverage is lost). Note: that the covered Employee and family members will be entitled to COBRA continuation coverage even if they failed to pay the Employee portion of premiums for coverage under the Plan during the FMLA leave.

**What is the procedure for obtaining COBRA continuation coverage?** The Plan has conditioned the availability of COBRA continuation coverage upon the timely election of such coverage. An election is timely if it is made during the election period.

**What is the election period and how long must it last?** The election period is the time period within which the Qualified Beneficiary can elect COBRA continuation coverage under the Plan. The election period must begin not later than the date the Qualified Beneficiary would lose coverage on account of the Qualifying Event and must not end before the date that is 60 days after the later of the date the Qualified Beneficiary would lose coverage on account of the Qualifying Event or the date notice is provided to the Qualified Beneficiary of her or his right to elect COBRA continuation coverage.

Note: If a covered Employee who has been terminated or experienced a reduction of hours qualifies for a trade readjustment allowance or alternative trade adjustment assistance under a federal law called the Trade Act of 2002, and the Employee and his or her covered dependents have not elected COBRA coverage within the normal election period, a second opportunity to elect COBRA coverage will be made available for themselves and certain family members, but only within a limited period of 60 days or less and only during the six months immediately after their group health plan coverage ended. Any person who qualifies or thinks that he and/or his family members may qualify for assistance under this special provision should contact the Plan Administrator for further information.

**Is a covered Employee or Qualified Beneficiary responsible for informing the Plan Administrator of the occurrence of a Qualifying Event?**

The Plan will offer COBRA continuation coverage to qualified beneficiaries only after the Plan Administrator or its designee has been timely notified that a Qualifying Event has occurred. The employer (if the employer is not the Plan Administrator) will notify the Plan Administrator of the Qualifying Event within 30 days following the date coverage ends when the Qualifying Event is:

the end of employment or reduction of hours of employment,
death of the Employee,
commencement of a proceeding in bankruptcy with respect to the employer, or
enrollment of the Employee in any part of Medicare.

**IMPORTANT:**

**For the other Qualifying Events (divorce or legal separation of the Employee and spouse or a dependent child's losing eligibility for coverage as a dependent child), you or someone on your behalf must notify the Plan Administrator or its designee in writing within 60 days after the Qualifying Event occurs, using the procedures specified below. If these procedures are not followed or if the notice is not provided in writing to the Plan Administrator or its designee during the 60-day notice period, any spouse or dependent child who loses coverage will not be offered the option to elect continuation coverage. You must send this notice to your Ambassador Personnel Affiliate Division Office or Taylor Benefit Resource, Inc.**

---

**NOTICE PROCEDURES:**

Any notice that you provide must be **in writing**. Oral notice, including notice by telephone is not acceptable. You must mail, fax or hand-deliver your notice to the person, department or firm listed below, at the following address:

Taylor Benefit Resource, Inc.
% Ambassador Personnel Services
P. O. Box 6580
Thomasville, GA  31758
Or
The Ambassador Affiliate Division you belong to.

If mailed, your notice must be postmarked no later than the last day of the required notice period.  Any notice you provide must state:

1. the **name of the plan** or plans under which you lost or are losing coverage,
2. the **name and address** of the Employee covered under the plan,
3. the **name(s) and address(es)** of the qualified beneficiary(ies), and
4. the **qualifying event** and the date it happened.

If the qualifying event is a **divorce or legal separation**, your notice must include **a copy of the divorce decree or the legal separation agreement.**

There are other notice requirements in other contexts.  See, for example, the discussion below under the heading entitled, "Duration of COBRA Coverage."  That explanation describes other situations where notice from you or the qualified beneficiary is required in order to gain the right to COBRA coverage.

---

Once the Plan Administrator or its designee receives *timely notice* that a Qualifying Event has occurred, COBRA continuation coverage will be offered to each of the qualified beneficiaries. Each Qualified Beneficiary will have an independent right to elect COBRA continuation coverage. Covered Employees may elect COBRA continuation coverage for their spouses, and parents may elect COBRA continuation coverage on behalf of their children. For each Qualified Beneficiary who elects COBRA continuation coverage, COBRA continuation coverage will begin on the date that plan coverage would otherwise have been lost (if under your Plan the COBRA period begins on the date of the Qualifying Event, even though coverage actually ends later (e.g., at the end of the month) substitute the appropriate language, e.g. "on the date of the Qualifying Event"). If you or your spouse or dependent children do not elect continuation coverage within the 60-day election period described above, the right to elect continuation coverage will be lost.

**Is a waiver before the end of the election period effective to end a Qualified Beneficiary's election rights?** If, during the election period, a Qualified Beneficiary waives COBRA continuation coverage, the waiver can be revoked at any time before the end of the election period. Revocation of the waiver is an election of COBRA continuation coverage. However, if a waiver is later revoked, coverage need not be provided retroactively (that is, from the date of the loss of coverage until the waiver is revoked). Waivers and revocations of waivers are considered made on the date they are sent to the Plan Administrator or its designee, as applicable.

**When may a Qualified Beneficiary's COBRA continuation coverage be terminated?** During the election period, a Qualified Beneficiary may waive COBRA continuation coverage. Except for an interruption of coverage in connection with a waiver, COBRA continuation coverage that has been elected for a Qualified Beneficiary must extend for at least the period beginning on the date of the Qualifying Event and ending not before the earliest of the following dates:

(i)     The last day of the applicable maximum coverage period.

(ii)    The first day for which Timely Payment is not made to the Plan with respect to the Qualified Beneficiary.

(iii)   The date upon which the Employer ceases to provide any group health plan (including a successor plan) to any Employee.

(iv)    The date, after the date of the election, that the Qualified Beneficiary first becomes covered under any other Plan that does not contain any exclusion or limitation with respect to any pre-existing condition, other than such an exclusion or limitation that does not apply to, or is satisfied by, the Qualified Beneficiary.

(v)     The date, after the date of the election that the Qualified Beneficiary first enrolls in the Medicare program (either part A or part B, whichever occurs earlier).

(vi)    In the case of a Qualified Beneficiary entitled to a disability extension, the later of:

    (a)    29-months after the date of the Qualifying Event, or (ii) the first day of the month that is more than 30 days after the date of a final determination under Title II or XVI of the Social Security Act that the disabled Qualified Beneficiary whose disability resulted in the Qualified Beneficiary's entitlement to the disability extension is no longer disabled, whichever is earlier; or

    (b)    the end of the maximum coverage period that applies to the Qualified Beneficiary without regard to the disability extension.

The Plan can terminate for cause the coverage of a Qualified Beneficiary on the same basis that the Plan terminates for cause the coverage of similarly situated non-COBRA beneficiaries, for example, for the submission of a fraudulent claim.

In the case of an individual who is not a Qualified Beneficiary and who is receiving coverage under the Plan solely because of the individual's relationship to a Qualified Beneficiary, if the Plan's obligation to make COBRA continuation coverage available to the Qualified Beneficiary ceases, the Plan is not obligated to make coverage available to the individual who is not a Qualified Beneficiary.

**What are the maximum coverage periods for COBRA continuation coverage?** The maximum coverage periods are based on the type of the Qualifying Event and the status of the Qualified Beneficiary, as shown below.

(i)    In the case of a Qualifying Event that is a termination of employment or reduction of hours of employment, the maximum coverage period ends 18-months after the Qualifying Event, if there is not a disability extension, and 29-months after the Qualifying Event, if there is a disability extension.

(ii)   In the case of a covered Employee's enrollment in the Medicare program before experiencing a Qualifying Event that is a termination of employment or reduction of hours of employment, the maximum coverage period for Qualified Beneficiaries other than the covered Employee ends on the later of:

   (a)    36-months after the date the covered Employee becomes enrolled in the Medicare program; or

   (b)    18-months (or 29-months, if there is a disability extension) after the date of the covered Employee's termination of employment or reduction of hours of employment.

(iii)  In the case of a Qualified Beneficiary who is a child born to or placed for adoption with a covered Employee during a period of COBRA continuation coverage, the maximum coverage period is the maximum coverage period applicable to the Qualifying Event giving rise to the period of COBRA continuation coverage during which the child was born or placed for adoption.

(iv)   In the case of any other Qualifying Event than that described above, the maximum coverage period ends 36-months after the Qualifying Event.

**Under what circumstances can the maximum coverage period be expanded?** If a Qualifying Event that gives rise to an 18-month or 29-month maximum coverage period is followed, within that 18- or 29-month period, by a second Qualifying Event that gives rise to a 36-months maximum coverage period, the original period is expanded to 36-months, but only for individuals who are Qualified Beneficiaries at the time of both Qualifying Events. In no circumstance can the COBRA maximum coverage period be expanded to more than 36-months after the date of the first Qualifying Event. The Plan Administrator must be notified of the second Qualifying Event within 60 days of the second Qualifying Event. This notice must be sent to the Taylor Benefit Resource, Inc.

*How does a Qualified Beneficiary become entitled to a disability extension? A disability extension will be granted if an individual (whether or not the covered Employee) who is a Qualified Beneficiary in connection with the Qualifying Event that is a termination or reduction of hours of a covered Employee's employment, is determined under Title II or XVI of the Social Security Act to have been disabled at any time during the first 60 days of COBRA continuation coverage. To qualify for the disability extension, the Qualified Beneficiary must also provide the Plan Administrator with notice of the disability determination on a date that is both within 60 days after the date of the determination and before the end of the original 18-month maximum coverage. This notice should be sent to Taylor Benefit Resource, Inc..*

**Does the Plan require payment for COBRA continuation coverage?** For any period of COBRA continuation coverage under the Plan, qualified beneficiaries who elect COBRA continuation coverage must pay for COBRA continuation coverage. Qualified beneficiaries will pay up to 102% of the applicable premium and up to 150% of the applicable premium for any expanded period of COBRA continuation coverage covering a disabled Qualified Beneficiary due to a disability extension. The Plan will terminate a Qualified Beneficiary's COBRA continuation coverage as of the first day of any period for which timely payment is not made.

**Must the Plan allow payment for COBRA continuation coverage to be made in monthly installments?** Yes. The Plan is also permitted to allow for payment at other intervals.

**What is Timely Payment for payment for COBRA continuation coverage?** Timely Payment means a payment made no later than 30 days after the first day of the coverage period. Payment that is made to the Plan by a later date is also considered Timely Payment if either under the terms of the Plan, covered Employees or Qualified Beneficiaries are allowed until that later date to pay for their coverage for the period or under the terms of an arrangement between the Employer and the entity that provides Plan benefits on the Employer's behalf, the Employer is allowed until that later date to pay for coverage of similarly situated non-COBRA beneficiaries for the period.

Notwithstanding the above paragraph, the Plan does not require payment for any period of COBRA continuation coverage for a Qualified Beneficiary earlier than 45 days after the date on which the election of COBRA continuation coverage is made for that Qualified Beneficiary. Payment is considered made on the date on which it is postmarked to the Plan.

If Timely Payment is made to the Plan in an amount that is not significantly less than the amount the Plan requires to be paid for a period of coverage, then the amount paid will be deemed to satisfy the Plan's requirement for the amount to be paid, unless the Plan notifies the Qualified Beneficiary of the amount of the deficiency and grants a reasonable period of time for payment of the deficiency to be made. A "reasonable period of time" is 30 days after the notice is provided. A shortfall in a Timely Payment is not significant if it is no greater than the lesser of $50 or 10% of the required amount.

**Must a Qualified Beneficiary be given the right to enroll in a conversion health plan at the end of the maximum coverage period for COBRA continuation coverage?** If a Qualified Beneficiary's COBRA continuation coverage under a group health plan ends as a result of the expiration of the applicable maximum coverage period, the Plan will, during the 180- day period that ends on that expiration date, provide the Qualified Beneficiary with the option of enrolling under a conversion health plan if such an option is otherwise generally available to similarly situated non-COBRA beneficiaries under the Plan. If such a conversion option is not otherwise generally available, it need not be made available to Qualified Beneficiaries.

### IF YOU HAVE QUESTIONS

If you have questions about your COBRA continuation coverage, you should contact Taylor Benefit Resource, Inc. or you may contact the nearest Regional or District Office of the U.S. Department of Labor's Employee Benefits Security Administration (EBSA). Addresses and phone numbers of Regional and District EBSA Offices are available through EBSA's Web site at www.dol.gov/ebsa.

### KEEP YOUR PLAN ADMINISTRATOR INFORMED OF ADDRESS CHANGES

**In order to protect your family's rights, you should keep the Plan Administrator informed of any changes in the addresses of family members. You should also keep a copy, for your records, of any notices you send to the Plan Administrator.**

## RESPONSIBILITIES FOR PLAN ADMINISTRATION

**PLAN ADMINISTRATOR.** Ambassador Personnel Services Employee Benefit Plan is the benefit plan of Ambassador Personnel Services, the Plan Administrator, also called the Plan Sponsor. It is to be administered by the Plan Administrator in accordance with the provisions of ERISA. An individual may be appointed by Ambassador Personnel Services to be Plan Administrator and serve at the convenience of the Employer. If the Plan Administrator resigns, dies or is otherwise removed from the position, Ambassador Personnel Services shall appoint a new Plan Administrator as soon as reasonably possible.

The Plan Administrator shall administer this Plan in accordance with its terms and establish its policies, interpretations, practices, and procedures. It is the express intent of this Plan that the Plan Administrator shall have maximum legal discretionary authority to construe and interpret the terms and provisions of the Plan, to make determinations regarding issues which relate to eligibility for benefits, to decide disputes which may arise relative to a Plan Participant's rights, and to decide questions of Plan interpretation and those of fact relating to the Plan. The decisions of the Plan Administrator will be final and binding on all interested parties.

Service of legal process may be made upon the Plan Administrator.

## DUTIES OF THE PLAN ADMINISTRATOR.

(1)     To administer the Plan in accordance with its terms.

(2)     To interpret the Plan, including the right to remedy possible ambiguities, inconsistencies or omissions.

(3)     To decide disputes which may arise relative to a Plan Participant's rights.

(4)     To prescribe procedures for filing a claim for benefits and to review claim denials.

(5)     To keep and maintain the Plan documents and all other records pertaining to the Plan.

(6)     To appoint a Claims Supervisor to pay claims.

(7)     To perform all necessary reporting as required by ERISA.

(8)     To establish and communicate procedures to determine whether a medical child support order is qualified under ERISA Sec. 609.

(9)     To delegate to any person or entity such powers, duties and responsibilities as it deems appropriate.

**PLAN ADMINISTRATOR COMPENSATION.** The Plan Administrator serves **without** compensation; however, all expenses for plan administration, including compensation for hired services, will be paid by the Plan.

**FIDUCIARY.** A fiduciary exercises discretionary authority or control over management of the Plan or the disposition of its assets, renders investment advice to the Plan or has discretionary authority or responsibility in the administration of the Plan.

**FIDUCIARY DUTIES.** A fiduciary must carry out his or her duties and responsibilities for the purpose of providing benefits to the Employees and their Dependent(s), and defraying reasonable expenses of administering the Plan. These are duties which must be carried out:

(1)     with care, skill, prudence and diligence under the given circumstances that a prudent person, acting in a like capacity and familiar with such matters, would use in a similar situation;

(2)     by diversifying the investments of the Plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(3)      in accordance with the Plan documents to the extent that they agree with ERISA.

**THE NAMED FIDUCIARY.** A "named fiduciary" is the one named in the Plan. A named fiduciary can appoint others to carry out fiduciary responsibilities (other than as a trustee) under the Plan. These other persons become fiduciaries themselves and are responsible for their acts under the Plan. To the extent that the named fiduciary allocates its responsibility to other persons, the named fiduciary shall not be liable for any act or omission of such person unless either:

(1)      the named fiduciary has violated its stated duties under ERISA in appointing the fiduciary, establishing the procedures to appoint the fiduciary or continuing either the appointment or the procedures; or

(2)      the named fiduciary breached its fiduciary responsibility under Section 405(a) of ERISA.

**CLAIMS SUPERVISOR IS NOT A FIDUCIARY.** A Claims Supervisor is **not** a fiduciary under the Plan by virtue of paying claims in accordance with the Plan's rules as established by the Plan Administrator.

## FUNDING THE PLAN AND PAYMENT OF BENEFITS

The cost of the Plan is funded as follows:

**For Employee Coverage:** Funding is derived from the funds of the Employer and contributions made by the covered Employees.

**For Dependent Coverage:** Funding is derived from contributions made by the covered Employees.

The level of any Employee contributions will be set by the Plan Administrator. These Employee contributions will be used in funding the cost of the Plan as soon as practicable after they have been received from the Employee or withheld from the Employee's pay through payroll deduction.

Benefits are paid directly from the Plan through the Claims Supervisor.

## PLAN IS NOT AN EMPLOYMENT CONTRACT

The Plan is not to be construed as a contract for or of employment.

## CLERICAL ERROR

Any clerical error by the Plan Administrator or an agent of the Plan Administrator in keeping pertinent records or a delay in making any changes will not invalidate coverage otherwise validly in force or continue coverage validly terminated. An equitable adjustment of contributions will be made when the error or delay is discovered.

If, due to a clerical error, an overpayment occurs in a Plan reimbursement amount, the Plan retains a contractual right to the overpayment. The person or institution receiving the overpayment will be required to return the incorrect amount of money. In the case of a Plan Participant, if it is requested, the amount of overpayment will be deducted from future benefits payable.

## AMENDING AND TERMINATING THE PLAN

If the Plan is terminated, the rights of the Plan Participants are limited to expenses incurred before termination.

The Employer intends to maintain this Plan indefinitely; however, it reserves the right, at any time, to amend, suspend or terminate the Plan in whole or in part. This includes amending the benefits under the Plan or the Trust agreement (if any).

## CERTAIN PLAN PARTICIPANTS RIGHTS UNDER ERISA

Plan Participants in this Plan are entitled to certain rights and protections under the Employee Retirement Income Security Act of 1974 (ERISA). ERISA specifies that all Plan Participants shall be entitled to:

> Examine, without charge, at the Plan Administrator's office, all Plan documents and copies of all documents governing the Plan, including a copy of the latest annual report (form 5500 series) filed by the Plan with the U.S. Department of Labor and available at the Public Disclosure Room of the Employee Benefits Security Administration.

> Obtain copies of all Plan documents and other Plan information upon written request to the Plan Administrator. The Plan Administrator may make a reasonable charge for the copies.

> Continue health care coverage for a Plan Participant, Spouse, or other dependents if there is a loss of coverage under the Plan as a result of a qualifying event. Employees or dependents may have to pay for such coverage.

> Review this summary plan description and the documents governing the Plan or the rules governing COBRA continuation coverage rights.

> Reduction or elimination of exclusionary periods of coverage for Pre-Existing Conditions under this group health Plan, if an Employee or dependent has Creditable Coverage from another plan. The Employee or dependent should be provided a certificate of Creditable Coverage, free of charge, from the group health plan or health insurance issuer when coverage is lost under the plan, when a person becomes entitled to elect COBRA continuation coverage, when COBRA continuation coverage ceases, if a person requests it before losing coverage, or if a person requests it up to 24 months after losing coverage. Without evidence of Creditable Coverage, a Plan Participant may be subject to a Pre-Existing Conditions exclusion for 12 months (18 months for Late Enrollees) after the Enrollment Date of coverage.

If a Plan Participant's claim for a benefit is denied or ignored, in whole or in part, the participant has a right to know why this was done, to obtain copies of documents relating to the decision without charge, and to appeal any denial, all within certain time schedules.

Under ERISA, there are steps a Plan Participant can take to enforce the above rights. For instance, if a Plan Participant requests a copy of Plan documents or the latest annual report from the Plan and does not receive them within 30 days, he or she may file suit in a federal court. In such a case, the court may require the Plan Administrator to provide the materials and to pay the Plan Participant up to $110 a day until he or she receives the materials, unless the materials were not sent because of reasons beyond the control of the Plan Administrator. If the Plan Participant has a claim for benefits which is denied or ignored, in whole or in part, the participant may file suit in state or federal court.

In addition, if a Plan Participant disagrees with the Plan's decision or lack thereof concerning the qualified status of a medical child support order, he or she may file suit in federal court.

In addition to creating rights for Plan Participants, ERISA imposes obligations upon the individuals who are responsible for the operation of the Plan. The individuals who operate the Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of the Plan Participants and their beneficiaries. No one, including the Employer or any other person, may fire a Plan Participant or otherwise discriminate against a Plan Participant in any way to prevent the Plan Participant from obtaining benefits under the Plan or from exercising his or her rights under ERISA.

If it should happen that the Plan fiduciaries misuse the Plan's money, or if a Plan Participant is discriminated against for asserting his or her rights, he or she may seek assistance from the U.S. Department of Labor, or may file suit in a federal court. The court will decide who should pay court costs and legal fees. If the Plan Participant is successful, the court may order the person sued to pay these costs and fees. If the Plan Participant loses, the court may order him or her to pay these costs and fees, for example, if it finds the claim or suit to be frivolous.

If the Plan Participant has any questions about the Plan, he or she should contact the Plan Administrator. If the Plan Participant has any questions about this statement or his or her rights under ERISA or the Health Insurance Portability and Accountability Act (HIPAA), that Plan Participant should contact either the nearest area office of the Employee Benefits Security Administration, U.S. Department of Labor listed in the telephone directory or the Division of Technical Assistance and Inquiries, Employee Benefits Security Administration, at 200 Constitution Avenue, N.W., Washington, DC 20210.

## GENERAL PLAN INFORMATION

**TYPE OF ADMINISTRATION**

The Plan is a self-funded group health Plan and the administration is provided through a Third Party Claims Supervisor. The funding for the benefits is derived from the funds of the Employer and contributions made by covered Employees. The Plan is not insured.

**PLAN NAME**

Ambassador Personnel Services Employee Benefit Plan

**PLAN NUMBER:** 501

**TAX ID NUMBER:** 58-2271511

**PLAN EFFECTIVE DATE:** January 1, 2005
**PLAN RESTATED:**   January 1, 2007

**PLAN YEAR ENDS:** December 31st

**EMPLOYER INFORMATION**

>Ambassador Personnel Services
>P. O. Box 2057
>Thomasville, Georgia 31799
>229-226-2909

**PLAN ADMINISTRATOR**

>Benefit Coordinator
>Ambassador Personnel Services
>P. O. Box 2057
>Thomasville, Georgia 31799
>229-226-2909

**NAMED FIDUCIARY**

>Financial Officer
>Ambassador Personnel Services
>P. O. Box 2057
>Thomasville, Georgia 31799

**AGENT FOR SERVICE OF LEGAL PROCESS**

>Financial Officer
>Ambassador Personnel Services
>P. O. Box 2057
>Thomasville, Georgia 31799

**CLAIMS SUPERVISOR**

>Taylor Benefit Resource, Inc.
>P. O. Box 6580
>Thomasville, Georgia 31758
>1-229-225-9943 or 1-888-352-5246

BY THIS AGREEMENT, Ambassador Personnel Services Employee Benefit Plan is hereby adopted as shown.

IN WITNESS WHEREOF, this instrument is executed for Ambassador Personnel Services on or as of the day and year first below written.

By_____
        Ambassador Personnel Services

Date _____

Witness _____

Date _____

## HIPAA PRIVACY AMENDMENT

## AMBASSADOR PERSONNEL SERVICES
## EMPLOYEE BENEFIT PLAN

BY THIS AGREEMENT, Ambassador Personnel Services Employee Benefit Plan, the medical and prescription drug plan(s) (herein called the "Plan") are hereby amended as follows, effective as of January 1, 2005.

Ambassador Personnel Services ("Employer") sponsors group health plan(s) known as medical and prescription drug plan(s) for the benefit of its eligible employees and their dependents.

Certain members of the Employer's workforce perform services in connection with administration of the Plan. In order to perform these services, it is necessary for these employees from time to time to have access to Protected Health Information (as defined below).

Under the Standards for Privacy of Individually Identifiable Health Information (45 CFR Part 164, the "Privacy Standards"), these employees are permitted to have such access only if the Plan is amended in accordance with the Privacy Standards.

Therefore, the Employer is amending the Plan as follows:

1.1     <u>General.</u>  The Plan shall not disclose Protected Health Information to any member of the Employer's workforce unless each of the conditions set out in this Amendment is met. "Protected Health Information" shall have the same definition as set out in the Privacy Standards but generally shall mean individually identifiable health information about the past, present or future physical or mental health or condition of an individual, including information about treatment or payment for treatment.

1.2     <u>Permitted Uses and Disclosures.</u>  Protected Health Information disclosed to members of the Employer's workforce shall be used or disclosed by them only for purposes of Plan administrative functions. The Plan's administrative functions shall include all Plan payment and health care operations. The terms "payment" and "health care operations" shall have the same definitions as set out in the Privacy Standards, but the term "payment" generally shall mean activities taken with respect to payment of premiums or contributions, or to determine or fulfill Plan responsibilities with respect to coverage, provision of benefits, or reimbursement for health care. "Health care operations" generally shall mean activities on behalf of the Plan that are related to quality assessment; evaluation, training or accreditation of health care providers; underwriting, premium rating and other functions related to obtaining or renewing an insurance contract, including stop-loss insurance; medical review; legal services or auditing functions; or business planning, management and general administrative activities.

1.3     <u>Authorized Employees.</u>  The Plan shall disclose Protected Health Information only to members of the Employer's workforce who are designated on Schedule I hereto attached and are authorized to receive such Protected Health Information, and only to the extent and in the minimum amount necessary for these persons to perform duties with respect to the Plan. For purposes of this Amendment, "members of the Employer's workforce" shall refer to all employees and other persons under the control of the Employer.

> a.     <u>Updates Required.</u>  The Employer shall amend Schedule I promptly with respect to any changes in the members of its workforce who are authorized to receive Protected Health Information.
>
> b.     <u>Use and Disclosure Restricted.</u>  An authorized member of the Employer's workforce who receives Protected Health Information shall use or disclose the Protected Health Information only to the extent necessary to perform his or her duties with respect to the Plan.

c.   Resolution of Issues of Noncompliance.  In the event that any member of the Employer's workforce uses or discloses Protected Health Information other than as permitted by this Amendment and the Privacy Standards, the incident shall be reported to the privacy official. The privacy official shall take appropriate action, including:

1.   Investigation of the incident to determine whether the breach occurred inadvertently, through negligence, or deliberately; whether there is a pattern of breaches; and the degree of harm caused by the breach;

2.   Applying appropriate sanctions against the persons causing the breach, which, depending upon the nature of the breach, may include, oral or written reprimand, additional training, or termination of employment;

3.   Mitigating any harm caused by the breach, to the extent practicable; and

4.   Documentation of the incident and all actions taken to resolve the issue and mitigate any damages.

1.4   Certification of Employer.  The Employer must provide certification to the Plan that it agrees to:

a.   Not use or further disclose the Protected Health Information other than as permitted or required by the Plan documents or as required by law;

b.   Ensure that any agent or subcontractor, to whom it provides Protected Health Information received from the Plan, agrees to the same restrictions and conditions that apply to the Employer with respect to such information;

c.   Not use or disclose Protected Health Information for employment-related actions and decisions or in connection with any other benefit or employee benefit plan of the Employer;

d.   Report to the Plan any use or disclosure of the Protected Health Information of which it becomes aware that is inconsistent with the uses or disclosures permitted by this Amendment, or required by law;

e.   Make available Protected Health Information to individual Plan members in accordance with Section 164.524 of the Privacy Standards;

f.   Make available Protected Health Information for amendment by individual Plan members and incorporate any amendments to Protected Health Information in accordance with Section 164.526 of the Privacy Standards;

g.   Make available the Protected Health Information required to provide any accounting of disclosures to individual Plan members in accordance with Section 164.528 of the Privacy Standards;

h.   Make its internal practices, books and records relating to the use and disclosure of Protected Health Information received from the Plan available to the Department of Health and Human Services for purposes of determining compliance by the Plan with the Privacy Standards;

i.   If feasible, return or destroy all Protected Health Information received from the Plan that the Employer still maintains in any form, and retain no copies of such information when no longer needed for the purpose of which disclosure was made, except that, if such return or destruction is not feasible, limit further uses and disclosures to those purposes that make the return or destruction of the information unfeasible; and

j.      Ensure the adequate separation between the Plan and member of the Employer's workforce, as required by Section 164.504(f)(2)(iii) of the Privacy Standards and set out in Section 1.3 hereof.

Schedule I

The following members of Ambassador Personnel Services are designated as authorized to receive Protected Health Information from Ambassador Personnel Services Employee Benefit Plan ("the Plan") in order to perform their duties with respect to the Plan: Benefit Committee.

```
Date: 05/07/08          C H R O N O L O G starting 01/01/2002        Page:   1
                        ID:419296558 / SMITH, LAUREN, E
   Date    Description
-------------------------------------------------------------------------------
12/17/2002 Log Type:GENERAL ENTRY entered by: MARY
           REC. ENROLLMENT                                        200212170248
05/01/2003 Log Type:GENERAL ENTRY entered by: MARY
           REC. ENROLLMENT                                        200305010136
05/30/2003 VOB  :001094 Caller:SHERRI
           Operator: PATRICE   Phone number: 000-000-0000
           Admit:05/15/2003 for MALIGNANT NEOPLASM OF LIP
           OV0095 $300 ACC;$20 CO PAY;100% ^ TO $200 PER VST;$1000 CYM
08/25/2003 Claim:200309290108-002 Provider:FRANK  THOMAS  MD
           08/25/2003-08/25/2003 LUMBAGO
           OFFICE OUTPT NEW 20 MINUTES            Chg:    68.00 Status:8
           Examiner:MARY    MARY
           Pay Date:12/17/2003 Amount:        .00
           Amount:    68.00 ineligible due to ADDITIONAL INFORMATION N
09/30/2003 SUSPNDED NOTE: REQUEST PREX FROM DR. THOMAS AND EE

10/02/2003 SUSPENDED LTR: REQUEST PREX FROM DR. THOMAS AND EE   200310020027
           08/25/2003-08/25/2003 LUMBAGO
           RADEX SPI LUMBOSAC 2/3 VIEWS          Chg:   102.00 Status:8
           Examiner:MARY    MARY
           Pay Date:12/17/2003 Amount:        .00
           Amount:   102.00 ineligible due to ADDITIONAL INFORMATION N
      Claim:200405050127 Provider:FRANK  THOMAS  MD
           08/25/2003-08/25/2003 LUMBAGO
           OFFICE OUTPT NEW 20 MINUTES            Chg:    68.00 Status:8
           Examiner:MARY    MARY
           Pay Date:05/13/2004 Amount:   33.00 Check:    004257 Prov.
           08/25/2003-08/25/2003 LUMBAGO
           RADEX SPI LUMBOSAC 2/3 VIEWS          Chg:   102.00 Status:8
           Examiner:MARY    MARY
           Pay Date:05/13/2004 Amount:  102.00 Check:    004257 Prov.
10/02/2003 Claim:200310160063-002 Provider:VALLEY FAMILY DENTISTRY
           10/02/2003-10/02/2003
           PERIODIC ORAL EVALUATION ESTABLISHED Chg:    30.00 Status:8
           Examiner:DEBBIE   DEBBIE STORY
           Pay Date:10/22/2003 Amount:   30.00 Check:    001981 Prov.
           Check clear Date:11/30/2003  Reconciliation Code:R
      Claim:200310160064-002 Provider:VALLEY FAMILY DENTISTRY
           10/02/2003-10/02/2003
           UNSPECIFIED ADJUNCTIVE PROC BY REPOR Chg:   450.00 Status:8
           Examiner:DEBBIE   DEBBIE STORY
           Pay Date:10/22/2003 Amount:  307.60 Check:    001981 Prov.
           Check clear Date:11/30/2003  Reconciliation Code:R
           10/02/2003-10/02/2003
           PROPHYLAXIS - ADULT                   Chg:    51.00 Status:8
           Examiner:DEBBIE   DEBBIE STORY
           Pay Date:10/22/2003 Amount:   51.00 Check:    001981 Prov.
           Check clear Date:11/30/2003  Reconciliation Code:R
           10/02/2003-10/02/2003
           BITEWINGS - TWO FILMS                 Chg:    28.00 Status:8
```

```
Date: 05/07/08                   C H R O N O L O G                       Page:    2

    Date     Description
-------------------------------------------------------------------------------
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:     22.40 Check:     001981 Prov.
             Check clear Date:11/30/2003  Reconciliation Code:R
          Claim:200310200097-001 Provider:VALLEY FAMILY DENTISTRY
             10/02/2003-10/02/2003
             PERIODIC ORAL EVALUATION ESTABLISHED Chg:     30.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:      30.00 ineligible due to DUPLICATE CLAIM/NC
          Claim:200310200098-001 Provider:VALLEY FAMILY DENTISTRY
             10/02/2003-10/02/2003
             UNSPECIFIED ADJUNCTIVE PROC BY REPOR Chg:    450.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:     450.00 ineligible due to DUPLICATE CLAIM/NC
             10/02/2003-10/02/2003
             PROPHYLAXIS - ADULT                Chg:     51.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:      51.00 ineligible due to DUPLICATE CLAIM/NC
             10/02/2003-10/02/2003
             BITEWINGS - TWO FILMS              Chg:     28.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:      28.00 ineligible due to DUPLICATE CLAIM/NC
10/02/2003 Printed letter:PROV:PRE-EX #1                         200310020026
10/02/2003 Printed letter:CLMT:PREX INFO/PHYSICIAN               200310020027
10/14/2003 Claim:200310150036-001 Provider:VALLEY FAMILY DENTISTRY
             10/14/2003-10/14/2003
             CROWN - PORCELAIN FUSED PREDOMINANTL Chg:    650.00 Status:8
             Examiner:PATRICE  Patrice S. Brown
             Pay Date:10/22/2003 Amount:    282.00 Check:     001981 Prov.
             Check clear Date:11/30/2003  Reconciliation Code:R
             10/14/2003-10/14/2003
             CROWN - PORCELAIN FUSED PREDOMINANTL Chg:    650.00 Status:8
             Examiner:PATRICE  Patrice S. Brown
             Pay Date:10/22/2003 Amount:    307.00 Check:     001981 Prov.
             Check clear Date:11/30/2003  Reconciliation Code:R
10/14/2003 Log Type:GENERAL ENTRY entered by: MARY
             REC PREX FROM DR. THOMAS.  NO TREATMENT.             200310140060
10/15/2003 Claim:200310220031-001 Provider:VALLEY FAMILY DENTISTRY
             10/15/2003-10/15/2003
             ANALGESIA ANXIOLYSIS INHALATION OF   Chg:     26.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:      26.00 ineligible due to EXCEEDS ANNUAL MAXIMUM
             10/15/2003-10/15/2003
             MOLAR                              Chg:    585.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
             Pay Date:10/22/2003 Amount:      .00
             Amount:     585.00 ineligible due to EXCEEDS ANNUAL MAXIMUM
12/30/2003 Log Type:PHONE CALL entered by: MARY
             **** User:MARY(MARY) 12/30/2003 15:28 *****        20031230MARY
01/05/2004 Claim:200401150055-001 Provider:VALLEY FAMILY DENTISTRY
             01/05/2004-01/05/2004
             CROWN - PORCELAIN/CERAMIC SUBSTRATE  Chg:    650.00 Status:8
             Examiner:DEBBIE    DEBBIE STORY
```

```
Date: 05/07/08                    C H R O N O L O G               Page:    3

    Date     Description
-------------------------------------------------------------------------------
                     Pay Date:02/12/2004 Amount:    325.00 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
                     01/05/2004-01/05/2004
                     CROWN - PORCELAIN/CERAMIC SUBSTRATE  Chg:   650.00 Status:8
                     Examiner:DEBBIE    DEBBIE STORY
                     Pay Date:02/12/2004 Amount:    325.00 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
01/06/2004 Claim:200401150038-001 Provider:VALLEY FAMILY DENTISTRY
                     01/06/2004-01/06/2004
                     ANALGESIA ANXIOLYSIS INHALATION OF   Chg:    26.00 Status:8
                     Examiner:PATRICE  Patrice S. Brown
                     Pay Date:02/12/2004 Amount:     20.80 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
                     01/06/2004-01/06/2004
                     RESIN-BASED COMPOSITE - ONE SURFACE  Chg:   100.00 Status:8
                     Examiner:PATRICE  Patrice S. Brown
                     Pay Date:02/12/2004 Amount:     80.00 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
                     01/06/2004-01/06/2004
                     POST AND CORE ADDITION TO CROWN      Chg:   230.00 Status:8
                     Examiner:PATRICE  Patrice S. Brown
                     Pay Date:02/12/2004 Amount:    115.00 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
01/14/2004 Claim:200401210057-001 Provider:VALLEY FAMILY DENTISTRY
                     01/14/2004-01/14/2004
                     ANALGESIA ANXIOLYSIS INHALATION OF   Chg:    26.00 Status:8
                     Examiner:PATRICE  Patrice S. Brown
                     Pay Date:02/12/2004 Amount:     20.80 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
                     01/14/2004-01/14/2004
                     AMALGAM-ONE SURFACE PRIMARY OR PERMA Chg:    78.00 Status:8
                     Examiner:PATRICE  Patrice S. Brown
                     Pay Date:02/12/2004 Amount:     62.40 Check:      002452 Prov.
                     Check clear Date:02/29/2004  Reconciliation Code:R
01/20/2004 Log Type:GENERAL ENTRY entered by: DEBBIE STORY
                     RECEIVED PREX FROM PATIENT - NO TREATMENT.         200401200110
01/20/2004 Log Type:PHONE CALL entered by: Patrice S. Brown
                     **** User:PATRICE(Patrice S. Brown) 01/20/2004 09:19 *20040120PATR
                     MBD
02/12/2004 Claim:200411300033-001 Provider:NADIA G CAMERON  MD
                     02/12/2004-02/12/2004 HEADACHE
                     OFFICE OUTPT EST15 MIN               Chg:    63.00 Status:8
                     Examiner:MARY     MARY
                     Pay Date:12/14/2004 Amount:     43.00 Check:      005061 Prov.
02/17/2004 Claim:200501110066-002 Provider:NADIA G CAMERON  MD
                     02/17/2004-02/17/2004 UNS PYELONEPHRITIS
                     OFFICE OUTPT EST15 MIN               Chg:    63.00 Status:8
                     Examiner:MARY     MARY
                     Pay Date:01/18/2005 Amount:     43.00 Check:      005158 Prov.
                     02/17/2004-02/17/2004 UNS PYELONEPHRITIS
                     COLLJ VEN BLD VNPNXR                 Chg:     3.00 Status:8
                     Examiner:MARY     MARY
                     Pay Date:01/18/2005 Amount:      3.00 Check:      005158 Prov.
05/05/2004 Log Type:PHONE CALL entered by: MARY
                     **** User:MARY(MARY) 05/05/2004 14:25 *****       20040505MARY
06/14/2004 VOB  :002231 Caller:CHRISTINE
                     Operator: MARY       Phone number: 334-749-0390
```

Date: 05/07/08                    C H R O N O L O G                    Page:    4

```
    Date     Description
-----------------------------------------------------------------------------------
             Admit:06/14/2004 for PREGNANT STATE-INCIDENTAL
             READ DISCLOSURE STATEMENT
          Claim:200408310374-007 Provider:EAST ALABAMA MEDICAL CENTER
             06/14/2004-06/14/2004 PREGNANT STATE-INCIDENTAL
             LABORATORY-BACTERIOLOGY AND MICROBIO Chg:   121.49 Status:8
             Examiner:MARY    MARY
             Pay Date:09/20/2004 Amount:         .00
             Amount:   109.34 applied to $500 IND/(X3) FAM
06/14/2004 Log Type:PHONE CALL entered by: MARY
             **** User:MARY(MARY) 06/14/2004 13:51 *****          20040614MARY
06/15/2004 Claim:200408310376-007 Provider:EAST ALABAMA MEDICAL CENTER
             06/15/2004-06/15/2004 PREGNANT STATE-INCIDENTAL
             LABORATORY-IMMUNOLOGY                Chg:    98.34 Status:8
             Examiner:MARY    MARY
             Pay Date:09/20/2004 Amount:         .00
             Amount:    88.51 applied to $500 IND/(X3) FAM
06/21/2004 VOB  :002265 Caller:ANGELA
             Operator: PATRICE    Phone number: 334-749-0390
             Admit:06/21/2004 for
             READ DISCLOSURE STATEMENT...CIN
             SI     90% TO OOP
06/21/2004 Log Type:PHONE CALL entered by: Patrice S. Brown
             **** User:PATRICE(Patrice S. Brown) 06/21/2004 14:49 *20040621PATR
07/07/2004 Log Type:GENERAL ENTRY entered by: TRAIN1
             REC TERMINATION OF MEDICAL COVERAGE.            200407070158
07/21/2004 CERTIFICATE                                      200407210003
09/17/2004 Log Type:GENERAL ENTRY entered by: MARY
             REC TERMINATION ?                              200409170105
01/15/2005 Printed letter:                                 200501150024
01/25/2005 Log Type:GENERAL ENTRY entered by: MARY
             REC COBRA ELECTION                             200501250822
01/31/2005 Log Type:GENERAL ENTRY entered by: MARY
             REC COBRA INFORMATION                          200501310278
02/22/2005 Log Type:GENERAL ENTRY entered by: Donna Whiddon
             EE CALLED CHECKING ON COBRA ROLL OVER FROM BCBS
             MAILED JAN PREMIUM TO BCBS. INFORMED EE THAT SHE COULD
             WAIT FOR REFUND FROM BCBS AND THEM FORWARD PREM TO TBR
             OR ISSUE ANOTHER CK TO TBR FOR JAN. SHE ELECTED TO WAIT
             FOR REFUND. EXPLAINED CLAIMS WOULD BE PENDED UNTIL PREM
             IS RECEIVED.  ALSO GAVE HER WEB ADDRESS TO GET INTO ON
             WHERE TO REFILE CLAIMS
12/02/2005 Printed letter:RATE CHANGE NOTICE                200512020075
             Printed letter:RATE CHANGE NOTICE              200512020165
11/08/2007 Log Type:PHONE CALL entered by: DEBBIE STORY
             KAREN SPOKE W/ NEIL @ AMBASSADOR IN REF TO COBRA LETTE20071108DEBB
             HE WANT COPY FAXED TO HIM @ 226-1282
             **** User:DEBBIE(DEBBIE STORY) 11/08/2007 15:12 *****
```

```
ASP Luminx Live                                                    _ □ ×
┌LXCHRINQ────────TAYLOR BENEFIT RESOURCE ***LIVE***────────Start:03/26/2008┐
│ID:  419296558              Group:1125-AMBASSADOR PERSONNEL              │
│SMITH, LAUREN, E            Grp Eff Dt:04/01/2004 Term:99/99/9999        │
│114 MORGAN ST               Par Cov:01/01/2005 thru:01/01/2005           │
│                            MEDIP001                                     │
│VALLEY, AL  36854           Part. Remarks: BCBS COBRA EFFECT 9/23/04     │
│SSN :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                                                         │
│Birth:09/01/1979                                                         │
│Part :SMITH, LAUREN, E                                                   │
│┌─Date──Comments────────Participant Remarks─────────────Link─┐          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
││                                                             │          │
│                                                             ▓           │
│Tap Function Key for desired CHRONOLOG Selections                       │
└─────────────────────────────────────────────────────────────────────────┘
 Prior  Diagnos  Menu   Entry   Start  Providr ChgDate  Print  Select  Help
 F1      F2       F3      F4      F5      F6      F7       F8     F9     F10
```

```
ASP Luminx Live                                                    _ □ ×
 LXCHRINQ────────TAYLOR BENEFIT RESOURCE ***LIVE***────────Start:03/26/2008
 ID:
 SMI│Claimant Information             Managed Care Information
    └──────────PARTICIPANT'S COVERAGE HISTORY──────────────────
      EFFECTIVE DATES    DIV. COVERAGE  PLAN NAME       COVERAGE  PLAN NAME
    ─────────────────────────────────────────────────────────────────────
    │10/01/2002-04/30/2003 AL01 DEN P00 1125DEN01                          │
    ─────────────────────────────────────────────────────────────────────
    │05/01/2003-06/30/2004 AL01 MED P00 1125MED03    DEN P00 1125DEN01     │
    │                      LIF P00 LIF                                     │
    ─────────────────────────────────────────────────────────────────────
    │07/01/2004-09/15/2004 AL01 DEN P00 1125DEN01                          │
    ─────────────────────────────────────────────────────────────────────
    │01/01/2005-01/01/2005 GCBR MED P00 1125MEDMM                          │
    ─────────────── END OF PARTICIPANT'S COVERAGE HISTORY ─ ─ ─ ─ ─ ─ ─
                                                              TAP ENTER▓
```

0212170248 SUSe4

## Group Enrollment / Change or Waiver Form

PLEASE PRINT IN BLACK INK

**AMERITAS LIFE INSURANCE CORP.**

☒ **START HERE**

☒ **TO ENROLL**

POLICY AND DIV. # 010- *19000-055549*

NAME AND ADDRESS OF EMPLOYER (Policyholder) *Workforce Personnel PO Box 2057*

CERT. # *Thomasville, GA. 31799*

**EMPLOYEE INFORMATION**

SOCIAL SECURITY NUMBER *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*

EMPLOYEE'S LAST NAME, FIRST, M.I. *Smith Lauren E*

DATE OF BIRTH *9-1-79*

☒ CHECK HERE IF THIS IS A NEW ADDRESS

STREET ADDRESS *1504 104th Court SW* CITY *Lanett* STATE *AL* ZIP *36863*

HOURS WORKED EACH WEEK *40*

FULL TIME DATE OF HIRE *09-01-02*

OCCUPATION *CSR*

MARITAL STATUS ☒ SINGLE ☐ MARRIED

☐ MALE ☒ FEMALE

ARE YOUR EARNINGS PAID: ☒ HOURLY OR ☐ SALARIED

☐ REHIRE - REHIRE DATE

DEPT.#

DEPENDENTS TO BE INSURED (S) ☒ NONE (S) ☐ SPOUSE ONLY (F) ☐ SPOUSE & CHILDREN (C) ☐ CHILDREN ONLY # OF CHILDREN:

DEPENDENT COVERAGE INFORMATION (Employee must be enrollee to cover dependents)

LIST ALL ELIGIBLE DEPENDENTS TO BE: ☐ ADDED ☐ DELETED

ARE YOU COVERED FOR DENTAL INSURANCE UNDER ANOTHER PLAN? EMPLOYEE: ☐ YES ☒ NO DEPENDENT(S): ☐ YES ☐ NO

ARE YOU COVERED FOR VISION INSURANCE UNDER ANOTHER PLAN? EMPLOYEE: ☐ YES ☒ NO DEPENDENT(S): ☐ YES ☐ NO

TYPE OF COVERAGE DESIRED: ☒ DENTAL ☐ VISION

| LIST ALL LEGAL NAME (LAST, FIRST, M.I) | ADD | DROP | RELATIONSHIP | SEX | DATE OF BIRTH | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| | | | SPOUSE | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

**PLEASE SIGN** (EMPLOYEE / POLICYHOLDER SIGNATURES)

I hereby apply for, or waive (if indicated), group insurance, for which I am eligible or may become eligible. If contributions are required, I authorize my employer to deduct premiums from my salary. The date of employment, job title, hours worked and salary information are verified as being correct according to the Policyholder's records. THE FOLLOWING APPLIES ONLY TO SECTION 125 FLEXIBLE BENEFITS PLANS: I am not soliciting materials until the next enrollment period except in the case of a change in family status. This information was explained in the plant solicitation materials which I have read and understand.

I, the person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any materially false information, or conceals for the purpose of misleading, information is guilty of a felony of the third degree.

Employee Signature X _____ Date

Policyholder Signature X *9/6/02*      Date *9/6/02*

DO NOT COMPLETE AREAS BELOW

| Rec Code | Effective Date | Class | Dep. Code |
|---|---|---|---|
| A | | | |

☐ **TO CHANGE**

☐ NAME CHANGE

NEW NAME _____ OLD NAME _____

☐ ADD DEPENDENT COVERAGE

EFFECTIVE DATE:

IF DUE TO MARRIAGE, WHAT IS THE DATE OF MARRIAGE?

WAS SPOUSE COVERED FOR DENTAL AT HIS / HER PLACE OF EMPLOYMENT PRIOR TO REQUEST TO BE ADDED? ☐ YES ☐ NO IF "YES," THE FOLLOWING INFORMATION IS NEEDED. LENGTH OF TIME SPOUSE WAS INSURED UNDER HIS / HER EMPLOYER'S COVERAGE:

REASON COVERAGE STOPPED:

DATE COVERAGE STOPPED:

☐ **DROP DEPENDENT COVERAGE**

DROP SPOUSE OR DEPENDENT?

REASON: ☐ DIVORCE ☐ DEATH ☐ COVERAGE ELSEWHERE* ☐ ANNUAL ELECTION PERIOD ☐ OTHER:

EFFECTIVE DATE:

NUMBER OF DEPENDENTS STILL COVERED:

*NAME OF DEPENDENTS INSURANCE COMPANY

*NAME OF DEPENDENT'S EMPLOYER

☐ **TERMINATION EFFECTIVE DATE**

☐ **TO WAIVE**

IF YOU DO NOT WANT COVERAGE, COMPLETE THE WAIVER SECTION. THE WAIVER MAY NOT BE ALLOWED FOR THIS PLAN, CHECK WITH YOUR EMPLOYER.

I have been given an opportunity to apply for Group Insurance offered by my employer, and have decided not to accept the offer for:

☐ myself (does not apply to TRUST policies) ☐ spouse only
☐ child(ren) only ☐ spouse and child(ren)

because _____

Name of Insurance Co. & Employer of Dependent _____

Should I desire to apply for dental insurance in the future, I realize that a late entrant penalty may be applied.

COBRA—If the individual is a continuee
Qualifying Event _____
Date of Event _____
REASON _____

5900 O STREET, LINCOLN, NE 68510
MAILING ADDRESS:
PO BOX 81889, LINCOLN, NE 68501
800-659-2223 / FAX: (402) 467-7893

08/11/2002 01:33    FAX    ☑02

207

# WORKSTAFF
Personnel Services

TBR
Taylor Benefit Resource, Inc.

Office 229-225-9943
Fax 229-225-9948
Toll Free 818-35-CLAIM

164 Commercial Drive
P. O. Box 6510
Thomasville, GA

**GENERAL INFORMATION**  Medical Enrollment Form  GRP 1125  **WORKSTAFF PERSONNEL SERVICES**

Employee Name: Lauren Elizabeth Smith
Address: 114 Morgan Street
City: Valley
Life Amt & AD&D

Social Security No. 419 29 6558
Date of Birth 9-1-79
State AL
ZIP 36854
☐ Male ☑ Female
Division/Department/Location Auburn   Marital Status S

Occupation: Workstaff employee - manager
Plan Choice (Circle Plan Option)   Location/Dept   Hire Date 04-01-03   Effective Date 05-01-03
Type of Coverage Desired: (check one) List Dependents Below if covered

**PLAN CHOICE** (PLAN I) PLAN II (PLAN III) **COVERAGE TYPE** Participant ☐ Part/Child ☑ Part/Spouse ☐ Family ☐

List all other dependents below.  Any dependents not on this form will not be covered by the plan without special medical approval.  You must notify your Personnel Department within 31 days of any new dependents.

|  | HEIGHT | WEIGHT | RELATION | SEX | DATE OF BIRTH | SOCIAL SECURITY NUMBER |
|---|---|---|---|---|---|---|
| Spouse |  |  |  |  |  |  |
| Child |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |

\* **SPECIAL NOTE FOR FOSTER OR STEP-CHILDREN:**  On the reverse side of this form you must list the name, address, employer, and any other insurance information for the natural parent(s)

## OTHER COVERAGE

Spouse's Employer   Address   Phone No.

Spouse's Group Insurance Company   Policy No.   Type of Coverage: Single ☐ Family ☐

## BENEFICIARY

Primary Beneficiary Name: Kevin Ryan Cooper   Relationship: Boyfriend
Street: 114 Morgan St.   City: Valley   State & Zip: AL 36854

The Beneficiary designation is applicable under any benefit plan or life coverage offered by the employer.

I request coverage under my Employer's Employee Benefit Plan and authorize the deduction of my share of the cost from my wages if applicable.  I authorize any medical provider or hospital to furnish the Plan's Benefit Services Manager any records pertaining to the issue of all coverages indicated on this form.  The statements above are true and correct to the best of my knowledge.

**Employee's Signature** Lauren Smith   Date 4-10-03

☐ I do not wish to enroll in my Employer's Health plan at this time.  I understand that I may not be able to enroll again.
☐ I am waiving Medical Coverage because I am covered through another Medical Plan.
☐ I am waiving my spouse's Medical coverage because he/she is covered by another Medical Plan
☐ I am waiving dependent Medical coverage because my dependents is/are covered by another Medical Plan

**IMPORTANT:** If you are declining enrollment for yourself or your dependents (including your spouse) because of other health insurance coverage, you may in the future be able to enroll yourself or your dependents in this plan, provided that you request enrollment within 30 days after the other coverage ends.  In addition, if you have a new dependent as a result of marriage, birth, adoption or placement for adoption, you may be able to enroll yourself and your dependents, provided that you request enrollment within 30 days after the marriage, birth, adoption or placement for adoption.

If the relationship of a dependent is an adopted child or child for whom you have legal custody, you must provide a copy of the legal papers.

If you are enrolling for the first time or adding Medical coverage for you or a spouse or dependent, you must provide a CERTIFICATE OF PRIOR CREDITABLE COVERAGE from the previous insurance provider in order to avoid delays in the payment of your claim.

## GROUP MEDICAL/LIFE STATEMENT  All questions must be completed or coverage will be delayed.

Have you (or an eligible dependent) EVER had, been told you have or sought consultation or treatment, or seen a doctor for any of the following: Check Yes or No and Circle the disorder.

A. Chest pain; heart attack; heart murmur; heart trouble; rapid, slow, or irregular heartbeat; other diseases of the heart, circulatory systems, or blood vessels; varicose veins; or phlebitis?  ___ Yes  ✓ No.

B. High blood pressure?  ___ Yes  ✓ No - If yes, provide last three readings and dates:

___ /___ /___    Date  ___ /___ /___

___ /___ /___    Date  ___ /___ /___

___ /___ /___    Date  ___ /___ /___

C. Cancer, tumor, cyst, or lymph node enlargement?  ___ Yes  ✓ No

Type and location: _____

D. Sexually transmitted disease?  ___ Yes  ✓ No

E. Mental, emotional, nervous disorder, stress-related disorder, depression, anxiety, psychotherapy, or counseling of any kind?  ___ Yes  ✓ No

F. Brain disorder, neurological problem, seizure disorder or epilepsy, any disorder of the central nervous system, stroke or paralysis?  ___ Yes  ✓ No.

G. Alcohol or drug use, abuse, and/or dependency?  ___ Yes  ✓ No

H. Immune deficiency disorder, AIDS, or exposure to the AIDS virus?  ___ Yes  ✓ No

I. Any disorder of the male/female reproductive organs including infertility or complications from pregnancy? Abnormal pap smears(s) or mammograms(s), Complications of breast implant(s)?  ___ Yes  ✓ No

J. Back, neck, bone, muscle or joint problems?  ___ Yes  ✓ No.

K. Gout, arthritis, lupus, rheumatic or connective tissue disease?  ___ Yes  ✓ No - If yes, please indicate type and severity of disability: _____

L. Anemia, Hemophilia, Thrombocytopenia, Thrombasthenia, Thrombosis, Polycythemia, Purpura?  ___ Yes  ✓ No

M. Diabetes?  ___ Yes  ✓ No
If so, please specify date of diagnosis or onset ?
Type of treatment _____
Amount of medication _____

N. Any disorder of the stomach, liver, intestines, gallbladder, or esophagus?  ___ Yes  ✓ No

O. Any disorder of the lungs or respiratory system, including tuberculosis?  ___ Yes  ✓ No

P. Any disorder of the kidneys, bladder, or urinary tract?  ___ Yes  ✓ No

Q. Any disease or disorder of the pancreas, pituitary, thyroid, parathyroid, or adrenal glands?  ___ Yes  ✓ No

R. Within the last 2 years, have you (or any eligible dependent) EVER had, been treated for, or seen a doctor for any of the following:

1. Eye condition(s) requiring medication or surgery?  ___ Yes  ✓ No
2. Cluster/Migraine headaches?  ___ Yes  ✓ No

S. Are you (or an eligible dependent) now receiving or contemplating any medical attention or surgical treatment?  ___ Yes  ✓ No

If so what? _____

T. Do you (or an eligible dependent) have any permanent disabilities?  ___ Yes  ✓ No

If so what? _____

U. Are you (or an eligible dependent) currently pregnant?  ___ Yes  ✓ No

V. Has anyone to be insured had medical bills over $5000 during the past 12 months?  ___ Yes  ✓ No

If so for what condition ?  ___ Yes  ✓ No

Has anyone assisted you in completing this form?  ___ Yes  ✓ No
If yes, who? _____

## DECLARTION AND ACCEPTANCE STATEMENT

If you answered "YES" to any question lettered A through V, please complete the HEALTH INSURANCE INFORMATION SUPPLEMENT attached.

I declare statements and answers herein are complete and true and understand they are the basis for providing Health Benefits under the Plan of benefits being provided by my employer. I agree to the Plan's right to ask me or my eligible dependent(s) to be examined at its expense by a physician assigned by it.

I hereby authorize any licensed physician, medical practitioner, hospital, clinic, or other medically related facility, insurance company, the Medical Information Bureau, or other organization, institution, or person that has any records or knowledge of me or my health, or records or knowledge of my spouse and any of my sons or daughters or records or knowledge of their health to give to the Plan and such information. A photographic copy of this authorization shall be valid as the original.

Signature of Applicant *Lauren Smith*

Signature of Agent (or person assisting you in completing this form): _____    Date  4-10-03

## HEATH INFORMATION SUPPLEMENT

1. A separate section should be competed for each person and for each condition with a "YES" answer.
2. State the Question Number and the name of the person to whom that particular section applies.
3. If you are unsure of your diagnosis or any of the required information, CALL YOUR DOCTOR>
4. Do not leave any answer blank – If "NO" please sate so.

**ALL ANSWERS MUST BE COMPETED IN INK, IN THE EMPLOYEE'S OWN HANDWRITING**

Question No. _____ Name of Person: _____
a) Medical Condition/Diagnosis? _____
b) Date of onset? _____/_____/_____
c) Date last consulted a physician for this condition _____/_____/_____
d) What test(s) have been performed to confirm and/or monitor this condition? _____
e) Type and date of treatment: _____
f) Have you ever been hospitalized for this condition? ___ Yes ___ No If "Yes", when _____/_____/_____
g) Has medication been prescribed? ___ Yes ___ No If "Yes", name of drug? _____
Are you presently taking medication? ___ Yes ___ No If "Yes", frequency _____
h) What is your current status and do you anticipate any future treatment ? _____
i) Do you have any restrictions, limitations, or disability? _____

Question No. _____ Name of Person: _____
a) Medical Condition/Diagnosis? _____
b) Date of onset? _____
c) Date last consulted a physician for this condition _____/_____/_____
d) What test(s) have been performed to confirm and/or monitor this condition? _____
e) Type and date of treatment: _____
f) Have you ever been hospitalized for this condition? ___ Yes ___ No If "Yes", when _____
g) Has medication been prescribed? ___ Yes ___ No If "Yes", name of drug? _____
Are you presently taking medication? ___ Yes ___ No If "Yes", frequency _____
h) What is your current status and do you anticipate any future treatment ? _____
i) Do you have any restrictions, limitations, or disability? _____

Question No. _____ Name of Person: _____
a) Medical Condition/Diagnosis? _____
b) Date of onset? _____
c) Date last consulted a physician for this condition _____
d) What test(s) have been performed to confirm and/or monitor this condition? _____
e) Type and date of treatment: _____
f) Have you ever been hospitalized for this condition? ___ Yes ___ No If "Yes", when _____
g) Has medication been prescribed? ___ Yes ___ No If "Yes", name of drug? _____
Are you presently taking medication? ___ Yes ___ No If "Yes", frequency _____
h) What is your current status and do you anticipate any future treatment ? _____
i) Do you have any restrictions, limitations, or disability? _____

Question No. _____ Name of Person: _____
a) Medical Condition/Diagnosis? _____
b) Date of onset? _____
c) Date last consulted a physician for this condition _____/_____/_____
d) What test(s) have been performed to confirm and/or monitor this condition? _____
e) Type and date of treatment: _____
f) Have you ever been hospitalized for this condition? ___ Yes ___ No If "Yes", when _____
g) Has medication been prescribed? ___ Yes ___ No If "Yes", name of drug? _____
Are you presently taking medication? ___ Yes ___ No If "Yes", frequency _____
h) What is your current status and do you anticipate any future treatment ? _____
i) Do you have any restrictions, limitations, or disability? _____

Question No. _____ Name of Person: _____
a) Medical Condition/Diagnosis? _____
b) Date of onset? _____
c) Date last consulted a physician for this condition _____
d) What test(s) have been performed to confirm and/or monitor this condition? _____
e) Type and date of treatment: _____
f) Have you ever been hospitalized for this condition? ___ Yes ___ No If "Yes", when _____
g) Has medication been prescribed? ___ Yes ___ No If "Yes", name of drug? _____
Are you presently taking medication? ___ Yes ___ No If "Yes", frequency _____
h) What is your current status and do you anticipate any future treatment ? _____
i) Do you have any restrictions, limitations, or disability? _____

October 02, 2003


     FRANK THOMAS, MD
     121 N 20TH ST
     STE 18
     OPELIKA, AL   36801-5457

PLAN: 1125 - WORKSTAFF PERSONNEL SERVICE
PARTICIPANT: LAUREN E SMITH
PARTICIPANT ID #: 419296558
CLAIMANT: LAUREN
CHARGE: $170.00
DATE OF SERVICE: 08/25/2003 to 08/25/2003
CLAIM #: 200309290108

Dear Provider,

In order to process a claim for this patient, we need additional
information. Please assist us by answering the following questions:

1)   Have you seen or treated this patient at any time between
     ___/___/____ and ___/___/____ ?
     If yes, please list for each, dates and the conditions treated
     including all MEDICAL RECORDS.

2)   Was this patient seen by any other doctor or hospitalized
     between the dates listed above?  If yes, give name and address
     of other physicians or hospitals.

3)   What medications were prescribed or purchased for this patient
     between the dates listed above?

4)   Please make any comments you feel are applicable.


     _____                    _____
     Physician's Signature                            Date


Thank you for your cooperation.

Sincerely,



Claims Department

October 02, 2003

        LAUREN SMITH
        1504    66TH COURT SW
        LANETT, AL    36863


Group ID: 1125
Group Name:  WORKSTAFF PERSONNEL SERVICE
Participant: LAUREN E SMITH
Participant ID #: 419296558
Claimant: LAUREN
CHARGE: $170.00
DATE OF SERVICE: 08/25/2003 to 08/25/2003
CLAIM #: 200309290108


Dear LAUREN SMITH,

In order to process a claim for the above named claimant, we need
additional information.  Please assist us by answering the following
questions:

1)  Please list the name, address of all PHYSICIANS and PHARMACIES
in which you have seeked medical advice, diagnosis, care or treatment
was recommended within 6 MONTHS prior to the hired date 09/01/2002.

_____         _____
_____         _____
_____         _____

2)  Was this claimant hospitalized prior the hired date 09/01/2002?
If yes, please provide name and address of hospital facility.
_____
_____
_____

3)  What mediciations were prescribed or purchased for this claimant
prior the hired date 09/01/2002?

_____

Thank you for your cooperation in the matter.  All claims are pending
upon receipt of this letter.

Sincerely,


Claims Department



Office  229-225-9943
Fax    229-225-9945
Toll Free  888-35-CLAIM
Claims Dept Fax: 229-225-9795

**Taylor Benefit Resource, Inc.**

Excellence in Benefit Services

164 Commercial Drive.
P. O. Box 6580
Thomasville, GA  31758

October 02, 2003


FRANK THOMAS, MD
121 N 20TH ST
STE 18
OPELIKA, AL   36801-5457


PLAN: 1125 - WORKSTAFF PERSONNEL SERVICE
PARTICIPANT: LAUREN E SMITH
PARTICIPANT ID #: 419296558
CLAIMANT: LAUREN
CHARGE: $170.00
DATE OF SERVICE: 08/25/2003 to 08/25/2003
CLAIM #: 200309290108

RECEIVED
OCT 1 4 2003
BY:

Dear Provider,

In order to process a claim for this patient, we need additional
information. Please assist us by answering the following questions:

1)  Have you seen or treated this patient at any time between
    _03/01/2002_ and _09/01/2002_?   _NO_
    If yes, please list for each, dates and the conditions treated
    including all MEDICAL RECORDS.

2)  Was this patient seen by any other doctor or hospitalized
    between the dates listed above?  If yes, give name and address
    of other physicians or hospitals.   _UNKNOWN_

3)  What medications were prescribed or purchased for this patient
    between the dates listed above?   _N/A_

4)  Please make any comments you feel are applicable.

    ___B.F.Thomas MD___                        ___10/8/03___
    Physician's Signature                           Date

Thank you for your cooperation.

Sincerely,

_Mary Beth Donalson_

Claims Department

*Attn: Mary Beth* Please fax back to:
229-225-9795
*Thanks!*

October 02, 2003

LAUREN SMITH
1504 66TH COURT SW
LANETT, AL 36863

Group ID: 1125
Group Name: WORKSTAFF PERSONNEL SERVICE
Participant: LAUREN E SMITH
Participant ID #: 419396558
Claimant: LAUREN
CHARGE: $170.00
DATE OF SERVICE: 08/25/2003 to 08/25/2003
CLAIM #: 20030929010B

Dear LAUREN SMITH,

In order to process a claim for the above named claimant, we need additional information. Please assist us by answering the following questions:

1) Please list the name, address of all PHYSICIANS and PHARMACIES in which you have seeked medical advice, diagnosis, care or treatment was recommended within 6 MONTHS prior to the hired date 09/01/2002.

*none*

2) Was this claimant hospitalized prior the hired date 09/01/2002? If yes, please provide name and address of hospital facility.

*none*

3) What medications were prescribed or purchased for this claimant prior the hired date 09/01/2002?

*none*

Thank you for your cooperation in the matter. All claims are pending upon receipt of this letter.

Sincerely,
*Mary Beth Donalson*
Claims Department

*Thanks*
*Lauren Smith*

**REQUEST FOR CHANGE**



**TBR**

Phone (229) 225-9943
Fax   (229) 225-9945
Call  (888) 35 CLAIM

*Taylor Benefit Resource*
164 Commercial Drive
P. O. Box 6580
Thomasville, GA  31758

COMPANY NAME     **Workstaff**
LOCATION         *Opelika, AL*

EMPLOYEE NAME    *Lauren Smith*

SOCIAL SECURITY #  *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*

Under the terms of our policy, I hereby request TBR to do the following:

| COVERAGE CHANGE | Change From: | | Change To: | | Effective Date Of Change |
|---|---|---|---|---|---|
| Medical | ☐Single ☐Child ☐Other | ☐Spouse ☐Family ☐Plan | ☐Single ☐Child ☐Other | ☐Spouse ☐Family ☐Plan | |
| Dental | ☐Single ☐Emp+1 ☐Other | ☐Spouse ☐Family | ☐Single ☐Emp+1 ☐Other | ☐Spouse ☐Family | |
| Reason for Change | ☐Terminated ☑Voluntary ☐Reduced Hours | | ☐Other _____ | | *7-01-04* |
| Name Change | | *Health Only* | | | |
| Beneficiary Change | | | | | |
| Address Change | | | | | |

| Name | Relationship | Sex | Birthdate | Social Security | Add | Drop |
|---|---|---|---|---|---|---|
| | | | | | | |
| Airlne Copy | | | 2/10 | | | |
| To Eligibility | | | 6/29/04 | | | |
| Entered | | | | | | |
| Card | | | | | | |

Employee Signature _____

Date _____

Authorized Signature & Title _____

Date *6/28/04*

# Certificate of Health Plan Coverage

Plan Participant: 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          Date: July 21, 2004

SMITH, LAUREN, E                     Plan Name and Address:
114 MORGAN ST                        WORKSTAFF PERSONNEL SERVI

VALLEY, AL  36854

| Coverage Type | Date Waiting Period Started | Date Coverage Started | Date Coverage Ended | Is coverage continuing as of date above ? |
|---|---|---|---|---|
| Medical | 09/01/2002 | 10/01/2002 | 06/30/2004 | NO |
| Dental | 09/01/2002 | 10/01/2002 | / / | YES |
| | | | | |
| | | | | |

This certificate applies to the following persons:

| Name | Relationship to Participant | Social Security Number |
|---|---|---|
| LAUREN E. SMITH | Employee | 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 |
| | | |
| | | |
| | | |

**IMPORTANT:**

This Certificate provides evidence of your prior health coverage.  You may need to furnish this certificate if you become eligible under a group health plan that excludes coverage for certain conditions that you have before you enroll.  This certificate may need to be provided if advice, diagnosis, care or treatment was recommended or received for the condition within the 6-month period prior to your enrollment in the new plan.  If you become covered under another group health plan, check with the plan administrator to see if you need to provide this certificate.  You may also need this certificate to buy, for yourself or your family, an insurance policy that does not exclude coverage for medical conditions that are present before you enroll.

For further information: Contact the Employer listed above.

**REQUEST FOR CHANGE** KH

 **TBR**

Phone (229) 225-9943
Fax   (229) 225-9945
Call  (888) 35 CLAIM

*Taylor Benefit Resource*
164 Commercial Drive
P. O. Box 6580
Thomasville, GA  31758

COMPANY NAME **Workstaff**
LOCATION *Auburn AL*

EMPLOYEE NAME *Lauren Smith*

SOCIAL SECURITY # *419 29 6558*

Under the terms of our policy, I hereby request TBR to do the following:

| COVERAGE CHANGE | Change From: | | Change To: | | Effective Date Of Change |
|---|---|---|---|---|---|
| Medical | ☐Single ☐Child ☐Other | ☐Spouse ☐Family ☐Plan | ☐Single ☐Child ☐Other | ☐Spouse ☐Family ☐Plan | |
| Dental | ☐Single ☐Emp+1 ☐Other | ☐Spouse ☐Family | ☐Single ☐Emp+1 ☐Other | ☐Spouse ☐Family | *9-15-04* |
| Reason for Change | ☐Terminated ☑Voluntary ☐Reduced Hours | | ☐Other _____ | | |
| Name Change | | | | | |
| Beneficiary Change | | | TBR | |
| Address Change | | | ❏ Active Copy ❏ Eligibility ❏ Entered ❏ Sent  9/15/04 | |

| Name | Relationship | Sex | Birthdate | Social Security | Add | Drop |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Employee Signature _____

Authorized Signature & Title _____

Date _____

Date *9-15-04*

```
*****************************************************
* NOTICE OF COBRA/CONTINUATION COVERAGE RATE CHANGE *
*****************************************************
```

Mailed on:  01/15/2005

Group  #       : 1125   WORKSTAFF PERSONNEL SERVICE
COBRA Location : GCBR
                 GROUP COBRA

LAUREN E SMITH
114   MORGAN ST

VALLEY, AL  36854

Effective January 1, 2005, Workstaff, Ambassador, Tempo and Thomas
Staffing will no long carry Blue Cross Blue Shield and Employer's
Life Health Plans.

Participants, including Cobra Participants, will roll over into the
new Platinum Plans administered by Taylor Benefit Resource, Inc.

If you are currently enrolled in BCBS or Employer's Life,
you will need to complete a new medical enrollment form.  Your
coverage will automatically roll over to the new Platinum Plan at
the current level of Deductible Coverage you have.  However, the
administration records need to be updated.  You may notice a change
in premium (please see the enclosed invoice).

The benefits for the Platinum Plans are very similar to the benefits
for BCBS and Employer's Life but there are some changes.  We have
enclosed a summary of the new benefits.  If you would like to continue
your Cobra Coverage, mail your completed medical enrollment form and
January payment to Taylor Benefit Resource, Inc.

Upon receipt of your January payment a new ID Card and booklet will be
mailed to your.

If you have any questions, please contact
Donna Whiddon
Taylor Benefit Resource, Inc.
229-225-9943 or 1-888-352-5246

0501250822 ПЕ № 84

OCT.01'2003 09:11 706 257 1139          BLUECROSS BLUESHIELD OF GEORGIA    #4931 P.001/001

# COBRA SOLUTIONS MEMBER NOTIFICATION FORM

BCBS Cover election

DATE: 9-23-04

YOUR GROUP NAME: Lione Financial    101190 0 0 0

YOUR GROUP NUMBER: 101190 000

PLEASE COMPLETE ALL INFORMATION REQUESTED

SEQUENTIAL FORM #

| EMPLOYEE NAME | DOB | CONT. #/ SS # | TYPE COV-ERAGE | ADDRESS | CODE | DATE (A) |
|---|---|---|---|---|---|---|
| Lauren Smith | 9-01-79 | 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 | BC Choice PPO | 114 Morgan St. Valley AL 36854 | | 9-23-04 |

Donald

EVENT CODES:
01- Termination
02- Retirement
03- Termination/ Retirement/ Medicare
04- Death
05- No Longer an Eligible Dependent
06- Reduce Hours
07- Leave Of Absence
08- Divorce/ Separation
09- Loss of Coverage
10- Other/ Please Explain

1) If a member is disabled as determined by Social Security at the time of the qualifying event, please check here.

THIS COBRA NOTIFICATION FORM IS TO BE USED TO NOTIFY COBRA ADMINISTRATION OF ELIGIBLE MEMBERS. PLEASE COMPLETE AND MAIL TO:

COBRA Solutions
P.O. BOX 8689
COLUMBUS, GEORGIA 31908

PHONE: (706) 257-1300  800 422-8803
FAX: (706) 257-1300   800 292 5615   8689

706 571-5498

Cobra mailed out to her 9/25/04

USE THIS FORM TO NOTIFY US OF COBRA QUALIFYING EVENTS FOR YOUR GROUP. PLEASE COMPLETE ALL SECTIONS. PLEASE CALL COBRA SOLUTIONS IF YOU HAVE ANY QUESTIONS.

S- 1102 503 Rev. 1/00

G-AAC-001975-0000

4607-0784-2208

4607-0784-2208 ©2002, Moore North America, Inc. All rights reserved. ·0267

PERF                                                                                    PERF

# CANCELLATION AUTHORIZATION FORM (1)

Return via fax to 404-842-8040

*Correction*

*Cancelled 9/15/04*

| | |
|---|---|
| Group Name: *Cone Financial* | Group Number: *1011190000* |
| Completed By: *Lynelle* | Page ____ of ____ |
| Title: | Telephone: *229-228-4903* Date: *9/16/04* |

**Employee**

| Member No. | Last Name | First Name | |
|---|---|---|---|
| XHC80746053L | Smith | Warren | |

Cancel employee? ☑YES ☐NO  If yes → *on 9/15/04*   Coverage being Canceled ☐Medical ☐Dental ☐Life

Please note: Canceling the employee's coverage will cancel coverage for ALL dependents. Reason ☐Date of Death _____ ☐Left Employment ☐Other Coverage

Cancel all dependents? ☐YES ☐NO  If NO, complete the following:

| Dependent Name (First, MI, Last Name) | Cancellation Effective Date* | Coverage Being Canceled | | |
|---|---|---|---|---|
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |

Employee signature required for dependent cancellation. _____ Employee Signature _____ Date _____

**Employee**

| Member No. | Last Name | First Name | MI |
|---|---|---|---|

Cancel employee? ☐YES ☐NO  If yes →   Coverage being Canceled ☐Medical ☐Dental ☐Life

Please note: Canceling the employee's coverage will cancel coverage for ALL dependents. Reason ☐Date of Death _____ ☐Left Employment ☐Other Coverage

Cancel all dependents? ☐YES ☐NO  If NO, complete the following:

| Dependent Name (First, MI, Last Name) | Cancellation Effective Date* | Coverage Being Canceled | | |
|---|---|---|---|---|
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |

Employee signature required for dependent cancellation. _____ Employee Signature _____ Date _____

**Employee**

| Member No. | Last Name | First Name | MI |
|---|---|---|---|

Cancel employee? ☐YES ☐NO  If yes →   Coverage being Canceled ☐Medical ☐Dental ☐Life

Please note: Canceling the employee's coverage will cancel coverage for ALL dependents. Reason ☐Date of Death _____ ☐Left Employment ☐Other Coverage

Cancel all dependents? ☐YES ☐NO  If NO, complete the following:

| Dependent Name (First, MI, Last Name) | Cancellation Effective Date* | Coverage Being Canceled | | |
|---|---|---|---|---|
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |

Employee signature required for dependent cancellation. _____ Employee Signature _____ Date _____

**Employee**

| Member No. | Last Name | First Name | MI |
|---|---|---|---|

Cancel employee? ☐YES ☐NO  If yes →   Coverage being Canceled ☐Medical ☐Dental ☐Life

Please note: Canceling the employee's coverage will cancel coverage for ALL dependents. Reason ☐Date of Death _____ ☐Left Employment ☐Other Coverage

Cancel all dependents? ☐YES ☐NO  If NO, complete the following:

| Dependent Name (First, MI, Last Name) | Cancellation Effective Date* | Coverage Being Canceled | | |
|---|---|---|---|---|
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |
| | | ☐ Medical | ☐ Dental | ☐ Life |

Employee signature required for dependent cancellation. _____ Employee Signature _____ Date _____

*The cancellation effective date is very important! It should be the specific date (Month, Day, Year) coverage is to terminate.*
*Services incurred on or after the cancellation date will not be covered.*

Independent Licensee of the Blue Cross Blue Shield Association
WHITE COPY - BLUE CROSS AND BLUE SHIELD OF GEORGIA       YELLOW COPY - GROUP        G-AAE-003400  11/02

0501250822  BUB64

06/14/2004  18:36  3347495943    WORKSTAFF    PAGE 02

## MEMBER ENROLLMENT APPLICATION (1)

BCBSHP
BlueChoice Healthcare Plan (HMO)
BlueChoice Option (POS)

BCBSGA
**X** BlueChoice PPO    Dental Only
Traditional Health Plan

Consumer Choice Option
HMO (BCBSHP)    PPO (BCBSGA)
POS (BCBSHP)

GCL
Life Only

**EMPLOYMENT STATUS**
Active
Retired    Disabled    Cobra

DATE OF EMPLOYMENT
07 01 2004

EFFECTIVE DATE OF COVERAGE
07 01 2004

COMPANY BILLING LOCATION
Hourly    Salary

GROUP NUMBER    SUB    COMPANY NAME
101190 000    Cone Financial

EMPLOYER HOME ADDRESS
114 MORGAN STREET

CITY    STATE    ZIP CODE
VALLEY    AL 36854

COUNTY    HOME PHONE    BUSINESS PHONE
CHAMBERS 334 756 0328    334 319 3221

After coverage begins, will you or any dependents have any other medical insurance including Medicare? (check one) ☐YES ☒NO
After coverage begins, will you or any dependents have any other dental insurance? (check one) ☐YES ☒NO

Insurance Co.
Name:    Insurance Eff. Date:

Policy No    Policyholder
Address    Name

Insurance Co.

Are you eligible for Medicare?    Policyholder
Date of Birth:
Part A / Effective Date    Who is covered    Self    Spouse    Family
Part B /    Is your spouse eligible for Medicare?
Effective Date    XKC 807A    Part A / Effective Date
6 5203-01    Part B /
MEDICARE HIC #    5    Effective Date

*in processing 6/17/04*    *ebb 7/11/04 2nd Phone submitted Cards*    Is Medicare coverage related to end stage renal disease? YES  NO

REFUSED COVERAGE FOR: ☐ Medical  ☐ Dental  ☐ Life    Is anyone listed on this application currently covered by Blue Cross and Blue Shield of Georgia? YES  NO

LAST NAME    FIRST
SMITH    LAUREN    E 09 01 1979

SOCIAL SECURITY NO.    PRIMARY CARE PHYSICIAN NAME    PHYSICIAN I.D. NO.
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

SEX  MALE **X** FEMALE    ARE YOU APPLYING FOR DENTAL INS.? **X** YES  NO    MARITAL STATUS **X** MARRIED    SINGLE    WIDOWED    DIVORCED

LAST NAME    FIRST    DATE OF BIRTH

SOCIAL SECURITY NO.    PRIMARY CARE PHYSICIAN NAME    PHYSICIAN I.D. NO.

SEX  MALE  FEMALE   ARE YOU APPLYING FOR DENTAL INS.?    YES  NO
Are the dependent children the biological children of either the applicant, spouse or both? ( )Yes ( )No  If no, please complete a Certification of Dependency form.

LAST NAME    FIRST    DATE OF BIRTH

SOCIAL SECURITY NO.    PRIMARY CARE PHYSICIAN NAME    PHYSICIAN I.D. NO.

SEX  MALE  FEMALE    ARE YOU APPLYING FOR DENTAL INS.?    YES  NO    COLLEGE STUDENT?    YES  NO    HANDICAPPED?    YES  NO    DATE OF BIRTH

SOCIAL SECURITY NO.    PRIMARY CARE PHYSICIAN NAME    PHYSICIAN I.D. NO.

SEX  MALE  FEMALE    ARE YOU APPLYING FOR DENTAL INS.?    YES  NO    COLLEGE STUDENT?    YES  NO    HANDICAPPED?    YES  NO    DATE OF BIRTH

SOCIAL SECURITY NO.    PRIMARY CARE PHYSICIAN NAME    PHYSICIAN I.D. NO.

SEX  MALE  FEMALE    ARE YOU APPLYING FOR DENTAL INS.?    YES  NO    COLLEGE STUDENT?    YES  NO    NAME OF COLLEGE    STATE
STUDENT'S FIRST NAME    DATE FIRST ATTENDED COLLEGE    ANTICIPATED GRADUATION DATE

LIFE GROUP NO.    SUBACC    EFFECTIVE DATE    BASIC LIFE/AD&D $    %    SUPPL LIFE/AD&D $    %

EMPLOYEE JOB TITLE    CLASS    $    DEP LIFE SPOUSE    YES  NO    DEP LIFE CHILD    YES  NO

SALARY/EARNINGS (IF APPLICABLE)
$    WEEKLY    MONTHLY    ANNUAL    OTHER    STD Monthly $    %    LTD Monthly $    %

Primary Beneficiary Last Name, First, M.I.
Cooper, Kevin R.    Relationship
Smith, Denise A.    1. Husband
2. Mother

Contingent Beneficiary Last Name, First, M.I.    Relationship

*Cards mld. 6/28/04*

## Medical Information

### COMPLETE THIS SECTION FOR 2-19 EMPLOYEES AND FOR ALL LATE ENTRANTS.

...d on this application ever been covered by Blue Cross and Blue Shield of Georgia? ☐ Yes ☐ No   Member #

QUESTIONS: All of the following questions must be answered with respect to each person for whom you are applying
...age. (A) Has anyone listed on this application EVER had medical advice, treatment or do you know or have reasons to know
...h problems in regard to the following?  CHECK YES or NO. This information will be used to evaluate medical risk, not eligi-
...for coverage.

☐ No

X  a. NERVOUS-Brain disease: stroke, epilepsy-seizures, fainting or dizzy spells; cerebral palsy; other nervous
       system disorders.
X  b. PSYCHIATRIC-Psychiatric counseling; marriage counseling; family therapy; addiction to narcotics, barbiturates,
       amphetamines, or other drug dependency; nervous or mental disorders; alcoholism.
X  c. GENITOURINARY SYSTEM-Kidney, prostate, bladder, menstrual or other female disorders.
X  d. MUSCULOSKELETAL-Arthritis; rheumatism, bodily deformity; congenital abnormality; ruptured disc; or any
       muscle disorders.
X  e. CARDIOPULMONARY-High blood pressure; heart disease: circulatory disorders; disease; tuberculosis.
X  f. DIGESTIVE SYSTEM-Mouth; ulcers; disease of stomach: gall bladder: colon or intestines; hernia; rectal
       disorders.
X  g. EYE, EAR, NOSE, THROAT-Asthma; sinus; allergies; disease of nose or ears; disease of throat or tonsils:
       impairment of sight or hearing.
X  h. INCAPACITATION-Physical handicaps; mental retardation: disabled or incapacitated as defined by Medicare.
X  i. Acquired Immune Deficiency Syndrome (AIDS), AIDS-Related Complex (ARC), Kaposi Sarcoma, Pneumocystis
       Carinii Pneumonia, or Antibodies to Human T-Lymphotrophic Virus Type III (HTLV-III).
X  j. Sexually transmitted diseases such as syphilis, gonorrhea, herpes, genital warts.
X  k. Tumor or mass, cancer/liver disorders: hepatitis; thyroid disorders; blood disease; hemophilia; diabetes; skin
       disorders; infections or any other medical advice, examination, not disclosed above?
X  l. Is anyone listed on this application pregnant?
       If yes, when is the expected due date? 1/2005
X  m. Been advised to undergo a surgical operation or
       procedure within the next 6 months?
X  n. Are you currently taking prescription drugs? If yes,
       please list on separate sheet and attach.

I have answered all questions correctly for every
person listed on application.
Applicant's Signature
*Lauren Smith*

NAME AND COMPLETE ADDRESS OF DOCTOR(S) SEEN BY YOU WITHIN LAST 2 YEARS
Dr. Gwen Cooper 502 E Thomason Cir. Opelika
Dr. Nadia Cameron 14 Medical Pk. Valley, AL

NAME AND COMPLETE ADDRESS OF DOCTOR(S) SEEN BY SPOUSE WITHIN LAST 2 YEARS

### COMPLETE SECTION C FOR 20-99 EMPLOYEES

1. Has anyone applying for coverage been treated for a serious illness (For Example: Cancer, Diabetes, Heart Disease, Cardiovascular Disease,
   AIDS or AIDS-related disease, Pregnancy, Mental/Nervous Disorder, Substance Abuse, or any illnesses related to a major body organ), been
   hospitalized had surgery, OR insured health-care claims in excess of $7,500 in any of the last 12 months?  ☒ Yes  ☐ No

### COMPLETE THIS SECTION IF ANY QUESTIONS WERE ANSWERED "YES" IN SECTION A OR C.

| Person Treated | Name of illness or Disorder | Type of Treatment Received | Treatment Dates From | Treatment Dates To | Name and Address of Attending Physician |
|---|---|---|---|---|---|
| Lauren Smith | Pregnancy | | 10/14/04 | | Dr. Cooper 502 E Thomason Cir. Opelika, AL |

IF ADDITIONAL SPACE IS NEEDED, PLEASE ATTACH A SEPARATE SHEET.
PLEASE READ REVERSE SIDE BEFORE SIGNING FOR CONDITIONAL RECEIPT AND PRIVACY INFORMATION.

I declare that all statements and information made hereon are complete and true to the best of my knowledge. I understand that any mis-
statements or omissions may void all coverage applied for on any member on this application on a retroactive basis for up to two (2) years from
the contract effective date.
By signing this line, I understand that a pre-existing condition exclusion may apply (except for BlueChoice Healthcare Plan (HMO) and in-
network BlueChoice Option (POS)) up to twelve (12) months under the BCBSHP/BCBSGA contract, as defined in the benefit booklet.
I hereby acknowledge that Blue Cross and Blue Shield of Georgia/Blue Cross Blue Shield Healthcare Plan of Georgia (BCBSGA/BCBSHP)
(as applicable) has informed me of the following prior to my enrolling in their health care coverage plan.
a. number, mix and location of participating/network health care providers
b. limitations on choices of participating/network health care providers
c. disclosure of contractual relationship between participating/network provider and BCBSGA/BCBSHP.

APPLICANT'S SIGNATURE  *Lauren Smith*

DATE SIGNED  10/10/04

Date: 01/25/2005                    TravisCobra For Windows              Page: 7
Time: 3:54:56 PM                          PQB Detail Report               Report: PE

Employer: CONE FINANCIAL GROUP, INC.

| PQB Name | SS Number | Date of Birth |
|---|---|---|
| SMITH, LAUREN<br>114 MORGAN ST<br>VALLEY, AL 36854- | 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 | 09/01/1979 |

Status: Enrolled                    Medicaid Participant: No        SS Disability: No

| Event Descriptions | | Event Dates |
|---|---|---|
| Qualifying Event: | TERMINATION | 09/14/2004 |
| First Day After Loss Of Coverage | | 09/15/2004 |
| Notification | | 09/23/2004 |
| Election | | 10/28/2004 |
| First Payment | | 10/28/2004 |
| COBRA Expiration | | 03/15/2006 |
| State Extension Expiration - After COBRA | | |

| Plan Sponsor/Carrier | Benefit Plan | Premium |
|---|---|---|
| BLUE CROSS BLUE SHIELD OF GA<br>Eligibility: EMPLOYEE ONLY | 11190-00   1011190-051 PPO/RX | $264.87 |

Premium Due: 01/01/2005                                      Total:    $264.87

```
                *************************************************
                * NOTICE OF COBRA/CONTINUATION COVERAGE RATE CHANGE *
                *************************************************
            **NOTE: ALL INFORMATION CONTAINED IN THIS NOTICE IS SUBJECT TO VERIFICATION.**
                PLEASE CONTACT US IF YOU FEEL THAT ANY OF THE FOLLOWING IS INCORRECT.
Mailed on:  12/02/2005


   Group  #     : 1125  WORKSTAFF PERSONNEL SERVICE
   COBRA Location : GCBR
                GROUP COBRA


   LAUREN E SMITH
   114   MORGAN ST


   VALLEY, AL  36854


   The following are the subject group's new COBRA/Continuation Coverage rates:


   RATE EFFECTIVE DATE     COVERAGE     PLAN              ENROLLMENT LEVEL          MONTHLY RATE

                      Please contact us if you have any questions.


                      TAYLOR BENEFIT RESOURCE, INC.
                            P. O. BOX 6580
                      THOMASVILLE, GA   31758


                            229-225-9943



   419xxx558
```